UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                          No.: 8:20-cv-00873-WFJ-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

      Defendants.

_____/

### DEFENDANTS', OLIPHANT FINANCIAL, LLC AND ACCELERATED INVENTORY MANAGEMENT, LLC, MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively the "Defendants") by and through their counsel, Maurice Wutscher, LLP, respectfully submit this Motion for Summary Judgment and Memorandum of Law in Support pursuant to Federal Rule of Civil Procedure 56.

### PROCEDURAL HISTORY

The Plaintiff commenced the instant action on or about April 15, 2020 by filing a complaint ("Initial Complaint"; *ECF No. 1*) against Oliphant and Accelerated, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, *et seq*. (the "FCCPA") in relation to a demand letter sent by Oliphant on behalf of Accelerated (the "Letter", *ECF No. 1-1*) which she alleged

suggested to her that she had contracted with Accelerated for an extension of credit. Relevant to the instant motion, on January 28, 2011, the Defendants made demand upon Plaintiff to dismiss the Initial Complaint because the claims lacked support from material facts or then-existing law not only because, on its face, the Letter contradicted and did not support Plaintiff's claims but also because the Plaintiff's counsel had previously had identical claims dismissed for failure to state a claim. *Statement of Material Facts* ("SUF"), ¶ 42; *Dismissal Demand Letter*. Furthermore, the Initial Complaint failed to establish that the Plaintiff had Article III standing because the only potential injury alleged was a speculative harm to a hypothetical "least sophisticated consumer" which is insufficient to acquire standing under the FDCPA. *See, Dismissal Demand Letter,* p. 2 (quoting *Trichell v. Midland Credit Mgmt.,* 964 F.3d 990, 1002 (11th Cir. 2020).

In response to the Defendants' demand, the Plaintiff chose to double-down on her baseless claims, filing her First Amended Complaint ("Complaint"; *ECF No. 26*) on February 15, 2021, repeating verbatim her prior allegations regarding the Letter (*ECF No. 26-1*) but now also alleging the receipt of voluminous telephone calls from Defendants which caused her distress sufficient, according to Plaintiff, to secure Article III standing. Thereafter, the parties engaged in discovery with the Defendants providing responses and responsive documents to the Plaintiff's requests on or about March 11, 2021, March 25, 2021 and May 27, 2021, *SUF*, ¶¶ 45-50, and the Plaintiff providing responses to the Defendant's

requests on or about April 2, 2021, and again on or about May 4, 2021, however no documents were produced. *SUF*, ¶¶ 51-54. The Plaintiff was then deposed on May 4, 2021, and discovery closed on May 12, 2021. *See, ECF No. 40*.

Pursuant to the Court's Order, *ECF No. 40*, the Defendants now move for summary judgment on the Plaintiff's claims.

## **ALLEGATIONS OF THE COMPLAINT**

The Complaint alleges that a debt was incurred to WebBank who sold the debt to Accelerated who, in turn, hired Oliphant to collect upon it (the "Loan"). *Complaint,* ¶¶ 18-20, 28. On December 31, 2019, Oliphant, on behalf of Accelerated sent a letter to Plaintiff in reference to the Loan (the "Letter"). *Complaint*, ¶ 31. Relevant to the Plaintiff's claims, the Letter contains the following information:

| Date | Original Account Number | Current Creditor | |
|---|---|---|---|
| 12/31/2019 | (redacted)5314 | Accelerated Inventory Management, LLC | |
| Reference | Original Creditor | | Amount Due |
| (redacted)7354 | WebBank | | 9,706.72 |

Please be advised that Accelerated Inventory Management, LLC has purchased and now owns the above referenced account and we are therefore contacting you to resolve your outstanding balance.

...

Sincerely,
Oliphant Financial, LLC

*See, Letter*.

3

Despite this information, the Complaint alleges that the Letter violates the FDCPA, § 1692g(a)(1) and (2) because it asserts that a balance is owed to Accelerated when, according to Plaintiff and without any elaborative facts, the balance is not owed to Accelerated. *Complaint,* ¶¶ 57-59, 91, 92. The Complaint alleges that the Letter was thus also false and misleading in violation of § 1692e, e(2)(A) and e(10). *Complaint*, ¶¶ 77-84, 123-130. That the Plaintiff does not owe the stated balance to Accelerated is allegedly because:

> [Accelerated] never offered to extend credit to Plaintiff.
> [Accelerated] never extended credit to Plaintiff.
> Plaintiff was never involved in any transaction with [Accelerated].
> Plaintiff never entered into any contract with [Accelerated].
> Plaintiff never did any business with [Accelerated].
> Plaintiff was never indebted to [Accelerated].
> [Accelerated] is a stranger to Plaintiff.

*Complaint,* ¶¶ 93-99, 116-122. For these same reasons, the Plaintiff alleges that the Letter also violates the FCCPA, § 559.72(9). *Complaint*, ¶¶ 136, 137.

Additionally, the Complaint alleges the Defendants contacted Plaintiff via telephone several times a day, *Complaint*, ¶ 38, although the Complaint does not allege that any such calls form the basis for any claims pursuant to either the FDCPA or the FCCPA. *See, generally, Complaint*.

## STATEMENT OF MATERIAL FACTS

The Defendants' Statement of Undisputed Facts ("SUF") has been concurrently filed herewith and the Defendants incorporate same herein by reference.

## ARGUMENT

4

## I.   __SUMMARY OF THE ARGUMENT__

At its core, the Plaintiff has brought this action, and alleges that the Letter, sent by Oliphant on behalf of Accelerated, violates several sections of both the FDCPA and FCCPA, simply because upon receipt of the Letter, the Plaintiff did not recognize either Oliphant or Accelerated. *SUF*, ¶ 55. Naturally, according to Plaintiff and her counsel, being unfamiliar with these entities, despite the clear message conveyed by the Letter regarding their identity and relationship to Plaintiff, entitles her to pursue this action in search of statutory damages and, of course, attorneys' fees[1].

To summarize, Plaintiff alleges that the Letter, sent by Oliphant on behalf of Accelerated, was false and misleading in violation of § 1692e for reflecting that Plaintiff owes the Loan to Accelerated when Plaintiff claims she never contracted with Accelerated for any extension of credit. Thus, Plaintiff concludes, the Loan is not owed in the amount and to the current creditor as reflected in the Letter. For this same reason, Plaintiff alleges the Demand Letter also violates § 1692g.

However, contrary to plaintiff's claims, the Letter does not suggest that Plaintiff contracted for credit with Accelerated. Instead, the Letter reflects, quite clearly, that Accelerated is the current creditor of a debt, initially owed and incurred to WebBank, which was ultimately sold to Accelerated. *See, Letter.* Curiously, and although acknowledging that the Loan originated with WebBank

---

[1] 15 U.S.C. § 1692k(a)(3) provides that "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

(*Complaint*, ¶ 19), the Plaintiff's Complaint makes no acknowledgement of WebBank's reference in the Letter and does not dispute the legitimacy of the Loan or that it was originally owed to WebBank, as the Letter clearly identifies. Indeed, that such claims fail to state a claim should be no surprise to Plaintiff's counsel who has unsuccessfully pursued identical claims before. *See, e.g. Johnson v. Cawley & Bergmann, LLC,* No. 20-cv-00380 (DLI) (VMS), 2021 U.S. Dist. LEXIS 68855 (E.D.N.Y. Mar. 31, 2021); *Greifman v. Cawley & Bergmann, LLC,* No. 18-cv-08784 (NSR), 2019 U.S. Dist. LEXIS 60797 (S.D.N.Y. Apr. 9, 2019).

Because the Letter, in and of itself, contains accurate information and is not misleading as a matter of law, the Plaintiff's claims fail. Further, Plaintiff's own testimony offers her no quarter. Not only did Plaintiff fail to read the Letter in its entirety, but she also readily recognizes that had she read the Letter *in toto* she would have understood who Accelerated was in relation to the Loan, which she acknowledges is otherwise legitimate. Nor is there any genuine issue of material fact that the Loan was due and owing to Accelerated. For the following reasons, the Plaintiff's claims fail on the face of the Complaint alone, are baseless, lack support from material facts or existing law and have been pursued in bad faith at significant cost to the Defendants. Summary judgment must be granted in Defendants' favor.

## II.   <u>STANDARD OF REVIEW</u>

### A.   MOTION FOR SUMMARY JUDGMENT - FED. R. CIV. P. 56

"The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c)". *Brandt v. Bassett*, CASE NO: 92-1600-Civ-Aronovitz, 1993 U.S. Dist. LEXIS 10153, at *11 (S.D. Fla. Apr. 29, 1993). "[T]he moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party can meet this burden in one of two ways: by directly negating an essential element of the nonmoving party's claim, or by showing that there is insufficient evidence in the materials on file for the nonmoving party to establish its burden of proof at trial." *Coleman v. Starbucks Corp*., No. 6:14-cv-527-Orl-22TBS, 2015 U.S. Dist. LEXIS 141765, at *20 (M.D. Fla. Aug. 5, 2015) (citing *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991)). "Despite these presumptions in favor of the non-moving party, it must be borne in mind that the purpose of Rule 56 is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial." *Brandt v. Bassett*, 1993 U.S. Dist. LEXIS 10153, at *13 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

"Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures." *Id.* Rather, "[w]hen

the moving party demonstrates an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must then 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Coleman v. Starbucks Corp.*, 2015 U.S. Dist. LEXIS 141765, at *20-21 (quoting *Celotex Corp.*, 477 U.S. at 324-35).

### B.   THE FAIR DEBT COLLECTION PRACTICES ACT & THE FLORIDA  CONSUMER PROTECTION PRACTICES ACT

"The FDCPA and FCCPA both seek to protect consumers from abusive debt collection practices. To this end, the FDCPA prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' and any 'unfair or unconscionable' means of collection." *Dunn v. Glob. Tr. Mgmt., LLC*, No. 8:19-cv-2223-WFJ-AEP, 2020 U.S. Dist. LEXIS 232217, at *45-46 (M.D. Fla. Dec. 10, 2020) (quoting 15 U.S.C. § 1692e and § 1692f). "The FCCPA bans similar practices." *Id.,* at 46 (citing Fla. Stat. § 559.72).

"To prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Id.* (internal citation omitted). "To plead a FCCPA claim, a party must allege knowledge or intent by

the debt collectors in order to state a cause of action." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1309 (S.D. Fla. 2009) (internal citation omitted).

The 11th Circuit applies the "least sophisticated consumer" standard to communications under the FDCPA. *Jeter v. Credit Bureau Inc.*, 760 F.2d 1168, 1174 (11th Cir. 1985). "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1194 (11th Cir. 2010) (internal citations omitted). However, "[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness ...." *Id.*

## III.   **THE DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLAINTIFFS' CLAIMS[2]**

In no uncertain terms, the Plaintiff's Complaint, as a matter of law, fails to state any claim for relief as the clear text of the Letter conveys to Plaintiff who the Loan is currently owed to, in what amount and how it came to be owned by Accelerated, in contradiction of the Complaint's claims that the Letter falsely suggests that the Plaintiff had contracted with Accelerated for credit. Furthermore, the evidence of record demonstrates that Accelerated is, in fact, the current creditor of the Loan, as assignee and transferee of the original creditor.

---

[2] The Defendants focus their motion on one "essential element" (*see Coleman, supra*); that there is no material dispute of fact that the defendants have not "engaged in an act or omission prohibited by the FDCPA". *See, Dunn, surpa*. The Defendants **do not** concede however that there is no dispute of material fact regarding whether the Defendants are "debt collectors" or whether the Loan is a "debt" for purposes of the FDCPA, s*ee, Id.,* or the FCCPA.

There is no dispute of material fact in this regard and the Defendants are entitled to judgment.

### A. THERE IS NO DISPUTE OF MATERIAL FACT THAT THE LETTER DOES NOT VIOLATE THE FDCPA OR THE FCCPA

The basis of all the Plaintiff's claims is that she does not owe the Loan to Accelerated. Without more, including any claims regarding the legitimacy of the Loan, the Loan's origins, or the Loan's balance, Plaintiff asserts it simply is not owed to Accelerated, and as such, the Letter which was sent by Oliphant on Accelerated's behalf violates the FDCPA. *Complaint*, ¶¶ 57-59; 91, 92. Similarly, absent are any claims regarding the legitimacy of Accelerated's claim of ownership to the Loan and instead to support her claim that Accelerated is not the creditor of the Loan, the Plaintiff pleads only that:

> [Accelerated] never offered to extend credit to Plaintiff.
> [Accelerated] never extended credit to Plaintiff.
> Plaintiff was never involved in any transaction with [Accelerated].
> Plaintiff never entered into any contract with [Accelerated].
> Plaintiff never did any business with [Accelerated].
> Plaintiff was never indebted to [Accelerated].
> [Accelerated] is a stranger to Plaintiff.

*Complaint,* ¶¶ 93-99. As such, the crux of the Plaintiff's claims is that, because Accelerated never extended credit to her and is unknown to her, the Letter, in suggesting that the Loan is owed to Accelerated, violates § 1692g(a)(1) & (2)[3] because the Letter thus fails to identify either the amount of the Loan or the

---

[3] 15 U.S.C. § 1692g(a) requires that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—(1) the amount of the debt [and] (2) the name of the creditor to whom the debt is owed…"

creditor of the Loan as required. *See, Complaint,* First & Third Counts. Because Plaintiff alleges that the Letter does not comply with § 1692g in this regard, the Plaintiff alleges that the Letter is thus also false and misleading pursuant to § 1692e[4]. *See, Complaint,* Second & Fourth Counts.

### 1. The Letter Does Not Violate the FDCPA as a Matter of Law

Plaintiff's cryptic claims as presented in the Complaint which offer only that she does not owe Accelerated any money, without indulging the Defendants or the Court with any factual assertion as to ***why*** this is so, can be summarized as: because the Plaintiff did not recognize the Defendants when she received the Letter, she does not owe the Loan to Accelerated. Indeed, the Plaintiff has admitted as much, *SUF*, ¶ 55, and several other Courts have come to the same conclusion regarding the basis of **identical** claims brought by the Plaintiff's attorney previously. *See, Johnson v. Cawley & Bergmann, LLC*, 2021 U.S. Dist. LEXIS 68855, at *8-9 ("Each statement mentioned above essentially repeats that Plaintiff does not recognize JHPDE. Thus, the crux of Plaintiff's argument is that since Plaintiff does not recognize JHPDE, he must not owe any debt to JHPDE."); *Greifman v. Cawley & Bergmann, LLC,* 2019 U.S. Dist. LEXIS 60797, * 5 (same). However, the failure of the Plaintiff to recognize the Defendants does not make the Letter in violation of the FDCPA or FCCPA as a matter of law.

---

[4] The Complaint alleges claims pursuant to e(2)(A) and e(10) as well, but such claims are subject to the same analysis.

In *Johnson*, the Court was considering a motion to dismiss a complaint asserting identical claims based upon a similar letter which, the Court noted "clearly identifies the current creditor as JHPDE Finance I, LLC and the original creditor as the Citibank N.A./Citi(R) Double Cash Card. The Letter reasonably identifies the debt as originating from Plaintiffs use of a Double Cash Card issued by Citibank N.A./Citi(R) and provides the Citibank account number for Plaintiff's reference." *Id.*, at *9. Dismissing the complaint, the Court noted that "[p]laintiff's decision to leave out any mention of Citibank or the Double Cash Card in the Complaint suggests that either he is so careless that he failed to read the entire Letter or he is intentionally disguising his relationship with Citibank. The FDCPA protects neither", *Id.*, and holding instead that the "[p]laintiff failed to provide any reasonable explanation as to how the Letter could be interpreted to show that the debt originated from JHPDE. The least sophisticated consumer possesses reasonable knowledge of his account's history, and he does not read a debt collection letter in complete isolation." *Id.*, at *12-13.

Similarly, addressing identical claims regarding a correspondence which conveyed the same information and message as the Letter, the Court in *Griefman* also granted dismissal. There, while noting that "the debt collection letter clearly identifies the current creditor, JH Portfolio Debt Equities, LLC, the original creditor, Citibank N.A./Citi Simplicity Card, the amount of the debt, and that Defendant has been contracted to collect a debt owed by [Plaintiff] to JH Portfolio Debt Equities, LLC", *Greifman v. Cawley & Bergmann, LLC*, at *8, the

Court went on to hold that "[a]pplying the least sophisticated consumer standard, the Court determines that the debt collection letter received by Plaintiff is neither false nor misleading … Nowhere in the debt collection letter does it state or can it be interpreted to suggest that Plaintiff contracted with, borrowed monies from or incurred an original debt from JH Portfolio Debt Equities, LLC." *Id*. at *7.

Here, the same result is dictated. Initially, suspiciously, and disingenuous to the Court, the Complaint, similar as in *Griefman* and *Johnson*, completely fails to discuss Plaintiff's relationship with the original creditor, its mention in the Letter, or assert any facts to suggest why the Loan would not be due and owing, i.e. that it was the result of fraud or that it was previously paid off, *see, Complaint*, although the Plaintiff acknowledges being aware that the Letter was in reference to a debt originally owed to WebBank. *SUF*, ¶ 35. In this same vein, the Plaintiff wholly fails to address the unmistakable language in the Letter which alerts its recipient to the fact that Accelerated has purchased the Loan (rather than originating it) and, because of that, is now the creditor to whom payment is owed. Regardless, fatal to her claims, the Letter clearly identifies the origins of the Loan including its balance, its original creditor, original account number and current creditor, *Loan Data*; *SUF*, ¶¶ 15-22; see, also, *Letter*, bates label 82, and further contains the statement "[p]lease be advised that Accelerated Inventory Management, LLC has purchased and now owns the above referenced account and we are therefore contacting you to resolve your outstanding balance." *SUF*, ¶ 23; see, also, *Letter*, bates label 82. The Letter also ends with the following

13

closing salutation "Sincerely, Oliphant Financial, LLC". *SUF*, ¶ 25; see, also, *Letter*, bates label 82.

As such, on its face as a matter of law the Letter complies with the requirements of § 1692g(a) and is not false and misleading under § 1692e pursuant to the least sophisticated consumer standard. *See, Johnson v. Cawley & Bergmann, LLC,* 2021 U.S. Dist. LEXIS 68855, *11; *Greifman v. Cawley & Bergmann, LLC,* 2019 U.S. Dist. LEXIS 60797, * 8. It matters not that the Plaintiff did not recognize either Oliphant or Accelerated; "[a]pplying the least sophisticated consumer standard, the Letter is neither false, confusing, nor misleading. The absence of any dealings between Plaintiff and [Defendants] do[es] not support Plaintiff's claims that the Letter violated § 1692e or § 1692g by representing that [Accelerated] is the current creditor for the Account." *Johnson*, at * 11.

Judgement must be granted for the Defendants.

### 2. <u>There is No Genuine Issue of Material of Fact that the Letter Contained both the Amount of the Loan and the Name of the Loan's Creditor</u>

Beyond the fact that the Letter, on its fact, does not violate the FDCPA, there is no genuine issue of material fact that on the date the Letter was sent, the Letter contained both the amount of the Loan and the name of the Loan's creditor, in compliance with § 1692g(a)(1) and (2).

Specifically, on or about November 8, 2018, Plaintiff entered into and executed a Borrower Agreement and Loan Agreement and Promissory Note (the

Loan Agreement and Promissory Note are collectively referred to as the "Note") with WebBank for the purposes of requesting and receiving a loan from WebBank. *SUF*, ¶ 1. On or about November 9, 2018, WebBank issued the Loan to Plaintiff in the amount of $10,000 and identified by "Loan Id: (redacted)5314". *SUF*, ¶ 3. Prior to receiving the Loan, the Plaintiff read the Borrower Agreement and the Note. *SUF*, ¶ 4. The Borrower Agreement reflected that LendingClub would act as servicer for any loan issued to Plaintiff by WebBank. *SUF*, ¶ 2. The Borrower Agreement provided that WebBank could, at any time, assign all of its rights under the Borrower Agreement and the Note, including to LendingClub, and that LendingClub or any other third party could further assign such rights. *SUF*, ¶ 5. All right title and interest to the Loan was subsequently transferred to LendingClub for servicing after its origination by WebBank. *SUF*, ¶ 6. On or about December 27, 2019, LendingClub sold the Loan to Accelerated pursuant to the terms of a previously executed Account Purchase Agreement. *SUF*, ¶ 7. Pursuant to the Account Purchase Agreement, Accelerated was purchasing from LendingClub all right, title and interest in the Loan. *SUF*, ¶ 8. As of the date of sale of the Loan from LendingClub to Accelerated, the Loan had a balance owing of $9,706.72. *SUF*, ¶ 10. Pursuant to the Account Purchase Agreement, LendingClub has warranted that the Loan's balance is true and correct. *SUF*, ¶ 11. Accelerated has reviewed transaction history data provided by LendingClub related to the Loan and confirmed that at the time of purchase the balance on the Loan was $9,706.72. *SUF*, ¶ 12.

15

As such, on the date the Letter was sent by Oliphant, the creditor of the Loan was, as a matter of fact, Accelerated and the amount owed to Accelerated was, as a matter of fact, $9,706.72. *See, SUF,* ¶¶ 1-8, 10-12. Indeed, the Plaintiff never sought to contact WebBank, LendingClub, Accelerated or Oliphant in response to her receipt of the Letter and also never disputed the Loan or sought verification of the Loan pursuant to the Validation Notice provided in the Letter, *SUF,* ¶¶ 38, 40. There is no dispute of material fact and summary judgment must be granted.

Furthermore, and importantly, Plaintiff does not base any claims in the Complaint on the Loan's balance other than the Letter's assertion that it is owed to Accelerated and Plaintiff's only challenge to the Defendants' right to collect the Loan from her is her belief that her filing Chapter 7 bankruptcy would prevent collection of the Loan, but not at the time that the Letter was sent. *SUF,* ¶¶ 55-57. Indeed, the Plaintiff admits she was aware that the Letter was in reference to the amounts originally owed on the Loan to WebBank, *SUF,* ¶ 35, and only alleges that § 1692g(a)(1) and (2) were violated simply because she did not recognize Defendants. *SUF,* ¶ 55.

Regardless, the Plaintiff does not have evidence upon which she can rely to establish that Accelerated was not the creditor of the Loan or that the amount of the Loan was incorrect. *SUF,* ¶ 66. The **only** facts of record offered by Plaintiff to explain why she asserts in the Complaint that she did not owe the Loan to Accelerated, other than that she did not recognize the Defendants, was because:

> Plaintiff states that she never received any correspondence or notice from WebBank informing her that the alleged Debt was purportedly being sold, transferred or assigned to any other entity. Similarly, Plaintiff never received any correspondence or notice from Accelerated informing her that it had purportedly acquired any interest of any kind in the alleged Debt.

*SUF*, ¶¶ 54, 67 (citing *Pltfs. Response to Rogs*, # 7 which sought "all facts and documents which support your allegations in the Complaint and Amended Complaint that you did not/do not owe any money on the Account to Accelerated"). Despite being contradictory to the very exhibit which the Plaintiff's claims rely (the Letter) which would seemingly reflect correspondence from Accelerated informing Plaintiff of its acquisition of the Loan, *SUF*, ¶ 23, Plaintiff's evidence is also insufficient for her to establish her burden of proof at trial which also requires summary judgment to be granted in Defendants' favor. *See, Coleman, supra.*

The undisputed evidence establishes that the Letter did not violate § 1692g(a)(1) and (2) in that the Letter properly identified both the amount and creditor of the Loan. Because the Plaintiff's § 1692e claims are based upon the purported violations of § 1692g, there is no dispute of material fact that the Letter also did not violate § 1692e, e(2)(A) or e(10). Defendants are entitled to judgment on Plaintiff's FDCPA claims.

      **3.**    **The Letter Was Not False or Misleading and Plaintiff's Interpretation to the Contrary of the Plain Language of the Letter is Bizarre and Idiosyncratic and Lacks any Factual Support.**

Furthermore, and to the extent that the Plaintiff may argue that her claims pursuant to § 1692e are independent of her claims pursuant to §1692g, there is also no dispute of fact that the Letter did not falsely suggest that Accelerated had extended credit to the Plaintiff. Importantly, the Plaintiff **did not** read the Letter in its entirety, *SUF*, ¶ 33, but rather was only sure that she at least read the Loan Data before immediately (that same day she received it) sending the Letter to her attorney. *SUF*, ¶ 31, 32, 34. However, the Plaintiff did agree that, had she read the first paragraph of the Letter, which discusses how Accelerated has purchased her Loan and is now the creditor, she **would have** understood what that meant. *SUF*, ¶ 36.

Regardless of whether she did, in fact, read the ever-so-important first paragraph that in no uncertain terms explains how Accelerated became the creditor of the Loan, "the law in this Circuit and others is that when analyzing debt collection letters for violations of the FDCPA, the Court must read such letters as a whole and consider all relevant circumstances." *Howard v. Client Servs.*, No. 0:17-cv-62425-UU, 2018 U.S. Dist. LEXIS 142827, at *16 (S.D. Fla. Aug. 20, 2018) (citations omitted). In this regard, the Letter as a whole defeats **all** of Plaintiff's allegations that the Letter is misleading for suggesting that she did business with Accelerated.

Furthermore, the Plaintiff admits that the Letter does not reflect that Accelerated ever offered to extend credit to her or ever extended credit to her, contrary to her pleadings. *Plaintiff's Dep.*, p. 49, l. 21 to p. 50, l. 10; *compare,*

*Complaint*, ¶¶ 93, 94, 116, 117. Despite these concessions, the Plaintiff inexplicably sticks to her narrative that the Letter somehow suggests that she had engaged in some financial transaction with Accelerated because of the references to Oliphant and Accelerated, whom she had never heard of, and despite the very first paragraph of the Letter which discusses Accelerated's purchase of the Loan from WebBank. *Plaintiff's Dep.*, p. 50, l. 15 to p. 52, l. 10. Nor can Plaintiff point to anything in the Letter which supports her reading of the Letter, other than that which can be gleaned from the following exchange:

> Q. Okay. Can you point to me what in the letter leads you to that belief that Accelerated is claiming that you entered into a transaction with them?
>
> A. Just by looking at the name where it says Oliphant. And when I looked at the information I said I never -- I never did business with these people.
>
> Q. Okay. And the first sentence says please be advised that Accelerated Inventory Management has purchased and now owns the above referenced account. What did you take that to mean?
>
> A. I still didn't recognize it, because I don't recognize Accelerator or Oliphant.

*Plaintiff's Dep.,* p. 51, l. 2-17.

However, "[t]he least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and ***a willingness to read a collection notice with some care***." *LeBlanc, supra* (emphasis added). Here, the Plaintiff readily admits that she failed to read the Letter with care; she did not even read it in its entirety. *SUF*, ¶ 33. Furthermore, the

Plaintiff's interpretation that the Letter suggests that Accelerated was seeking payment on the Loan because of a prior financial transaction between it and Plaintiff holds no merit under the least sophisticated consumer standard. The FDCPA affords no protection for the Plaintiff's convoluted interpretation of the Letter; "[w]hile protecting naive consumers, the [least sophisticated consumer] standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness ...." *Id*. Here, even the minutest amount of reasonableness dictates that there is no dispute of material fact that the Letter is not false and misleading and that Plaintiff's bizarre and idiosyncratic interpretation of the Letter is not entitled to any weight.

Judgment must be granted in the Defendants favor.

### 4.     The Letter Does Not Violate the FCCPA

The Plaintiff also brings a claim pursuant to section 559.72(9) of the FCCPA and relies on the same allegations as in support of the FDCPA claims. *See, Complaint*, Fifth Count. Initially, for the same reasons that the Letter does not violate the FDCPA as a matter of fact and law, the Letter similarly does not violate the FCCPA and Defendants are entitled to judgment in this regard. *See, e.g. Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101-Civ-Dimitrouleas/S, 2009 U.S. Dist. LEXIS 71169, at *24 (S.D. Fla. Aug. 12, 2009) ("The Florida Consumer Credit Practices Act (FCCPA) is narrower in scope than the [FDCPA]." However, on its own, the FCCPA claim nevertheless fails.

Section 559.72(9) makes it a violation to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." To establish a violation under section 559.72(9) of the FCCPA, "it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist." *Pollock v. Bay Area Credit Serv., LLC*, 2009 U.S. Dist. LEXIS 71169, at *24 (citing Fla. Stat. § 559.72(9)). Furthermore, "[a] demand for payment upon a legitimate debt will not support a claim under section 559.72(9)." *Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ, 2010 U.S. Dist. LEXIS 126140, at *7 (S.D. Fla. Nov. 30, 2010) (citing *LeBlanc v. Unifund CCR Partners*, G.P., 552 F. Supp. 2d 1327, 1341 (M.D. Fla. 2008), rev'd on other grounds, 601 F.3d 1185, 2010 WL 1200691 (11th Cir. 2010)).

Here, there is no dispute of material fact that the Loan was legitimate and due and owing to Accelerated and that Oliphant was seeking to recover same when it sent the Letter. *SUF*, ¶¶1, 3, 5-8, 10-13. Defendants are entitled to judgment on the Plaintiff's FCCPA claims.

## B. THERE IS NO DISPUTE OF MATERIAL FACT THAT DEFENDANTS DID NOT PLACE ANY TELEPHONE CALLS TO THE PLAINTIFF

As a surprising new development, the Complaint makes allegations regarding alleged telephone calls that the Plaintiff claims were placed to her by the Defendants, although these phantom telephone calls were not raised in the

Initial Complaint. *See, Complaint,* ¶ 36, *compare, Initial Complaint.* Plaintiff pleads that the Defendants contacted her on numerous occasions and several times a day via telephone, *Complaint*, ¶¶ 36, 38, however she does not base her claims for violations of the FDCPA and FCCPA upon any communication other than the Letter. *See, Complaint*, ¶¶ 57, 60, 74, 77-84, 91, 100, 114, 123-132.

To the extent that the Court would interpret the Complaint otherwise, as a matter of fact the Defendants did not place **any** telephone calls to the Plaintiff. The Loan was purchased by Accelerated on December 27, 2019. *SUF*, ¶ 7. Four days later, on December 31, 2019, Oliphant sent the Letter on behalf of Accelerated. *SUF*, ¶ 14. The Letter was the first and only written communication made by the Defendants to the Plaintiff. *SUF*, ¶¶ 26, 27. The Defendants placed no calls to the Plaintiff. *SUF*, ¶ 28. On January 19, 2020 the Defendants closed the Loan and ceased all collections. *SUF*, ¶ 29.

For her part, the Plaintiff continued the charade of "telephone calls" into her deposition where she provided testimony that she spoke to the caller whom she initially identified as "Accelerator", rather than Accelerated, *Plaintiff's Dep.*, p. 54, l. 25 to p. 55, l. 4, 9-11, only once, *SUF*, ¶ 59, could not remember whether such call took place within the last four years[5], *SUF*, ¶ 58, could not remember whether the call was actually in reference to the Loan, *SUF*, ¶ 64, could not recall

---

[5] In this regard, any claims related to any alleged telephone calls, even assuming they occurred between December 27, 2019 and January 19, 2020, the dates between which the Defendants were attempting to collect the Loan, are time barred pursuant to the FDCPA's one year statute of limitations, *see, e.g. Cooley v. Ocwen Loan Servicing, LLC*, 729 F. App'x 677, 681 (11th Cir. 2018), given that such allegations were not asserted until February 15, 2021. *See, generally, Complaint.*

the telephone number or even the area code of the caller, *SUF*, ¶¶ 62, 63, did not receive any voicemails identifying the entity allegedly calling, *SUF*, ¶ 60, did not call back the number from which she alleged to have received the calls in issue, *SUF*, ¶ 61, and to date has failed to secure her telephone records to support her allegations. *SUF*, ¶ 65.

However, more is required to defeat summary judgment as "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "If the evidence advanced by the nonmoving party 'is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Pollock v. Bay Area Credit Serv., LLC*, 2009 U.S. Dist. LEXIS 71169, at *20 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50,106 S. Ct. 2505 (1986)). Here, given the Plaintiff's inability to provide specific testimony regarding the alleged calls and her failure to support such claims with evidence such as her phone records, which are clearly within her possession, custody and control, no jury could reasonably find for the Plaintiff on this issue and summary judgment is appropriate. *Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp. 2d 1210, 1219 (M.D. Fla. 2009) (Granting defendant summary judgment on claims alleging voluminous telephone calls where "Plaintiffs' deposition testimony shows that Plaintiffs were unable to provide detailed information about the telephone calls Plaintiffs received, including date, time, or day of the week, and Plaintiffs did not identify

any specific caller through recognition of the caller's voice or other circumstantial evidence.")

## **<u>CONCLUSION</u>**

Simply put, and as demonstrated above, the Plaintiff's claims fail on the face of the Complaint alone, are baseless, lack support from material facts or existing law and have been pursued in bad faith at significant cost to the Defendants. There is no dispute of material fact and summary judgment must be granted in Defendants' favor.

For the foregoing reasons, Defendants, Oliphant Financial, LLC and Accelerated Inventory Management, LLC respectfully request that this Court grant their Motion and enter judgment in their favor and against Plaintiff. Defendants further request that, after granting judgment in their favor, the Court retain jurisdiction so that Defendants may submit an appropriate motion seeking their attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), Fla. Stat. § 559.77(2) and Fla. Stat. § 57.105(1) and (7).

Date: June 7, 2021                              Respectfully submitted,

**ACCELERATED INVENTORY
MANAGEMENT, LLC AND
OLIPHANT FINANCIAL, LLC,**

*s/ Shannon Miller*
Shannon Miller, Esq. (*Pro Hac Vice*)
Maurice Wutscher, LLP
Attorneys for Defendants
10 W. Front Street
Media, PA 19063
smiller@mauricewutscher.com

*/s/ Christopher P. Hahn*
Christopher P. Hahn, Esq.
MAURICE WUTSCHER LLP
Florida Bar No. 87577
2255 Glades Road, Suite 324A Boca
Raton, FL 33431
chahn@MauriceWutscher.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct of the foregoing was served on this

date electronically on all parties of record.

*/s/ Shannon Miller*
Shannon Miller

Date: June 7, 2021