UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                          No.: 8:20-cv-00873-WFJ-TGW

     Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

     Defendants.

_____/

## DEFENDANTS', OLIPHANT FINANCIAL, LLC AND ACCELERATED INVENTORY MANAGEMENT, LLC, STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively the "Defendants") by and through their counsel, Maurice Wutscher, LLP, respectfully submit this Statement of Undisputed Facts in support of their Motion for Summary Judgment.

1.    On or about November 8, 2018, Plaintiff Isabel Hernandez ("Plaintiff") entered into and executed a Borrower Agreement and Loan Agreement and Promissory Note (the Loan Agreement and Promissory Note are collectively referred to as the "Note") with WebBank for the purposes of

1

requesting and receiving a loan from WebBank. *Crossan Decl.*, ¶ 15; *Borrower Agreement*; bates label 84 to 88[1]; *Note,* bates label 89 to 92; *Loan Summary*.

2.    The Borrower Agreement reflected that LendingClub would act as servicer for any loan issued to Plaintiff by WebBank. *Borrower Agreement*; bates label 8, § 9.

3.    On or about November 9, 2018, WebBank issued a loan to Plaintiff in the amount of $10,000 and identified by "Loan Id: (redacted)5314" (the "Loan"). *Crossan Decl.*, ¶ 16; *Loan Summary*; *Pltf. Response to Rogs*, # 4; *Pltf. Response to RFAs*, # 2; *Complaint*, ¶ 19; *Plaintiff's Dep.*, p. 42, l. 2 to p. 43, l. 8.

4.    Prior to receiving the Loan, the Plaintiff read the Borrower Agreement and the Note. *Pltfs. Response to RFAs*, # 16.

5.    The Borrower Agreement provided that WebBank could, at any time, assign all of its rights under the Borrower Agreement and the Note, including to LendingClub, and that LendingClub or any other third party could further assign such rights. *Borrower Agreement*, bates label 86, § 13; *Note*, bates label 91 § Miscellaneous.

6.    All right title and interest to the Loan was subsequently transferred to LendingClub for servicing after its origination by WebBank. *Crossan Decl.*, ¶ 18; *Certificate of Loan Sale*, bates label 2, 4.

7.    On or about December 27, 2019, LendingClub sold the Loan to Accelerated pursuant to the terms of a previously executed Account Purchase

---

[1] Where necessary and available citation to a specific page will be made by identifying the bates label for the page(s) being cited to.

Agreement. *Crossan Decl.*, ¶ 9; *Bill of Sale*, bates label 5, *Account Schedule*, bates label 23, 25; *Complaint*, ¶ 28.

8.    Pursuant to the Account Purchase Agreement, Accelerated was purchasing from LendingClub all right, title and interest in the Loan. *Crossan Decl.*, ¶ 9.

9.    When Accounts are assigned to Accelerated, including the Loan, Accelerated does not receive information sufficient to identify the purpose any amounts owed upon such Accounts, including the Loan, were incurred which would allow Defendants to identify whether any financial obligation, including the Loan owed by Plaintiff, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". *Defts. Responses to RFAs*, # 3-5, 12, 15, 22, 23, 29;

10.    As of the date of sale of the Loan from LendingClub to Accelerated, the Loan had a balance owing of $9,706.72. *Crossan Decl.*, ¶¶ 21-23; *Certificate of Loan Sale*, bates label 4; *Account Schedule,* bates label 25; *Loan Summary*.

11.    Pursuant to the Account Purchase Agreement, LendingClub has warranted that the Loan's balance is true and correct. *Crossan Decl.*, ¶ 22

12.    Accelerated has reviewed transaction history data provided by LendingClub pursuant to its purchase of the Loan and confirmed that at the time of purchase the balance on the Loan was $9,706.72. *Crossan Decl.*, ¶ 23.

13. Upon purchase of the Loan, Accelerated placed the loan with Oliphant to service the Loan on Accelerated's behalf. *Crossan Decl.*, ¶ 5; *Complaint*, ¶ 20.

14. In service of the Loan, on December 31, 2019, Oliphant mailed a letter to the Plaintiff regarding the Loan. *Crossan Decl.*, ¶¶ 27, 28; *Letter*, bates label 82-83; *Complaint*, ¶ 31; *Account Notes*.

15. The Letter was addressed to "Isabel Hernandez". *Letter*, bates label 82.

16. The Letter had a date of "December 31, 2019". *Letter*, bates label 82.

17. The Letter was on "Oliphant Financial" letterhead and was signed by "Oliphant Financial, LLC". *Letter*, bates label 82.

18. The Letter listed an "Original Account Number" of "(redacted)5314". *Letter*, bates label 82.

19. The Letter listed a "Current Creditor" of "Accelerated Inventory Management, LLC". *Letter*, bates label 82.

20. The Letter listed an "Original Creditor" of "WebBank". *Letter*, bates label 82.

21. The Letter listed an "Amount Due" of "9,706.72". *Letter*, bates label 82.

22. Before the body of the Letter is a box which appears in the same form and contains the following information:

| Date | Original Account Number | | Current Creditor |
|---|---|---|---|
| 12/31/2019 | (redacted)5314 | | Accelerated Inventory Management, LLC |
| **Reference** | **Original Creditor** | | **Amount Due** |
| (redacted)7354 | WebBank | | 9,706.72 |

(hereafter referred to as the "Loan Data"). *Letter*, bates label 82.

23.    The first paragraph in the body of the Letter states:

Please be advised that Accelerated Inventory Management, LLC has purchased and now owns the above referenced account and we are therefore contacting you to resolve your outstanding balance.

*Letter*, bates label 82.

24.    The second paragraph in the body of the Letter states:

Unless you notify this office, within 30 days after receiving this letter, that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days after receiving this letter, that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you, if any. A copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period after you receive this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

(hereinafter referred to as the "Validation Notice") *Letter*, bates label 82.

25.    The body of the Letter concludes with the following:

This is a communication from a debt collector. This is an attempt to collect a debt. Any information will be used for that purpose.

Please contact Horace Driskell at 800-262-1999 to discuss this letter.

Sincerely,
Oliphant Financial, LLC

*Letter*, bates label 82.

26.    The Letter was the first written communication made by Defendants to Plaintiff regarding the Loan. *Crossan Decl.*, ¶ 29; *Account Notes; Complaint*, ¶ 34.

27.    The Defendants did not send any written communications to the Plaintiff regarding the Loan other than the Letter. *Crossan Decl.*, ¶ 29; *Account Notes; Defts. Response to Rogs*, # 1; *Defts. Response to RPDs*, # 6, 20; *Pltfs. Response to Rogs*, # 9: *Pltfs. Response to RFP*, # 1, 2.

28.    The Defendants did not place any telephone calls regarding the Loan to the Plaintiff. *Crossan Decl.*, ¶ 30; *Account Notes; Defts. Response to Rogs*, # 2; *Defts. Response to RPDs*, # 6, 12, 20; *Defts. Answer and Affirmative Defenses to the Plaintiff's First Amended Complaint* ("Answer"; ECF No. 29), ¶¶ 30, 36-47.

29.    On or about January 19, 2020, the Defendants closed the Loan and ceased all attempts to recover the amounts owed thereon upon receipt of notice that the Plaintiff had filed for Chapter 7 Bankruptcy. *Crossan Decl.*, ¶ 32; *Account Notes*.

30.    The Plaintiff received the Letter. *Plaintiff's Dep.*, p. 17, l. 21 to p. 18, l. 1-4.

31.    The Plaintiff had specific instructions from her bankruptcy attorney to forward to him any correspondence similar to the Letter. *Plaintiff's Dep.*, p. 20, l. 5 to p. 21, 1. 3.

32.    The Plaintiff forwarded the Letter to her bankruptcy attorney the same day she received it. *Id.*

33.    The Plaintiff did not read the Letter in its entirety. *Plaintiff's Dep.*, p. 23, l. 24 to p. 25, l. 1, p. 25, l. 22 to p. 26, l. 3, p. 30, l. 12, to p. 31, l. 2.

34.    The Plaintiff read the Loan Data but does not remember if she read the first paragraph in the body of the Letter. *Plaintiff's Dep.*, p. 24, l. 6-20, p. 24, l. 21 to p. 25, l. 1, p. 25, l. 22 to p. 26, l. 3.

35.    Based upon her reading of the Loan Data, the Plaintiff was aware that the Letter was in reference to the amounts originally owed on the Loan to WebBank. *Pltfs. Response to RFAs*, # 10.

36.    According to the Plaintiff had she read the first paragraph in the body of the Letter she would have understood that Accelerated Inventory Management, LLC had purchased and now owned the Loan. *Plaintiff's Dep.*, p. 25, l. 2-13.

37.    The Plaintiff did not read the second paragraph in the body of the Letter. *Plaintiff's Dep.*, p. 30, l. 12, to p. 31, l. 2.

38.    After receipt of the Letter, the Plaintiff did not attempt to contact Oliphant, Accelerated, LendingClub or WebBank. *Crossan Decl.*, ¶ 31; *Plaintiff's*

*Dep.*, p. 29, l. 17 to p. 30, l. 2; *Pltfs. Response to RFAs*, # 14, 15; *Pltfs. Response to RPDs*,  # 3, 4; *Defts. Response to RPDs*, # 7.

39.    After receipt of the Letter, the Plaintiff did not make any payment in relation to the Loan. *Plaintiff's Dep.*, p. 31, l. 3-5; *Pltfs. Response to RFAs*, # 22.

40.    After receipt of the Letter, the Plaintiff did not dispute the Loan or any portion of it. *Crossan Decl.*, ¶ 31; *Pltfs. Response to RFAs*, # 11.

41.    On or about April 15, 2020, the Plaintiff filed the Initial Complaint. *See, ECF No. 1.*

42.    On January 28, 2021, the Defendants made demand upon Plaintiff to dismiss the Initial Complaint. *Miller Cert.*, ¶ 4; *Dismissal Demand Letter*.

43.    On or about February 15, 2021, the Plaintiff filed her First Amended Complaint (the "Complaint"). *See, ECF No. 26.*

44.    On or about March 1, 2021, the Defendants filed their Answer and Affirmative Defenses to the First Amended Complaint ("Answer"). *See, ECF No. 29.*

44.    Defendants' requests to admit, requests to produce and interrogatory requests, as well as exhibits thereto, were served upon the Plaintiff on or about March 8, 2021. *Miller Cert.*, ¶ 5.

45.    Defendants' Amended Responses to the Plaintiff's First Request for Admissions were served on or about March 11, 2021. *Miller Cert.*, ¶ 6.

46.    Defendants' Responses to the Plaintiff's First Set of Interrogatories were served on or about March 11, 2021. *Miller Cert.*, ¶ 7.

47. Defendants' Responses to the Plaintiff's First Request for Production were served on or about March 11, 2021.   *Miller Cert.*, ¶ 58.

48. Defendants served with their responses documents bates labeled "Hernandez V. Oliphant, et al. 000001 to 000081" upon Plaintiff's counsel, which included the Account Purchase Agreement, Bill of Sale, Borrower Agreement and Loan Agreement and Promissory Note, Loan Summary, Credit Score Notice, TILA Disclosure Statement, Terms of Use and Consent to Electronic Transactions and Disclosures which includes an Electronic Consent, Credit Profile Authorization, Authorization for Automatic Payment, Certificate of Sale and Account Notes. *Miller Cert.*, ¶ 9.

49. On or about March 25, 2021, as part of the duty to update discovery responses, the Defendants served the Transaction History for the Plaintiff's Loan upon Plaintiff's counsel. *Miller Cert.*, ¶ 10.

50. On or about May 27, 2021, as part of the duty to update discovery responses, the Defendants served documents bates labeled "HERNANDEZ V. OLIPHANT, et al. 000082 to 000094" upon Plaintiff's Counsel, which included a copy of the Letter and the Borrower Agreement and Loan Agreement and Promissory Note. *Miller Cert.*, ¶ 11.

51. Plaintiff's Response to the Defendants' Request for Admissions were served on or about April 2, 2021. *Miller Cert.*, ¶ 12.

52. Plaintiff's Response to the Defendants' First Set of Interrogatories were served on or about May 4, 2021. *Miller Cert.*, ¶ 13.

9

53.    Plaintiff's Response to the Defendants' Request for Production which were served on or about April 2, 2021. *Miller Cert.*, ¶ 14.

54.    The Plaintiff did not produce any documents as part of her discovery responses provided. *Miller Cert.*, ¶ 15.

55.    Plaintiff's only basis for bringing her action and alleging that the Defendants violated both the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, *et seq.* was that she did not recognize either Oliphant or Accelerated upon receipt of the Letter. *Plaintiff's Dep.*, p. 16, l. 10-19; p. 27, l. 1-25; p. 46, l. 1 to p. 47, l. 1; p. 48, l. 22 to p. 49, l. 16; p. 52, l. 24 to p. 53, l. 13; p. 66, l. 25 to p. 67, l. 7; p. 87, l. 11-20; *Pltfs. Response to Rogs*, # 7.

56.    The Plaintiff does not base any claims in the Complaint on the Loan's balance other than the Letter's assertion that it is owed to Accelerated. p. 46, l. 1 to p. 47, l. 1.

57.    The Plaintiff's only challenge to the Defendants' right to collect the Loan from her is her belief that her filing Chapter 7 bankruptcy would prevent collection of the Loan, but not at the time that the Letter was sent. *Plaintiff's Dep.*, p. 69, l. 3 to p. 70, l. 7.

58.    The Plaintiff does not recall if the phone calls she alleged to have been placed by Defendants occurred within the past four years. *Plaintiff's Dep.*, p. 31, l. 21 to p. 35, l. 10.

59.    The Plaintiff only answered one phone call she alleges to have been placed by Defendants.  *Plaintiff's Dep.*, p. 57, l. 23 to p. 58, l. 1.

60.    The Plaintiff did not receive any voicemails from any phone calls she alleges to have been placed by Defendants. *Plaintiff's Dep.*, p. 60, l. 9-12.

61.    The Plaintiff did not call back the telephone number from which she alleges Defendants placed calls to her. *Plaintiff's Dep.*, p. 60, l. 13-15.

62.    The Plaintiff cannot recall the telephone number from which she alleges Defendants placed calls to her. *Plaintiff's Dep.*, p. 35, l. 4-7; p. 59, l. 25 to p. 60, l. 4.

63.    The Plaintiff cannot recall the area code of the telephone number from which she alleges Defendants placed calls to her. *Plaintiff's Dep.*, p. 35, l. 4-7; p. 60, l. 5-8.

64.    The Plaintiff cannot recall whether the telephone call which she alleges the Defendants placed to her was in reference to the Loan. *Plaintiff's Dep.*, p. 33, l. 16-21.

65.    The Plaintiff did not secure her telephone records and does not intend to do so. *Plaintiff's Dep.*, p. 56, l. 3-14; *Pltfs. Response to RPDs, # 1, 2, 19.*

66.    The Plaintiff is not in possession of any documents which reflect that she did not owe the Loan to Accelerated. *Pltfs. Response to RPDs, # 18; Pltfs. Response to Rogs, # 7.*

67.    The Plaintiff is not in possession of any facts which reflect that she did not owe the Loan to Accelerated, other than that according to her neither

WebBank nor Accelerated sent her notice informing her that the Loan had been sold to Accelerated. *Pltfs. Response to Rogs*, # 7.

Respectfully submitted,

**MAURICE WUTSCHER LLP**

*s/ Shannon Miller*
Shannon Miller, Esq. (*Pro Hac Vice*)
Maurice Wutscher, LLP
Attorneys for Defendants
10 W. Front Street
Media, PA 19063
smiller@mauricewutscher.com

Date: June 7, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of the foregoing was served on this date electronically on all parties of record.

*/s/ Shannon Miller*
Shannon Miller

Date: June 7, 2021