# EXHIBIT
# B

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                               No.: 8:20-cv-00752-JSM-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

      Defendants.

_____/

## CERTIFICATION OF SHANNON MILLER, ESQ.

1.      I am over eighteen (18) years of age and of sound mind.

2.      I am an attorney at law licensed in the Commonwealth of Pennsylvania and State of New Jersey and a member of the law firm of Maurice Wutscher LLP, attorneys for Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively the "Defendants"), in the above captioned action.

3.      I have been admitted *Pro Hac Vice* in the above captioned matter.

4.      Attached hereto as **Exhibit 1** is a true copy of correspondence sent to Plaintiff's counsel by Defendants' counsel regarding the claims and requesting Plaintiff dismiss the action ("*Dismissal Demand Letter*").

5.      Attached hereto as **Exhibit 2** are true copies of the Defendants' requests to admit, requests to produce and interrogatory requests, as well as exhibits thereto, which were served upon the Plaintiff on or about March 8, 2021.

1

6.     Attached hereto as **Exhibit 3** is a true copy of Defendants' Amended Responses to the Plaintiff's First Request for Admissions which were served on or about March 11, 2021 ("*Defts. Responses to RFAs*").

7.     Attached hereto as **Exhibit 4** is a true copy of Defendants' Responses to the Plaintiff's First Set of Interrogatories which were served on or about March 11, 2021 ("*Defts. Responses to Rogs*").

8.     Attached hereto as **Exhibit 5** is a true copy of Defendants' Responses to the Plaintiff's First Request for Production which were served on or about March 11, 2021 ("*Defts. Responses to RPDs*").

9.     As part of their discovery responses, Defendants served with their responses documents bates labeled "Hernandez V. Oliphant, et al. 000001 to 000081" upon Plaintiff's Counsel, which included the Account Purchase Agreement, Bill of Sale, Borrower Agreement and Loan Agreement and Promissory Note, Loan Summary, Credit Score Notice, TILA Disclosure Statement, Terms of Use and Consent to Electronic Transactions and Disclosures which includes an Electronic Consent, Credit Profile Authorization, Authorization for Automatic Payment, Certificate of Sale and Account Notes.[1]

---

[1] These terms are defined and reference provided in the Declaration of Michael Crossan which is being submitted in support of the Defendants' Statement of Undisputed Facts.

10.    On or about March 25, 2021, as part of the duty to update discovery responses, the Defendants served the Transaction History[2] for the Plaintiff's Loan upon Plaintiff's counsel.

11.    On or about May 27, 2021, as part of the duty to update discovery responses, the Defendants served documents bates labeled "HERNANDEZ V. OLIPHANT, et al. 000082 to 000094" upon Plaintiff's Counsel, which included a copy of the Letter[3] and the Borrower Agreement and Loan Agreement and Promissory Note.

12.    Attached hereto as **Exhibit 6** is a true copy of Plaintiff's Response to the Defendants' Request for Admissions which were served on or about April 2, 2021 ("*Pltfs. Responses to RFAs*").

13.    Attached hereto as **Exhibit 7** is a true copy of Plaintiff's Response to the Defendants' First Set of Interrogatories which were served on or about May 4, 2021 ("*Pltfs. Responses to Rogs*").

14.    Attached hereto as **Exhibit 8** is a true copy of Plaintiff's Response to the Defendants' Request for Production which were served on or about April 2, 2021 ("*Pltfs. Responses to RPDs*").

15.    The Plaintiff did not produce any documents as part of her discovery responses provided.

---

[2] This term is defined, and reference provided in the Declaration of Michael Crossan which is being submitted in support of the Defendants' Statement of Undisputed Facts.

[3] This term is defined, and reference provided in the Declaration of Michael Crossan which is being submitted in support of the Defendants' Statement of Undisputed Facts.

3

16.    Attached hereto as **Exhibit 9** is a true copy of the certified transcript of the deposition of Plaintiff taken on May 5, 2021 ("*Plaintiff's Dep.*"), with the exhibits.

17.    I certify that the foregoing statements made by me are true. I am aware that if they are willfully false, I am subject to punishment.

Respectfully submitted,

**MAURICE WUTSCHER LLP**

*s/ Shannon Miller*
Shannon Miller, Esq. (*Pro Hac Vice*)
Maurice Wutscher, LLP
Attorneys for Defendants
10 W. Front Street
Media, PA 19063
smiller@mauricewutscher.com

Date: June 7, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of the foregoing was served on this date electronically on all parties of record.

*/s/ Shannon Miller*
Shannon Miller

Date: June 7, 2021

4

# Certification of Shannon Miller
# EXHIBIT 1

# MauriceWutscher

**Christopher P. Hahn**

Maurice Wutscher LLP        (772) 237-3410 direct
2455 Glades Road            (866) 581-9302 fax
Suite 324A                 chahn@MauriceWutscher.com
Boca Raton, FL 33431       Admitted only in FL

ATLANTA
AUSTIN
BIRMINGHAM
BOCA RATON
BOSTON
CHICAGO
CINCINNATI
CLEVELAND
DALLAS
FLEMINGTON
NASHVILLE
NEW YORK
ORANGE COUNTY
PHILADELPHIA
WASHINGTON, DC

MauriceWutscher.com

January 28, 2021

**VIA Email**

Craig B. Sanders, Esq.
BARSHAY SANDERS, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530

> **Re:   *Macius, et al. v. Oliphant Financial, LLC, et al.,*
> Case No.: 8:20-cv-00752-JSM-TGW (U.S.D.C. M.D. Fla.)**

Dear Mr. Sanders:

The undersigned's firm represents defendants Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively the "Defendants") in the above captioned matter. This letter shall serve as Defendants' demand pursuant to Federal Rule of Civil Procedure 11, Florida Statute § 57.105 and 15 U.S.C. § 1692k(a)(3) for the Plaintiff to dismiss her action with prejudice or be subject to sanctions. For the reasons explained below, not only do the Plaintiff's allegations fail to state a claim but also the complaint makes clear that Plaintiff lacks Article III standing to pursue her claims.

Initially, Plaintiff's allegations and theory of liability found in the Complaint (Doc No. 1) are baseless and lacking any factual or legal support. To summarize, Plaintiff alleges that a demand letter sent by Oliphant on behalf of Accelerated ("Demand Letter", Doc No. 1-1") was false and misleading in violation of § 1692e for reflecting that Plaintiff owes a debt to Accelerated when Plaintiff claims she never contracted with Accelerated for any extension of credit. Thus, Plaintiff alleges, the debt sought is not owed in the amount and to the current creditor as reflected in the Demand Letter. For this same reason, Plaintiff alleges the Demand Letter also violates § 1692g. However, contrary to Plaintiff's claims, the Demand Letter does not suggest that Plaintiff contracted for credit with Accelerated. Instead, the Demand Letter reflects, quite clearly, that Accelerated is the current creditor of a debt, initially owed and incurred to WebBank, which was sold to Accelerated. Indeed, that such claims fail should be no surprise to Plaintiff's counsel who has unsuccessfully pursued identical claims before. *See, e.g. Greifman v. Cawley & Bergmann, LLC,* No. 18-cv-08784 (NSR), 2019 U.S. Dist. LEXIS 60797 (S.D.N.Y. Apr. 9, 2019).

MauriceWutscher

January 28, 2021
Page 2

In *Greifman*, the Court considered identical claims that a letter was misleading for seeking to collect upon a debt on behalf of an entity which Plaintiff denied having contracted with for credit. Rejecting these claims, the Court noted, as is the case here, that the letter in issue did not make any representation that the debt owed was the result of a contract with the current creditor but rather reflected that the current creditor was the assignee of the account's originator, with whom the letter suggested the Plaintiff had contracted with for credit. In granting a motion to dismiss the claims with prejudice, the Court stated "[t]hough Plaintiff is correct that the letter indicates that the Defendant is attempting to collect a debt and identifies JH Portfolio Debt Equities, LLC as the debtor, the document clearly and unambiguously also identifies the original debtor as 'Citibank N.A./Citi Simplicity Card.' Nowhere in the debt collection letter does it state or can it be interpreted to suggest that Plaintiff contracted with, borrowed monies from or incurred an original debt from JH Portfolio Debt Equities, LLC." *Greifman v. Cawley & Bergmann, LLC*, 2019 U.S. Dist. LEXIS 60797, at \*7. Here, similarly, there is no ambiguity in the Demand Letter which clearly states that "[t]he ownership of your WebBank account has been sold by LendingClub Corporation to Accelerated Inventory Management, LLC." There is no suggestion that the debt is a result of any transaction or business relationship between Plaintiff and Accelerated. Like in *Griefman*, these claims fail and should be dismissed.

Furthermore, the Plaintiff's Complaint makes clear that she lacks Article III standing. To secure standing, the Plaintiff must allege that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 194 L. Ed. 2d 635, 643, 136 S. Ct. 1540, 84 U.S.L.W. 4263 (2016). Even if the Plaintiff could allege Defendants engaged in an action prohibited by the FDCPA – and she cannot – her claims still fail because the Complaint does not allege an "injury in fact" necessary to confer Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136 (1992). "To establish injury in fact, a Plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 194 L. Ed. 2d at 644. (citations omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*.

Specifically, the Plaintiff fails to allege that the Demand Letter misled her or caused her confusion regarding her rights under the FDCPA. Nowhere in the Complaint does the Plaintiff identify any injury because of having received the Demand Letter; she does not allege that because of the letter she was unable to understand her rights, that she was unable to identify the debt in issue, that she took any action or failed to act to her detriment or that she otherwise suffered any adverse consequences as a result of the letter. Instead, the only potential injury the Complaint alleges in certain instances is a speculative harm to a hypothetical "least sophisticated consumer". However, a party does not acquire standing by alleging a violation of the FDCPA that "misled a hypothetical unsophisticated debtor." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1002 (11th Cir. 2020). In *Trichell*, the Eleventh Circuit considered Article III standing in relation to a demand letter which allegedly failed to advise its recipient that making a payment on the time-barred debt in issue may restart the statute of limitations. However, as the Court noted, while the Plaintiffs alleged that the letter in issue "created a risk that unsophisticated consumers might be misled into making unnecessary or even harmful payments on time-barred debt" the

**Maurice**Wutscher

January 28, 2021
Page 3

plaintiffs themselves, "d[id] not allege that the collection letters posed any risk of harm to themselves." *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1000. In this regard, the Court held that "a statutory violation that poses a risk of concrete harm to consumers in general, but not to the individual Plaintiff, cannot fairly be described as causing a particularized injury to the Plaintiff." *Id.,* at 1002. Similarly, here the Plaintiff fails to identify any actual harm she suffered as a result of the Demand Letter and the Complaint is subject to dismissal.

Finally, Plaintiff also lacked standing to bring and prosecute this action at the time it was filed as the claims reflected in the Complaint were property of Plaintiff's bankruptcy estate. A bankruptcy "estate" is created when a bankruptcy petition is filed," and encompasses "all legal or equitable interest of the debtor in property as of the commencement of the case." *11 U.SC. § 541(a), (a)(1)*. As such, "a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). After an asset becomes part of the bankruptcy estate, all interest in such asset held by the debtor in is extinguished unless the asset is later abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code. *See 11 U.S.C. § 554(a)-(c)*. When the bankruptcy proceeding is closed, any property of the estate properly scheduled under 11 U.S.C. § 521(a)(1) that was not specifically abandoned and that was not administered during the bankruptcy is abandoned to the debtor. *11 U.S.C. § 554(c)*.

Here, Plaintiff filed her bankruptcy petition on December 31, 2019 and failed to identify the pre-petition[1] claims against Defendants in her schedules. Only after the trustee had claimed the estate had no assets on February 13, 2020 did the Plaintiff amend her schedules on February 19, 2020 and identify the claims as to Oliphant; Plaintiff still has not identified the claims as to Accelerated in any amended schedule or otherwise in her bankruptcy. Thereafter, the instant action was filed on March 31, 2020, prior to Plaintiff's discharge on April 15, 2020. As such, at the time the Complaint was filed, the Plaintiff's instant claims were property of the bankruptcy estate which had not yet been abandoned, if it was abandoned at all in light of Plaintiff's failure to timely identify the property prior to the trustee's report of no assets. Plaintiff thus lacked standing to pursue the action and the action must be dismissed.

Plaintiff's counsel is not only aware that the Complaint's claims lack merit based upon prior experience but also that the Plaintiff lacks standing to pursue her claims pursuant to both Article III and by operation the Bankruptcy Code. Likewise, Plaintiff herself is also aware of the Complaint's deficiencies as well as her own inability to pursue the instant claims. Defendants are prepared to move for sanctions against both Plaintiff and her counsel pursuant to Federal Rule of Civil Procedure 11 and Florida Statute § 57.105(1) for the reasons as outlined above. Additionally, should the matter require further litigation, in the event that the Defendants are successful in their defense they will seek from Plaintiff and her counsel their reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) and Florida Statute § 57.105. While 15 U.S.C. § 1692k(a)(3) requires a demonstration of "bad faith", Florida Statute § 57.105(1) requires only that Plaintiff's claims lack support from material facts or then-existing law.

---

[1] The Demand Letter, upon which all claims are based, is dated July 25, 2019.

MauriceWutscher

January 28, 2021
Page 4

Furthermore, Florida Statute § 57.105(7) permits the Defendants to recover their attorney's fees to the extent provided for by the underlying contractual agreement which forms the basis of the Plaintiff's debt. *See, e.g., BankAtlantic v. Blythe Eastman Paine Webber, Inc*., 955 F.2d 1467, 1478 n.11 (11th Cir. 1992) ("Attorney's fees pursuant to Florida Statute § 57.105 may be awarded to the prevailing party in a suit brought in federal court").

The Defendants demand that Plaintiff dismiss her action with prejudice. Should a dismissal not be sought by Plaintiff by Thursday, February 4, 2021, the Defendants will serve the required motions pursuant to Federal Rule of Civil Procedure 11 and Florida Statute § 57.105(1) upon Plaintiff.

The Defendants await the Plaintiff's response.  Thank you for your consideration and please do not hesitate to contact our office if you have any questions.


Sincerely,

Christopher P. Hahn

# Certification of Shannon Miller
# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                    Case No. 8:20-cv-00873-WFJ-TGW

        Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and
ACCELERATED INVENTORY
MANAGEMENT, LLC

        Defendant.

_____/

### DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS TO PLAINTIFF

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively, "Defendants") hereby request that Plaintiff, Isabel Hernandez, admit the following pursuant to Federal Rule of Civil Procedure 36.

**TAKE NOTICE** that if you fail to do so each of the matters as to which an admission is requested shall be deemed admitted, unless by the above-mentioned time you have acted or otherwise moved with regard to this request.

### INSTRUCTIONS

1. In responding to the following request for admissions, please set forth verbatim the request for admission to which you are responding and then set forth your written response thereto.

2. The matter is admitted unless, within thirty (30) days after service of the request, you serve upon Maurice Wutscher, LLP, 2255 Glades Road, Suite 324A, Boca Raton, FL 33431, a written answer or objection addressed to the matter signed by you or your attorney.

3. If objection is made, the reasons for the objection shall be stated.

4.    The answer shall specifically deny the matter or set forth in detail the reason why you cannot truthfully admit or deny the matter.

5.    When good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you shall specify so much of it as true and qualify or deny the remainder.

6.    You may not give lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

7.    If you claim any privilege as grounds for not fully responding to a request, or any part thereof, set forth the facts upon which the privilege is based in a manner sufficient to permit the Court to make a determination on that record concerning whether the claim of privilege is valid.

**DEFINITIONS**

A.    **"Oliphant"** refers to Oliphant Financial, LLC, including its attorneys, representatives and employees.

B.    **"Accelerated"** refers to Accelerated Inventory Management, LLC, including its attorneys, representatives and employees.

C.    **"Communication"** refers to any verbal or written message and any recording of image, sound or voice, transmitted by printed word, voice, or other means of telecommunications including, but not limited to, telephone, facsimile, telex or computer.

D.    **"Plaintiff"**, **"you"**, or **"your"**, means Isabel Hernandez.

E.    **"Document"** or **"documents"** means any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any type of description, regardless or origin or location, including without limitation all correspondence, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams, telexes, messages (including, but not limited to, reports of telephone conversations and conferences), studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions, papers, files, minutes, other communications (including, but not limited to, inter – and intra- office communications), questionnaires, contracts, memoranda of agreements, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, data processing cards, computer generated matter, photographs, photographic negatives, phonograph records, tape recordings, wire recordings, other mechanical recordings, transcripts or logs of any such recordings, all other data compilations from which information can be obtained, or translated if necessary, and any other tangible thing of a similar nature.  Each request for a document or documents shall be deemed to call for the production of

2

the original document or documents to the extent that they are in or subject to, directly or indirectly, the control of the party to whom this notice is directed.  In addition, each request should be considered as including all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document, but not on the original or other copies thereof.

F.      **"Oral communications"** or **"discussions"** mean any verbal conversation or other statement from one person to another, including, but not limited to, any interview, conference, meeting or telephone conversation which has been memorialized in any written or documentary form.

G.      **"Person"** means natural person, firms, proprietorship, associates, partnership, limited partnership, corporations and their subsidiaries or related business entities, and every other type of organization or entity and their officers, directors, agents, representatives and employees.

H.      **"Identify"** or **"identification"** means, when used in reference to:
(1)     A Person:
    (a)     His or Her full name and present address;
    (b)     Occupation; and,
    (c)     Relationship to any of the parties.

(2)     A document:
    (a)     Its description (e.g., letter, report, memorandum, etc.);
    (b)     Its title and date, and the number of changes thereto;
    (c)     The date of preparation, receipt and/or filing or other disposition;
    (d)     Its subject matter;
    (e)     The identity of its authority and signer;
    (f)     The identity of its addressee or recipients;
    (g)     The identity of each person to whom copies were sent and each person by whom copies were received; and
    (h)     Its present location and identity of its custodian.  (If any such document was, but it is no longer in your possession or subject to your control, state what and when disposition was made of it.)

(3)     An oral statement, communication, conference, conversation or discussion means to state separately:
    (a)     Its date and the place where it occurred;
    (b)     Its substance;
    (c)     The identity of each person making such statement, each person to whom such statement was made, and each person who was present when such statement was made;
    (d)     If by telephone, the identity of person participating in the telephone call,

3

the person making the call, and the places where the persons participating in the call were located; and

(e)    The identity of all notes, memoranda or other documents memorializing, referring or relating to the subject matter of the statement.

(4)    An act, action, omission or event:
(a)    Its date and place where it occurred;
(b)    Its description with particularity; and,
(c)    The identity of each person present or participating.

I.    "**Complaint**" refers to the Complaint filed in the matter captioned Isabel Hernandez v. Oliphant Financial, LLC, *et al.,* Case No. 8:20-cv-00873-WFJ-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division, and to which you are the named plaintiff.

J.    "**WebBank**" refers to WebBank, including its attorneys, representatives and employees.

K.    "**Letter**" refers to the letter dated December 31, 2019 allegedly sent by Oliphant and received by Plaintiff and attached to the Complaint and Amended Complaint as Exhibit 1.

L.    "**Account**" refers to the alleged financial obligation as identified in the Letter.

M.    "**Bankruptcy**" refers to the Chapter 7 voluntary bankruptcy proceeding that you filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

N.    "**FDCPA**" refers to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

O.    "**Lending Club**" refers to Lending Club Corporation, including its attorneys, representatives and employees.

P.    "**Borrower Agreement**" refers to the Borrower Agreement and Loan Agreement and Promissory Note attached to these Requests as **Exhibit A**.

Q.    "**Loan Summary**" refers to the document attached to these Requests as **Exhibit B**.

R.    "**Loan**" refers to the WebBank issued loan, ID number of ███5314.

S.    "**FCCPA**" refers to the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, *et seq*.

T.    "**Amended Complaint**" refers to the First Amended Complaint filed in the matter

4

captioned Isabel Hernandez v. Oliphant Financial, LLC, *et al.,* Case No. 8:20-cv-00873-WFJ-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division, and to which you are the named plaintiff.

## REQUESTS TO ADMIT

1.      Admit that you entered into the Borrower Agreement.

**ANSWER:**

2.      Admit that you are the individual identified in the Loan Summary as the primary borrower.

**ANSWER:**

3.      Admit that pursuant to the Borrower Agreement, WebBank issued to you the Loan.

**ANSWER:**

3.      Admit that you were responsible for repayment of the Loan pursuant to the Borrower Agreement.

**ANSWER:**

4.      Admit that you stopped making payments on the Loan.

**ANSWER:**

5.      Admit that the Loan ID number as reflected in the Loan Summary is the same as the "Original Account Number" provided in the Letter for the Account.

**ANSWER:**

6.      Admit that the Loan and the Account are the same financial obligation.

**ANSWER:**

7.      Admit that the Letter identified that the original creditor of the Account was WebBank.

**ANSWER:**

8.      Admit that the Letter identified that Accelerated had purchased the Account.

**ANSWER:**

5

9. Admit that the Letter identified that Oliphant was contacting you to resolve the balance owed on the Account on behalf of Accelerated.

**ANSWER:**

10. Admit that upon reading the Letter you were aware that it was about the amounts originally owed on the Loan to WebBank.

**ANSWER:**

11. Admit that after receipt of the Letter, you did not contact Oliphant or Accelerated to dispute the Account, or any portion of it.

**ANSWER:**

12. Admit that you did not take any action in reliance on the Letter.

**ANSWER:**

13. Admit that you did not refrain from taking any action in reliance on the Letter.

**ANSWER:**

14. Admit that you did not contact Oliphant after receipt of the Letter.

**ANSWER:**

15. Admit that you did not contact Accelerated after receipt of the Letter.

**ANSWER:**

16. Admit that you read the Borrower Agreement prior to receiving the Loan.

**ANSWER:**

17. Admit that prior to filing the Complaint you were aware that the Borrower Agreement required you to resolve any dispute regarding the Loan by arbitration only.

**ANSWER:**

18.    Admit that the Borrower Agreement permitted WebBank to assign the Loan to another party.

**ANSWER:**

19.    Admit that the Letter does not suggest that you entered into any agreement or contract with Accelerated for an extension of credit.

**ANSWER:**

20.    Admit that prior to filing the Complaint you did not investigate whether the Loan had been assigned to Accelerated.

**ANSWER:**

21.    Admit that the Account is owed by you.

**ANSWER:**

22.    Admit that after receipt of the Letter you did not make any payments on the Account.

**ANSWER:**

23.    Admit that you have not incurred any costs or any expenses as a result of receiving the Letter.

**ANSWER:**

24.    Admit that when you read the Letter, you did not believe that the Letter was claiming that you entered into any agreement or contract with Accelerated for an extension of credit.

**ANSWER:**

25.    Admit that when you read the Letter, you did not believe that the Letter was claiming that the Account was originated by Accelerated.

**ANSWER:**

26.    Admit that the Letter does not suggest that the Account was originated by Accelerated.

**ANSWER:**

27.     Admit that when you commenced the Bankruptcy you did not identify the claims you have advanced in the Complaint or the Amended Complaint as an asset.

**ANSWER:**

28.     Admit that at no time during the pendency of the Bankruptcy did you amend to identify the claims you have advanced in the Complaint or the Amended Complaint as an asset.

**ANSWER:**

29.     Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint on or about December 31, 2019.

**ANSWER:**

30.     Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint before February 13, 2020.

**ANSWER:**

30.     Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint before April 15, 2020.

**ANSWER:**

30.     Admit that you have not sought to reopen the Bankruptcy in order to identify as an asset the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER:**

31.     Admit that the trustee in the Bankruptcy did not have knowledge of the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER:**

8

32.     Admit that the trustee in the Bankruptcy did not abandon the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER:**

33.     Admit that the agreement between you and your attorneys, Barshay Sanders, PLLC, does not require you to pay any attorney fees out of pocket.

**ANSWER:**

34.     Admit that the agreement between you and your attorneys, Barshay Sanders, PLLC, does not reflect that you are assigning your right to, or interest in, any attorney fees awardable to you under the FDCPA or the FCCPA to them.

**ANSWER:**

35.     Admit that you identified the Loan in your Bankruptcy schedules.

**ANSWER:**

36.     Admit that you did not review the telephone records for any telephone number at which you allege that you were called by either of the Defendants to identify if any calls were from a telephone number attributable to either of the Defendants before the Amended Complaint was filed.

**ANSWER:**

37.     Admit that you have no evidence in your possession that either of the Defendants ever placed a telephone call to you.

**ANSWER:**

38.     Admit that you never answered any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

9

39.    Admit that no voicemail for you was ever left for you as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

40.    Admit that you did not receive telephone calls multiple times a day from either of the Defendants.

**ANSWER:**

41.    Admit that you did not seek medical treatment as a result of any telephones call which you allege were placed to you by either of the Defendants.

**ANSWER:**

42.    Admit that you did not feel harassed as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

43.    Admit that you did not fear that either of the Defendants would try to extract personal information from you as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

44.    Admit that you did not feel anxious as a result of any telephone calls which you allege were as placed to you by either of the Defendants.

**ANSWER:**

45.    Admit that you did not feel apprehension as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

46.     Admit that you did not suffer anguish as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

47.     Admit that you did not seek legal representation as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER:**

48.     Admit that you did not review the Complaint or the Amended Complaint before either was filed by your attorneys.

**ANSWER:**

Dated: March 8, 2021                    Respectfully submitted,

                                        **OLIPHANT FINANCIAL, LLC and
                                        ACCELERATED INVENTORY
                                        MANAGEMENT, LLC**

                            By:    /s/ Christopher P. Hahn___
                                   Christopher P. Hahn, Esq.
                                   MAURICE WUTSCHER LLP
                                   Florida Bar No. 87577
                                   110 E. Broward Blvd., Suite 1700
                                   Fort Lauderdale, FL 33301
                                   Direct: (772) 237-3410
                                   Fax: (866) 581-9302
                                   E-mail: chahn@MauriceWutscher.com
                                   litigation@MauriceWutscher.com

**Certificate of Service**

The undersigned hereby certifies that, on this **8th day of March, 2021**, a true and correct copy of the foregoing document and any related exhibits was served via electronic mail on all interested parties:

Craig B. Sanders, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
csanders@barshaysanders.com

/s/Christopher P. Hahn

12

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ*,*                                  Case No. 8:20-cv-00873-WFJ-TGW

        Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and
ACCELERATED INVENTORY
MANAGEMENT, LLC

        Defendant.

_____/

**DEFENDANTS' FIRST SET OF REQUESTS
TO PRODUCE DOCUMENTS TO PLAINTIFF**

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively, "Defendants") hereby request that Plaintiff, Isabel Hernandez, produce the following documents for inspection and copying at the offices of Maurice Wutscher LLP in accordance with the Federal Rules of Civil Procedure.

**INSTRUCTIONS**

1.      Production of documents requested herein shall be made at Maurice Wutscher, LLP, 2255 Glades Road, Suite 324A, Boca Raton, FL 33431 within thirty (30) days from the service date indicated on the certificate of service attached hereto.

2.      In responding to this request for production of documents, please set forth verbatim the request for production of documents to which you are responding and then set forth your written response thereto.

3.      In the event that any document called for by any of the following requests for production of documents is not produced for any reason, identify each such document in writing

1

so as to indicate the nature of the document, its date, if applicable, its authors, if applicable, the identity of the person or persons, if any, who received the original or any copy thereof, and the reason or reasons for withholding the document from production. Additionally, any other information necessary for a court to ascertain independently the legal sufficiency of any reasons asserted for withholding a document shall be disclosed in writing. All such information pertaining to information or documents so withheld shall be furnished to the undersigned counsel on or before the time for which responses to these discovery requests are due.

4.     If any document called for by any of the following requests for production of documents is missing, or has been destroyed or otherwise lost, identify it in writing, in as much detail as possible, and state the circumstances under which it became missing, destroyed, or otherwise lost. Additionally, all persons having, at any time, possession, custody, or control of such document, or copy thereof, and all persons having any knowledge of the circumstances referred to in the immediately preceding sentence shall be identified in writing, by name, title, if applicable, home and business telephone numbers. All such information shall be furnished to the undersigned counsel on or before the time that responses to these discovery requests are due.

5.     Strict compliance with the Federal Rules of Civil Procedure is hereby demanded. Plaintiff shall separately respond, in writing, with respect to each item or category contained in any of the following requests for production of documents and shall identify each document produced, withheld, or missing that is or would be responsive to each of the following requests for production of documents. In the event that you have possession, custody, or control of no documents fairly responsive to a particular request, please so state in writing as your response to that request. Please also state whether the documents that you are producing in response to any of

2

the following requests are being produced as they are kept in the usual course of business or whether they are organized and labeled to correspond with the categories of the request.

6.      Attach all documents that support the answers you provide.

7.      Where a claim of privilege or attorney work product is asserted in objecting to any interrogatory, or subpart thereof, identify the privilege claimed, and if the privilege is governed by law, indicate the privilege rule being invoked. If an objection goes to the production of a document, identify in writing each document so withheld by providing at least the following information:

   a. the title, date and the subject matter of this document;
   b. the title and the position of the sender of the document;
   c. the identity and position of each person who participated in the preparation of the document or on whose behalf the document was prepared;
   d. the identity and position of all persons (1) to whom the document was addressed, (2) to whom the document was sent, (3) who have seen the document, (4) who have possession or custody of the document, or (5) who have had disclosed to them any of the contents of the documents;
   e. a detailed statement of the basis for withholding the document, including facts establishing any claim of privilege, facts showing that the privilege had not been waived and the status of the person claiming the privilege, and
   f. Identify and produce each segregable portion of any document to which the claim of privilege, attorney work product or other basis for withholding the document does not apply.

8.      This shall be a continuing demand for production as reports and documentation become available to Plaintiff or Plaintiff's attorney.

**DEFINITIONS**

A.      **"Oliphant"** refers to Oliphant Financial, LLC, including its attorneys, representatives and employees.

B.      **"Accelerated"** refers to Accelerated Inventory Management, LLC, including its attorneys, representatives and employees.

C.      **"Communication"** refers to any verbal or written message and any recording of image, sound or voice, transmitted by printed word, voice, or other means of telecommunications including, but not limited to, telephone, facsimile, telex or computer.

3

D.      **"Plaintiff"**, **"you"**, or **"your"**, means Isabel Hernandez.

E.      **"Document"** or **"documents"** means any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any type of description, regardless or origin or location, including without limitation all correspondence, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams, telexes, messages (including, but not limited to, reports of telephone conversations and conferences), studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions, papers, files, minutes, other communications (including, but not limited to, inter – and intra- office communications), questionnaires, contracts, memoranda of agreements, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, data processing cards, computer generated matter, photographs, photographic negatives, phonograph records, tape recordings, wire recordings, other mechanical recordings, transcripts or logs of any such recordings, all other data compilations from which information can be obtained, or translated if necessary, and any other tangible thing of a similar nature. Each request for a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in or subject to, directly or indirectly, the control of the party to whom this notice is directed. In addition, each request should be considered as including all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document, but not on the original or other copies thereof.

F.      **"Oral communications"** or **"discussions"** mean any verbal conversation or other statement from one person to another, including, but not limited to, any interview, conference, meeting or telephone conversation which has been memorialized in any written or documentary form.

G.      **"Person"** means natural person, firms, proprietorship, associates, partnership, limited partnership, corporations and their subsidiaries or related business entities, and every other type of organization or entity and their officers, directors, agents, representatives and employees.

H.      **"Identify"** or **"identification"** means, when used in reference to:
(1)     A Person:
    (a)     His or Her full name and present address;
    (b)     Occupation; and,
    (c)     Relationship to any of the parties.

(2)     A document:
    (a)     Its description (e.g., letter, report, memorandum, etc.);
    (b)     Its title and date, and the number of changes thereto;
    (c)     The date of preparation, receipt and/or filing or other disposition;

      (d)     Its subject matter;

      (e)     The identity of its authority and signer;

      (f)     The identity of its addressee or recipients;

      (g)     The identity of each person to whom copies were sent and each person by whom copies were received; and

      (h)     Its present location and identity of its custodian.  (If any such document was, but it is no longer in your possession or subject to your control, state what and when disposition was made of it.)

(3)     An oral statement, communication, conference, conversation or discussion means to state separately:

      (a)     Its date and the place where it occurred;

      (b)     Its substance;

      (c)     The identity of each person making such statement, each person to whom such statement was made, and each person who was present when such statement was made;

      (d)     If by telephone, the identity of person participating in the telephone call, the person making the call, and the places where the persons participating in the call were located; and

      (e)     The identity of all notes, memoranda or other documents memorializing, referring or relating to the subject matter of the statement.

(4)     An act, action, omission or event:

      (a)     Its date and place where it occurred;

      (b)     Its description with particularity; and,

      (c)     The identity of each person present or participating.

I.     "**Complaint**" refers to the Complaint filed in the matter captioned Isabel Hernandez v. Oliphant Financial, LLC, *et al.,* Case No. 8:20-cv-00873-WFJ-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division, and to which you are the named plaintiff.

J.     **"WebBank"** refers to WebBank, including its attorneys, representatives and employees.

K.     "**Letter**" refers to the letter dated December 31, 2019 allegedly sent by Oliphant and received by Plaintiff and attached to the Complaint and Amended Complaint as Exhibit 1.

L.     "**Account**" refers to the alleged financial obligation as identified in the Letter.

M.     **"Bankruptcy"** refers to the Chapter 7 voluntary bankruptcy petition that you filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

N.      "**FDCPA**" refers to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

O.      "**Lending Club**" refers to Lending Club Corporation, including its attorneys, representatives and employees.

P.      "**Borrower Agreement**" refers to the Borrower Agreement and Loan Agreement and Promissory Note attached to these Requests as **Exhibit A**.

Q.      "**Loan Summary**" refers to the document attached to these Requests as **Exhibit B**.

R.      "**Loan**" refers to the WebBank issued loan, ID number of ▮▮▮5314.

S.      "**FCCPA**" refers to the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, *et seq*.

T.      "**Amended Complaint**" refers to the First Amended Complaint filed in the matter captioned Isabel Hernandez v. Oliphant Financial, LLC, *et al.,* Case No. 8:20-cv-00873-WFJ-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division, and to which you are the named plaintiff.

## REQUESTS TO PRODUCE

1.      All documents relating to, reflecting or memorializing any communications you made to, received from or had with Oliphant related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

2.      All documents relating to, reflecting or memorializing any communications you made to, received from or had with Accelerated related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

3.      All documents relating to, reflecting or memorializing any communications you made to, received from or had with WebBank related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

4.      All documents relating to, reflecting or memorializing any communications you made to, received from or had with Lending Club related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

5.      All documents relating to, reflecting or memorializing any communications you made to, received from or had with any 3rd party related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

6.      All documents in your possession concerning or related to the Borrower Agreement, the Account and/or the Loan.

**RESPONSE:**

7.      All retainer agreements or other documents reflecting any agreement in place with your attorneys, Barshay Sanders, PLLC, regarding their representation of you as it relates to the Complaint or Amended Complaint, including any agreement to pay attorney's fees or which reflects the terms by which attorney's fees will be paid.

**RESPONSE:**

8.      All expert reports that have been prepared by you, for you or at your direction regarding the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

9.      All documents and exhibits that you intend to use or rely upon at trial or at any time in support of the allegations of the Complaint or Amended Complaint.

**RESPONSE:**

10.     Any reports, diagnoses, bills, invoices, statements or any other documents that you have received from any professionals who have rendered treatment to you for any damages you allege to have suffered.

**RESPONSE:**

11.     Any bills, invoices, statements or any other documents that you have received related to any expenses you allege to have incurred and/or paid.

7

**RESPONSE:**

12.     Attach any documents, transcripts or recordings which you expect to use during the testimony of a witness or to introduce as an exhibit during the trial of this matter.

**RESPONSE:**

13.     All documents referenced in your answers or responses to Defendants' Interrogatories, referenced in your Complaint or Amended Complaint, referenced your Rule 26 Initial Disclosures or referenced in any pleadings filed in this matter.

**RESPONSE:**

14.     All complaints in any action in which you were a named plaintiff and/or a member of any proposed class identified in such complaints for the six (6) calendar years which precede the filing of the Complaint or Amended Complaint.

**RESPONSE:**

15.     All complaints in any action in which you were a named defendant for the six (6) calendar years which precede the filing of the Complaint or Amended Complaint.

**RESPONSE:**

16.     All documents relating to the "FDCPA Claims against debt collectors" which you referenced in the Bankruptcy, including any complaint which has been filed regarding such claim(s), as well as any "collection letters", as also referenced in the Bankruptcy, in relation to such FDCPA Claims.

**RESPONSE:**

17.     All documents relating to, reflecting or memorializing the terms and conditions of any release and settlement agreement reached with any of the party or parties against whom you had/have an FDCPA claim as referenced in your Bankruptcy, including the total amount of compensation and/or relief being provided as well as the specific amounts you receive and that your attorneys, Barshay Sanders, PLLC receive respectively.

**RESPONSE:**

18.     All documents which are the basis for your allegations that you did not owe the Account to Accelerated.

**RESPONSE:**

8

9.    All telephone records of incoming and outgoing telephone calls and text messages for any telephone number(s) at which you allege that either of the Defendants placed calls to you from January 1, 2019 to the present.

**RESPONSE:**

Dated: March 8, 2021                              Respectfully submitted,

                                                 **OLIPHANT FINANCIAL, LLC and**
                                                 **ACCELERATED INVENTORY**
                                                 **MANAGEMENT, LLC**

                                  By:    /s/ Christopher P. Hahn___
                                         Christopher P. Hahn, Esq.
                                         MAURICE WUTSCHER LLP
                                         Florida Bar No. 87577
                                         2255 Glades Road, Suite 324A
                                         Boca Raton, FL 33431
                                         Direct: (772) 237-3410
                                         Fax: (866) 581-9302
                                         E-mail: chahn@MauriceWutscher.com
                                         litigation@MauriceWutscher.com

**Certificate of Service**

The undersigned hereby certifies that, on this **8ᵗʰ day of March, 2021**, a true and correct copy of the foregoing document and any related exhibits was served via electronic mail on all interested parties:

Craig B. Sanders, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
csanders@barshaysanders.com

                                                 /s/Christopher P. Hahn

9

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                    Case No. 8:20-cv-00873-WFJ-TGW

        Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and
ACCELERATED INVENTORY
MANAGEMENT, LLC

        Defendant.

_____/

**DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory

Management, LLC ("Accelerated") (collectively, "Defendants") hereby request that Plaintiff,

Isabel Hernandez, provide answers to the following Interrogatories in accordance with the Federal

Rules of Civil Procedure.

**INSTRUCTIONS**

1. If the information requested by any Interrogatory is contained in documents, papers or records in your custody, you may so indicate and answer that Interrogatory by attaching copies of such documents or papers to your answers and by indicating the Interrogatory to which those documents or papers are deemed responsive.

2. These Interrogatories call for all information available to you, your employees, agents and representatives with respect to the subject matter into which they inquire. If some of the information is known by or available to a particular employee, agent or representative, please include in your answers all information known by or available to each employee, agent or representative. Please identify which employee, agent or representative provided information with respect to each answer.

3. Where a claim of privilege or attorney work product is asserted in objecting to any interrogatory, or subpart thereof, identify the privilege claimed, and if the privilege is governed by law, indicate the privilege rule being invoked. If an objection goes to the production of a

1

document, identify in writing each document so withheld by providing at least the following information:

    a. the title, date and the subject matter of this document;

    b. the title and the position of the sender of the document;

    c. the identity and position of each person who participated in the preparation of the document or on whose behalf the document was prepared;

    d. the identity and position of all persons (1) to whom the document was addressed, (2) to whom the document was sent, (3) who have seen the document, (4) who have possession or custody of the document, or (5) who have had disclosed to them any of the contents of the documents;

    e. a detailed statement of the basis for withholding the document, including facts establishing any claim of privilege, facts showing that the privilege had not been waived and the status of the person claiming the privilege, and

    f. Identify and produce each segregable portion of any document to which the claim of privilege, attorney work product or other basis for withholding the document does not apply.

If the claim of privilege or work product goes to an oral communication, please provide the following information:

    a. the name of the person making the communication and the names of the persons present when the communication was made,

    b. the date and the place of the communication,

    c. the general subject matter of the communication, and

    d. a detailed statement of the basis for withholding the document, including facts establishing any claim of privilege, facts showing that the privilege has not been waived and the status of the person claiming the privilege.

4. This request is a continuing request for all information which is now or may hereafter come in your actual or constructive knowledge, possession, custody or control.

## DEFINITIONS

A.    **"Oliphant"** refers to Oliphant Financial, LLC, including its attorneys, representatives and employees.

B.    **"Accelerated"** refers to Accelerated Inventory Management, LLC, including its attorneys, representatives and employees.

C.    **"Communication"** refers to any verbal or written message and any recording of image, sound or voice, transmitted by printed word, voice, or other means of telecommunications including, but not limited to, telephone, facsimile, telex or computer.

D.    **"Plaintiff"**, **"you"**, or **"your"**, means Isabel Hernandez.

E.      **"Document"** or **"documents"** means any written, typed, printed, recorded or graphic matter, however produced or reproduced, of any type of description, regardless or origin or location, including without limitation all correspondence, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams, telexes, messages (including, but not limited to, reports of telephone conversations and conferences), studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions, papers, files, minutes, other communications (including, but not limited to, inter – and intra- office communications), questionnaires, contracts, memoranda of agreements, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, data processing cards, computer generated matter, photographs, photographic negatives, phonograph records, tape recordings, wire recordings, other mechanical recordings, transcripts or logs of any such recordings, all other data compilations from which information can be obtained, or translated if necessary, and any other tangible thing of a similar nature. Each request for a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in or subject to, directly or indirectly, the control of the party to whom this notice is directed. In addition, each request should be considered as including all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a document, but not on the original or other copies thereof.

F.      **"Oral communications"** or **"discussions"** mean any verbal conversation or other statement from one person to another, including, but not limited to, any interview, conference, meeting or telephone conversation which has been memorialized in any written or documentary form.

G.       **"Person"** means natural person, firms, proprietorship, associates, partnership, limited partnership, corporations and their subsidiaries or related business entities, and every other type of organization or entity and their officers, directors, agents, representatives and employees.

H.      **"Identify"** or **"identification"** means, when used in reference to:
(1)      A Person:
    (a)      His or Her full name and present address;
    (b)      Occupation; and,
    (c)      Relationship to any of the parties.

(2)      A document:
    (a)      Its description (e.g., letter, report, memorandum, etc.);
    (b)      Its title and date, and the number of changes thereto;
    (c)      The date of preparation, receipt and/or filing or other disposition;
    (d)      Its subject matter;
    (e)      The identity of its authority and signer;

3

  (f)  The identity of its addressee or recipients;

  (g)  The identity of each person to whom copies were sent and each person by whom copies were received; and

  (h)  Its present location and identity of its custodian. (If any such document was, but it is no longer in your possession or subject to your control, state what and when disposition was made of it.)

(3)  An oral statement, communication, conference, conversation or discussion means to state separately:

  (a)  Its date and the place where it occurred;

  (b)  Its substance;

  (c)  The identity of each person making such statement, each person to whom such statement was made, and each person who was present when such statement was made;

  (d)  If by telephone, the identity of person participating in the telephone call, the person making the call, and the places where the persons participating in the call were located; and

  (e)  The identity of all notes, memoranda or other documents memorializing, referring or relating to the subject matter of the statement.

(4)  An act, action, omission or event:

  (a)  Its date and place where it occurred;

  (b)  Its description with particularity; and,

  (c)  The identity of each person present or participating.

I.  "**Complaint**" refers to the Complaint filed in the matter captioned Isabel Hernandez v. Oliphant Financial, LLC, *et al.,* Case No. 8:20-cv-00873-WFJ-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division, and to which you are the named plaintiff.

J.  **"WebBank"** refers to WebBank, including its attorneys, representatives and employees.

K.  "**Letter**" refers to the letter dated December 31, 2019 allegedly sent by Oliphant and received by Plaintiff and attached to the Complaint and Amended Complaint as Exhibit 1.

L.  "**Account**" refers to the alleged financial obligation as identified in the Letter.

M.  **"Bankruptcy"** refers to the Chapter 7 voluntary bankruptcy proceeding that you filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

N.  "**FDCPA**" refers to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

4

O.      **"Lending Club"** refers to Lending Club Corporation, including its attorneys, representatives and employees.

P.      **"Borrower Agreement"** refers to the Borrower Agreement and Loan Agreement and Promissory Note attached to these Requests as **Exhibit A**.

Q.      **"Loan Summary"** refers to the document attached to these Requests as **Exhibit B**.

R.      **"Loan"** refers to the WebBank issued loan, ID number of ████5314.

S.      **"FCCPA"** refers to the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, *et seq*.

T.      **"Amended Complaint"** refers to the First Amended Complaint filed in the matter captioned Isabel Hernandez v. Oliphant Financial, LLC, *et al.,* Case No. 8:20-cv-00873-WFJ-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division, and to which you are the named plaintiff.

### INTERROGATORIES

1.      Identify each person you expect to call as a witness at the trial of this matter, provide their address and telephone number, and state the subject matter on which and the substance of the facts to which each witness is expected to testify.

**ANSWER:**

2.      Identify each document which you expect to use during the testimony of a witness or to introduce as an exhibit during the trial of this matter, and with respect to each such document state the witness(es) through whom you expect to introduce such document and state any other person having knowledge of the contents of said document.

**ANSWER:**

3.      Describe the nature of the Loan; who opened the Loan, in whose name(s) the Loan was opened, who's personal identifying information was used to open the account, based upon who's credit was the account application submitted, who the primary user(s) of the Loan were, who were authorized users, the date the Loan was opened, what the governing terms and conditions for use of the Loan were including any and all updates to such terms during the time the Loan was open, the nature of the purchases the Loan was used for and when the last payment on the Loan was made. Attach all documents which support your response.

**ANSWER:**

4.      State whether you incurred the Loan. If you deny that you incurred the Loan set forth all facts and attach all documents which support such contention.

**ANSWER:**

5.      State whether you identified the Loan in your Bankruptcy, either in the initial petition or otherwise, and state whom you identified as the creditor of the Loan and why.

**ANSWER:**

6.      State whether the Loan is the same financial obligation allegedly owed by you as the Account. If you maintain that the Loan is not the same financial obligation owed by you as the Account set forth all facts and attach all documents which support such contention.

**ANSWER:**

7.      Identify all facts and documents which support your allegations in the Complaint and Amended Complaint that you did not/do not owe any money on the Account to Accelerated.

**ANSWER:**

8.      Identify any and all communications you have made to or received from WebBank related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER:**

9.      Identify any and all communications you have made to or received from Oliphant related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER:**

10.      Identify any and all communications you have made to or received from Accelerated related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER:**

11.    Identify any and all communications you have made to or received from Lending Club related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER:**

12.    Identify any and all communications you have made to or received from any 3rd party related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER:**

13.    Identify all action you took in response to having received the Letter and/or any action that you refrained from taking in response to having received the Letter.

**ANSWER:**

14.    Identify specifically each of the actual damages that you are seeking recovery for and for each damage:

>    a) state the date when you first sustained these damages;
>    b) whether you are still suffering from these damages as of this date and if so how and in what manner you are still suffering;
>    c) describe specifically the nature of each damages and if applicable the physical nature of these damages;
>    d) whether you have sought medical treatment for these damages;
>    e) whether you have lost time from work and if so how much time;
>    f) please quantify the amount of out-of-pocket expenses incurred as the result of these damages, including any lost time from work;
>    g) please quantify the dollar amount of each damage described.

**ANSWER:**

15.    For each damage described in the proceeding Interrogatory, identify all professionals who have rendered treatment to you. As part of your answer state the dates and times of any treatments you received or consultations with said professionals, the duration of the treatments

or consultations, any out-of-pocket expenses you incurred as a result of the treatment or consultations, and any diagnoses provided to you (either oral or written) by said professionals.

**ANSWER:**

16.     Identify any written or oral statements relevant to this matter not already set forth in your answers to these interrogatories and attach copies of all written statements or copies of any recordings of conversations that you have had with any parties relevant to the subject matter of the Complaint and Amended Complaint.

**ANSWER:**

17.     Identify all attorney's fees being sought pursuant to 15 U.S.C. § 1692k(a)(3) as of the date the answers to these Interrogatories are provided.

**ANSWER:**

18.     Identify the nature of the "FDCPA Claims against debt collectors" which you referenced in the Bankruptcy, specifically in the initial petition or otherwise, and provide the name of the party or parties against whom you had/have an FDCPA claim, attach any complaint which has been filed regarding such claim, and provide the status of such claim including whether the claim is still pending, has settled, or otherwise has been resolved.

**ANSWER:**

19.     Identify all facts and attach all documents which support your contention that venue is proper in the Middle District of Florida, despite you being a citizen of New York.

**ANSWER:**

20.     Identify the date on which you first had contact with your attorneys, Barshay Sanders, PLLC, regarding the claims in the Complaint and Amended Complaint.

**ANSWER:**

21.     If you have denied any of the Requests for Admission, served contemporaneously herewith, identify the factual basis for any such denial and attach any documents which support your denial.

**ANSWER:**

22.     Identify the telephone number(s) and corresponding telephone service provider(s) at which you allege that either of the Defendants placed telephone calls to you, as alleged in the Amended Complaint.

8

**ANSWER:**

23. Identify the telephone number(s) from which you allege that either of the Defendants placed telephone calls to you, as alleged in the Amended Complaint.

**ANSWER:**

24. Identify the date(s) and time(s) of all telephone calls which you allege that either of the Defendants placed to you, as alleged in the Amended Complaint.

**ANSWER:**

25. Identify all facts and circumstances upon which you rely if you assert that the claims as reflected by the Complaint and Amended Complaint were not property of the estate in your Bankruptcy and/or that the claims as reflected by the Complaint and Amended Complaint were abandoned by the trustee of your Bankruptcy.

**ANSWER:**


Dated: March 8, 2021                    Respectfully submitted,

                                        **OLIPHANT FINANCIAL, LLC and**
                                        **ACCELERATED INVENTORY**
                                        **MANAGEMENT, LLC**

                              By:    /s/ Christopher P. Hahn___
                                     Christopher P. Hahn, Esq.
                                     MAURICE WUTSCHER LLP
                                     Florida Bar No. 87577
                                     2255 Glades Road, Suite 324A
                                     Boca Raton, FL 33431
                                     Direct: (772) 237-3410
                                     Fax: (866) 581-9302
                                     E-mail: chahn@MauriceWutscher.com
                                     litigation@MauriceWutscher.com

**Certificate of Service**

The undersigned hereby certifies that, on this **8th day of March, 2021**, a true and correct copy of the foregoing document and any related exhibits was served via electronic mail on all interested parties:

Craig B. Sanders, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
csanders@barshaysanders.com

/s/Christopher P. Hahn

10

# EXHIBIT
# A

**Borrower Agreement**

(January 2018)

The following Borrower Agreement ("Agreement") is between you ("you" and "your" mean each and every borrower, including any joint applicant/co-borrower) and WebBank, a Utah-chartered industrial bank ("we," or "us"). This Agreement governs the process by which you may make a request or requests for a loan from us through the website Lendingclub.com, including any subdomains thereof, or other application channels offered by us (collectively, the "Site") and operated by LendingClub Corporation ("LendingClub"). If you make a loan request, and if that request results in a loan that is approved and issued by us, then your loan will be governed by the terms of the Loan Agreement and Promissory Note, which is attached to this Agreement as Exhibit A, and as it may be revised from time to time. The version in effect when you make a loan request will apply to any loan made in response to that request, and any secondary loan would be governed by the terms of the document then in effect. This Agreement will remain in effect for the applicable loan, and will terminate if your loan request is cancelled, withdrawn, or declined.

**BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU HAVE SIGNIFIED YOUR AGREEMENT TO THESE TERMS.**

**1. Loans.** Under this Agreement, you can request an installment loan issued and originated by us that is facilitated through the Site. When you make a request, you agree to receive and timely repay the loan that may be made in response to that request, subject to your right to cancel the request before closing as described in section 6 below. Your agreement means you agree to repay the money provided by us to you and to abide by the terms of this Agreement, the Loan Agreement and Promissory Note, and all other agreements or disclosures provided to you during the loan process and which may be found in your LendingClub account. Any dispute with us, LendingClub or any subsequent holder of the Loan Agreement and Promissory Note will be resolved by binding arbitration, subject to your right to opt out as set forth below. Each loan request is subject to our credit criteria in effect at the time of your loan request.

**2. Account Verification.** You understand that if we are unable to verify your bank account for any reason, we will cancel your application, your loan request will not be posted on the Site, and this Agreement will be terminated.

**3. Loan Requests.** You may post a qualifying loan request on the Site. You may not post more than one loan request on the site at a time and you may not have more than two loans outstanding at any given time. You may post a loan request on the Site, and LendingClub investors ("Investors") will be able to review your loan request. Investors may commit to (i) purchase the loan by subsequently acquiring the loan itself from us or LendingClub or (ii) invest indirectly in your loan through the purchase of securities issued by LendingClub. You acknowledge that an Investor's commitment to invest in all or a portion of your loan does not confer any rights to you or obligate us to issue your loan. You understand that Investors make their own decisions whether to invest in your loan. Finally, LendingClub may also choose to invest in all or part of your loan request, but is not obligated to do so.

We may elect in our sole discretion to give you a partial funding option, if necessary, which means your loan will be issued if it receives commitments totaling less than the full amount of your requested loan (subject to any applicable minimum loan size).

WE DO NOT WARRANT OR GUARANTEE (1) THAT YOUR LOAN REQUEST WILL ATTRACT INVESTMENT INTEREST, OR (2) THAT YOU WILL RECEIVE A LOAN AS A RESULT OF POSTING A REQUEST.

No later than thirty (30) days after your application is complete, we will tell you if your loan is approved and will issue for some or all of your requested amount, or is declined, or if we are making you a counter-offer. Your loan request will be listed on the marketplace for at least fourteen (14) days, subject to investor interest. It may take up to forty-five (45) days to process and issue your loan. If at any point, you no longer want a loan under your pending loan request, you must notify us in writing of your election to terminate your loan request sufficiently far in advance of the loan closing for us to cancel the loan.

**4. Loan Terms.** Your loan will have a principal balance in the amount set forth in the Truth in Lending disclosure and Loan Agreement and Promissory Note, each of which is provided to you and placed into the on-line account you established upon registration. You agree and acknowledge that the initial loan disclosures made to you are estimates and are subject to change based on the actual, initial principal balance of the loan issued and your selected payment option (check or Automated Clearing House ("ACH")). **Opting to pay by check will result in a processing fee that will increase your APR.** All loans are unsecured, fully-amortizing, closed-end loans for the term stated in your Truth in Lending disclosure and Loan Agreement and Promissory Note. Your obligations, including your obligation to repay principal and interest, are set forth in the Loan Agreement and Promissory Note. Other fees and terms of the loan will also be set forth in the Loan Agreement and Promissory Note.

**5. Credit Decisions.** If you make a loan request, you must fully complete the application on the Site. You do not need to disclose alimony, child support or separate maintenance income if you do not wish to have it considered as a basis for repaying a loan. You agree and acknowledge that we may verify any information you submit either by asking for true and complete copies of necessary documentation, by information provided through a third party, or by other proof. Additionally, by proceeding with the application, you consent to our use of any information provided by you or provided through any third party, for any lawful purpose, including but not limited to identity verification, fraud prevention and credit underwriting. Failure to timely provide information can result in your loan application being incomplete and closed by

us. Furthermore, we may terminate consideration of your application at any time in our sole discretion.

**6. Limited Power of Attorney Grant; Loan Request Cancellation & Closing.**

As a condition to receiving a loan from us, you hereby grant to LendingClub a limited power of attorney and appoint them and/or their designees as your true and lawful attorney-in-fact and agent, with full power of substitution and re-substitution, for you and in your name, place and stead, in any and all capacities, to complete and execute the Loan Agreement and Promissory Note(s) in the form attached as Exhibit A that reflect- the accepted terms set forth in each of your final Truth in Lending Disclosure(s) as such may be posted from time to time in response to your loan request(s) in the on-line account you have established with LendingClub where documents are stored and with full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection with such power as fully to all intents and purposes as you might or could do in person (*"Power of Attorney"* ). This Power of Attorney is limited solely to the purpose described above and will expire automatically upon the termination of this Borrower Agreement. You may revoke this Power of Attorney by contacting us at support@lendingclub.com or calling 888-596-3157 and closing your account with us; provided, however, if a loan request has been approved you must provide such notice before the loan proceeds are transferred to your Designated Account and before the Loan Agreement and Promissory Note is executed on your behalf. Once the Loan Agreement and Promissory Note is signed by LendingClub or its designee acting as your attorney-in-fact, it is deemed executed on your behalf and shall be your valid and binding obligation thereafter.

**You agree and acknowledge that LendingClub is an intended third-party beneficiary of this Section 6 for purposes of receiving a loan from us.**

If you choose to revoke this Power of Attorney prior to execution, we will be unable to proceed with your loan request and your pending loan request will be considered withdrawn, your account closed, and you may be prohibited from posting additional qualifying loan requests in the future in our discretion.

You may cancel your application without any fee or penalty prior to funding of the loan, as long as you provide us with sufficient advance notice to stop the loan funding.

**7. Loan Consummation.**

YOU AGREE AND ACKNOWLEDGE THAT YOU ARE NOT OBLIGATED UNDER THE TERMS OF THE LOAN AGREEMENT AND PROMISSORY NOTE AND THE LOAN TRANSACTION WITH US IS NOT COMPLETED (I.E. CONSUMMATED) UNTIL YOUR ABILITY TO CANCEL YOUR LOAN APPLICATION HAS PASSED. YOU ACKNOWLEDGE THAT WE ARE MATERIALLY RELYING UPON THIS UNDERSTANDING IN UNDERTAKING THE POTENTIAL ISSUANCE OF YOUR LOAN.

YOU MAY CANCEL THE LOAN AGREEMENT AND PROMISSORY NOTE AT ANY TIME BEFORE MIDNIGHT OF THE THIRD DAY AFTER THE LOAN HAS FUNDED. IF YOU DECIDE TO CANCEL, ALL LOAN PROCEEDS, LESS THE ORIGINATION FEE, WILL BE WITHDRAWN FROM YOUR ACCOUNT IN THE NEXT 5-7 BUSINESS DAYS. IF LENDINGCLUB CAN'T WITHDRAW THE FULL AMOUNT FROM YOUR BANK ACCOUNT, YOU'LL STILL BE RESPONSIBLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE BORROWER AGREEMENT, LOAN AGREEMENT AND PROMISSORY NOTE, INCLUDING BUT NOT LIMITED TO PAYMENT OF ANY FEES, INTEREST, AND PRINCIPAL OF THE LOAN. YOU MAY CANCEL THE LOAN AGREEMENT AND PROMISSORY NOTE BY CONTACTING US AT SUPPORT@LENDINGCLUB.COM OR CALLING 888-596-3157.

FOR BALANCE TRANSFER OR DIRECT PAY LOANS: IF YOU HAVE DIRECTED US TO DELIVER LOAN PROCEEDS TO ACCOUNTS ("DIRECTED ACCOUNTS") OUTSIDE OF YOUR CONTROL, LENDINGCLUB WILL NOT BE ABLE TO RECOVER THESE FUNDS. LENDINGCLUB WILL ATTEMPT TO WITHDRAW AN AMOUNT EQUAL TO YOUR LOAN PROCEEDS LESS THE ORIGINATION FEE WITHIN 5-7 DAYS FOLLOWING YOUR REQUEST TO CANCEL. IF LENDINGCLUB IS UNABLE TO WITHDRAW SUCH AMOUNT, YOU WILL REMAIN RESPONSIBLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE BORROWER AGREEMENT, LOAN AGREEMENT AND PROMISSORY NOTE.

**8. Military Lending Act.** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). Federal law requires that you receive a clear description of your required payments. Please review the disclosures and your credit agreement carefully to understand your payment obligations. To hear these disclosures over the telephone, call the following toll-free number (844) 538-6754.

**9. Servicing by LendingClub.** You acknowledge and agree that LendingClub may provide services to us in connection with evaluating your loan requests, and all other aspects of your relationship with us. LendingClub will also act as the servicer of any loan that you obtain. LendingClub may delegate servicing to another entity in its sole discretion without notice.

**10. Other Borrower Agreements; Use of Loan Proceeds.** You agree that you (A) are a US citizen, permanent resident or non-permanent resident alien in the United States on a valid long term visa; (B) will not, in connection with your loan request: (i) make any false,



misleading or deceptive statements or omissions of fact in your listing, including but not limited to your loan description; (ii) misrepresent your identity, or describe, present or portray yourself as a person other than yourself; (iii) give to or receive from, or offer or agree to give to or receive from any LendingClub member or other person any fee, bonus, additional interest, kickback or thing of value of any kind except in accordance with the terms of your loan; (iv) represent yourself to any person, as a representative, employee, or agent of ours, or purport to speak to any person on our behalf; (v) use any of the loan proceeds to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous expenses, or room and board; or (vi) use any of the loan proceeds to fund any illegal activity or any other activity or use not otherwise allowed under this Agreement or the Site; (vii) use any of the loan proceeds for the purpose of purchasing or carrying any securities; (viii) use any of the loan proceeds for the purpose of investing, trading, or speculating in any currencies, including without limitation cryptocurrencies or digital currencies or any futures or derivatives thereof; or (ix) use the Site to request or obtain a loan for someone other than yourself; and (C) that you have all necessary consents, permissions, acknowledgements or agreements from all joint applicants/co-borrowers and we may rely upon this agreement without any investigation or verification. You further acknowledge and agree that we may rely without independent verification on the accuracy, authenticity, and completeness of all information you provide to us. To the extent that we determine, in our sole discretion, that your loan request violates this Agreement the Terms of Use or any other agreement entered into with us or LendingClub, we may terminate your loan request and cancel this Agreement immediately.

**11. Liability of the Borrower and Joint Applicant/CoBorrower is Joint and Several.** The liability of any joint applicant/co-borrower under this Agreement and under the Loan Agreement and Promissory Note is in addition to and not in lieu of the obligations of the primary borrower. The joint applicant/co-borrower agrees to abide by the terms and conditions of this Agreement, the Loan Agreement and Promissory Note and any other agreement and documents as if an original signatory.

We and our successors and assigns have sole discretion to proceed, at any time, against any party responsible under this Agreement. Further, we can accept instructions from either you or the joint applicant/co-borrower, and notice can be given to either you or the joint applicant/co-borrower, and shall be binding on both and deemed received by all parties.

**12. TCPA Consent & Privacy.** Notwithstanding any current or prior election to opt in or opt out of receiving telemarketing calls or SMS messages (including text messages) from us, our agents, representatives, affiliates, or anyone calling on our behalf, you expressly consent to be contacted by us, our agents, representatives, affiliates, or anyone calling on our behalf for any and all purposes arising out of or relating to your loan and/or account, at any telephone number, or physical or electronic address you provide or at which you may be reached. You agree we may contact you in any way, including SMS messages (including text messages), calls using prerecorded messages or artificial voice, and calls and messages delivered using auto telephone dialing system or an automatic texting system. Automated messages may be played when the telephone is answered, whether by you or someone else. In the event that an agent or representative calls, he or she may also leave a message on your answering machine, voice mail, or send one via text.

You consent to receive SMS messages (including text messages), calls and messages (including prerecorded and artificial voice and autodialed) from us, our agents, representatives, affiliates or anyone calling on our behalf at the specific number(s) you have provided to us, or numbers we can reasonably associate with your account (through skip trace, caller ID capture or other means), with information or questions about your application, loan and/or account. You certify, warrant and represent that the telephone numbers that you have provided to us are your contact numbers. You represent that you are permitted to receive calls at each of the telephone numbers you have provided to us. You agree to promptly alert us whenever you stop using a particular telephone number.

Your cellular or mobile telephone provider will charge you according to the type of plan you carry. You also agree that we may contact you by e-mail, using any email address you have provided to us or that you provide to us in the future. We may listen to and/or record phone calls between you and our representatives without notice to you as permitted by applicable law. For example, we listen to and record calls for quality monitoring purposes.

**13. Assignment; Registration of Note Owners, Termination.** We may assign this Agreement and the Loan Agreement and Promissory Note, or any of our rights under this Agreement or the Loan Agreement and Promissory Note, in whole or in part at any time. You further understand, acknowledge and agree that LendingClub or another third party may further sell, assign or transfer your Loan Agreement and Promissory Note and all associated documents and information related to the and the Loan Agreement and Promissory Note without your consent or notice to you (subject to the registration requirement below). You may not assign, transfer, sublicense or otherwise delegate your rights or obligations under this Agreement to another person without our prior written consent. Any such assignment, transfer, sublicense or delegation in violation of this section 13 shall be null and void.

You hereby appoint LendingClub as your agent (in such capacity, the "**Note Registrar**") for the purpose of maintaining a book-entry system (the "**Register**") for recording the names and addresses of any owner of beneficial interests in this Note (the "**Note Owners**") and the principal amounts and interest on this Note owing to each pursuant to the terms hereof from time to time. The person or persons identified as the Note Owners in the Register shall be treated as the owner(s) of this Note for purposes of receiving payment of principal and interest on such Note and for all other purposes. With respect to any transfer by a Note Owner of its beneficial interest in this Note, the right to payment of principal and interest on this Note shall not be effective until the transfer is recorded in the Register.

We may terminate this Agreement and your ability to make loan requests at any time. If you committed fraud or made a misrepresentation in connection with your registration on the Site or any application or request for a loan, performed any prohibited activity, or otherwise failed to abide by the terms of this Agreement, we will have all remedies authorized or permitted by this Agreement and applicable law.

**14. Entire Agreement.** This Agreement, and any Loan Agreement and Promissory Note that may be agreed for a loan, represent the entire agreement between you and us regarding the subject matter hereof and supersede all prior or contemporaneous communications, promises and proposals, whether oral, written or electronic, between us with respect to your loan request and loan. The WebBank Privacy Notice attached as Exhibit B is incorporated by reference into this Agreement.

**15. Electronic Transactions.** THIS AGREEMENT IS FULLY SUBJECT TO YOUR CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH CONSENT IS SET FORTH IN THE TERMS OF USE FOR THE SITE.

**16. Notices.** All notices and other communications to you hereunder may be given by email to your registered email address or posted on your Account Summary on the Site, and shall be deemed to have been duly given and effective upon transmission. You acknowledge that you have control of such email account and your Account Summary on the Site and that communications from us may contain sensitive, confidential, and collectionsrelated communications. If your registered email address changes, you must notify LendingClub of the change by sending an email to support@lendingclub.com or calling 888-596-3157. You also agree to update your registered residence address and telephone number on the Site if they change.

**17. NO WARRANTIES.** EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, WE MAKE NO REPRESENTATIONS OR WARRANTIES TO YOU, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**18. LIMITATION ON LIABILITY.** IN NO EVENT SHALL WE BE LIABLE TO YOU FOR ANY LOST PROFITS OR SPECIAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES, EVEN IF INFORMED OF THE POSSIBILITY OF SUCH DAMAGES. FURTHERMORE, WE MAKE NO REPRESENTATION OR WARRANTY TO YOU REGARDING THE EFFECT THAT THE AGREEMENT MAY HAVE UPON YOUR FOREIGN, FEDERAL, STATE OR LOCAL TAX LIABILITY.

**19. Choice of Law.** We are located in the state of Utah and this Agreement is entered into in the state of Utah. The provisions of this Agreement will be governed by federal laws and the laws of the state of Utah to the extent not preempted, without regard to any principle of conflicts of laws that would require or permit the application of the laws of any other jurisdiction.

**20. Miscellaneous.** The parties acknowledge that there are no third party beneficiaries to this Agreement (other than LendingClub). Any waiver of a breach of any provision of this Agreement will not be a waiver of any other subsequent breach. Failure or delay by either party to enforce any term or condition of this Agreement will not constitute a waiver of such term or condition. If at any time after the date of this Agreement, any of the provisions of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall be of no force and effect, but the illegality and unenforceability of such provision shall have no effect upon and shall not impair the enforceability of any other provisions of this Agreement. The headings in this Agreement are for reference purposes only and shall not affect the interpretation of this Agreement in any way.

**21. Arbitration.** RESOLUTION OF DISPUTES: YOU HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US. YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN PARAGRAPH (b) BELOW. If you are a "Covered Borrower" as defined by the Military Lending Act (32 CFR §232, as amended from time to time) at the time of entering into this Agreement, this section 21 Arbitration is not applicable, and you do not need to opt out of or take any action to ensure inapplicability.

**a.** Either party to this Agreement, or any subsequent holder, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 21 (the "Arbitration Provision"), unless you opt out as provided in section 21(b) below. As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or any subsequent holder (or persons claiming through or connected with us and/or the subsequent holders), on the other hand, relating to or arising out of this Agreement, any Loan Agreement and Promissory Note(s), the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of section 21(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counterclaims, cross-claims, third-party claims, or otherwise. The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

**b.** You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to WebBank, c/o LendingClub Corporation, 71 Stevenson St., Suite 1000, San Francisco CA, 94105, Attention: Legal Department, **which is received at the specified address within 30 days of the date of your electronic acceptance of the terms of this Agreement.** The opt out notice must clearly state that you are rejecting arbitration; identify the Agreement to which it applies by date; provide your name, address, and social security number; and be signed by you. You may send an opt out notice in any manner you see fit as long as it is received at the specified address within the specified time. No other methods can be used to opt out of this Arbitration Provision. If the opt out notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the opt out notice on your behalf.

**c.** If a Claim arises, our goal is to learn about and address your concerns and, if we are unable to do so to your satisfaction, to provide you with a neutral and cost effective means of resolving the dispute quickly. You agree that before filing any claim in arbitration, you may submit

Claims by sending an email to customeradvocacy@lendingclub.com at any time, or by calling (888) 596-3157 from Mon-Fri 6:00 AM to 5:00 PM PT and Sat 8:00 AM to 5:00 PM PT.

The party initiating arbitration shall do so with the American Arbitration Association (the "AAA") or Judicial Alternatives and Mediation Services ("JAMS"). The arbitration shall be conducted according to, and the location of the arbitration shall be determined in accordance with, the rules and policies of the administrator selected, except to the extent the rules conflict with this Arbitration Provision or any countervailing law. If you have any questions concerning the AAA or would like to obtain a copy of the AAA arbitration rules, you may call 1(800) 778-7879 or visit the AAA's web site at: www.adr.org. If you have any questions concerning JAMS or would like to obtain a copy of the JAMS arbitration rules, you may call 1(800) 352-5267 or visit their web site at: www.jamsadr.com. In the case of a conflict between the rules and policies of the administrator and this Arbitration Provision, this Arbitration Provision shall control, subject to countervailing law, unless all parties to the arbitration consent to have the rules and policies of the administrator apply.

**d.** If we (or the subsequent holder) elect arbitration, we (or the subsequent holder, as the case may be) shall pay all the administrator's filing costs and administrative fees (other than hearing fees). If you elect arbitration, filing costs and administrative fees (other than hearing fees) shall be paid in accordance with the rules of the administrator selected, or in accordance with countervailing law if contrary to the administrator's rules. We (or the subsequent holder, as the case may be) shall pay the administrator's hearing fees for one full day of arbitration hearings. Fees for hearings that exceed one day will be paid by the party requesting the hearing, unless the administrator's rules or applicable law require otherwise, or you request that we (or the subsequent holder) pay them and we agree (or the subsequent holder agrees) to do so. Each party shall bear the expense of its own attorneys' fees, except as otherwise provided by law. If a statute gives you the right to recover any of these fees, these statutory rights shall apply in the arbitration notwithstanding anything to the contrary herein.

**e.** Within 30 days of a final award by the arbitrator, any party may appeal the award for reconsideration by a three-arbitrator panel selected according to the rules of the arbitrator administrator. In the event of such an appeal, any opposing party may cross-appeal within 30 days after notice of the appeal. The panel will reconsider de novo all aspects of the initial award that are appealed. Costs and conduct of any appeal shall be governed by this Arbitration Provision and the administrator's rules, in the same way as the initial arbitration proceeding. Any award by the individual arbitrator that is not subject to appeal, and any panel award on appeal, shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered as a judgment in any court of competent jurisdiction.

**f.** We agree not to invoke our right to arbitrate an individual Claim you may bring in Small Claims Court or an equivalent court, if any, so long as the Claim is pending only in that court. NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING AS PRIVATE ATTORNEY GENERAL ON BEHALF OF OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A COURT. Unless consented to in writing by all parties to the arbitration, no party to the arbitration may join, consolidate, or otherwise bring claims for or on behalf of two or more individuals or unrelated corporate entities in the same arbitration unless those persons are parties to a single transaction. Unless consented to in writing by all parties to the arbitration, an award in arbitration shall determine the rights and obligations of the named parties only, and only with respect to the claims in arbitration, and shall not (a) determine the rights, obligations, or interests of anyone other than a named party, or resolve any Claim of anyone other than a named party; nor (b) make an award for the benefit of, or against, anyone other than a named party. No administrator or arbitrator shall have the power or authority to waive, modify, or fail to enforce this section 21(f), and any attempt to do so, whether by rule, policy, arbitration decision or otherwise, shall be invalid and unenforceable. Any challenge to the validity of this section 21(f) shall be determined exclusively by a court and not by the administrator or any arbitrator.

**g.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the FAA. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award damages or other types of relief permitted by applicable substantive law, subject to the limitations set forth in this Arbitration Provision. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court. The arbitrator shall take steps to reasonably protect confidential information.

**h.** This Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or LendingClub; (ii) the bankruptcy or insolvency of any party or other person; and (iii) any transfer of any loan or Loan Agreement or Promissory Note(s) or any other promissory note(s) which you owe, or any amounts owed on such loans or notes, to any other person or entity. If any portion of this Arbitration Provision other than section 21(f) is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. If an arbitration is brought on a class, representative, or collective basis, and the limitations on such proceedings in section 21(f) are finally adjudicated pursuant to the last sentence of section 21(f) to be unenforceable, then no arbitration shall be had. In no event shall any invalidation be deemed to authorize an arbitrator to determine Claims or make awards beyond those authorized in this Arbitration Provision.

THE PARTIES ACKNOWLEDGE THAT THEY HAVE A RIGHT TO LITIGATE CLAIMS THROUGH A COURT BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT TO THIS ARBITRATION PROVISION. THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT BEFORE A JUDGE OR JURY UPON ELECTION OF ARBITRATION BY ANY PARTY.

## Exhibit A
**LOAN AGREEMENT AND PROMISSORY NOTE**

Borrower Member ID: _____

Joint Applicant/Co-Borrower Member ID: _____

$_____

_____, 20_

For value received, I (referred to herein as "Borrower" which for purposes of this Loan Agreement and Promissory Note (the "Note") includes all parties obligated hereunder, including any joint applicant/co-borrower) promise to pay to the order of WebBank or any subsequent holder ("you" or "Lender") of this Note the principal sum of _____ ($_____) Dollars with interest as set forth below. Borrower intends to be legally bound by this Note. Borrower has read, understood, and agreed to all of the terms of this Note.

Interest Rate. This Note bears interest during each calendar month from the date hereof until paid in full, at a fixed rate of _____ (%) per annum.

Interest Calculation Method. Interest is calculated daily on the basis of a 360-day year with 12 months each of which is 30 days (or 30/360) long, regardless if a month has more or fewer than 30 days. This Note shall bear interest on any overdue installment of principal and, to the extent permitted by applicable law, on any overdue installment of interest, at the interest rate stated and as calculated above.

Payments. Principal and interest is to be paid during and throughout the period of _____ months in the following manner:

Payments of principal and interest in the amount of _____ ($_____) Dollars are to be made by the Borrower to the Lender commencing _____, 20_, and on the same day of each successive month thereafter until _____, 20__, when the full amount of unpaid principal, together with unpaid accrued interest is due and payable. If the monthly anniversary is on the 29th, 30th, or 31st of the month, and the following month does not have a 29th, 30th, or 31st day, the monthly payment will be due on the last day of the month in which the payment was due.

Borrower's last payment might be of a different amount, which could be higher than the monthly installment amounts, to adjust for rounding and/or due to calculation of daily interest charges in certain instances such as a payment due date change or Borrower making a payment after the payment due date. In such cases, the amount of the last monthly payment will be adjusted by the amount necessary to repay the loan in full.

All payments on this Note are to be made in immediately available lawful money of the United States.

Borrower may make loan payments either by check, subject to any applicable check processing fee, or Borrower may authorize any Lender to debit Borrower's designated account by ACH transfer each month. The debit amount may be a range of payments, which would include your monthly principal and interest, and fees, if any. Borrower is responsible for ensuring that all names, account, routing or other similar information provided by Borrower to Lender for accounts that Borrower is directing Lender to deliver loan proceeds to ("Directed Accounts") are accurate and complete. Borrower agrees to hold Lender and LendingClub harmless for any alleged or actual loss, claim, fee or other damage or expense Borrower may suffer related to the failure of a Directed Account to receive such proceeds if such failure was the result (directly or indirectly) of any error in any name, account, routing or other similar information provided by Borrower to Lender. Borrower acknowledges that neither Lender nor LendingClub has any obligation to confirm or investigate the accuracy or completeness of the information Borrower has provided. Borrower further agrees that if the loan proceeds are rejected by a Directed Account that is not Borrower's designated bank account, then Lender may deliver the loan proceeds into the designated bank account to satisfy our obligation of loan proceed delivery. In all events under this section, **interest will begin to accrue as of the date of issuance of the loan** and not upon the actual receipt of proceeds by Borrower or any other designated third party. If we are unable to deliver any portion of the loan proceeds to the Directed Account(s) or Borrower's designated bank account after 14 days from the initial delivery attempt, the loan will be canceled and only in this circumstance will Borrower not owe any interest on the loan. For avoidance of doubt, if partial loan proceeds (any amount above $0) are delivered to the Directed Account(s) or Borrower's designated bank account, then the loan will not be canceled. If we are only able to deliver partial loan proceeds to the Directed Account(s) or Borrower's designated bank account after 14 days, we will apply the undelivered portion to the outstanding balance in accordance with our normal payment application procedures.

If Borrower elects to make payments by automatic withdrawal, Borrower has the right to stop payment of these automatic withdrawals or revoke prior authorization for automatic withdrawals by notifying Lender and LendingClub of the exercise of its right to stop a payment or revoke authorization for automatic withdrawals **no less than three (3) banking days** before Borrower's next payment due date.

If Borrower elects to make payments by check, Borrower must send the check either by regular mail or by overnight mail or UPS delivery to Wells Fargo Lock Box Services, Dept #34268, 3440 Walnut Ave, Window H, Fremont, CA 94538. There will be a $7 check processing fee per payment, subject to applicable law. **Borrower may change its payment method by contacting support@lendingclub.com.**

Borrower's payment method and any necessary authorization do not affect its obligation to pay when due all amounts payable on the Note, whether or not there are sufficient funds in the applicable deposit account. The foregoing authorization is in addition to, and not in limitation of, any rights of setoff Lender may have.

All payments are to be applied first to the payment of all fees, expenses and other amounts due (excluding principal and interest), then to

accrued interest, and the balance on account of outstanding principal; provided, however, that after an Event of Default (as defined below), payments will be applied to Borrower's obligations as Lender determines in its sole discretion.

**Origination fee. If this loan is subject to an origination fee, such fee is deducted from the loan proceeds and paid to the Lender. Any origination fee of 5% or less is not refundable regardless of when, or if, the loan is paid in full. Any origination fee amount in excess of 5% is refundable on a prorated basis over the term of the loan when and if the loan is paid in full prior to its maturity date. A partial pre-payment will not result in the refund of any origination fee amount. Borrower acknowledges that the origination fee is considered part of the principal of Borrower's loan and is subject to the accrual of interest.**

Insufficient funds fee. If a payment is returned or fails due to insufficient funds in the designated account, Borrower may be charged a fee of $15, to the extent permitted by applicable law. An insufficient funds fee may be assessed no more than once for a single failed payment. The bank that holds Borrower's deposit account may assess its own fee in addition to the fee assessed under this Note.

Late fee. If any part of Borrower's payment, other than payments owed for any fee(s) assessed on a prior monthly payment, is more than 15 days late, a late fee may be charged in an amount equal to the greater of 5% of the outstanding payment or $15, to the extent permitted by applicable law. Only one late fee may be charged on each late payment. **Any check payment received after 12:30 P.M., Mountain Time, on a banking day is deemed received on the next succeeding banking day.** Borrower authorizes Lender, and its successors and assigns, to deduct any fees due by ACH transfers initiated to the deposit account on file for Borrower.

Prepayments and Partial Payments. Borrower may make any payment early, in whole or in part, without penalty or premium at any time. Any partial prepayment will be credited against the loan balance as described in the Payments section above. Any partial repayment does not postpone the due date of any subsequent monthly payment, unless expressly agreed to in writing. If Borrower prepays this Note in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid. Lender may accept late payments or partial payments, even though marked "paid in full", without losing any rights under this Note. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due.

Use of Funds. Borrower certifies that the proceeds of the loan will not be used for the purpose of purchasing or carrying any securities or to fund any illegal activity, or to fund any post-secondary educational expenses, including, but not limited to, tuition, fees, books, supplies, miscellaneous expenses, or room and board.

Default. Borrower may be deemed in default (each, an "Event of Default") of Borrower's obligations under this Note if Borrower: (1) fails to pay timely any amount due on the loan; (2) files or has instituted against it or any joint applicant/co-borrower any bankruptcy or insolvency proceedings or make any assignment for the benefit of creditors; (3) commits fraud or makes any material misrepresentation in this Note, or in any other documents, applications or related materials delivered to Lender in connection with its loan or (4) fails to abide by the terms of this Note or the Borrower Agreement. Upon the occurrence of an Event of Default, Lender may exercise all remedies available under applicable law and this Note, including without limitation demand that Borrower immediately pay all amounts owed on this Note.

Lender will report information about Borrower's account to credit bureaus. Should there be more than one Borrower, Lender will report that loan account to the credit bureaus in the names of all Borrowers. Late payments, missed payments, or other defaults on an account may be reflected in Borrower's credit report. Borrower agrees to pay all costs of collecting any delinquent payments, including reasonable attorneys' fees, as permitted by applicable law.

Joint and Several Liability.

The liability of any joint applicant/co-borrower to repay in full this loan is in addition to and not in lieu of the obligations of the primary Borrower to repay the loan in full. The joint applicant/co-borrower agrees to abide by the terms and conditions of this Note or any other agreements or documents provide or executed as part of the application process, as if an original signatory.

Lender (or its designee) has sole discretion to proceed against both the Borrower and any joint applicant/co-borrower to recover all the amounts due under this Note. Further, Lender (or its designee) can accept instructions from either Borrower or the joint applicant/co-borrower, and notice given to either party shall be binding on both parties and all disclosures provided to a party will be deemed simultaneously received by all parties.

Loan Charges. If a law that applies to the Loan and sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower.

Electronic Transactions. THIS AGREEMENT IS FULLY SUBJECT TO BORROWER'S CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES, WHICH CONSENT IS SET FORTH IN THE TERMS OF USE FOR THE SITE. BORROWER EXPRESSLY AGREES THAT THE NOTE IS A "TRANSFERABLE RECORD" FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.

Registration of Note Owners.

I have appointed LendingClub as my agent (in such capacity, the "**Note Registrar**") for the purpose of maintaining a book-entry system (the "**Register**") for recording the names and addresses of any future owner of beneficial interests in this Note (the "**Note Owners**") and the principal amounts and interest on this Note owing to each pursuant to the terms hereof from time to time. The person or persons identified as the Note Owners in the Register shall be treated as the owner(s) of this Note for purposes of receiving payment of principal and interest on such Note and for all other purposes. With respect to any transfer by a Note Owner of its beneficial interest in this Note, the right to payment of principal and interest on this Note shall not be effective until the transfer is recorded in the Register.

Miscellaneous.

Lender may, without notice to Borrower, assign all of its right, title and interest in this Note to any other third party, and Borrower further understands, acknowledges and agrees that any assignee may sell, assign or transfer the Note and all associated documents and information related to the Note without Borrower's consent or delivery of notice (subject in each case to the registration requirement above). Borrower may not assign this Note without the prior written consent of Lender. This Note inures to the successors, permitted assigns, heirs and representatives of Borrower and Lender.

Borrower hereby waives demand, notice of non-payment, protest, and all other notices or demands whatsoever, and hereby consents that without notice to and without releasing the liability of any party, the obligations evidenced by this Note may from time to time, in whole or part, be renewed, extended, modified, accelerated, compromised, settled or released by Lender.

Any changes to this Note must be in writing signed by Borrower and Lender. Notices will be provided electronically to Borrower's account, unless Borrower has opted out of electronic delivery and then will be mailed to the addresses then on record.

This Note is subject to the arbitration provisions of the Borrower Agreement between Lender and Borrower, which is incorporated by reference into this Note.

Controlling Law. Lender is located in the State of Utah and this Note is executed and delivered in the State of Utah and is a contract made under such state's law. The provisions of this Note will be governed by federal laws and the laws of the State of Utah to the extent not preempted, without regard to any principle of conflicts of law. The unenforceability of any provision of this Note shall not affect the enforceability or validity of any other provision of this Note.

STATE LAW NOTICES:

CALIFORNIA RESIDENTS ONLY: A married applicant may apply for a separate account. If Lender takes any adverse action as defined by § 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, Borrower has the right to obtain within 60 days a free copy of Borrower's consumer credit report from the consumer reporting agency who furnished the consumer credit report and from any other consumer credit reporting agency that complies and maintains files on consumers on a nationwide basis.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations.

KANSAS: NOTICE TO CONSUMER: 1. Do not sign this Note before you read it. 2. You are entitled to a copy of this Note. 3. You may prepay the unpaid balance at any time without penalty.

MARYLAND RESIDENTS ONLY: Lender elects to make this loan pursuant to Subtitle 10 (Credit Grantor Closed End Credit provisions) of Title 12 of the Maryland Commercial Law Article only to the extent that such provisions are not inconsistent with Lender's authority under federal law (12 U.S.C. § 85, § 1463(g), or § 1831d, as appropriate) and related regulations and interpretations, which authority Lender expressly reserves.

MASSACHUSETTS RESIDENTS ONLY: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI AND NEBRASKA RESIDENTS: ORAL LOAN AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF SUCH DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT BORROWER(S) AND THE LENDER AND ANY HOLDER OF THIS NOTE FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

NEW JERSEY RESIDENTS: The section headings of the Note are a table of contents and not contract terms. Portions of this Note with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Note, actions or practices (i) by which Lender is or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may be or will be taken by Lender unless prohibited by "applicable law" are permitted by New Jersey law.

The authoritative document is maintained by LendingClub Corporation and this copy was created Nov 08 2018 16:07:56

NEW YORK, RHODE ISLAND and VERMONT RESIDENTS: : Borrower understands and agrees that Lender may obtain a consumer credit report in connection with this application and in connection with any update, renewals for extension of any credit as a result of this application. If Borrower asks, Borrower will be informed whether or not such a report was obtained, and if so, the name and address of the agency that furnished the report. Borrower also understands and agrees that Lender may obtain a consumer credit report in connection with the review or collection of any loan made to Borrower as a result of this application or for other legitimate purposes related to such loans.

OHIO RESIDENTS ONLY: The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

WASHINGTON RESIDENTS ONLY: Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.

WISCONSIN RESIDENTS ONLY: For married Wisconsin residents, Borrower's signature confirms that this loan obligation is being incurred in the interest of Borrower's marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under § 766.59 of the Wisconsin statutes or court decree under § 766.70 adversely affects Lender's interest unless, prior to the time that the loan is approved, Lender is furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision. If this loan for which Borrower is applying is granted, Borrower will notify Lender if Borrower has a spouse who needs to receive notification that credit has been extended to Borrower.

WEST VIRGINIA RESIDENTS ONLY: For borrowers located in West Virginia, LendingClub is operating as a Credit Services Organization ("CSO") in connection with your loan. LendingClub may be reached at LendingClub Corporation, 71 Stevenson Street, Suite 1000, San Francisco, CA 94105. LendingClub's agent for service of process is CSC — Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

Description of Services: LendingClub operates as an online marketplace platform. It does not issue, fund, or lend loans directly to the consumer; rather, it operates under an "originating bank" model in which it is a third-party vendor of a federally regulated and insured bank. The "originating bank" model allows the bank to originate loans to applicants through LendingClub's Platform. Loans facilitated through LendingClub's marketplace are originated by WebBank.

LendingClub's CSO services are rendered within 180 days. Borrowers through LendingClub's platform do not pay LendingClub any money or consideration. LendingClub generates revenue in three ways: (1) transaction fees from WebBank; (2) servicing fees from investors; and (3) management fees from investment funds.

Surety Notice: LendingClub has obtained and retains in effect a surety bond or maintains a surety account in the amount of $15,000. You have the right to maintain an action at law against the CSO and against the surety or trustee for damages incurred by violation of the Credit Service Organization Act, Article 6C, Chapter 46A of the WV Code. The name and address of the surety company which issued the surety bond is International Fidelity Insurance Company, One Newark Center, Newark, NJ 07102.

As required by West Virginia Law, Borrower is notified that: (i) you have a right to review any file maintained on you by a consumer reporting agency, as provided by the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.); (ii) your file is available for review at no charge on request made to the consumer reporting agency within thirty days after the date of the receipt of notice that credit has been denied, and your file is available for a minimal reporting charge at any other time; (iii) you have a right to dispute directly with your consumer reporting agency the completeness of accuracy of any item contained in a file on you maintained by that consumer reporting agency; (iv) no consumer reporting agency may make any consumer report containing any adverse item of information dating from more than seven (7) years before the report; (v) ACCURATE INFORMATION CANNOT BE PERMANENTLY REMOVED FROM THE FILES OF A CONSUMER REPORTING AGENCY; and (vi) non-profit organizations which provide credit and debt counseling service are available. The WV Association of Consumer Credit Counseling Services (call 1-800-869-7758) or the National Foundation for Consumer Credit (call 1-800-388 2227) will connect you to a local organization, or check your yellow pages under "Credit Counseling Services" to find a non-profit service.

MEMBER ID OF BORROWER & CO-BORROWER (if any)
BY: LENDINGCLUB CORPORATION
ATTORNEY-IN-FACT FOR BORROWER and CO-BORROWER (if any)
(SIGNED ELECTRONICALLY)

## Exhibit B
WEBBANK PRIVACY NOTICE

| FACTS | WHAT DOES WEBBANK DO WITH YOUR PERSONAL INFORMATION IN CONNECTION WITH YOUR LENDINGCLUB ACCOUNT? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |

| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and transaction history<br>• Account balances and payment history<br>• Credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
|---|---|
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons WebBank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does WebBank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | YES | NO |
| **For our marketing purposes -** to offer our products and services to you | YES | NO |
| **For joint marketing with other financial companies** | YES | YES |
| **For our affiliates' everyday business purposes -** information about your transactions and experiences | NO | We don't share |
| **For our affiliates' everyday business purposes -** information about your creditworthiness | NO | We don't share |
| **For our affiliates to market to you** | NO | We don't share |
| **For nonaffiliates to market to you** | NO | We don't share |

| Questions? | Call (888) 596-3157 or go to www.lendingclub.com |
|---|---|

| What we do | |
|---|---|
| **How does WebBank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does WebBank collect my personal information?** | We collect your personal information, for example, when you<br>• Open an account or pay us by check<br>• Provide account information or give us your contact information<br>• Show your driver's license<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes-information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates companies to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account - unless you tell us otherwise. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• WebBank does not share with our affiliates |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Nonaffiliates we share with can include other financial services companies, lenders, insurance companies, retailers, membership clubs or other consumer service providers. |

| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. <br>• Our joint marketing partners include financial services companies, lenders, insurance companies, or other consumer service providers. |
|---|---|

COPY OF AUTHORITATIVE DOCUMENT

# EXHIBIT
# B

# LOAN SUMMARY

**Loan Id:** ▮▮▮▮▮**5314**

## Primary Borrower Contact Information

| | |
|---|---|
| Full Real Name: | ISABEL HERNANDEZ |
| Screen Name: | Member_▮▮▮▮8026 |
| Email: | ▮▮▮▮▮@gmail.com |
| Address: | 175 HOYT ST ▮▮▮▮▮ |
| | ▮▮▮▮▮, NY ▮▮▮ |
| Home Phone: | ▮▮▮▮-2911 |
| Cell or Work Phone: | ▮▮▮▮-6600 |

## Loan Information

| | |
|---|---|
| Loan Issue Date: | 11/9/18 |
| Original Loan Amount: | $10,000.00 |
| Principle Balance: | $8,656.17 |
| Principle Balance Date: | 12/31/19 |
| Payoff Balance: | $9,706.72 |
| Payoff Date: | 1/2/20 |

## Loan Documents

| Document Name | Date/time Signed | Document Version |
|---|---|---|
| Borrower Agreement | 11/8/18 08:07:55 AM PST | LC_SEC_V26 |
| Credit Score Notice | 11/8/18 08:07:55 AM PST | LC_SEC_V4 |
| Truth in Lending Disclosure | 11/8/18 08:07:55 AM PST | LC_SEC_V11 |
| Terms of Use and Consent to Electronic Transactions and Disclosures | 11/8/18 08:06:09 AM PST | SHARED_SEC_V3 |
| Electronic Consent | 11/8/18 08:06:09 AM PST | SHARED_SEC_V3 |
| Credit Profile Authorization | 11/8/18 08:07:55 AM PST | LC_SEC_V4 |
| Authorization for Automatic Payment | 11/8/18 08:07:55 AM PST | LC_SEC_V4 |



The authoritative document is maintained by LendingClub Corporation and this copy was created Dec 31 2019 09:06:36

# Certification of Shannon Miller
# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                    No.: 8:20-cv-00752-JSM-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

      Defendants.

_____/

## DEFENDANTS', OLIPHANT FINANCIAL, LLC, AND ACCELERATED INVENTORY MANAGEMENT, LLC, AMENDED RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively "Defendants"), by and through their undersigned attorney, hereby submit their Amended Responses to the Plaintiff's First Request for Admissions, and state:

## AMENDED RESPONSES TO REQUESTS FOR ADMISSION

**RESPONSE APPLICABLE TO ALL REQUESTS:** Accelerated Inventory Management, LLC ("Accelerated") is in the business of purchasing defaulted financial obligations originated with other entities in the business of extending credit. Immediately upon purchase, such accounts are assigned for servicing to Oliphant Financial, LLC ("Oliphant"). Accelerated does not maintain, engage in the recovery of, nor keep record or information of attempts to recover, any of its assigned accounts. Rather, Oliphant, who Accelerated engages to recover its purchased accounts, maintains such accounts and all data and documentation associated with their purchase by Accelerated, conducts all activity in relation to the recovery of such accounts, and documents and maintains all records of any such activity. As such, Accelerated's responses to the requests herein are made pursuant to information within the knowledge of Oliphant and are based upon Oliphant's records of its regularly conducted business activities.

**REQUEST NUMBER 1:** Plaintiff is a natural person.

**ANSWER:**    Admitted.

1

**REQUEST NUMBER 2:** On the date the Collection Letter was sent to Plaintiff, Defendants allege Plaintiff was obligated to pay the Debt.

**ANSWER:**    Admitted in part. Defendants admit only that on the date that the Letter was drafted, Defendants alleged that Plaintiff was obligated on the account identified in the Letter. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 3:** Based upon the facts known to Defendants, Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3).

**ANSWER:**    Defendants state that when accounts are assigned to them, including the Debt, Defendants do not receive information sufficient to identify the purpose any amounts owed upon such accounts were incurred which would allow them to identify whether any financial obligation, including the Debt owed by Plaintiff, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". Whether or not the Debt is a "debt" would impact whether or not Plaintiff is a "consumer" as that term is defined by the FDCPA. As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request.

**REQUEST NUMBER 4:** Based upon the facts known to Defendants, the Debt was an obligation to pay money arising out of a transaction primarily for personal, family or household purposes.

**ANSWER:**    Defendants state that when accounts are assigned to them, including the Debt, Defendants do not receive information sufficient to identify the purpose any amounts owed upon such accounts were incurred which would allow them to identify whether any financial obligation, including the Debt owed by Plaintiff, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request.

**REQUEST NUMBER 5:** Based upon the facts known to Defendants, the Debt is a "debt" as defined by 15 U.S.C. §1692a(5).

**ANSWER:**    Defendants state that when accounts are assigned to them, including the Debt, Defendants do not receive information sufficient to identify the purpose any amounts owed upon such accounts were incurred which would allow them to identify whether any financial obligation, including the Debt owed by Plaintiff, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request.

2

**REQUEST NUMBER 6:** Oliphant Financial, LLC regularly collects money owed to others.

**ANSWER:** Admitted in part. Defendants admit only that, other than on behalf of itself, during the relevant time Oliphant engaged in the recovery of amounts owed on behalf of Accelerated, an entity to which it is related by common ownership. Oliphant does not engage in the recovery of amounts owed to any other entities or persons. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 7:** Oliphant Financial, LLC regularly attempts to collect money owed to others.

**ANSWER:** Admitted in part. Defendants admit only that, other than on behalf of itself, during the relevant time Oliphant engaged in the recovery of amounts owed on behalf of Accelerated, an entity to which it is related by common ownership. Oliphant does not engage in the recovery of amounts owed to any other entities or persons. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 8:** Oliphant Financial, LLC uses the mail in its attempts to collect money owed to others.

**ANSWER:** Admitted in part. Defendants admit only that, other than on behalf of itself, during the relevant time Oliphant engaged in the recovery of amounts owed on behalf of Accelerated, an entity to which it is related by common ownership and that Oliphant does use the mail in its attempts to recover amounts owed to it or to Accelerated. Oliphant does not engage in the recovery of amounts owed to any other entities or persons.  Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 9:** Oliphant Financial, LLC uses telephones in its attempts to collect money owed to others.

**ANSWER:** Admitted in part. Defendants admit only that, other than on behalf of itself, during the relevant time Oliphant engaged in the recovery of amounts owed on behalf of Accelerated, an entity to which it is related by common ownership and that Oliphant does use telephones in its attempts to recover amounts owed to it or to Accelerated. Oliphant does not engage in the recovery of amounts owed to any other entities or persons.  Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 10:** Oliphant Financial, LLC uses email in its attempts to collect money owed to others.

**ANSWER:** Admitted in part. Defendants admit only that, other than on behalf of itself, during the relevant time Oliphant engaged in the recovery of amounts owed on behalf of Accelerated, an entity to which it is related by common ownership and that Oliphant does use email in its attempts to recover amounts owed to it or to Accelerated when email communication has been initiated by an account obligor. Oliphant does not engage in the recovery of amounts owed to

any other entities or persons. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 11:** The principal purpose of Oliphant Financial, LLC's business is the collection of money owed to others.

**ANSWER:** Admitted in part. Defendants admit only that Oliphant engages in the recovery of amounts owed to it and, during the relevant time, on behalf of Accelerated, an entity to which it is related by common ownership, and that this reflects its principal purpose. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 12:** Based upon the facts known to Oliphant Financial, LLC, it is a "debt collector" as defined by 15 U.S.C. §1692a(6).

**ANSWER:** Defendants states that when accounts are assigned to Oliphant, including the Debt, Oliphant does not receive information sufficient to identify the purpose any amounts owed upon such accounts, including the Debt, were incurred which would allow Oliphant to identify whether any financial obligation, including the Debt, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". Whether or not the accounts sought for recovery by Oliphant, including the Debt, are "debts" would impact whether or not Oliphant is a "debt collector" as that term is defined by the FDCPA. As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request.

**REQUEST NUMBER 13:** Oliphant Financial, LLC sent the Collection Letter to Plaintiff.

**ANSWER:** Admitted.

**REQUEST NUMBER 14:** Oliphant Financial, LLC sent the Collection Letter to Plaintiff in an effort to collect money from Plaintiff.

**ANSWER:** Admitted.

**REQUEST NUMBER 15:** Based upon the facts known to Oliphant Financial, LLC, the Collection Letter is a "communication" as defined by 15 U.S.C. §1692a(2).

**ANSWER:** Defendants states that when accounts are assigned to Oliphant, including the Debt, Oliphant does not receive information sufficient to identify the purpose any amounts owed upon such accounts, including the Debt, were incurred which would allow Oliphant to identify whether any financial obligation, including the Debt, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". Whether or not the Debt is a "debt" would impact whether or not the Letter is a "communication" as that term is defined by the FDCPA. As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request. Defendants have made a reasonable inquiry

4

and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request.

**REQUEST NUMBER 16:** Accelerated Inventory Management, LLC regularly collects money owed to others.

**ANSWER:**    Denied.

**REQUEST NUMBER 17:** Accelerated Inventory Management, LLC regularly attempts to collect money owed to others.

**ANSWER:**    Denied.

**REQUEST NUMBER 18:** Accelerated Inventory Management, LLC uses the mail in its attempts to collect money owed to others.

**ANSWER:**    Denied.

**REQUEST NUMBER 19:** Accelerated Inventory Management, LLC uses telephones in its attempts to collect money owed to others.

**ANSWER:**    Denied.

**REQUEST NUMBER 20:** Accelerated Inventory Management, LLC uses email in its attempts to collect money owed to others.

**ANSWER:**    Denied.

**REQUEST NUMBER 21:** The principal purpose of Accelerated Inventory Management, LLC's business is the collection of money owed to others.

**ANSWER:**    Denied.

**REQUEST NUMBER 22:** The principal purpose of Accelerated Inventory Management, LLC is the purchase of defaulted consumer debt and the collection thereof.

**ANSWER:**    Admitted in part. Defendants admit only that Accelerated's principal purpose is the purchase of pools of defaulted financial obligations which include accounts allegedly incurred for consumer as well as commercial purposes and which are immediately assigned to other entities for recovery. Defendants deny each and every portion of this Request not specifically admitted.  By way of further response, Defendants state that when accounts are assigned to Accelerated, including the Debt, Accelerated does not receive information sufficient to identify the purpose any amounts owed upon such accounts were incurred which would allow Accelerated to identify whether any financial obligation, including the Debt, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". Whether or not the accounts purchased by Accelerated, including the Debt, are

5

"debts" would impact Defendants' response to this Request. As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request in this regard. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request in this regard.

**REQUEST NUMBER 23:** Accelerated Inventory Management, LLC is a debt buyer.

**ANSWER:** Admitted in part. Defendants admit only that Accelerated's principal purpose is the purchase of pools of defaulted financial obligations which include accounts allegedly incurred for consumer as well as commercial purposes and which are immediately assigned to other entities for recovery. Defendants deny each and every portion of this Request not specifically admitted. By way of further response, to the extent that by referencing the term "debt" this Request is suggesting that any accounts which were purchased by Accelerated, including the Debt, were incurred for "personal, family, or household purposes", Defendants state that when accounts are assigned to Accelerated, including the Debt, Accelerated does not receive information sufficient to identify the purpose any amounts owed upon such accounts were incurred which would allow Accelerated to identify whether any financial obligation, including the Debt, is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". Whether or not the accounts purchased by Accelerated, including the Debt, are "debts" would impact whether Accelerated is a "debt buyer". As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request in this regard. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request in this regard.

**REQUEST NUMBER 24:** Based upon the facts known to Accelerated Inventory Management, LLC, it is a "debt collector" as defined by 15 U.S.C. §1692a(6).

**ANSWER**: Denied.

**REQUEST NUMBER 25:** Oliphant Financial, LLC sent the Collection Letter to Plaintiff at the request of Accelerated Inventory Management, LLC.

**ANSWER**: Admitted part. Defendants admit only that, Accelerated placed the Debt with Oliphant for recovery and that Oliphant independently determines the appropriate course of action in relation to the accounts placed with it by Accelerated, including the Debt, in order to effectuate recovery thereof, including whether to send letters and in this case, as it relates to the Debt, the Letter. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 26:** Accelerated Inventory Management, LLC is a client of Oliphant Financial, LLC.

**ANSWER**: Admitted.

6

**REQUEST NUMBER 27:** Oliphant Financial, LLC attempted to collect the Debt for its client Accelerated Inventory Management LLC.

**ANSWER**: Admitted.

**REQUEST NUMBER 28:** Oliphant Financial, LLC acted as the agent of Accelerated Inventory Management, LLC in its efforts to collect the Debt.

**OBJECTION:**  This Request impermissibly seeks to have Defendants admit or deny a pure conclusion of law, rather than admit or deny facts, application of law to fact, or opinions about either.

**REQUEST NUMBER 29:** Based upon the facts known to Defendants, the Collection Letter is a "communication" as defined by 15 U.S.C. §1692a(2).

**ANSWER:**  Defendants state that when the Debt, as reflected by the Letter, was assigned to them, Defendants did not receive information sufficient to identify the purpose any amounts owed upon the Debt were incurred which would allow them to identify whether the Debt owed by Plaintiff is a "debt" as that term is defined by the FDCPA as having been incurred for "personal, family, or household purposes". Whether or not the Debt is a "debt" would impact whether or not the Letter is a "communication" as that term is defined by the FDCPA. As such, Defendants lack sufficient knowledge or information from which they could either admit or deny this Request. Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny this Request.

**REQUEST NUMBER 30:** The Collection Letter annexed to the Complaint is a true and accurate copy, sans redactions, of a letter Defendants sent to Plaintiff.

**ANSWER:**  Admitted in part. Defendants admit only that, on information and belief, the Letter is a true and accurate copy of a letter which Oliphant admits to causing to be sent to Plaintiff. Due to the quality of the copy and redactions contained in *Exhibit 1* to the Complaint, Defendants are without sufficient knowledge or information from which to confirm with certainty whether this is the same letter Defendants admit was sent. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 31:** The Collection Letter annexed to the Complaint is a true and accurate copy, sans redactions, of the first letter Defendants sent to Plaintiff.

**ANSWER:**  Admitted in part. Defendants admit only that, on information and belief, the Letter is a true and accurate copy of a letter which Oliphant admits to causing to be sent to Plaintiff and which was first letter caused to be sent to the Plaintiff. Due to the quality of the copy and redactions contained in *Exhibit 1* to the Complaint, Defendants are without sufficient knowledge or information from which to confirm with certainty whether this is the same letter Defendants admit was sent. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 32:** On the date the Collection Letter was sent to Plaintiff, Plaintiff was obligated to pay the Debt.

**ANSWER:**    Admitted in part. Defendants admit only that on the date the Letter was sent to Plaintiff, Defendants were asserting that the Plaintiff was obligated to pay the Debt based upon the information available to the Defendants at that time. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 33:** The credit agreement concerning the Debt provided for the accrual of interest on any unpaid balance.

**ANSWER:** Admitted in part. Defendants admit only that the underlying agreement which formed the Debt provided for the accrual of interest to the extent as provided for by such agreement, the terms of which speak for themselves. Defendants deny each and every portion of this Request not specifically admitted.

**REQUEST NUMBER 34:** The credit agreement concerning the Debt provided for the accrual of late fees for any missed payments.

**ANSWER:** Admitted in part. Defendants admit only that the underlying agreement which formed the Debt provided for the accrual of late fees to the extent as provided for by such agreement, the terms of which speak for themselves. Defendants deny each and every portion of this Request not specifically admitted.

Respectfully submitted,

**MAURICE WUTSCHER, LLP**

*/s/ Shannon Miller*
Shannon Miller (Pro Hac Vice)
10 W. Front Street
Media, PA 19063
(215)789-7151
*Attorneys for Defendants*

Dated: March 11, 2021

8

## <u>CERTIFICATE OF SERVICE</u>

I, SHANNON MILLER, ESQ., do hereby certify that I have caused a true and correct

copy of Defendants' Amended Responses to the Plaintiff's First Request for Admissions to be

served upon the following:

BARSHAY SANDERS, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530

*/s/ Shannon Miller*
Shannon Miller (Pro Hac Vice)

Dated: March 11, 2021

# Certification of Shannon Miller
# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                    No.: 8:20-cv-00752-JSM-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

      Defendants.

_____/

## DEFENDANTS', OLIPHANT FINANCIAL, LLC, AND ACCELERATED INVENTORY MANAGEMENT, LLC, RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively "Defendants"), by and through their undersigned attorney, hereby submit their Responses to the Plaintiff's First Set of Interrogatories, and state:

## RESPONSE TO INTERROGATORIES

**RESPONSE APPLICABLE TO ALL REQUESTS:** Accelerated Inventory Management, LLC ("Accelerated") is in the business of purchasing defaulted financial obligations originated with other entities in the business of extending credit. Immediately upon purchase, such accounts are assigned for servicing to Oliphant Financial, LLC ("Oliphant"). Accelerated does not maintain, engage in the recovery of, nor keep record or information of attempts to recover, any of its assigned accounts. Rather, Oliphant, who Accelerated engages to recover its purchased accounts, maintains such accounts and all data and documentation associated with their purchase by Accelerated, conducts all activity in relation to the recovery of such accounts, and documents and maintains all records of any such activity. As such, Accelerated's responses to the requests herein are made pursuant to information within the knowledge of Oliphant and are based upon Oliphant's records of its regularly conducted business activities.

1.     Provide a list of all written communications between Plaintiff and Defendants including the date, time and method of communication.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request beyond the letter in issue will have no bearing on whether it violated the FDCPA. Objection to the extent that this Request seeks information regarding communications to which Plaintiff was a party and thus is already within the possession of Plaintiff.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

2.      Provide a list of all telephone calls concerning the Debt including the calling telephone number, the receiving telephone number, the participants to the call, and duration of the call.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request beyond any telephone calls between the Defendants and the Plaintiff will have no bearing on whether the Letter violated the FDCPA. Objection to the extent that this Request seeks information which is within the knowledge of Plaintiff. Objection to the extent that this Request seeks information regarding potential communications to which the Defendants were not a party.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they placed no telephone calls to the Plaintiff.

3.      Provide a list of all communications between Defendants and any credit bureaus regarding the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request will have no bearing on whether the Letter violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they have no knowledge of any such communications.

4.      Provide the legal name of the creditor to whom the Debt was owed on the date the Collection Letter was sent to the Plaintiff.

**RESPONSE:** Accelerated Inventory Management, LLC.

5.      Provide the legal name of the original creditor.

**RESPONSE:** WebBank.

6.      Describe in detail the chain of title for the Debt from the original creditor to the current creditor including the date of each transfer and the balance at the time of transfer.

**RESPONSE:** Defendants direct the Plaintiff to documents being provided herewith as responsive, to this Request.

7.      State how the balance as stated for in the Collection Letter was calculated including but not limited to providing a schedule of all principal, interest, late fees or other charges and payments.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

8.      State whether on the date the Collection Letter was sent to Plaintiff interest was accruing on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the

3

Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that interest was not accruing on the date the Letter was sent to Plaintiff.

9.      If the answer to the foregoing Interrogatory is in the negative, provide the date and the reason that interest ceased to accrue on the Debt. If the answer to the foregoing Interrogatory is in the positive, provide the date on which interest stated to accrue.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that interest ceased accruing on the Debt on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019.

10.     Identify all documents relating to the charging of interest, late fees or other charges for the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

11.     State whether on the date the Collection Letter was sent to Plaintiff, late fees and/or other charges including collection fees were accruing on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of

4

evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that late fees or other charges were not accruing on the date the Letter was sent to Plaintiff.

12.    If the answer to the foregoing Interrogatory is in the negative, provide the date and the reason that late fees and/or other charges including collection fees ceased to accrue.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that late fees or other charges, if any, ceased accruing on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019.

13.    State how it was communicated to Defendants that it should not collect or accrue interest on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request is vague and ambiguous. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that it is their practice not to collect or accrue interest upon any accounts

assigned to them after the date of charge-off by any account's predecessor. As such, Defendants have no information responsive to this Request.

14.    State how it was communicated to Defendants that it should not collect late fees and/or other collection charges on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request is vague and ambiguous. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that it is their practice not to collect or accrue late fees or other charges upon any accounts assigned to them after the date of charge-off by any account's predecessor. As such, Defendants have no information responsive to this Request.

15.    Identify each and every document that Defendants relied on to support their actions in attempting to collect Plaintiff's alleged Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. Objection to the extent that any agreement between Accelerated and any other entities reflecting the purchase of any accounts contain non-public, confidential information and closely guarded trade secrets, including the terms by which Accelerated purchases, and other entities sell, accounts which keep Accelerated competitive in the industry. Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product. Objection to the extent that this Request is vague and ambiguous.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

6

16.    Explain the steps Defendants took to determine the validity of the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of the instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that any agreement between Accelerated and any other entities reflecting the purchase of any accounts contain non-public, confidential information and closely guarded trade secrets, including the terms by which Accelerated purchases, and other entities sell, accounts which keep Accelerated competitive in the industry. Objection to the extent that this Request is vague and ambiguous.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

17.    Explain the steps Defendants took to determine the amount of the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary for the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that any agreement between Accelerated and any other entities reflecting the purchase of any accounts contain non-public, confidential information and closely guarded trade secrets, including the terms by which Accelerated purchases, and other entities sell, accounts which keep Accelerated competitive in the industry. Objection to the extent that this Request is vague and ambiguous.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

18.    Identify each individual who assisted in the preparation of the responses to these Interrogatories and specify the role each person performed.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of

7

evidence relevant to any party's claim or defense and not necessary for the fair adjudication of this instant matter.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that besides its counsel, Maurice Wutscher, LLP, the following individuals assisted in the preparation of the responses to these Interrogatories:

> Daniel Laux, Oliphant USA, LLC, Legal Outsource Manager & Custodian of Records
> Michael Crossan, Oliphant USA, LLC, CEO & Co-Custodian of Records

19.	Provide the name, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that Defendants may use to support its claims or defenses herein.

**RESPONSE:** Defendants direct the Plaintiff to their Rule 26 Initial Disclosures as responsive to this Request.

20.	If Defendants asserting a bona fide error, describe the error and all of the policies and/or measures that Defendants took to prevent or avoid the occurrence of this error, including the dates that such policies and/or measures were undertaken and by whom.

**RESPONSE:** Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3).

> Respectfully submitted,
>
> **MAURICE WUTSCHER, LLP**
>
> */s/ Shannon Miller*
> Shannon Miller (Pro Hac Vice)
> 10 W. Front Street
> Media, PA 19063
> (215)789-7151
> *Attorneys for Defendants*

Dated: March 11, 2021

8

## <u>CERTIFICATE OF SERVICE</u>

I, SHANNON MILLER, ESQ., do hereby certify that I have caused a true and correct copy of Defendants' Responses to the Plaintiff's First Set of Interrogatories to be served upon the following:

BARSHAY SANDERS, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530

*/s/ Shannon Miller*
Shannon Miller (Pro Hac Vice)

Dated: March 11, 2021

9

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                   No.: 8:20-cv-00752-JSM-TGW

    Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

    Defendants.

_____/

**VERIFICATION IN SUPPORT OF DEFENDANTS', DEFENDANTS', OLIPHANT FINANCIAL, LLC, AND ACCELERATED INVENTORY MANAGEMENT, LLC, RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR ADMISSIONS**

I, Michael F. Crossan, Co-Custodian of Records for Oliphant Financial, LLC and Co-Custodian of Records for Accelerated Inventory Management, LLC, verify that I am duly authorized to make this verification of behalf of Defendants, Oliphant Financial, LLC and Accelerated Inventory Management, LLC, and verify that the foregoing Responses to Plaintiff's First Set of Interrogatories and Amended Responses to Plaintiff's First Request for Admissions, with the exception of certain objections which were made by counsel on their behalf, are accurate to the best of my knowledge, information and belief, based upon review of relevant documents and information.

By: _____
Title: Co-Custodian of Records for Oliphant
Financial, LLC and Accelerated Inventory
Management, LLC

Date:  March 31, 2021

1

# Certification of Shannon Miller
# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                    No.: 8:20-cv-00752-JSM-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

      Defendants.

_____/

## DEFENDANTS', OLIPHANT FINANCIAL, LLC, AND ACCELERATED INVENTORY MANAGEMENT, LLC, RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively "Defendants"), by and through their undersigned attorney, hereby submit their Responses to the Plaintiff's First Request for Production, and state:

## RESPONSE TO REQUESTS TO PRODUCE

**RESPONSE APPLICABLE TO ALL REQUESTS:** Accelerated Inventory Management, LLC ("Accelerated") is in the business of purchasing defaulted financial obligations originated with other entities in the business of extending credit. Immediately upon purchase, such accounts are assigned for servicing to Oliphant Financial, LLC ("Oliphant"). Accelerated does not maintain, engage in the recovery of, nor keep record or information of attempts to recover, any of its assigned accounts. Rather, Oliphant, who Accelerated engages to recover its purchased accounts, maintains such accounts and all data and documentation associated with their purchase by Accelerated, conducts all activity in relation to the recovery of such accounts, and documents and maintains all records of any such activity. As such, Accelerated's responses to the requests herein are made pursuant to information within the knowledge of Oliphant and are based upon Oliphant's records of its regularly conducted business activities.

1. All documents inclusive of any agreements and communications regarding the Debt between Plaintiff and the original creditor.

1

**OBJECTION:** Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control. Objection to the extent that this Requests seeks documents related to communications to which Defendants were not a party.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

2. All documents inclusive of any agreements and communications regarding the Debt between Plaintiff and current creditor.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request regarding communications beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

3. All documents inclusive of any agreements and communications regarding the Debt between Plaintiff and Defendants.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request regarding communications beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

4. All documents inclusive of any communications and agreements concerning the Debt between Defendants and its client which authorized Defendants to act as its agent and/or assignee in the collection of the Debt.

**RESPONSE:**  Defendants state that they did not seek to recover the Debt on behalf of any third-party client. As such, Defendants do not have any documents responsive to this request.

5. All documents, inclusive of the placement file, received by Defendants from the current creditor placing the Debt with Defendants for collection.

**RESPONSE:**  Defendants state that the Debt was not placed with them by any third-party creditor for collection. As such, Defendants do not have any documents responsive to this request.

6. All documents inclusive of any agreements and communications concerning the Debt sent by Defendants to Plaintiff.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request regarding communications beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

7. All documents inclusive of any agreements and communications concerning the Debt received by Defendants from Plaintiff.

**OBJECTION:** Objection to the extent that this Request seeks documents which are already within Plaintiff's possession, custody and control.

**RESPONSE:**  Subject to and without waiving said objections, and to the extent responsive, Defendants do not have any documents responsive to this request.

8. All documents inclusive of any communications concerning the amount of the Debt, inclusive of any invoices, statements, or bills.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's

3

suggestion that Plaintiff owes the Debt to Accelerated. Plaintiff does not allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether the Letter violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith, as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

9. All documents inclusive of any agreements or communications evidencing the chain of title for the Debt from the original creditor to the current creditor.

**OBJECTION:** Objection to the extent that any agreement between Accelerated and any other entities reflecting the purchase of any accounts contain non-public, confidential information and closely guarded trade secrets, including the terms by which Accelerated purchases, and other entities sell, accounts which keep Accelerated competitive in the industry.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

10. All documents inclusive of any and communications concerning any reporting communications related to Plaintiff or the Debt made to TransUnion, Equifax or Experian.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request regarding communications beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, the Defendants do not have any knowledge of any documents responsive to this request.

11. All reports from any of the credit bureaus including TransUnion, Equifax or Experian related to Plaintiff's account.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter.  The Plaintiff's Complaint brings claims solely as it relates to the Letter and

4

telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request regarding communications beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, Defendants do not have any documents responsive to this request.

12. All audio recordings of any telephonic conversations held between Defendants and Plaintiff.

**RESPONSE:** Defendants state that there were no telephone calls placed to the Plaintiff. As such, Defendants do not have any materials responsive to this Request.

13. All documents inclusive of agreements or communications evidencing validation of the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that any agreement between Accelerated and any other entities reflecting the purchase of any accounts contain non-public, confidential information and closely guarded trade secrets, including the terms by which Accelerated purchases, and other entities sell, accounts which keep Accelerated competitive in the industry. Objection to the extent that this Request is vague and ambiguous as the term "validation" is not defined. Objection to the extent that this Request seeks information regarding potential communications to which the Defendants were not a party.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

14. All documents and communications concerning the cessation of the accrual of interest on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any

5

response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control. Objection to the extent that this Request seeks information regarding potential communications to which the Defendants were not a party.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that interest ceased accruing on the Debt on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019. As such, Defendants do not have any documents responsive to this request.

15. All documents and communications concerning the cessation of the accrual of late fees and/or other fees on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control. Objection to the extent that this Request seeks information regarding potential communications to which the Defendants were not a party.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that late fees or other charges, if any, ceased accruing on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019. As such, Defendants do not have any documents responsive to this request.

16. All documents and communications received by Defendants concerning the cessation of the accrual of interest on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between

6

Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that interest ceased accruing on the Debt on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019. As such, Defendants do not have any documents responsive to this request.

17. All documents and communications received by Defendants concerning the cessation of late fees and/or other fees on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that late fees or other charges, if any, ceased accruing on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019. As such, Defendants do not have any documents responsive to this request.

18. All documents and communications sent to Plaintiff concerning the cessation of the accrual of interest on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control. Objection to the extent that this Request seeks information regarding potential communications to which the Defendants were not a party.

7

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that interest ceased accruing on the Debt on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019. As such, Defendants do not have any documents responsive to this request.

19. All documents and communications sent to Plaintiff concerning the cessation of late fees and/or other fees on the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated, as well as alleged telephone calls to Plaintiff. Plaintiff does not dispute the validity of the Debt or allege that any other aspect of the Letter, including the balance being sought therein, form the basis of any claims. As such, any response to this Request will have no bearing on whether Defendants violated the FDCPA. Objection to the extent that this Request seeks documents related to the relationship between Plaintiff and the original creditor and thus which are already within Plaintiff's possession, custody and control. Objection to the extent that this Request seeks information regarding potential communications to which the Defendants were not a party.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that late fees or other charges, if any, ceased accruing on the date of charge-off by Accelerated's predecessor in interest which was on or about November 15, 2019. As such, Defendants do not have any documents responsive to this request.

20. All notes and entries in Defendant's computer system (e.g. account notes) concerning Plaintiff and/or the Debt.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

8

21. Manuals, instructions, policies, guidelines, and other documents and communications concerning Defendant's policies and procedures relevant to any bona fide error defense herein.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3).

22. All documents and communications concerning the training of Defendant's employees regarding the FDCPA.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3).

23. All documents and communications concerning the maintenance of procedures by Defendants to ensure compliance with, and avoid violations of, the FDCPA, relevant to any bona fide error defense herein.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented

over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3).

24. All documents and communications concerning any measures that Defendants took to avoid any bona fide error herein.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3).

25. All documents and communications concerning any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA similar to those alleged in the Complaint.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. This Request is not limited in either time or jurisdiction making it unduly burdensome and wholly disproportional to the needs of the case. Objection to the extent that the materials this Request seeks to elicit are of a public nature and thus equally accessible to Plaintiff. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that the Complaint brings claims as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated. The Complaint alleges that this suggestion violates the FDCPA because the Plaintiff never contracted with Accelerated for any extension of credit. However, contrary to Plaintiff's claims, the Letter does not suggest that Plaintiff contracted for

10

credit with Accelerated. Instead, the Letter reflects that Accelerated is the current creditor of the Debt, initially owed and incurred to WebBank, which was sold to Accelerated. As such, and because the Complaint does not suggest that the Letter violates the FDCPA for any other reason other than that Plaintiff denies contracting with Accelerated, a contention which Defendants do not deny and which the Letter does not suggest, Defendants have no knowledge of any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA similar to those alleged in the Complaint. Similarly, the Complaint also alleges that the Defendants placed harassing telephone calls to her. However, the Defendants' records, being provided herewith, reveal that no telephone calls were placed to the Plaintiff. As such, Defendants have no knowledge of any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA based upon alleged telephone calls which did not occur.

26. All documents and communications that relate to litigation and/or administrative actions brought against Defendants in the past three (3) years for alleged violations of the FDCPA similar to those alleged in the Complaint.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. This Request is not limited in jurisdiction making it unduly burdensome and wholly disproportional to the needs of the case. Objection to the extent that the materials this Request seeks to elicit are of a public nature and thus equally accessible to Plaintiff. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that the Complaint brings claims as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated. The Complaint alleges that this suggestion violates the FDCPA because the Plaintiff never contracted with Accelerated for any extension of credit. However, contrary to Plaintiff's claims, the Letter does not suggest that Plaintiff contracted for credit with Accelerated. Instead, the Letter reflects that Accelerated is the current creditor of the Debt, initially owed and incurred to WebBank, which was sold to Accelerated. As such, and because the Complaint does not suggest that the Letter violates the FDCPA for any other reason other than that Plaintiff denies contracting with Accelerated, a contention which Defendants do not deny and which the Letter does not suggest, Defendants have no knowledge of any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA similar to those alleged in the Complaint. Similarly, the Complaint also alleges that the Defendants placed harassing telephone calls to her. However, the Defendants' records, being provided herewith, reveal that no telephone calls were placed to the Plaintiff. As such, Defendants have no knowledge of any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA based upon alleged telephone calls which did not occur.

27. All documents and communications that relate to the reoccurrence of violations of the FDCPA similar to those alleged in the Complaint.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. This Request is not limited in either time or jurisdiction making it unduly burdensome and wholly disproportional to the needs of the case. Objection to the extent that the materials this Request seeks to elicit are of a public nature and thus equally accessible to Plaintiff. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that the Complaint brings claims as it relates to the Letter's suggestion that Plaintiff owes the Debt to Accelerated. The Complaint alleges that this suggestion violates the FDCPA because the Plaintiff never contracted with Accelerated for any extension of credit. However, contrary to Plaintiff's claims, the Letter does not suggest that Plaintiff contracted for credit with Accelerated. Instead, the Letter reflects that Accelerated is the current creditor of the Debt, initially owed and incurred to WebBank, which was sold to Accelerated. As such, and because the Complaint does not suggest that the Letter violates the FDCPA for any other reason other than that Plaintiff denies contracting with Accelerated, a contention which Defendants do not deny and which the Letter does not suggest, Defendants have no knowledge of any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA similar to those alleged in the Complaint. Similarly, the Complaint also alleges that the Defendants placed harassing telephone calls to her. However, the Defendants' records, being provided herewith, reveal that no telephone calls were placed to the Plaintiff. As such, Defendants have no knowledge of any complaint or criticism by any consumer or any government agency concerning violations of the FDCPA based upon alleged telephone calls which did not occur.

28. All documents and communications Defendants consulted to prepare, or that relate to, Defendant's answers to Plaintiff's interrogatories or to these production requests.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

29. All documents and communications Defendants intend to rely on at trial or in any dispositive motion.

12

**RESPONSE:** Defendants direct the Plaintiff to documents being provided herewith and state further that discovery is ongoing, and this response is subject to change.

30. Any insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**RESPONSE:** Defendants direct the Plaintiff to documents being provided herewith.

31. "Documents" referenced in Defendant's Rule 26(a)(1) disclosures.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. The Plaintiff's Complaint brings claims solely as it relates to the Letter and telephone calls allegedly received by the Plaintiff. Plaintiff does not allege that any other activities engaged in by the Defendants form the basis of any claims. As such, any response to this Request regarding communications beyond the Letter or any telephone calls to Plaintiff will have no bearing on whether the alleged communications in issue violated the FDCPA.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

32. All documents and communications that support or diminish any affirmative defense herein.

**OBJECTION:** Objection to the extent this Request is overly broad, unduly burdensome and not proportional to the needs of the case because it seeks information which is not relevant to the subject matter of the pending action, not reasonably calculated to lead to the discovery of evidence relevant to any party's claim or defense and not necessary to the fair adjudication of this instant matter. Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3) and Defendants direct the Plaintiff to documents being provided herewith as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

13

33. All documents and communications supporting or diminishing Defendant's First Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

34. All documents and communications supporting or diminishing Defendant's Second Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

35. All documents and communications supporting or diminishing Defendant's Third Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

36. All documents and communications supporting or diminishing Defendant's Fourth Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent that Defendants' policies, procedures, training, manuals, guidelines and collection methods were developed, refined, improved and implemented over time with a considerable amount of time and effort to keep Defendants competitive in the industry. As such they contain confidential information, are considered closely guarded trade secrets. Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants state that they are no longer relying on any affirmative defense pursuant to 15. U.S.C. § 1692k(c) or Fla. Stat. § 559.77(3).

14

37. All documents and communications supporting or diminishing Defendant's Fifth Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

38. All documents and communications supporting or diminishing Defendant's Sixth Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

39. All documents and communications supporting or diminishing Defendant's Seventh Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

40. All documents and communications supporting or diminishing Defendant's Eighth Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith.

41. All documents and communications supporting or diminishing Defendant's Ninth Affirmative Defense raised in the Answer.

15

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

42. All documents and communications supporting or diminishing Defendant's Tenth Affirmative Defense raised in the Answer.

**OBJECTION:** Objection to the extent this Request calls for the disclosure of information protected by the attorney/client privilege and which reflects attorney work product.

**RESPONSE:** Subject to and without waiving said objections, and to the extent responsive, Defendants direct the Plaintiff to documents being provided herewith as well as the documents publicly available in relation to Plaintiff's Chapter 7 voluntary bankruptcy proceeding filed in on December 31, 2019, case number 1-19-47809-cec, in the United States Bankruptcy Court for the Eastern District of New York.

Respectfully submitted,

**MAURICE WUTSCHER, LLP**

*/s/ Shannon Miller*
Shannon Miller (Pro Hac Vice)
10 W. Front Street
Media, PA 19063
(215)789-7151
*Attorneys for Defendants*

Dated: March 11, 2021

16

## CERTIFICATE OF SERVICE

I, SHANNON MILLER, ESQ., do hereby certify that I have caused a true and correct

copy of Defendants' Responses to the Plaintiff's First Request for Production to be served upon

the following:

BARSHAY SANDERS, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530

                                        */s/ Shannon Miller*
                                        Shannon Miller (Pro Hac Vice)

Dated: March 11, 2021

# Certification of Shannon Miller

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

Isabel Hernandez,

                Plaintiff(s),

                                   Case No: 8:20-cv-00873-WFJ-TGW

    **v.**

Oliphant Financial, LLC and Accelerated
Inventory Management, LLC,

                Defendant(s).

-----------------------------------------------------------------/

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**REQUESTS FOR ADMISSIONS**

    Plaintiff Isabel Hernandez, as and for responses to Defendants' requests for admissions, states, objects and alleges as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.    The following responses are made solely for the purposes of this action.  Each response is subject to all objections as to relevance, materiality and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in Court.

3.    By making the accompanying responses and objections, Plaintiff does not waive, and hereby expressly reserves, Plaintiff's right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Plaintiff makes the responses and objections herein without in any way implying that Plaintiff considers the requests, and responses to the requests, to be relevant or material to the subject matter of this action.

4.    Any response that indicates Plaintiff will produce documents or information is not an admission that Plaintiff actually possesses the documents or information demanded, or that any such documents or information exist and are in Plaintiff's possession, custody, or control, or that Plaintiff will not object on other grounds at the time of production.

5.    Plaintiff's responses are based upon information available to Plaintiff at this time, and Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, without obligating himself/herself to do so as discovery continues, in one or more subsequent supplemental responses.

## GENERAL OBJECTIONS

1.    Plaintiff objects to each instruction, definition, and request to the extent that such purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and any applicable Local Rules.

2.    Plaintiff objects to each instruction, definition, and request to the extent that such is so broad and unlimited as to time and scope as to be an unwarranted annoyance, embarrassment, harassment, and is oppressive. To comply with such instruction, definition, and request would be an undue burden and expense on Plaintiff.

3.    Plaintiff objects to each instruction, definition, and request to the extent that such is overly broad and unduly burdensome.

4.    Plaintiff objects to each instruction, definition, and request to the extent that such is phrased as argumentative and requires the adoption of an assumption.

5.    Plaintiff objects to each request to the extent such seeks documents or information irrelevant or immaterial to Plaintiff's claims and Defendant's defenses, and/ or are not reasonably calculated to lead to the discovery of admissible evidence.

6.    Plaintiff objects to each request to the extent that such contains subparts, or a compound, conjunctive, or disjunctive question.

7.    To the extent any of Defendant's requests seek answers that include expert material, Plaintiff objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time

period for exchanging expert reports set by the Court.

8.    Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

<strong><u>REQUESTS FOR ADMISSIONS</u></strong>

**<u>REQUEST FOR ADMISSION NO. 1</u>**: Admit that you entered into the Borrower Agreement.

   **<u>ANSWER</u>**: Deny.

**<u>REQUEST FOR ADMISSION NO. 2</u>**: Admit that you are the individual identified in the Loan Summary as the primary borrower.

   **<u>ANSWER</u>**: Admit.

**<u>REQUEST  FOR  ADMISSION  NO. 3</u>**: Admit that pursuant to the Borrower Agreement, WebBank issued to you the Loan.

   **<u>ANSWER</u>**: Deny.

**<u>REQUEST FOR ADMISSION NO. 4</u>**: Admit that you stopped making payments on the Loan.

   **<u>ANSWER</u>**: Admit.

**<u>REQUEST FOR ADMISSION NO. 5</u>**: Admit that the Loan ID number as reflected in the Loan Summary is the same as the "Original Account Number" provided in the Letter for the Account..

   **<u>ANSWER</u>**: Plaintiff can neither admit nor deny this request on the grounds that the document identified as the "Loan Summary" bears a watermark indicating that it purports to be a copy of another document and Plaintiff has not seen the original document, nor has the copy been authenticated.

**REQUEST FOR ADMISSION NO. 6**: Admit that the Loan and the Account are the same financial obligation.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 7**: Admit that the Letter identified that the original creditor of the Account was WebBank.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 8**: Admit that the Letter identified that Accelerated had purchased the Account.

**ANSWER**: Plaintiff admits that the Letter identifies Accelerated as the current creditor, but denies that such statement is accurate.

**REQUEST FOR ADMISSION NO. 9**: Admit that the Letter identified that Oliphant was contacting you to resolve the balance owed on the Account on behalf of Accelerated.

**ANSWER**: Plaintiff can neither admit nor deny this statement insofar as she does not understand what is meant by the contention that Oliphant was contacting her to "resolve" the account. Admit.

**REQUEST FOR ADMISSION NO. 10**: Admit that upon reading the Letter you were aware that it was about the amounts originally owed on the Loan to WebBank. .

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 11**: Admit that after receipt of the Letter, you did not contact Oliphant or Accelerated to dispute the Account, or any portion of it..

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 12**: Admit that you did not take any action in reliance on the Letter.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 13**: Admit that you did not refrain from taking any action in reliance on the Letter.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 14**: Admit that you did not contact Oliphant after receipt of the Letter.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 15**: Admit that you did not contact Accelerated after receipt of the Letter.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 16**: Admit that you read the Borrower Agreement prior to receiving the Loan.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 17**: Admit that prior to filing the Complaint you were aware that the Borrower Agreement required you to resolve any dispute regarding the Loan by arbitration only.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 18**: Admit that the Borrower Agreement permitted WebBank to assign the Loan to another party.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 19**: Admit that the Letter does not suggest that you entered into any agreement or contract with Accelerated for an extension of credit.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 20**: Admit that prior to filing the Complaint you did not investigate whether the Loan had been assigned to Accelerated.

**ANSWER**: Plaintiff can neither admit nor deny this statement, insofar as she does not understand what Defendant intends by the word "investigate" .

**REQUEST FOR ADMISSION NO. 21**: Admit that the Account is owed by you.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 22**: Admit that after receipt of the Letter you did not make any payments on the Account.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 23**: Admit that you have not incurred any costs or any expenses as a result of receiving the Letter.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO.24**: Admit that when you read the Letter, you did not believe that the Letter was claiming that you entered into any agreement or contract with Accelerated for an extension of credit.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 25**: Admit that when you read the Letter, you did not believe that the Letter was claiming that the Account was originated by Accelerated.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 26**: Admit that the Letter does not suggest that the Account was originated by Accelerated.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 27**: Admit that when you commenced the Bankruptcy you did not identify the claims you have advanced in the Complaint or the Amended Complaint as an asset.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 28**: Admit that at no time during the pendency of the Bankruptcy did you amend to identify the claims you have advanced in the Complaint or the Amended Complaint as an asset.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 29**: Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint on or about December 31, 2019.

**ANSWER**: Plaintiff can neither admit nor deny this request because Plaintiff cannot recall.

**REQUEST FOR ADMISSION NO. 30**: Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint before February 13, 2020.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 30 [sic.]**: Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint before April 15, 2020.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 30 [sic.]**: Admit that you have not sought to reopen the Bankruptcy in order to identify as an asset the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER**: Plaintiff admits that she has not sought to reopen her bankruptcy case, but denied this statement to the extent it is intended to suggest that the claim was not properly disclosed in her initial filing.

**REQUEST FOR ADMISSION NO. 31 [sic.]**: Admit that the trustee in the Bankruptcy did not have knowledge of the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 32 [sic.]**: Admit that the trustee in the Bankruptcy did not abandon the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 33 [sic.]**: Admit that the agreement between you and your attorneys, Barshay Sanders, PLLC, does not require you to pay any attorney fees out of pocket.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 34 [sic.]**: Admit that the agreement between you and your attorneys, Barshay Sanders, PLLC, does not reflect that you are assigning your right to, or interest in, any attorney fees awardable to you under the FDCPA or the FCCPA to them.

**ANSWER**: Plaintiff objects to this statement to the extent that it is written in the negative and is unintelligible as written and, therefore, cannot admit or deny same, as she does not understand what Defendant is asking.

**REQUEST FOR ADMISSION NO. 35 [sic.]**: Admit that you identified the Loan in your Bankruptcy schedules.

**ANSWER**: Plaintiff can neither admit nor deny this request because Defendant's definition of "Loan" is unintelligible, but nonetheless admits that Plaintiff's bankruptcy schedules identified Lending Club as a creditor of the estate

Barshay
Sanders PLLC

**REQUEST FOR ADMISSION NO. 36 [sic.]**: Admit that you did not review the telephone records for any telephone number at which you allege that you were called by either of the Defendants to identify if any calls were from a telephone number attributable to either of the Defendants before the Amended Complaint was filed.

**ANSWER**: Plaintiff can neither admit nor deny this request because it is unintelligible as written and Plaintiff cannot discern precisely what it is that she is being asked to admit.

**REQUEST FOR ADMISSION NO. 37 [sic.]**: Admit that you have no evidence in your possession that either of the Defendants ever placed a telephone call to you.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 38 [sic.]**: Admit that you never answered any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 39 [sic.]**: Admit that no voicemail for you was ever left for you as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Plaintiff can neither admit nor deny this request as Plaintiff cannot recall.

**REQUEST FOR ADMISSION NO. 40 [sic.]**: Admit that you did not receive telephone calls multiple times a day from either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 41 [sic.]**: Admit that you did not seek medical treatment as a result of any telephones call which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 42 [sic.]**: Admit that you did not feel harassed as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 43 [sic.]**: Admit that you did not fear that either of the Defendants would try to extract personal information from you as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 44 [sic.]**: Admit that you did not feel anxious as a result of any telephone calls which you allege were as placed to you by either of the Defendants.

**ANSWER**: Deny

**REQUEST FOR ADMISSION NO. 45 [sic.]**: Admit that you did not feel apprehension as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny

**REQUEST FOR ADMISSION NO. 46 [sic.]**: Admit that you did not suffer anguish as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny

**REQUEST FOR ADMISSION NO. 47 [sic.]**: Admit that you did not seek legal representation as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 48 [sic.]**: Admit that you did not review the Complaint or the Amended Complaint before either was filed by your attorneys.

**ANSWER**: Deny.

Dated: April 2, 2021

Barshay
Sanders PLLC

As to objections:

**BARSHAY SANDERS, PLLC**

By: /s *Craig B. Sanders*
Craig B. Sanders, Esq.
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Email: csanders@barshaysanders.com
Tel: (516) 203-7600
Fax: (516) 282-7878
Our File No.: 118981
*Attorneys for Plaintiff*

# Certification of Shannon Miller
# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

Isabel Hernandez,

                 Plaintiff(s),

                                      Case No: 8:20-cv-00873-WFJ-TGW

     v.

Oliphant Financial, LLC and Accelerated Inventory
Management, LLC,

                 Defendant(s).
-------------------------------------------------------------------/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUESTS FOR PRODUCTION**

         Plaintiff Isabel Hernandez, as and for responses to Defendants' requests for production, states, objects and alleges as follows:

**PRELIMINARY STATEMENT**

         1.     Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

         2.     By making the accompanying responses and objections, Plaintiff does not waive, and hereby expressly reserves, Plaintiff's right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Plaintiff makes the responses and objections herein without in any way implying that Plaintiff considers the requests, and responses to the requests, to be relevant or material to the subject matter of this action.

         3.     Plaintiff will produce responsive documents only to the extent that such documents are in Plaintiff's possession, custody, or control.

         4.     Publicly available documents including, but not limited to, court papers and documents available on the Internet, will not be produced.

         5.     Any response that indicates Plaintiff will produce documents or information is not an admission that Plaintiff actually possesses the documents or information demanded, or that any

such documents or information exist and are in Plaintiff's possession, custody, or control, or that Plaintiff will not object on other grounds at the time of production.

6.    Plaintiff's responses are based upon information available to Plaintiff at this time, and Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, without obligating himself/herself to do so as discovery continues, in one or more subsequent supplemental responses.

## GENERAL OBJECTIONS

1.    Plaintiff objects to each instruction, definition, and request to the extent that such purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and any applicable Local Rules.

2.    Plaintiff objects to each instruction, definition, and request to the extent that such is so broad and unlimited as to time and scope as to be an unwarranted annoyance, embarrassment, harassment, and is oppressive. To comply with such instruction, definition, and request would be an undue burden and expense on Plaintiff.

3.    Plaintiff objects to each instruction, definition, and request to the extent that such is overly broad and unduly burdensome.

4.    Plaintiff objects to each instruction, definition, and request to the extent that such is phrased as argumentative and requires the adoption of an assumption.

5.    Plaintiff objects to each request to the extent such seeks documents or information irrelevant or immaterial to Plaintiff's claims and Defendant's defenses, and/ or are not reasonably calculated to lead to the discovery of admissible evidence.

6.    Plaintiff objects to each request to the extent that such contains subparts, or a compound, conjunctive, or disjunctive question.

7.    Plaintiff objects to each request to the extent that such seeks information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege.  Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

8.    Plaintiff objects to each request to the extent that such would necessitate the preparation of a compilation, abstract, audit or summary from documents.

9.    Plaintiff objects to each request to the extent that such seeks information regarding tax returns, including income tax returns, W-2 and/or 1099 forms.  Such materials are privileged under federal and state law.

10.    Plaintiff objects to each request as overbroad and unduly burdensome to the extent it seeks information that is readily or more accessible to Defendant from Defendant's own files, from documents or information already in Defendant's possession, or from documents or information that Plaintiff previously produced to Defendant.  Responding to such request would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such request is substantially the same or less for Defendant as for Plaintiff.

11.    Plaintiff objects to each request to the extent that such has, in substance, been previously propounded.  Continuous and/or duplicative discovery into the same matter constitutes oppression, and Plaintiff further objects on that ground.

12.    Plaintiff objects to each request to the extent that such calls for the production of information that was produced to the Plaintiff by other entities and that may contain confidential and/or private information.

13.    To the extent any of Defendant's requests seek answers that include expert material, Plaintiff objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

14.    Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

<u>**REQUESTS TO PRODUCE**</u>

**REQUEST FOR PRODUCTION NO. 1:** All documents relating to, reflecting or memorializing any communications you made to, received from or had with Oliphant related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:** In addition to the general objections noted above, Plaintiff objects to this demand as incomprehensible to the extent that Defendant's definitions of "Loan" and "Account" are vague. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not currently in possession or control of documents responsive to this request, other than the letter which is annexed to the Complaint in this action and filed as *Dkt. No.* 1-1.

**REQUEST FOR PRODUCTION NO. 2:** All documents relating to, reflecting or memorializing any communications you made to, received from or had with Accelerated related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:** In addition to the general objections noted above, Plaintiff objects to this demand as incomprehensible to the extent that Plaintiff does not understand what is sought by the demand that Plaintiff produce documents "relating to, reflecting or memorializing any communications" she may have had with Accelerated. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not in possession of any documents responsive to this request as she understands it.

**REQUEST FOR PRODUCTION NO. 3:** All documents relating to, reflecting or memorializing any communications you made to, received from or had with WebBank related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:** In addition to the general objections noted above, Plaintiff objects to this demand as incomprehensible to the extent that Plaintiff does not understand what is sought by the demand that Plaintiff produce documents "relating to, reflecting or memorializing any communications" she may have had with WebBank. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not in possession of any documents responsive to this request as she understands it.

**REQUEST FOR PRODUCTION NO. 4:** All documents relating to, reflecting or memorializing any communications you made to, received from or had with Lending Club related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

**RESPONSE:** In addition to the general objections noted above, Plaintiff objects to this demand as incomprehensible to the extent that Plaintiff does not understand what is sought by the demand that Plaintiff produce documents "relating to, reflecting or memorializing any communications" she may have had with Lending Club. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not in possession of any documents responsive to this request as she understands it.

**REQUEST FOR PRODUCTION NO. 5:** All documents relating to, reflecting or memorializing any communications you made to, received from or had with any 3rd party related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint or Amended Complaint.

> **RESPONSE:** In addition to the general objections noted above, Plaintiff objects to this demand as incomprehensible to the extent that Plaintiff does not understand what is sought by the demand that Plaintiff produce documents "relating to, reflecting or memorializing any communications" she may have had with any 3rd party. Plaintiff further objects to this demand in that the requested information is broad and unlimited as to "any 3rd party". Plaintiff further objects to this demand as incomprehensible to the extent that Defendant's definitions of "Loan" and "Account" are vague. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not currently in possession or control of documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 6:** All documents in your possession concerning or related to the Borrower Agreement, the Account and/or the Loan.

> **RESPONSE:** In addition to the general objections noted above, Plaintiff objects to this demand as incomprehensible to the extent that Defendant's definitions of "Loan" and "Account" are vague. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not currently in possession or control of documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 7:** All retainer agreements or other documents reflecting any agreement in place with your attorneys, Barshay Sanders, PLLC, regarding their representation of you as it relates to the Complaint or Amended Complaint, including any agreement to pay attorney's fees or which reflects the terms by which attorney's fees will be paid.

> **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this request to the extent that it is not relevant to any claim or defense in this action and is not likely to lead to the discovery of admissible evidence. Plaintiff further objects to this request because Defendant's request seeks information protected from disclosure by the attorney-client privilege, deliberative process privilege, and /or the attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 8:** All expert reports that have been prepared by you, for you or at your direction regarding the allegations of the Complaint or Amended Complaint.

> **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this request because the request is premature and improperly seeks trial strategy. Plaintiff will identify any expert witness(es) Plaintiff intends to call to testify if, and when, Plaintiff is required to by an applicable Order of the Court. Subject to and


Barshay Sanders PLLC

without waiving the foregoing general and specific objections, Plaintiff is not in possession of any such documents at this time.

**REQUEST FOR PRODUCTION NO. 9:** All documents and exhibits that you intend to use or rely upon at trial or at any time in support of the allegations of the Complaint or Amended Complaint.

    **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this request because the request is premature and improperly seeks trial strategy. Plaintiff will identify the documents and exhibits she intends to rely on at trial if, and when, she is required to by an applicable Order of the Court.

**REQUEST FOR PRODUCTION NO. 10:** Any reports, diagnoses, bills, invoices, statements or any other documents that you have received from any professionals who have rendered treatment to you for any damages you allege to have suffered.

    **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this demand because it seeks information which is subject to Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or other medical privacy laws. Without admitting that r documents exist, Plaintiff will not produce any relevant documents responsive to this request in the absence of an appropriate Confidentiality Order.

**REQUEST FOR PRODUCTION NO. 11:** Any bills, invoices, statements or any other documents that you have received related to any expenses you allege to have incurred and/or paid.

    **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this request as being unintelligible as written, to the extent that the request is not a complete sentence.  Plaintiff further objects to this request on the grounds that it is so vague, overbroad and unlimited as to time and scope as to be an unwarranted annoyance, embarrassment, harassment, and is oppressive.

**REQUEST FOR PRODUCTION NO. 12:** Attach any documents, transcripts or recordings which you expect to use during the testimony of a witness or to introduce as an exhibit during the trial of this matter.

    **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this demand as premature and improperly seeks trial strategy. Plaintiff will identify the documents, transcripts, or recordings Plaintiff intends to rely on at trial, if and when she is required to do so by an applicable Order of the Court. Subject to and without waiving the foregoing objections, Plaintiff refers Defendant to the Letter annexed to the Complaint.

**REQUEST FOR PRODUCTION NO. 13:** All documents referenced in your answers or responses to Defendants' Interrogatories, referenced in your Complaint or Amended Complaint, referenced your Rule 26 Initial Disclosures or referenced in any pleadings filed in this matter.

       **RESPONSE:** Subject to and without waiving the foregoing objections, Plaintiff refers Defendant to the Letter annexed to the Complaint.

**REQUEST FOR PRODUCTION NO. 14:** All complaints in any action in which you were a named plaintiff and/or a member of any proposed class identified in such complaints for the six (6) calendar years which precede the filing of the Complaint or Amended Complaint.

       **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff specifically objects to this request because the request seeks documents which are available in the public record and equally accessible to all parties. Plaintiff further objects to this request because Defendants seek information outside of the Complaint, is not relevant to any claim or defense in this action, and is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the requested documentation will not assist either party in determining whether Defendants had the right to collect the alleged Debt.

**REQUEST FOR PRODUCTION NO. 15:** All complaints in any action in which you were a named defendant for the six (6) calendar years which precede the filing of the Complaint or Amended Complaint.

       **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff specifically objects to this request because the request seeks documents which are public record and equally accessible to all parties. Plaintiff further objects to this request because Defendants seek information outside of the Complaint, is not relevant to any claim or defense in this action, and is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the requested documentation will not assist either party in determining whether Defendants had the right to collect the alleged Debt.

**REQUEST FOR PRODUCTION NO. 16:** All documents relating to the "FDCPA Claims against debt collectors" which you referenced in the Bankruptcy, including any complaint which has been filed regarding such claim(s), as well as any "collection letters", as also referenced in the Bankruptcy, in relation to such FDCPA Claims.

       **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this request to the extent that it is not relevant to any claim or defense in this action and is not likely to lead to the discovery of admissible evidence. Plaintiff further objects to this request as being overbroad and irrelevant, to the extent that the requested documentation will not assist either party in determining whether Defendants had the right to collect the alleged Debt.

Barshay Sanders PLLC

**REQUEST FOR PRODUCTION NO. 17:** All documents relating to, reflecting or memorializing the terms and conditions of any release and settlement agreement reached with any of the party or parties against whom you had/have an FDCPA claim as referenced in your Bankruptcy, including the total amount of compensation and/or relief being provided as well as the specific amounts you receive and that your attorneys, Barshay Sanders, PLLC receive respectively.

> **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff specifically objects to this request as overbroad and seeking information outside of the scope of the Complaint. Obtaining information to this request will not assist either party in determining whether Defendants had the right to collect the alleged Debt.

**REQUEST FOR PRODUCTION NO. 18:** All documents which are the basis for your allegations that you did not owe the Account to Accelerated.

> **RESPONSE:** In addition to the general objections and reservation of rights noted above, Plaintiff objects to this request because it requires Plaintiff to prove a negative. More specifically, Plaintiff cannot produce documents showing that she does not owe a debt to an entity with which she has had no contact or relationship of any kind. Subject to and without waiving the foregoing, Plaintiff is not currently in possession of documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 19:** All telephone records of incoming and outgoing telephone calls and text messages for any telephone number(s) at which you allege that either of the Defendants placed calls to you from January 1, 2019 to the present.

> **RESPONSE:** In addition to the general objections noted above, Plaintiff specifically objects to this request to the extent that it seeks production of documents already in Defendants' possession, custody and/or control. Subject to and without waiving the foregoing objections and reservation of rights, Plaintiff is not currently in possession of documents responsive to this request. Plaintiff reserves the right to supplement this response – without obligating herself to do so – insofar as discovery continues.

Dated: April 2, 2021                         **BARSHAY SANDERS, PLLC**

By: */s Craig B. Sanders*
Craig B. Sanders, Esq.
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Email: csanders@barshaysanders.com
Tel: (516) 203-7600
Fax: (516) 282-7878
Our File No.: 118981
*Attorneys for Plaintiff*

# Certification of Shannon Miller

# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

Isabel Hernandez,

              Plaintiff(s),

                Case No: 8:20-cv-00873-WFJ-TGW

     v.

Oliphant Financial, LLC and Accelerated
Inventory Management, LLC,

             Defendant(s).

----------------------------------------------------------------/

**PLAINTIFF'S RESPONSES TO DEFENDANTS'**
**FIRST SET OF INTERROGATORIES**

     Plaintiff Isabel Hernandez, as and for answers to Defendants' interrogatories, states, objects and alleges as follows:

**PRELIMINARY STATEMENT**

     1.    Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

     2.    By making the accompanying responses and objections, Plaintiff does not waive, and hereby expressly reserves, Plaintiff's right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Plaintiff makes the responses and objections herein without in any way implying that Plaintiff considers the interrogatories and responses to the interrogatories to be relevant or material to the subject matter of this action.

     3.    Any response that indicates Plaintiff will produce documents or information is not an admission that Plaintiff actually possesses the documents or information demanded, or that any such documents or information exist and are in Plaintiff's possession, custody, or control, or that Plaintiff will not object on other grounds at the time of production.

     4.    Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or

all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental responses.

5.    Plaintiff's responses are based upon information available to Plaintiff at this time, and Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, without obligating himself/herself to do so as discovery continues, in one or more subsequent supplemental responses.

**GENERAL OBJECTIONS**

1.    Plaintiff objects to each instruction, definition, and interrogatory to the extent that such purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and any applicable Local Rules.

2.    Plaintiff objects to each instruction, definition, and interrogatory to the extent that such is so broad and unlimited as to time and scope as to be an unwarranted annoyance, embarrassment, harassment, and is oppressive. To comply with such instruction, definition, and interrogatory would be an undue burden and expense on Plaintiff.

3.    Plaintiff objects to each instruction, definition, and interrogatory to the extent that such is overly broad and unduly burdensome.

4.    Plaintiff objects to each instruction, definition, and interrogatory to the extent that such is phrased as argumentative and requires the adoption of an assumption.

5.    Plaintiff objects to each interrogatory to the extent such seeks documents or information irrelevant or immaterial to Plaintiff's claims and Defendant's defenses, and/ or are not reasonably calculated to lead to the discovery of admissible evidence.

6.    Plaintiff objects to each interrogatory to the extent that such contains subparts, or a compound, conjunctive, or disjunctive question.

7.    Plaintiff objects to each interrogatory to the extent that such seeks information protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

8.    Plaintiff objects to each interrogatory to the extent that the answer to such can be

Barshay
Sanders PLLC

derived or ascertained from the business records of Plaintiff, or from an examination or inspection of such records. The burden of deriving or ascertaining the answer to such a request is substantially the same for Defendant as it is for Plaintiff.

9. Plaintiff objects to each interrogatory to the extent that such would necessitate the preparation of a compilation, abstract, audit or summary from documents.

10. Plaintiff objects to each interrogatory to the extent that such seeks information regarding tax returns, including income tax returns, W-2 and/or 1099 forms. Such materials are privileged under federal and state law.

11. Plaintiff objects to each interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily or more accessible to Defendant from Defendant's own files, from documents or information already in Defendant's possession, or from documents or information that Plaintiff previously produced to Defendant. Responding to such interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such interrogatory is substantially the same or less for Defendant as for Plaintiff.

12. Plaintiff objects to each interrogatory to the extent that such has, in substance, been previously propounded. Continuous discovery into the same matter constitutes oppression, and Plaintiff further objects on that ground.

13. Plaintiff objects to each interrogatory to the extent that such calls for the production of information that was produced to the Plaintiff by other entities and that may contain confidential and/or private information.

14. To the extent any of Defendant's interrogatories seek answers that include expert material, Plaintiff objects to any such interrogatories as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

15. Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

**PLAINTIFF'S RESPONSES TO DEFENDANTS' INTERROGATORIES**

**INTERROGATORY NO. 1**. Identify each person you expect to call as a witness at the trial of this matter, provide their address and telephone number, and state the subject matter on which and the substance of the facts to which each witness is expected to testify.

> **ANSWER**: Plaintiff objects to this interrogatory as premature and improperly seeks trial strategy. Plaintiff will identify the witnesses Plaintiff intends to call to testify, if and when she is required to do so by an applicable Order of the Court.

**INTERROGATORY NO. 2**. Identify each document which you expect to use during the testimony of a witness or to introduce as an exhibit during the trial of this matter, and with respect to each such document state the witness(es) through whom you expect to introduce such document and state any other person having knowledge of the contents of said document.

> **ANSWER**: Plaintiff objects to this interrogatory as premature and improperly seeks trial strategy. Plaintiff will identify the documents Plaintiff intends to reply on at trial, if and when she is required to by an applicable Order of the Court.

**INTERROGATORY NO. 3**. Describe the nature of the Loan; who opened the Loan, in whose name(s) the Loan was opened, who's personal identifying information was used to open the account, based upon who's credit was the account application submitted, who the primary user(s) of the Loan were, who were authorized users, the date the Loan was opened, what the governing terms and conditions for use of the Loan were including any and all updates to such terms during the time the Loan was open, the nature of the purchases the Loan was used for and when the last payment on the Loan was made. Attach all documents which support your response.

> **ANSWER**: In addition to the general objections set forth above, Plaintiff specifically objects to this interrogatory because it contains approximately twelve (12) subparts and is an attempt by Defendant to circumvent the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). Plaintiff also objects to this interrogatory because Defendant seeks documents or information that should be more accessible to Defendant from Defendant's own files, or from documents or information already in Defendant's possession.

**INTERROGATORY NO. 4.** State whether you incurred the Loan. If you deny that you incurred the Loan set forth all facts and attach all documents which support such contention.

> **ANSWER**: Subject to and without waiving the foregoing objections, Plaintiff incurred the Loan.

Barshay
Sanders PLLC

**INTERROGATORY NO. 5**. State whether you identified the Loan in your Bankruptcy, either in the initial petition or otherwise, and state whom you identified as the creditor of the Loan and why.

> **ANSWER**: In addition to the general objections set forth above, Plaintiff specifically objects to this interrogatory because the interrogatory requests information beyond the scope of the Complaint. Plaintiff further objects to this interrogatory to the extent Defendant seeks documents and/or information which are matters of public record and equally accessible to all parties. Subject to and without waiving the foregoing, Plaintiff identified the loan she received from Lending club in her bankruptcy filing in December 2019.

**INTERROGATORY NO. 6**. State whether the Loan is the same financial obligation allegedly owed by you as the Account. If you maintain that the Loan is not the same financial obligation owed by you as the Account set forth all facts and attach all documents which support such contention.

> **ANSWER**: In addition to the general objections set forth above, Plaintiff specifically objects to this interrogatory because Defendant seeks documents or information that should be more accessible to Defendant from Defendant's own files, or from documents or information already in Defendant's possession.

**INTERROGATORY NO. 7**. Identify all facts and documents which support your allegations in the Complaint and Amended Complaint that you did not/do not owe any money on the Account to Accelerated.

> **ANSWER**: In addition to the general objections set forth above, Plaintiff also objects to this interrogatory because it seeks that Plaintiff prove a negative. Plaintiff cannot produce documents which do not exist or have not been produced to Plaintiff. The absence of documentation itself speaks to the claim that Plaintiff does not owe the alleged Debt to Accelerated.
>
> Subject to and without waiving the foregoing objections, Plaintiff states that she never received any correspondence or notice from WebBank informing her that the alleged Debt was purportedly being sold, transferred or assigned to any other entity. Similarly, Plaintiff never received any correspondence or notice from Accelerated informing her that it had purportedly acquired any interest of any kind in the alleged Debt.

**INTERROGATORY NO. 8**. Identify any and all communications you have made to or received from WebBank related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication.

If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER**: In addition to the general objections set forth above, Plaintiff specifically objects to this interrogatory because it contains approximately twelve (12) subparts and is an attempt by Defendant to circumvent the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to this interrogatory to the extent that it is unlimited in time and scope, so as to render the interrogatory vague, overbroad, harassing and oppressive.

Subject to and without waiving the foregoing objections, Plaintiff does not currently recall receiving communications from WebBank. Plaintiff reserves the right to supplement this response – without obligating herself to do so – insofar as discovery continues.

**INTERROGATORY NO. 9**. Identify any and all communications you have made to or received from Oliphant related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3 and 8, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). As a result, Plaintiff need not respond to same. Plaintiff further objects to this interrogatory on the grounds that it seeks information that is readily or more accessible to Defendant from Defendant's own file.

Subject to and without waiving the foregoing objections, Plaintiff refers Defendant to the Letter annexed to the Complaint. Plaintiff expressly reserves the right to supplement this response-without obligating herself to do so-insofar as discovery continues.

**INTERROGATORY NO. 10**. Identify any and all communications you have made to or received from Accelerated related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

**ANSWER**: In addition to the general objections set forth above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 and 9, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). As a result, Plaintiff need not

Barshay
Sanders PLLC

respond to same.  Plaintiff further objects to this interrogatory on the grounds that it seeks information that is readily or more accessible to Defendant from Defendant's own file.

Subject to and without waiving the foregoing objections, Plaintiff recalls receiving an excessive amount of phone calls from Accelerated. Plaintiff expressly reserves the right to supplement this response-without obligating herself to do so-insofar as discovery continues.

**INTERROGATORY NO. 11**. Identify any and all communications you have made to or received from Lending Club related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

> **ANSWER**: In addition to the general objections set forth above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9 and 10, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same.  Plaintiff objects to this interrogatory on the grounds that it similarly contains approximately twelve (12) subparts is an attempt by Defendant to circumvent the limitations imposed by Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to this interrogatory to the extent that it is so unlimited in time and scope, so as to render the interrogatory vague, overbroad, harassing and oppressive.  Plaintiff objects to this interrogatory on the grounds that it seeks information that is not relevant to any claim or defense in this action.
>
> Subject to and without waiving the foregoing objections, Plaintiff cannot currently recall the specific documents she received or sent to Lending Club, but is aware of Lending Club and their relation to the alleged Debt.  Plaintiff reserves the right to supplement this response – without obligating herself to do so – insofar as discovery continues.

**INTERROGATORY NO. 12**. Identify any and all communications you have made to or received from any 3rd party related to the Account, the Loan, the Borrower Agreement, the Letter or the subject matter which forms the allegations of the Complaint and Amended Complaint, including the date, time and substance of each communication as well as the parties involved in the communication. If any alleged communication is in the form of, or has been reduced to, a document as the term is defined above, please attach same to your response.

> **ANSWER**: In addition to the general objections set forth above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10 and 11, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same.  Plaintiff further objects to this interrogatory in that it also contains

approximately ten (10) subparts and itself exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  Plaintiff further objects to this interrogatory on the grounds that the requested information is overbroad, unduly vague and unlimited as to "any third party".

Subject to and without waiving the foregoing, Plaintiff cannot currently identify all written and oral communications between herself and any third party relating to the allegations in the Complaint.

**INTERROGATORY NO. 13**. Identify all action you took in response to having received the Letter and/or any action that you refrained from taking in response to having received the Letter.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11 and 12, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same.  Plaintiff furtehr objects to this interrogatory in that the interrogatory is vague and unclear to the extent it relies on the term "all action", which is not defined in Defendant's demand.
>
> Subject to and without waiving the foregoing objections, Plaintiff currently recalls remitting the Letter to Plaintiff's counsel and instructed Accelerated cease calling her and to direct any further communications to counsel.

**INTERROGATORY NO. 14**. Identify specifically each of the actual damages that you are seeking recovery for and for each damage:

a) state the date when you first sustained these damages;

b) whether you are still suffering from these damages as of this date and if so how and in what manner you are still suffering;

c) describe specifically the nature of each damages and if applicable the physical nature of these damages;

d) whether you have sought medical treatment for these damages;

e) whether you have lost time from work and if so how much time;

f) please quantify the amount of out-of-pocket expenses incurred as the result of these damages, including any lost time from work;

g) please quantify the dollar amount of each damage described.

> **ANSWER**: In addition to the objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12 and 13, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same. .

Barshay Sanders PLLC

**INTERROGATORY NO. 15**. For each damage described in the proceeding Interrogatory, identify all professionals who have rendered treatment to you. As part of your answer state the dates and times of any treatments you received or consultations with said professionals, the duration of the treatments or consultations, any out-of-pocket expenses you incurred as a result of the treatment or consultations, and any diagnoses provided to you (either oral or written) by said professionals.

> **ANSWER**:  In addition to the objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13 and 14, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same.  Plaintiff further objects to this interrogatory because it seeks information which is subject to Health Information Portability and Accountability Act ("HIPAA") or other medical privacy laws. Plaintiff also objects to this interrogatory on the grounds that it is unduly broad and overly burdensome. Subject to and without waiving the foregoing objections, Plaintiff will not respond to this interrogatory in the absence of a proper Confidentiality Order.

**INTERROGATORY NO. 16**. Identify any written or oral statements relevant to this matter not already set forth in your answers to these interrogatories and attach copies of all written statements or copies of any recordings of conversations that you have had with any parties relevant to the subject matter of the Complaint and Amended Complaint.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14 and 15, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same.  Plaintiff further objects to this Interrogatory in that it seeks information that is readily or more accessible to Defendant from Defendant's own files, or from documents/information in Defendant's possession. Specifically, information pertaining to recorded telephone conversations with Plaintiff is/are more accessible to Defendant from Defendant's own files.
>
> Subject to and without waiving the foregoing, Plaintiff does not currently recall any written or oral statements other than those already set forth in the Complaint, Amended Complaint and those otherwise identified in the interrogatory responses herein.  Plaintiff expressly reserves the right to supplement this response – without obligating herself to do so-insofar as discovery continues.

**INTERROGATORY NO. 17**. Identify all attorney's fees being sought pursuant to 15 U.S.C. § 1692k(a)(3) as of the date the answers to these Interrogatories are provided.

> **ANSWER**: Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15 and 16, the

Barshay Sanders PLLC

proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). As a result, Plaintiff need not respond to same.

Subject to and without waiving the foregoing objections, Plaintiff will provide details concerning her attorney fees as part of a fee application at the conclusion of this matter.

**INTERROGATORY NO. 18**. Identify the nature of the "FDCPA Claims against debt collectors" which you referenced in the Bankruptcy, specifically in the initial petition or otherwise, and provide the name of the party or parties against whom you had/have an FDCPA claim, attach any complaint which has been filed regarding such claim, and provide the status of such claim including whether the claim is still pending, has settled, or otherwise has been resolved.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16 and 17, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). As a result, Plaintiff need not respond to same. Plaintiff further objects to this interrogatory on the grounds that it is unduly broad and overly burdensome. Plaintiff also objects to this interrogatory because Defendant seeks information outside of the Complaint. Specifically, information related to any other possible claims made by Plaintiff against entities other than Defendants are irrelevant to the action at hand, and are not required to determine whether Defendants had the right to collect the alleged Debt.

**INTERROGATORY NO. 19**. Identify all facts and attach all documents which support your contention that venue is proper in the Middle District of Florida, despite you being a citizen of New York.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). As a result, Plaintiff need not respond to same. Plaintiff further objects to this interrogatory on the grounds that Defendant has not alleged improper venue in any motion or Answer to the Court and, therefore is irrelevant.
>
> Subject to and without waiving the foregoing objections, Plaintiff refers Defendant to the allegations of the Amended Complaint.

**INTERROGATORY NO. 20**. Identify the date on which you first had contact with your attorneys, Barshay Sanders, PLLC, regarding the claims in the Complaint and Amended Complaint.

> **ANSWER**: Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19, the proffer of this interrogatory exceeds the number of interrogatories permitted

Barshay Sanders PLLC

under Fed. R. Civ. P. 33(a)(1).  As a result, Plaintiff need not respond to same.  Plaintiff further objects to this interrogatory on the grounds that it is not reasonably related to any claim or defense in this action.

**INTERROGATORY NO. 21**. If you have denied any of the Requests for Admission, served contemporaneously herewith, identify the factual basis for any such denial and attach any documents which support your denial.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  Plaintiff similarly objects to this interrogatory because it is an attempt by Defendant to circumvent the limitations imposed under Fed. R. Civ. P. 33(a)(1) by formulating an additional fifty-one (51) requests for interrogatories.  Plaintiff further objects to this interrogatory on the grounds that it seeks to impose an obligation on her beyond that required under Fed. R. Civ. Pro. 36.

**INTERROGATORY NO. 22**. Identify the telephone number(s) and corresponding telephone service provider(s) at which you allege that either of the Defendants placed telephone calls to you, as alleged in the Amended Complaint.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  Plaintiff further objects to this Interrogatory in that it seeks information that is readily or more accessible to Defendant from Defendant's own files, or from documents/information in Defendant's possession. Plaintiff also objects to this interrogatory in that it seeks personal and protected information.  Plaintiff will not identify her telephone number(s) and corresponding telephone service provider(s) absent an appropriate Confidentiality Order.

**INTERROGATORY NO. 23**. Identify the telephone number(s) from which you allege that either of the Defendants placed telephone calls to you, as alleged in the Amended Complaint.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1).  Plaintiff further objects to this Interrogatory in that it seeks information that is readily or more accessible to Defendant from Defendant's own files, or from documents/information in Defendant's possession.

Barshay
Sanders PLLC

**INTERROGATORY NO. 24**. Identify the date(s) and time(s) of all telephone calls which you allege that either of the Defendants placed to you, as alleged in the Amended Complaint.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to this Interrogatory in that it seeks information and/or documents which are more accessible to Defendants from Defendants' own files, and/ or from documents or information already in Defendants' possession.
>
> Subject to and without waiving the foregoing objections, Plaintiff currently recalls speaking with Accelerated, prior to and after receiving the Letter, but cannot currently recall the specific dates of contact.

**INTERROGATORY NO. 25**. Identify all facts and circumstances upon which you rely if you assert that the claims as reflected by the Complaint and Amended Complaint were not property of the estate in your Bankruptcy and/or that the claims as reflected by the Complaint and Amended Complaint were abandoned by the trustee of your Bankruptcy.

> **ANSWER**: In addition to the general objections noted above, Plaintiff objects to this request to the extent that, when coupled with the compound requests set forth in Interrogatory Nos. 3, 8 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23 and 24, the proffer of this interrogatory exceeds the number of interrogatories permitted under Fed. R. Civ. P. 33(a)(1). Plaintiff objects to this interrogatory on the grounds that it is unduly broad and overly burdensome. Plaintiff also objects to this interrogatory because Defendant seeks information outside of the Complaint. Specifically, Plaintiff's claims solely revolve around the information provided by Defendant in the Letter annexed to the Complaint, dated December 31, 2019, and whether Accelerated has the right to collect the alleged Debt.
>
> Subject to and without waiving the foregoing objections, Plaintiff avers that the claims asserted herein were duly disclosed in her bankruptcy petition and that the Trustee issued a "no asset report" in her case and no objections thereto were filed.

Dated: May 4, 2021

As to objections:

**BARSHAY SANDERS, PLLC**

By: /s Craig B. Sanders

Craig B. Sanders, Esq.
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Email: csanders@barshaysanders.com
Tel: (516) 203-7600
Fax: (516) 282-7878
Our File No.: 118981
*Attorneys for Plaintiff*

As to answers, under the penalty of perjury:


Isabel Hernandez

# Certification of Shannon Miller

# EXHIBIT 9

Page 1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

~~~~~~~~~~~~~~~~~~~~

ISABEL HERNANDEZ,

           Plaintiff,

     vs.            Case No.  8:20-CV-00873

OLIPHANT FINANCIAL, LLC,

           Defendants.

           ~~~~~~~~~~~~~~~~~~~~

           Remote deposition of

             ISABEL HERNANDEZ

                May 5, 2021

                11:20 a.m.

             Taken remotely at:

         175 Hoyt Street, Apartment 4D

             Brooklyn, New York

        Christine M. Emery, Notary Public

Page 2

APPEARANCES:

(All present remotely)

On behalf of the Plaintiff:

Barshay Sanders, PLLC, by

CRAIG B. SANDERS, ESQ.

100 Garden City Plaza, Suite 500

Garden City, NY  11530

516-203-7600

csanders@barshaysanders.com

On behalf of the Defendants:

Maurice Wutscher, LLP, by

SHANNON MILLER, ESQ.

10 West Front Street

Media, PA  19063

312-416-6170

smiller@mauricewutscher.com

~ ~ ~ ~ ~

ALSO PRESENT:

Clint Thomas, Concierge

~ ~ ~ ~ ~

---

Page 4

INDEX OF EXHIBITS

NUMBER          DESCRIPTION          MARKED

Exhibit A   Amended Notice of Taking ..... 10
            Deposition

Exhibit B   Complaint..................... 12

Exhibit C   First Amended Complaint....... 14

Exhibit D   Payment Authorization Form, .. 17
            Oliphant Financial

Exhibit E   Hernandez Loan Summary........ 40

Exhibit F   Voluntary Petition for ....... 70
            Individuals Filing
            Bankruptcy, Chapter 7

Exhibit G   Plaintiff's Response to ...... 78
            Defendants' Requests for
            Admissions

---

Page 3

TRANSCRIPT INDEX

APPEARANCES............................. 2

INDEX OF EXHIBITS ........................ 4

EXAMINATION OF ISABEL HERNANDEZ
BY MR. MILLER............................. 5
BY MR. SANDERS........................... 85
BY MR. MILLER............................ 86

REPORTER'S CERTIFICATE.................... 89

EXHIBIT CUSTODY
EXHIBITS RETAINED BY THE COURT REPORTER

---

Page 5

The parties stipulated that the court reporter may swear in the witness via Veritext virtual videoconference and the witness verified that she is, in fact, Isabel Hernandez.

ISABEL HERNANDEZ, of lawful age, called for examination, as provided by the Federal Rules of Civil Procedure, being by me first duly sworn remotely, as hereinafter certified, deposed and said as follows:

MR. MILLER:  My name is Shannon Miller.  I'm an attorney for Oliphant Financial, LLC and Accelerated Inventory Management, LLC, who are the Defendants in an action in the name of Isabel Hernandez, the Plaintiff.  It is case number 20-CV-0873 in Middle District of Florida and we're here for the deposition of the Plaintiff, Ms. Hernandez.

EXAMINATION OF ISABEL HERNANDEZ

BY MR. MILLER:

Q.   Good morning, Ms. Hernandez, or good afternoon.  It's 11, it's still morning.  Good morning.

A.   Good morning.

Q.   Can you hear me okay?

2 (Pages 2 - 5)

Page 6

A. Yes.

Q. Okay. Because we're doing this via Zoom, if for any reason at some point you can't hear me or some type of technical difficulty happens, you know, call time out and we'll try and get things straightened out.

So during the deposition, if you haven't been deposed before, I'm going to have an opportunity to ask you some questions and you're going to provide some answers. As Christine had pointed out, it's important that we don't talk over each other. So that what I -- the question I ask and the answer you provide can be transcribed and be made part of the record. So, certainly, I will do my best to not ask a question until you have completed an answer. And, please, try to do your best to not start providing an answer until I have completed my question.

Additionally, your attorney, Mr. Sanders, is present, so after I ask a question, you know, typically you might want to pause before providing an answer in case Mr. Sanders is prepared to make an objection or instruct you to not answer the question or

Page 7

otherwise. So be mindful of listening for his instruction as it may pop up from time to time.

Another question is, I'm doing this via Zoom, normally we'd be in the same room together, so in the room you are in are you alone or are there other individuals in the room with you?

A. No, I'm alone.

Q. Okay. So before we get into the deposition I want to just, these are standard questions I ask, have you taken any alcohol, drugs or prescription medication today that you think would affect your ability to understand the questions that I ask and to provide adequate responses?

A. No, I have not.

Q. Okay. And are you suffering from any medical conditions, physical or otherwise, that similarly may affect your ability to understand the questions that I'm asking or to provide a response?

A. No, I don't.

Q. Okay. Let me get into a little bit of some background material and move through this quickly. Where were you born?

Page 8

A. I was born in Puerto Rico.

Q. Okay. And how old are you as you sit here today?

A. I'm 55.

Q. Are you married?

A. No.

Q. Okay. Have you been married before?

A. Yes, I have.

Q. Okay. Do you have any children?

A. Yes, I do.

Q. How many children do you have?

A. I have four.

Q. Four children?

And do any of the children live with you?

A. One.

Q. Okay. Where do you currently live?

A. I live in Brooklyn, New York.

Q. Okay. And what's your address there?

A. My address is 175 Hoyt Street, Apartment 4D, as an in David, Brooklyn, New York 11217.

Q. And how long have you lived at that

Page 9

location?

A. For the past 12 years.

Q. 12 years?

Okay. And as far as schooling and education, what's the highest level of education you've completed?

A. I have an associate degree in gerontology.

Q. Okay. I'm unfamiliar with what gerontology is. Can you enlighten me?

A. It's the care of the elderly.

Q. Okay. Okay. And when did you get that degree?

A. Wow, like when I was in my 20s.

Q. Okay. Is that the field that you've worked in since you received the degree?

A. Yes, I have.

Q. Okay. Are you currently employed?

A. I am not currently employed.

Q. Okay. And how long have you not been -- how long have you been unemployed?

A. Since my son was diagnosed with autism.

Q. Okay. And when was that?

A. I would say roughly eight years.

3 (Pages 6 - 9)

Page 10

Q. Okay. So, then, for the past eight years your role has been primary care -- care provider for your son?

A. Correct.

Q. Okay.

MR. MILLER: I'm going to mark the first exhibit and in the file it is labeled for you, Clint, it is labeled Hernandez Amended NOTD of Plaintiff.

- - - - -

(Thereupon, Defendants' Exhibit A, Amended Notice of Taking Deposition, was marked for purposes of identification.)

- - - - -

Q. I'm going to assume that Clint marked that. I'm going to share my screen with you now, Ms. Hernandez, and that's how we are going to work through showing you the exhibits. So, hopefully, this goes well. So I am going to do this now.

Okay. Are you able to see what's appearing on my screen?

A. Yes, I do.

Q. Okay. And this is what's been

Page 11

marked as Exhibit A. Yes, Exhibit A, I suppose that's what we'll call it. And this is the notice of deposition for today's deposition.

Have you seen this before today? Did you receive a copy of it?

A. Yes, I did.

Q. Okay. And as I stated before, I represent the two Defendants there, Oliphant Financial, LLC and Accelerated Inventory Management, LLC. And I will probably refer to them just as Oliphant and Accelerated. So when I say Oliphant and Accelerated, you'll understand that I mean the two Defendants?

A. Yes. Okay.

Q. Okay. So we're here today for your deposition for the lawsuit that you brought. And are you familiar with the deposition process?

A. Yes.

Q. Okay. So you've been deposed before?

A. Excuse me? I didn't understand the question.

Q. Have you -- have you had your deposition taken before?

Page 12

A. I don't understand what you're trying to tell me. If I have seen the document before?

Q. No. I'm asking you, today we're going to take your deposition. Have you ever had your deposition taken before?

A. No.

Q. No? Okay. That's what I was getting at. Okay. Give me one second. I'm trying to get this little video bubble working.

All right. So, initially, I'm going to show what will next --

MR. MILLER: Well, I am going to ask Craig, or Clint, to mark Exhibit B. It's going to be -- it's labeled Hernandez complaint in the file that I provided you.

- - - - -

(Thereupon, Defendants' Exhibit B, Complaint, was marked for purposes of identification.)

- - - - -

Q. So, Ms. Hernandez, I'm going to show you what's marked Exhibit B, which is, I am going to represent to you that this is the original complaint that was filed or that was

Page 13

filed on your behalf in this action back in April 15th of 2020. Do you see the document on your screen and have you seen it before? If you need me to scroll --

A. Yes, I do.

Q. You do?

A. (Witness nodding affirmatively.)

Q. If you need me to scroll through at any time whenever we're looking at a document, please let me know.

Have you seen your original complaint before?

A. Yes, I have.

Q. Okay. And prior to it being filed or at -- subsequent to its filing, have you had an opportunity to read it?

A. No, previous no.

Q. Previous to -- at any time have you read the complaint?

A. Yes, I have.

Q. Okay. And do you recall when you read the complaint?

A. I do not recall.

Q. Okay. Do you know if it was before it was filed or after it was filed?

4 (Pages 10 - 13)

Page 14

A.   After it was filed.

Q.   Okay.  And when you read it did you believe at that -- at the time that you read it that everything contained in the complaint was true and accurate?

A.   Correct.

Q.   Okay.  And do you still believe that everything that was in that complaint is true and accurate today?

A.   Correct.

Q.   Okay.  So let's just start with generally and in as simplest terms -- well, let me mark and we will get to your most current complaint.  So if I understand correctly do you recall that at some point you filed an amended complaint?

A.   I don't recall.

MR. MILLER:  Clint, this next exhibit is going to be labeled Hernandez first amended complaint in the file, and that will be marked Exhibit C.

- - - - -

(Thereupon, Defendants' Exhibit C, First Amended Complaint, was marked for purposes of identification.)

Page 15

- - - - -

Q.   Ms. Hernandez, I'm showing you what has been marked as Exhibit C.  And this is -- I'm representing to you that this is the first amended complaint that you filed in this case on February 15th of 2021.  Have you seen this, this first amended complaint before?

A.   I don't recall.

Q.   Okay.  Would you like me to scroll through it or do you just -- you just don't recall if you've seen it before?

A.   I just don't recall if I've seen it.

Q.   Okay.  Well, were you aware that an amended complaint had been filed?

A.   That's correct.

Q.   Okay.  You were?  Did you provide information to your attorneys for purposes of filing the amended complaint?

A.   Yes, I have.

Q.   Okay.  So the first amended complaint is now the -- the operable complaint.  Have you read this document, either before it was filed or subsequent to it being filed?

A.   When it was filed.

Page 16

Q.   Okay.  You read it.  And at the time it was filed and you read it did you believe that everything that was contained in it was true and accurate?

A.   Correct.

Q.   And do you still believe that everything contained in the amended complaint is true and accurate?

A.   That is correct.

Q.   Okay.  Then, just in your own words, what is your lawsuit about?  Why have you sued my clients, Oliphant and Accelerated?

A.   Okay.  Because, first of all, I never heard of them.

Q.   Okay.

A.   I've never signed any or I haven't done business.  I haven't heard of these people before.  So that's why the -- the complaint was filed.

Q.   Okay.  And in -- what is the basis of the complaint?  You received a letter, right, that's what the basis is?

A.   That's correct.

Q.   Okay.  And besides the letter that you received, did my clients do anything else,

Page 17

other than just sending you the letter, on which you base your claims?

A.   I got a phone call.  The only -- that I could recall, was the name Accelerator.

Q.   Accelerator?

A.   That's the only thing I recall.

Q.   Okay.  All right.  We'll get into that in a little bit, but we'll start with the letter.

MR. MILLER:  So I'm going to have this marked as Exhibit D.

Clint, it is in the file, it is called complaint Exhibit 1 and we will mark that Exhibit D.

- - - - -

(Thereupon, Defendants' Exhibit D, Payment Authorization Form, Oliphant Financial, was marked for purposes of identification.)

- - - - -

Q.   So what I'm showing you now is the exhibit that was attached to your complaint.  For our purposes it's marked Exhibit D.  Do you recognize this?

A.   Yes.

5 (Pages 14 - 17)

Page 18

Q.   Okay.  And is this the letter that you got that your lawsuit is based upon?

A.   Yes, that's the one I gave my lawyer.

Q.   That's the one you gave your lawyer.  Okay.  I'm scrolling down to show you the two pages?

A.   That's correct.

Q.   It was two pages --

A.   Yes.

Q.   -- or is this front and back?  It was two separate pages?

A.   No, it was front and back.

Q.   Okay.  But this, the exhibit here, with this page and this page, represents the entirety of what was contained in the letter?

A.   That's correct.

Q.   Okay.  All right.  Now, looking at this letter do you remember when you received this -- this letter?

A.   I don't recall.

Q.   Okay.  And if you see a -- let me see if I can make it a little bit bigger.  Does this help?  If you look at the top you'll see a date on it.  If you are looking at it it's at

Page 19

the top left, December 31st, 2019; do you see that?

A.   Yes.

Q.   Do you believe that you received the letter around that, that time?

A.   I really don't recall, but that's the -- the date it says.

Q.   Okay.  Well, so you filed your initial complaint on April 15th of 2020.  So you at least received this letter at some point between December 31st, 2019, and April 15th, 2020; right?

A.   Correct.

Q.   I mean, otherwise it would be attached to the complaint.

    Okay.  So when you received this letter it was addressed to you; correct?

A.   Correct.

Q.   Okay.  And this is the address that you provided, this 175 Hoyt Street, that's where you were living at the time; right?

A.   Correct.

Q.   Okay.  And when you got the letter did you open it and read it?

A.   Yes, I did.

Page 20

Q.   Okay.  And what about the letter -- when you read the letter what was your initial reaction to reading the letter?

A.   Well, my in issue -- well, my first reaction was, what is this?  And I immediately sent it to my lawyer.

Q.   Okay.  And when you say your lawyer, which lawyer was that, was it Mr. Sanders who's representing you now or was it some other lawyer?

A.   It was Silver.

Q.   Silver?

A.   Another lawyer.

Q.   And he was handling your bankruptcy at the time; correct?

A.   That is correct.

Q.   Okay.  So you immediately sent it to him.  When you say you immediately sent it to him, did you send it to him that day or within a week or do you recall?

A.   No, I sent it -- I had specific instructions and I sent it to him the same day.

Q.   Okay.  And when you say specific instructions, do you mean instructions from Mr. Silver regarding receipt of letters like

Page 21

this?

A.   Yes.  Any letter that I would receive, I would show him and --

    MR. SANDERS:  Isabel, you don't have to go into anything that Mr. Silver told you.

    THE WITNESS:  Okay.

    MR. SANDERS:  Okay.

Q.   So you got the letter, you read it, and you sent it to Mr. Silver; right?

A.   Correct.

Q.   Now, when you received this letter who did you believe it was sent by?

A.   I have no idea.

Q.   Okay.  What did you believe it was in reference to?

A.   I don't recall, because that's why I sent the letter to the lawyer.

Q.   Okay.  All right.  So, well, looking at the letter you'll see kind of in the middle says Oliphant Financial; do you see that in the middle of the letter?

A.   Yes, I do.

Q.   Okay.  And at that time I think you've already said you did not recognize the

6 (Pages 18 - 21)

Page 22

name Oliphant Financial?

A. No.

Q. Okay. Now, in the middle there's these bars and there's a heading that says date, original account number, and current creditor. So the date was December 31st, 2019. And the original account number, now it's redacted, but the last four digits are 5314. When you received the letter, were you able to recognize what was labeled original account number?

A. No.

Q. Okay. So when you saw the original account number it did not -- you didn't recognize it from anything else?

A. No.

Q. Okay. And then, over there where it says current creditor, it says, Accelerated Inventory Management, LLC, and I think you said before you did not know who that was; right?

A. No.

Q. Okay. Did you know what the term current creditor meant, though?

A. Yes.

Q. Okay. And what did that term,

Page 23

current creditor, mean to you?

A. A debt. A creditor. Or they were trying to collect a debt.

Q. Okay. So you understood it to mean that Accelerated was the -- trying to collect a debt?

A. That's correct.

Q. Okay. Now, at the second box you will see it says original creditor and underneath that it says WebBank. Did you recognize the name WebBank?

A. No, I did not.

Q. Okay. So you didn't recognize WebBank. Did you know what -- when it said original creditor, did you know what that meant?

A. No. I did not.

Q. Okay. Now, over -- do you see where it says amount due and it lists 9,706.72, did you recognize that amount --

A. No.

Q. -- that was --

A. No, I did not.

Q. Okay. Now, when it gets to the body, did you read the body of the letter?

Page 24

A. I don't recall if I read it or I understood it.

Q. Okay. Well, let's unpack that. So you don't recall if you read it or if you understood it. Which part don't you recall?

A. I -- I read the first part about the creditor, but I didn't understand, because I don't recognize the creditor.

Q. Okay. When you say you read the first part, which part of the letter are you referring to?

A. Where it had -- where you had indicated the -- the numbers.

Q. So the boxes here in the middle, the date, reference, original account number, current creditor, so you read this information and what you're saying is you didn't recognize any of the information there?

A. I did not recognize the information.

Q. Okay. So did you go down and read the body of the letter where there's, you know, three paragraphs or so underneath the boxes where it says Dear Isabel Hernandez, do you recall if you read that portion of the letter?

Page 25

A. I don't recall.

Q. Okay. So if you did read it, so the first sentence, you don't recall if you read it or not, but the first sentence says, please be advised that Accelerated Inventory Management, LLC has purchased and now owns the above referenced account and we are therefore contacting you to resolve your outstanding balance.

Would you have understood what that -- what that phrase means?

A. Well, if I would have read it and, yes, I would have understood, but I did not make any business with -- with them.

Q. Okay. Okay. And did you -- who did you believe the letter was sent by? Did you believe it was sent by Accelerated or somebody else?

A. No, I did not -- I didn't recognize Accelerated or I didn't recognize Web, I didn't recognize none of the names that were there.

Q. Okay. Okay. So you testified that you got the letter, you read these boxes here that talk about the account number, the original creditor, et cetera, but you don't

7 (Pages 22 - 25)

Page 26

recall if you read the rest of the letter and then you provided it to your attorney; right?

A.   That is correct.

Q.   Okay.  At the time that you received the letter, did you believe that somehow the letter violated any law or statute?

A.   I don't know.  That's why I gave it to my -- to my lawyer.

Q.   Okay.  So, and the basis of your complaint, and we're turning to Exhibit C, the first amended complaint, if you look at the introduction paragraph it talks about the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act; are you familiar with either of those statutes?

A.   No, I'm not.

Q.   Okay.  So when you received exhibit -- what's been marked Exhibit D, which is the letter, you didn't believe at that time that the letter violated either the FDCPA or the FCCPA?

MR. SANDERS:  Objection to form.  You can answer.

A.   What was it?  I'm sorry.  What was the question?

Page 27

Q.   I was asking -- so you brought your lawsuit under -- you're claiming in your lawsuit that my clients violated the Fair Debt Collections Practices Act.  When you received the letter did you believe that it violated the Fair Debt Collection Practices Act?

A.   Yes, I do believe it.

Q.   At the time when you received the letter you believed that?

A.   Yes, because I didn't recognize -- I didn't know what the letter was about.

Q.   Okay.  So you believed -- because you didn't know what the letter was about, you believed that it violated the Fair Debt Collection Practices Act?

A.   That's correct.

Q.   Okay.  And then, again, the other statute that you're alleging in your complaint is the Florida Consumer Collection Practices Act.  So when you received the letter, did you believe that it violated the Florida Consumer Collection Practices Act for the same reason, that being that you didn't know who these people were?

A.   Correct.

Page 28

Q.   Okay.  Now, at this time, as you sit here today in your deposition, do you now recognize who WebBank is?

A.   I don't -- I don't recognize.

Q.   You don't recognize WebBank?  Okay.  Now, do you recall ever obtaining a loan from WebBank?

A.   Not from WebBank.

Q.   Okay.  Do you recall ever obtaining a loan from Lending Club?

A.   That is correct.

Q.   Okay.  And what was -- do you recall the nature of that loan, when you received it?

A.   What do you mean the nature?  I don't understand the question.

Q.   Let me ask it -- let me just ask one question at a time.  Do you remember when you received the loan from WebBank?

A.   I don't --

Q.   I apologize, from Lending Club?  From Lending Club?

A.   I don't recall.

Q.   Okay.  Do you recall what happened with the loan?  Did you pay it off?

Page 29

A.   I know I was making payments to Lending Club.

Q.   Okay.  And then what happened; do you remember?

A.   No.  Because that's when I fell in hard times and I filed.

Q.   Okay.  For bankruptcy?

A.   Correct.

Q.   Okay.  Let's mark -- well, let me go back to this letter, then we will get into the accounts.

So you don't recall if you read this.  So after you received it, though, you testified that you provided it to your attorney; right?

A.   Correct.

Q.   Did you attempt to contact anybody who's listed in this?  Did you attempt to contact Oliphant Financial at all?

A.   No, I did not.

Q.   Did you attempt to contact Accelerated Inventory Management at all?

A.   No, I did not.

Q.   Did you attempt to contact the entity who is labeled original creditor,

8 (Pages 26 - 29)

Page 30

WebBank, at all?

A.   No, I did not.

Q.   Did you -- and you didn't make a payment to anybody; did you?

A.   No, I did not.

Q.   Okay.  Did you -- so at the time that you received this did you dispute that you owed this amount to Accelerated?

A.   Yes, I dispute it.

Q.   So you believed you didn't owe it?

A.   No.

Q.   Okay.  Now, in this second paragraph, if you look at the body of the letter, Exhibit D, it provides you with instructions:  Unless you notify this office within 30 days after receiving this letter that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid.  If you notify this office in writing within 30 days after receiving this letter, that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you, if any.  A copy --

A.   No, I did not.

Page 31

Q.   You didn't read this portion?

A.   No, I did not.

Q.   Okay.  All right.  One second here.  Oh, I forgot to mention, if at any time you need to take a break, please let us know and we are happy to pause to take a break.  We usually mention that at the beginning, I apologize.

So the complaint also alleges, in the first amended complaint, that you received telephone calls from one of the Defendants; is that correct?

A.   Correct.

Q.   Okay.  And do you recall, which -- so you have sued Oliphant and Accelerated.  Do you recall which one of these entities called you?

A.   Accelerating.

Q.   Accelerated was the one that called you?  Okay.

A.   Correct.

Q.   Okay.  Now, do you remember when you were receiving these calls, what time period?

A.   I do not recall.

Q.   Okay.  Was it five years ago?

Page 32

A.   No.

Q.   Was it three years ago?

A.   I don't recall.

Q.   Okay.  So, well, could it have been five years ago or was it sooner?

A.   Sooner than five.

Q.   Okay.  How about four years ago?

A.   I don't recall.

Q.   Okay.  How about three years ago?

A.   I don't recall.

Q.   Okay.  How about, the complaint exhibit, or what we've marked Exhibit D, the letter that's at the center of this, this is dated December 31 of 2019, do you recall if you were receiving phone calls around this, the date of the letter?

A.   I don't recall the date.  If -- I know I received a call, but I don't remember if it was before or after.

Q.   Before or after you received the letter?

A.   Correct.

Q.   Okay.  Now you say you received a call.  Is that all?  Was it just one telephone call?

Page 33

A.   Yes.

Q.   Okay.  And you believe, or you testified, it was from Accelerated.  And how did you know it was from Accelerated?

A.   Because that's the name that they told me.

Q.   Okay.  So they identified themselves on the phone call?

A.   That's correct.

Q.   Okay.  And what else did they say, if anything?

A.   About the outstanding balance.  And I told them that I didn't know -- I didn't make business with them and I didn't know what they were talking about.

Q.   Okay.  So they -- do you believe that they were calling you referencing the debt that's reflected in the letter?

A.   I -- I imagine so.

Q.   Okay.  But you're not sure?

A.   I don't recall.

Q.   Okay.  Did the person you spoke to -- let me back up.  This wasn't a voicemail, right, you answered the phone and you spoke to somebody?

9 (Pages 30 - 33)

Page 34

A.    I spoke to somebody.

Q.    Okay.  Did they identify themselves at all?

A.    The -- I recall -- the only thing I recall, because the phone call was short, is Accelerator.

Q.    Okay.  But the person didn't give themselves their name like, hi, I'm Mike or, hi, I'm Carol?

A.    No, I don't recall.

Q.    Okay.  Do you recall if it was a male or a female sounding voice?

A.    It was a female.

Q.    Okay. Do you recall how the number appeared -- well, let me ask you this.

What number did they call you on?  Meaning was it your house phone?  Was it your cell phone?

A.    I only have one number.

Q.    Okay.

A.    My -- my cell phone.

Q.    Your cell phone?  Okay.  And what's your cell phone number?

A.    It's 929-200-2911.

Q.    And who with -- what cell phone

Page 35

service is it with?

A.    With T-Mobile.

Q.    T-Mobile?

Okay.  So do you recall if the -- how the number appeared, the incoming call on your caller ID at all?

A.    I don't recall.

Q.    Okay.  Do you know how long the call was?  You indicated it was short, was it 30 seconds?

A.    About a minute.

Q.    About a minute?

And other than them discussing what you believed to be the debt that's referenced in the letter, do you recall anything else that was discussed during the call?

A.    No, I don't.  I don't recall.

Q.    Okay.  How was the call ended?

A.    It ended when I said to mail me more details, because I didn't recognize the bank or the company or what they were talking about to -- so I could send it to my lawyer.

Q.    Okay.  And did anybody mail you anything in response to that request?

A.    No, they did not.

Page 36

Q.    Okay.  Did you -- and that's the only call that you recall receiving from either --

A.    What I recall, yes.

Q.    Okay.  So just the one call?  And you're not sure if it was before or after the date of the letter; correct?

A.    I don't recall.

Q.    Do you recall if it was in the same time period?  Meaning, December 31st, 2019, you know, that's the wintertime, did you receive this call during the winter, or was it in the fall, or was it spring?

A.    I don't recall.

Q.    Okay.  So you are -- going back to Exhibit B, which is the original complaint which was filed April 15th, 2020, do you know if the telephone call you received happened before April 15th, 2020?

A.    Oh, it was before.

Q.    It was before?  Okay.  Actually, I muted myself.  So it was before?  Okay.

So after you received this letter and you sent it to your bankruptcy attorney how did you come to retain your current counsel?

Page 37

A.    Through my attorney.

Q.    Through your bankruptcy attorney?

A.    Correct.

Q.    Okay.  So he directed you to Mr. Sanders or somebody with Mr. Sanders' firm?

A.    Correct.

Q.    And then did you provide them with the letter as well?

A.    My lawyer provided them with the letter.

Q.    Your lawyer did?  Okay.

Did you -- when you -- did you provide the details of this telephone call to either Mr. Silver or -- or Mr. Sanders or somebody from his firm?

A.    Somebody from the firm.

Q.    Okay.  And do you remember when you provided information regarding this telephone call?

A.    I don't recall.

Q.    Was it at the same time that you retained them or was it at a later date?

A.    I don't recall.

Q.    You don't recall?  Okay.

Do you know if you disclosed the

10 (Pages 34 - 37)

Page 38

nature of this telephone call before the complaint was filed on April 15th, 2020?

A.   I don't recall.

Q.   Okay.  After receiving the call, this telephone call, what action, if any, did you take?

A.   I didn't take no action.  I just gave the letter to my lawyer for -- so he could handle it.

Q.   Okay.  And after receipt of the telephone call what -- what effects did the telephone call have on you?

A.   I -- I was -- like I didn't know what was it from.  I even got, you know, nervous about it, because I didn't know what the letter was about or what they were talking about.

Q.   Okay.

A.   And I didn't -- I didn't recognize the company as well.

Q.   Okay.  And when you say nervous, what do you mean?  How did you feel?

A.   Nervous.  Because, you know, you don't know what's going on, so you feel nervous, because when I saw the amount, and I'm

Page 39

-- I was just like dumbfounded.  I didn't understand what was going on.

Q.   Okay.

A.   So I got nervous about it.

Q.   Nervous about Exhibit D, the letter?

A.   Yeah.

Q.   And nervous about the telephone call that you received?

A.   Yes.

Q.   Okay.  So you were nervous about the letter, although you don't recall if you read the whole letter; correct?

A.   Correct.  I got -- once I saw the -- the numbers, that's when I didn't understand and then I -- I forward it to -- to my lawyer.

Q.   Okay.  Hold on a second here.
Okay.  Other than this -- other than the -- this particular letter and this phone call, had you been contacted previously by any other entities that were trying to collect debts from you in the past?

A.   No, I have not.

Q.   Okay.  So this is your only experience with an entity calling to collect a

Page 40

debt?

A.   That is correct.

Q.   Okay.  Okay.  I want to pull up -- let's see.  We will -- this next exhibit is going to be Exhibit E.

- - - - -

        (Thereupon, Defendants' Exhibit E, Hernandez Loan Summary, was marked for purposes of identification.)

- - - - -

MR. MILLER:  Clint, this is labeled Hernandez loan summary.

Q.   So what I'm showing on my screen and marked as Exhibit E, Ms. Hernandez, do you recognize this document or can you see it?

A.   I could see it, but I don't recognize it.

Q.   You don't recognize it?  Okay.  Do you recognize up on the top left the loan ID?

A.   No, I don't.

Q.   Okay.  The primary borrower or contact information, do you see that information there?  Do you recognize whose information that is?

A.   I can't see the information.

Page 41

Q.   How about now?  Is it bigger?

A.   I can't see it.

Q.   How about now?

A.   I see my name on there.

Q.   Okay.  And there's also an e-mail address, is that an e-mail address that's associated with you?

A.   Yes.

Q.   Okay.  And this is your address; correct?

A.   Correct.

Q.   And then, here where it has these phone numbers, do you recognize these phone numbers?

A.   Other than mine, I don't recognize the phone number.

Q.   Okay.  So you recognize the 929 number, but you do not recognize the 718 number?

A.   No, I don't.

Q.   Okay.  Now, down here under the loan information; do you see this?  It says loan issue date, original loan issue amount, principle balance; do you see that information?

A.   Yeah, I see it, because I'm reading

11 (Pages 38 - 41)

Page 42

it now.

Q. Okay. So this indicates, I'm going to represent to you that this is the loan summary for a loan that you -- allegedly you incurred with WebBank off of the Lending Club platform. Do you recall the particulars of this loan?

A. Well, I know I -- I did Lending Club, but that's all I know.

Q. Okay.

A. That's all I recall.

Q. Okay. And if -- if this was in reference to the Lending -- what you recall as the Lending Club loan, would this loan issue date be accurate for a loan that you received from Lending Club?

A. Correct.

Q. Would the loan amount be accurate for a loan you recall taking out with Lending Club?

A. I don't even -- I can't see the amount.

Q. Okay. Let me see if I can make it bigger here. How about now? Is that better?

A. Yeah. Now I can see it.

Page 43

Q. Okay. So this information, the loan information, do you recognize this in relation to a loan you recall coming from Lending Club?

A. With Lending Club.

Q. Okay. So does this information appear accurate for the loan that you recall?

A. Yeah. Yes.

Q. Okay. Do you recall the process by which you took out this loan from Lending Club? Do you recall signing documents and things like that electronically?

A. I don't recall.

Q. Okay. But do you recall getting the proceeds from the loan? Meaning, do you recall the amount that you sought was deposited in your bank account or otherwise?

A. Yes.

Q. Okay. And do you recall what the purpose of the loan was for? Meaning, what you were taking the money out for?

A. For bills. For normal --

Q. Okay.

A. -- people bills.

Q. People bills? Okay. That's fine.

Page 44

At the time did you have -- operate a business or anything like that?

A. No.

Q. Okay. So the money from this particular loan that you recall being from Lending Club wouldn't have been used for any business purposes; right?

A. No.

Q. Okay. I think you testified earlier you fell into some hard times. Did you stop making -- well, let me ask you this.

Do you remember what the terms of your repayment were? Meaning, did you have to repay monthly; if you remember?

A. Monthly.

Q. Okay. And at some point did you stop making monthly payments?

A. Yes, I stopped.

Q. And do you remember at all when that was that you stopped making the payments?

A. I don't recall.

Q. Okay. Do you recall what happened after you stopped making the payments?

A. I don't recall.

Q. Okay. Do you recall if Lending

Page 45

Club or anyone on their behalf tried to contact you to get you to make payments?

A. Not Lending Club.

Q. Okay. Did anybody else on Lending Club's behalf contact you to make payments?

A. I don't recall.

Q. Okay. Okay. Having refreshed your recollection regarding this particular loan, and returning to Exhibit D, which was the letter sent by my clients, do you believe that the -- the financial obligation referenced in this letter is the same as the obligation that began when you took a loan from Lending Club?

A. I don't recall. I don't know.

Q. You don't know? Okay. Look at the reference number here in Exhibit D, it's redacted, or, I apologize, the original account number, it's redacted, but it ends in 5314; right?

A. Right.

Q. And then on your loan summary, Exhibit E, the loan ID up here at the top ends in 5314 as well; right?

A. If that's what it says, but I don't -- I don't recall the -- the account number.

12 (Pages 42 - 45)

Page 46

Q. Okay. Now, looking down again at the loan information. You'll see a line that says payoff balance, indicating 9,706.72. Do you agree that that was the amount left unpaid to Lending Club on --

A. No, I don't. I don't agree.

Q. You believe that you owed more or less?

A. Less.

Q. Okay. Do you recall what do you believe you owed?

A. I don't recall, but it's not that amount.

Q. Okay. Going back to Exhibit D, which is the letter, your allegations are based in -- in the fact that you did not recognize these entities, either Accelerated or Oliphant; correct?

A. Correct.

Q. Okay. So you're not making any claim regarding the amount that the letter is seeking; correct?

A. Correct.

Q. Just that it's from these -- these companies that you don't know who they are?

Page 47

A. Correct.

Q. Okay. Give me one second here. So the loan from Exhibit E that you believe was from Lending Club, after you stopped making payments do you know what happened to the loan?

A. I don't.

Q. Okay. And you said nobody had contacted you, at least from Lending Club or on behalf of Lending Club, to try and receive payments on it; right?

A. No.

Q. Okay. Did you receive any other communication from Lending Club or on their behalf, explaining what was going to happen with the loan now that you hadn't made any payments?

A. No, I don't.

Q. Okay. And the address here, it's the 175 Hoyt Street, you had testified earlier you have been there for 12 years. So from the time you took out the loan until today you were at that same address; right?

A. Correct.

Q. Okay. Going back to Exhibit D, the

Page 48

letter from Oliphant, and -- well, which references Oliphant and Accelerated, you indicated you received it, you gave it to your attorney, but did you do any -- did you look into either of these companies, Oliphant or Accelerated, on your own? Did you do a Google search or anything like that?

A. No, I did not.

Q. Okay. Just one second. I'm going through my notes here. So going back to Exhibit D here. And, again, this is the basis of your claims in the amended complaint. One second. So in looking at your first amended complaint here, which I will zoom up, which has been marked Exhibit C, I'm going to scroll down here to your accounts. Okay. So in paragraph 58, can you see this or do I need to make it bigger?

A. Yeah, you need to make it bigger.

Q. How about now?

A. Okay.

Q. So here in your amended complaint, paragraph 58, you plead Plaintiff did not owe 9706.72. And are you -- did you -- are you alleging that you did not owe it, that's

Page 49

because you did not recognize Oliphant or Accelerated; right?

A. Right.

Q. Okay. So just because you didn't recognize them you believed you didn't owe them any money?

A. Right. Because I didn't know who they were.

Q. Okay. And, so that goes for the same, paragraph 59 states Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect. And, again, that is based upon the fact that you did not recognize either Accelerated or Oliphant; correct?

A. Correct.

Q. Okay. Okay. So scrolling down to, this is your second count, we are going to scroll down to your third count here. Give me one second. Okay. So in paragraph 93 you allege Accelerated Inventory Management, LLC never offered to extend credit to Plaintiff. Do you believe that the letter, which I'm back to now, Exhibit D, suggests that

13 (Pages 46 - 49)

Page 50

Oliphant -- that Accelerated offered to extend you credit?

A. No.

Q. Okay. And 94 says Accelerated Inventory Management, LLC never extended credit to Plaintiff.

When you look at Exhibit D, do you believed that it suggests to you that Accelerated extended you credit at some point?

A. No.

Q. Okay. And then in paragraph 95 it says, Plaintiff was never involved in any transaction with Accelerated Inventory Management.

Do you believe that the letter suggests that you were involved in any financial transaction with Accelerated?

A. That's what it suggests.

Q. Okay. So to you it suggested you were involved in a financial -- in a transaction with -- I apologize, I'm looking for my highlighter.

So you believe that the letter suggested you were involved in a transaction with Accelerated?

Page 51

A. Correct.

Q. Okay. Can you point to me what in the letter leads you to that belief that Accelerated is claiming that you entered into a transaction with them?

A. Just by looking at the name where it says Oliphant. And when I looked at the information I said I never -- I never did business with these people.

Q. Okay. And the first sentence says please be advised that Accelerated Inventory Management has purchased and now owns the above referenced account. What did you take that to mean?

A. I still didn't recognize it, because I don't recognize Accelerator or Oliphant.

Q. Okay. But when they say that they had purchased it, did that lead you to believe that they are claiming that you entered into a transaction with them or that you entered into a transaction with somebody else and they had purchased that debt?

A. No, I don't.

Q. Okay. So even though this sentence

Page 52

says it, Accelerated Inventory Management purchased the account that's referenced here, you still believed that they were alleging that you entered into a transaction with them directly?

A. Yeah, what the letter says.

Q. Okay. So that was your takeaway. The letter was suggesting you entered into a transaction with Accelerated?

A. Correct.

Q. Okay. Looking back at Exhibit C, which is your amended complaint. Down to paragraph 100, it says Defendants' statement that Accelerated Inventory Management is the name of the creditor to whom the debt is owed, when Accelerated Inventory Management is not the name of the creditor to whom the debt is owed, it violates, and there's a section of the FDCPA.

So is it your contention that the -- the, looking back at Exhibit D, the debt reference in there is not owed to Accelerated?

A. No.

Q. So, well, let me rephrase. Do you believe that the debt is owed to Accelerated?

Page 53

A. No.

Q. Okay. And why don't you believe that it is owed Accelerated? What makes you believe that it is not owed to them?

A. Because I never heard of them.

Q. Okay. So just because you never heard of them you believe that you don't owe the debt to them?

A. No.

Q. No meaning, no, that's not correct or, yes, it's correct that that's what you believe?

A. That's what I believe.

Q. Okay. Do you believe that the debt is owed to somebody else then?

A. Well, the debt was, from my understanding, from Lending Club. I don't -- like I stated, I don't recognize Oliphant or Accelerator.

Q. Okay. Give me one second.

Okay. I want to go back to -- and I'm going to stop sharing it. Let me go back to the telephone call that you talked about earlier. And when you said you recall that they mentioned the name Accelerated; is that

14 (Pages 50 - 53)

Page 54

right?

A. Correct.

Q. Okay. And did you say that they asked you for payment?

A. Yeah, that there was an outstanding balance.

Q. Okay. And did they want you to make a payment?

A. Correct.

Q. Okay. Did they provide any other information to you, other than saying we're Accelerated and we want you to make a payment, did they provide with you an account number?

A. No, they did not.

Q. Did they provide with you an account balance?

A. No, they did not.

Q. Okay. Did you ask any questions to the person who had called?

A. The only thing I asked was who are you? Like what company?

Q. Okay.

A. Or what bank.

Q. I apologize for interrupting.

So you asked who they were and what

Page 55

did they say, if anything?

A. They mentioned Accelerator. They didn't mention Oliphant, but they mentioned Accelerator.

Q. So they were saying Accelerator or Accelerated Inventory Management?

A. Yeah, Accelerator. Yeah, Accelerator.

Q. So it was Accelerator that called, an entity named Accelerator?

A. Correct.

Q. Because, see, that's different. My client's named Accelerated Inventory Management. So perhaps the entity that called you is not my client, right, if they're called Accelerator?

A. No, it was -- it was Accelerated, because --

Q. Okay.

A. -- or I'm saying it wrong, but it was them.

Q. Okay. How can you be sure that it was Accelerated when previously you had just said you thought it was Accelerator?

A. Because I don't -- I haven't seen

Page 56

the letter in a long time, so I probably said it wrong.

Q. Okay. Did you obtain your telephone records that would reflect this phone call --

A. No.

Q. -- to --

A. No.

Q. -- so you could identify who called you? You did not?

A. No, I have not.

Q. Do you intend on getting your telephone records?

A. No.

Q. Okay. All right. One second.

Now we are going back to Exhibit C, which is the amended complaint. And I will blow it up so you can see once I scroll up here to where it talks about -- well, let me ask you this. Are -- your -- your claims for relief, are any of them related to the telephone call you received? Meaning, are you seeking damages for the telephone call you received?

A. Yeah, that was part of my complaint.

Page 57

Q. Okay. So it's the letter and the telephone call, for both of them you're seeking dam -- you're seeking redress, damages and that sort; correct?

A. Correct.

Q. Okay. So, in looking at your complaint here, let me zoom it up. So it says, looking at paragraph 36, in addition to sending the letter, Defendants contacted Plaintiff on numerous occasions.

So that's not correct, though; right? They only called you one time?

A. That I can recall is that Accelerated that I could recall.

Q. Okay. How about -- did you recall receiving any voicemails that were from Accelerated that you didn't answer?

A. I don't recall.

Q. Okay. Did you recall seeing any caller ID number that you associated with Accelerated from missed calls?

A. I don't recall.

Q. Okay. So as far as telephonic exchanges with Accelerated all you recall is answering this one particular phone call?

15 (Pages 54 - 57)

Page 58

A.   Correct.

Q.   Okay.  So paragraph 38 says at times Defendants contacted Plaintiff by telephone several times a day.

Do you recall being contacted several times a day?

A.   I -- I recall that I received phone calls that I didn't pick up because I thought it was them.

Q.   Okay.  And what made you think it was them?  And when you say "them" who do you mean?

A.   Accelerated.

Q.   Okay.  So you -- you recall other phone calls that you didn't pick up that you thought were Accelerated.  Why did you believe that it was Accelerated?

A.   Because I didn't know what they were talking about.  Like what was I going to tell them?  Because I didn't even know what was going on.

Q.   No.  The calls that you didn't answer.  So you're sitting there, your phone starts to ring, you're testifying that you believed that those phone calls were coming

Page 59

from Accelerated.  What made you believe that these other phone calls that you didn't answer were from Accelerated?

A.   Because when I spoke to this person that time they identified themselves as Accelerated.  And that I owed an outstanding balance.  But I didn't recognize them, so I assumed they kept on calling for a payment.

Q.   So any call after that you just assumed it was from Accelerated?

A.   Correct.

Q.   Okay.  Every single call that came to your phone?

A.   Well, not every single call, but the ones I didn't recognize I did.

Q.   And when you say didn't recognize, what do you mean by that?

A.   Because anybody that calls me I have them on -- on contact.  So, and I remember, if I recall -- I don't recall the phone number, but if it was an area code more or less that I remember, I didn't pick up.

Q.   Okay.  So based on the incoming call you decide whether or not to answer it.  So was there a particular phone number or area

Page 60

code associated with these calls you believed were coming from Accelerated?

A.   I don't recall because it's been such a long time.

Q.   Okay.  Do you recall if they were different area codes or was it the same area code every time?

A.   I don't recall.

Q.   Okay.  Do you recall if on any of these calls that you didn't answer anybody left a voicemail for you?

A.   No, they did not.

Q.   Okay.  Did you call any of these numbers back?

A.   No, I did not.

Q.   Okay.  So at the time that you were receiving the calls, did -- so you just didn't recognize the area code; right?

A.   Correct.

Q.   Okay.  And because you didn't recognize the area code, you just believed it was a -- probably Accelerated calling you; right?

A.   I recall it was the same -- yeah, I remember that I didn't pick up because it

Page 61

looked like the same number or it was the same area code.

Q.   Okay.  But you don't remember which area code or the number; right?

A.   I do not.

Q.   Okay.  Okay.  Looking at paragraph 40.  It says, Plaintiff did not wish to speak to Defendants insofar as she feared that they would try to exact personal information from her.

What personal information were you afraid that the -- whoever was calling you was going to try to extract?

A.   Any kind of information, because a lot of -- there's a lot of calls people receive, people asking for information.  So I didn't know, you know, that gets anybody nervous.  Like if somebody's calling you for information, I don't give information over the phone.

Q.   Okay.

MR. SANDERS:  Shannon, we've been going about an hour now, do you know when you have a logical break coming up?

MR. MILLER:  I mean, if you'd like

16 (Pages 58 - 61)

Page 62

to break now, we certainly can.  That's fine with me.

MR. SANDERS:  I don't want to -- if you have a set of questions you're almost finished with, finish them up, then we'll take a break.

MR. MILLER:  All right.  Couple more minutes, then we can do that, that's fine.  All right.

Q.  Okay.  Now, here at 46 in this, in Exhibit C, in the first amended complaint, you allege the Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff to seek medical treatment.  What medical treatment did you seek?

A.  Well, I was going through bad times financially and just the phone calls just got me nervous and I went to my primary doctor and I -- I was anxious.

Q.  Okay.  When you went to your primary doctor did you say I'm here because of these phone calls that I -- I am receiving?

A.  Well, I'm not going to tell my primary my private business.

Q.  Okay.  So you didn't disclose that

Page 63

your purpose of your visit was related to telephone calls?

A.  No, I did not.  I just told them that I was very anxious and I couldn't sleep and because I was going through those times, but I didn't disclose to my doctor the reason.

Q.  Okay.  And when you say you were going through those times you said what else was going on at that time that led you to seek medical treatment?

A.  Just difficult times financially.

Q.  Okay.  And when you say financially difficult times, you were having trouble paying your bills?

A.  Correct.

Q.  Okay.  And that ultimately led you to pursue bankruptcy; right?

A.  Correct.

Q.  Okay.  If you had not received any of these alleged phone calls would you still have gone to see your doctor in relation to the other issues that were going on in your life?

A.  No, because I was -- you know, I -- by filing bankruptcy, you know, I know that there's a law that protects me and by receiving

Page 64

the calls I got nervous, because I don't know what the law or if they can knock on my door or anything.  That's why I was anxious.

Q.  Okay.  Because you believed somebody could come and knock on your door?

A.  Yeah.

Q.  Okay.  And that belief that somebody could knock on your door was based upon phone calls that you didn't answer?

A.  Yes.  I thought somebody could come and serve me or I don't know, something like that, because I don't know the law.

Q.  Okay.  Serve you, when you say serve you, you mean with legal process or something?

A.  Correct.

Q.  Okay.  Had -- had you spoken to either Oliphant or Accelerated about them serving you with any type of a complaint?

A.  No, I did not.

Q.  Did the letter, Exhibit D, did that reference legal action?

A.  Excuse me?  What was the question?

Q.  The letter that you received, Exhibit D, it's up on the screen here, did this

Page 65

in any way reference legal action being taken?

A.  That's why I gave it to my lawyer, because I didn't understand the letter.

Q.  Okay.  All right.  Now sounds like a good time to take a break.

MR. MILLER:  What do you want, Craig, ten minutes?  15 minutes?  What would you like?

MR. SANDERS:  Ten minutes is fine.

MR. MILLER:  Okay.  So 12:23, so we'll say -- why don't we say 12:35?

MR. SANDERS:  Okay.  Perfect.

MR. MILLER:  Okay.  All right.  We will go off the record.

(Short recess had.)

Q.  Getting back to, and I apologize, after a break sometimes my brain goes different places, so I might not be following a linear chain of events and I might bounce around a little bit, so I apologize.

Before the break you were testifying about how you had gone to see your doctor.  Do you recall when you went to see your doctor?

A.  I don't recall.  I know it was

17 (Pages 62 - 65)

Page 66

before. It was when all this was going on and the letter and the calls and I just got super anxious.

Q. So it was in and around that time?

A. Correct.

Q. Okay. Now, I'm going to share my screen again. And let me see here. So this is the loan summary that was Exhibit E, which we marked. And this was reflective of the loan that you recall receiving and you believed it was from Lending Club; correct?

A. Correct.

Q. Okay. And you -- as you testified earlier, eventually you were unable to make the payments, you stopped making payments and that's the last you heard of this particular loan; correct?

A. Correct.

Q. And when you filed for bankruptcy did you schedule this particular loan, to your knowledge, so it would be discharged in the bankruptcy?

A. I believe so. It was in the -- it was in the -- everything was in there.

Q. Okay. So, and then, again, looking

Page 67

at Exhibit D, which was the letter from my clients, you were -- you were -- the basis for why it violated the law you believe is because you did not recognize either Accelerated or Oliphant so you did not know why you would owe them money; is that correct?

A. Correct.

Q. Okay. So if Accelerated or Oliphant had purchased the loan from Exhibit E, that you recall receiving from Lending Club, would you believe then that they would be entitled to collect it from you?

A. No, I just didn't recognize the company that was on the letter.

Q. Right. But what I'm saying is, had -- if you came to learn that either Accelerated or Oliphant had purchased the amount that you still owed to Lending Club from Lending Club and then sent you this letter, would you believe that they had a right to seek payment from you?

A. I don't believe so.

Q. Okay. And why would you not believe so?

A. Because I didn't make business

Page 68

with -- with those companies.

Q. Right. You didn't -- you did not take out a -- you did not borrow from Accelerated or Oliphant; right?

A. Correct.

Q. You borrowed from Lending Club; right?

A. Correct.

Q. Okay. So do you believe that Lending Club had the ability under your agreement with them, do you recall when you made the loan with Lending Club -- well, let me ask you this. Have you ever had credit cards, a mortgage, things like that?

A. Yes.

Q. Okay. And typically with a credit card or a mortgage or a bank account your relationship with the lender is governed by a contract; right?

A. Correct.

Q. Okay. And in the loan that you believe was with Lending Club, as reflected in this summary that was Exhibit E, do you recall if the loan was subject to a contract that kind of explained what your rights were and what

Page 69

their rights were?

A. Well, I believe so.

Q. Okay. Do you believe that under that contract Lending Club, or whoever the creditor, you believe it to be Lending Club, under that contract do you believe that they had the right to -- to sell your indebtedness to somebody else?

A. I don't know that.

Q. You don't know that?

A. (Witness nodding negatively.)

Q. Okay. So if they were able to do that, then -- and if they had sold it to Accelerated or Oliphant, would you believe that Accelerated or Oliphant would have the right to then seek the money from you that you owed originally to Lending Club?

A. From my understanding, no, because that's why I filed bankruptcy.

Q. Okay. So it was because of the bankruptcy, that would prohibit them from collecting it?

A. Correct.

Q. Okay. Because your understanding is in the bankruptcy, the debts get discharged,

18 (Pages 66 - 69)

Page 70

meaning, you don't have to pay them back; right?

A.   Correct.

Q.   Okay.  So do you believe that this letter was sent on a debt that was discharged in bankruptcy?

A.   No.  When I got the letter, no.

Q.   Okay.  So when you got the letter had your loan to Lending Club been discharged in your bankruptcy; to your knowledge?

A.   To my knowledge, everything was -- was put in the bankruptcy.

Q.   Okay.  All right.  We'll take it piece by piece here.

MR. MILLER:  Let's go to an exhibit I'm going to mark, which is labeled -- Clint, it's labeled Hernandez Chapter 7 petition.  This is Exhibit F.

- - - - -

(Thereupon, Defendants' Exhibit F, Voluntary Petition for Individuals Filing Bankruptcy, Chapter 7, was marked for purposes of identification.)

- - - - -

Page 71

Q.   So, Ms. Hernandez, it should be on the screen, what I'm going to represent to you is the Chapter 7 bankruptcy petition filed by you in December 31st, 2019.  Do you recognize this document, at least from this first page?

A.   Yes.

Q.   Okay.  Do you recognize it as your bankruptcy petition that you filed that we've talked about?

A.   Correct.

Q.   Okay.  Then I'm going to scroll down to your unsecured claims here.  So here we go, this is your E, schedule E and F, the creditors who have unsecured claims.  So this is where you listed all your debts.  Do you recall that?

A.   Correct.

Q.   Okay.  And then, so here's Capital One Bank, Capital One Bank, Citicards.  And here at what's marked 4.4 -- 4.10.  So here is an entry for Lending Club Corporation; do you see this?

A.   Correct.

Q.   Okay.  And the last four digits of the account number are 5314 and you list the

Page 72

amount at $9,500; correct?

A.   Correct.

Q.   Is this the same loan that's scheduled in your bankruptcy that we have been previously talking about reflected by the loan summary, which is Exhibit E?  Is that the same debt that you -- that you scheduled?

A.   With Lending Club, but I still disagree of the amount.

Q.   Okay.  So, but it's the same -- so you believe that the amount was, is 9,500, is that accurately what you believe the amount to be?

A.   No, because I paid.  I paid many times.  And how can I?  How can it be that amount when I was paying?

Q.   Okay.  Well, this is the amount that you listed on your bankruptcy, though, so at least for purposes of your bankruptcy --

A.   Well, I didn't list it.  It just came out.  That's a credit report, so that's what was put on there.

Q.   So it came from your credit report, you put it in to schedule it.

So other than the balance, you

Page 73

believe that the Lending Club account here that was scheduled on your bankruptcy is the same as that which you have admitted to receiving a loan from Lending Club as reflected in the loan summary, Exhibit E; right?

A.   Correct.

Q.   Okay.  So that was scheduled on your bankruptcy.  So then going back to this particular letter, the letter at issue, which is Exhibit D, you had recently testified that even if the -- the obligation owed to Lending Club had been sold to Accelerated or Oliphant, that because of the bankruptcy, they still wouldn't have been entitled to payment; is that -- am I accurately stating what you testified to?

A.   Correct.

Q.   Okay.  So, if, other than the bankruptcy, though, if you hadn't filed bankruptcy and Lending Club had sold your account to Accelerated or Oliphant, would they lawfully be entitled to seek payment from you?

MR. SANDERS:  Are you asking her to draw a legal conclusion or are you just asking for a layperson's opinion?

19 (Pages 70 - 73)

Page 74

MR. MILLER: Just a layperson's opinion.

Q. If Lending Club sold the account to Oliphant or Accelerated and the debt had not been discharged in bankruptcy, would Oliphant and Accelerated be entitled to seek repayment from you?

A. I have no idea, because my obligation was with Lending Club and they would take it directly -- it was a direct payment.

Q. Okay. Okay. So you don't know?

A. So if it would have been sold from somebody I wouldn't even know because I never received anything in the mail stating that.

Q. Okay. Did you believe under the -- your -- again, we talked about the agreement, there was some type of an agreement with Lending Club, much like any other financial obligation, a contract, do you believe that the contract you had with Lending Clum, Lending Club, I apologize, authorized them to sell your loan over, the amounts that you still owed on your loan to other --

MR. SANDERS: Objection. Foundation.

Page 75

The witness can answer.

Q. You can answer.

A. I have no idea.

Q. Okay. One second here.

Okay. So, again, then we're looking at Exhibit F, which is your Chapter 7 bankruptcy petition, which was filed on December 31st, 2019, which is the same as the date on Exhibit D, which is the letter you received. Do you recall if you received the letter at issue before your bankruptcy petition was filed or after your bankruptcy petition was filed?

A. Well, when I received the letter I already had gone to my lawyer.

Q. You had already gone to your lawyer to file for bankruptcy?

A. Correct.

Q. Okay. But do you know if the bankruptcy had actually been filed or not at that time?

A. I don't recall.

Q. Okay. All right. And in looking at your bankruptcy petition, scrolling down to the property here, so this is your schedule A

Page 76

and B, property. And in this you list here at entry 33, if I need to blow it up let me know?

A. Yes.

Q. Blow it up? Okay. Hold on. Let's see. So is it easier to see now?

A. No, I can't see it. It's just a bunch of black, very small. Okay. Now.

Q. Okay. So do you see number 33, it says claims against third parties whether or not you have filed a lawsuit or made a demand for payment, and do you see here it says in this box, FDCPA claims against debt collectors from collection letters, statutory damages of $1,000 per claim and fees; do you see that?

A. Yes, I see it.

Q. Okay. Do you believe that this -- so this FDCPA claim that you -- for the bankruptcy petition, do you believe that that is in relation to the claims that you are now pursuing against my client?

A. I didn't understand the question. I'm sorry.

Q. Sure. So in the bankruptcy petition you're listing as an asset, the FDCPA claim that --

Page 77

MR. THOMAS: Hang on. We have a dog barking in the background. All right. Sounds like it's done.

A. I can't even hear him.

Q. Are you kidding?

A. Now, I can see him.

Q. Can you hear me?

A. Yeah, now I can hear you.

Q. Okay. Can you see the screen?

A. Yes.

Q. Okay. So this is on your bankruptcy petition. You've scheduled as asset FDCPA claims against debt collectors from collection letters. So you have brought a lawsuit, the current lawsuit that you had against my clients, is under the FDCPA as well; correct?

A. Correct.

Q. So are the FDCPA claims that you've identified in your bankruptcy, are they the same claims that you brought against my clients; if you know?

A. I don't know.

Q. Okay. All right. Give me one second here.

20 (Pages 74 - 77)

Page 78

Ms. Hernandez, do you recall your counsel providing me with copies of written discovery requests that my clients served on you as the Plaintiff?

A. I don't recall.

Q. Okay. Do you recall assisting -- if you didn't get copies, do you recall assisting your counsel and responding to the discovery that was served?

A. I know I respond.

Q. Okay. Let me pull these up then.

MR. MILLER: So this is going to be Exhibit G. And this is going to be -- these are going to be the Plaintiff's response to Defendants' requests for admissions.

- - - - -

(Thereupon, Defendants' Exhibit G, Plaintiff's Response to Defendants' Requests for Admissions, was marked for purposes of identification.)

- - - - -

Q. So this is Exhibit G. Can you see my screen, Ms. Hernandez?

A. Yes, I do.

Q. Have you seen -- do you know if you

Page 79

have seen this document before?

A. I don't recall, because I can't even read it right. I can't read it correctly.

Q. Okay. I'm not sure -- I can make it a little bit bigger here. Is that any better?

A. I can't recall.

Q. You don't recall if you've seen this? Okay. We will mark the next Exhibit --

A. I could have -- I could have, but I don't recall.

Q. Okay.

A. Because I don't have it in front of me. It's like hard to see.

Q. Okay.

A. And there's like construction going on outside, so.

Q. Okay. Well, if you can't hear me, let me know.

A. Yeah. No, I'm listening -- I'm listening to what you're saying. But the document, I could have seen it, but it's like hard to read.

Q. Well, let me ask you this, did you assist your counsel in providing responses to

Page 80

any of the --

A. Yes.

Q. -- discovery? Yes? Okay.

A. Yes, I did.

Q. And any assistance you gave to your counsel you provided true and accurate information to your counsel; right?

A. Correct.

Q. Okay. So as far as you know the information that you provided was accurate when you provided it to your counsel?

A. Correct.

Q. Okay. So as it relates to your lawsuit, Ms. Hernandez, what is it that you're seeking from my clients? What do you want from them? You brought these claims. What type of relief are you seeking at the end of the day?

A. Well, I think my lawyer could answer that.

Q. Well, they're your claims. He probably can, but the deposition is for you. Are you asking for my clients to pay you money? Let's start there.

A. Yes.

Q. Okay. And do you know how much

Page 81

money you're entitled to under the FDCPA and the FCCPA?

A. No, I don't.

Q. How much money do you think you should get paid?

A. I don't know.

Q. You don't even have an estimate as to what would be satisfactory?

A. No, I don't.

Q. Okay. Who would know?

A. My lawyer.

Q. Your lawyer would know what you should get paid?

A. Yes.

Q. Okay. Now, as far as your relationship with your attorney, do you know if you're required to pay your attorney for legal fees that are incurred?

A. I don't know.

Q. Okay. Do you recall if you signed an agreement with your attorney --

A. I don't know.

Q. -- regarding representation?

A. I don't know.

Q. You don't know if you did or not?

21 (Pages 78 - 81)

Page 82

Let me repeat the question. When you -- Mr. Sanders, from his firm, you retained them as it relates to the action against my clients, did you enter into an agreement with Mr. Sanders and/or his firm related to the legal services that they're providing to you?

A. I don't recall.

Q. Okay. So we talked a little bit about what you want from my clients, you know, what you believe you're owed. So you said the FDCPA and the FCCPA, those provide for statutory damages, which means it's an amount of money that fits by statute, but they both also allow for what's called actual damages, meaning, besides what the statute permits, if you had certain actual damage. And the best I could describe them is, for example, had you been in a -- if you were in a car accident or something, you had a broken arm, that certainly is an actual damage. That doesn't mean that you have to have an injury for an actual damage, but that's an example.

Do you believe that you have actual damages that my client should have to pay you for?

Page 83

A. I do, because I spoke to my lawyer about it when I sent him the letter, so there was a -- a violation.

Q. Okay. So you believe that you have actual damages?

A. I believe so.

Q. Okay. Do you know what -- what do you believe your actual damages to be?

A. Well, I don't know the law of bankruptcy, but that's why I gave -- I gave -- I gave it to him, so he can analyze and tell me what was going on.

Q. And when you say him you mean Attorney Silver who handled the bankruptcy; right?

A. Correct.

Q. Okay. So you gave it to him in relation to your bankruptcy?

A. Correct.

Q. Okay. What did he tell you was the violation, from his analysis of the letter?

MR. SANDERS: Objection.
Don't answer that.

MR. MILLER: Can you tell me what the objection is, Craig.

Page 84

MR. SANDERS: You are asking what counsel told his client. The answer is that it's privileged.

MR. MILLER: Right. But it would be privileged as it relates to your lawsuit, but it's not privileged as it relates to --

MR. SANDERS: It's privileged, period. Any communication between you and your attorney are privileged. You don't really want to go to the magistrate with that question. It's the first question I have objected to.

MR. MILLER: I understand. I'm just -- I'm just trying to talk it out with you --

MR. SANDERS: Okay.

MR. MILLER: -- to make sure that I understand that your objection is that you believe that -- that what --

MR. SANDERS: Communication with counsel is privileged, yes.

MR. MILLER: Okay. All right.

Q. Based on your discussions with Mr. Silver as it related to this letter you took to him, what did you do, if anything? Did you decide to pursue this lawsuit?

Page 85

A. We both did.

Q. Okay. Just give me one second, I think we're -- we're just about done.

I don't have any further questions.

MR. SANDERS: I just have a couple. Just give me one second.

EXAMINATION OF ISABEL HERNANDEZ
BY MR. SANDERS:

Q. Is the letter up for everybody?

A. Yes.

MR. MILLER: Yes.

Q. Ms. Hernandez, do you believe that you owe $9,706.72 to an entity by the name of WebBank?

A. No.

Q. Do you believe you owe $9,706.72 to an entity by the name of Accelerated Inventory Management, LLC?

A. No.

Q. Do you believe you owe $9,706.72 to an entity by the name of Lending Club?

A. Lending Club, yes, I -- I took a loan from them.

Q. Is that the correct amount?

A. That's not the correct amount.

22 (Pages 82 - 85)

Page 86

Q.   Do you believe you owe $9,706.72 to any entity?

A.   No.

Q.   I'm showing you what was, I think, marked as Exhibit E --

MR. MILLER:  Yes.

Q.   -- titled loan summary.  Have you ever, prior to today's deposition, seen this document?

A.   No, I have not.

Q.   Do you have any idea what this document is?

A.   No.

Q.   Do you know where it came from?

A.   No, I don't.

Q.   I have no further questions.

FURTHER EXAMINATION OF ISABEL HERNANDEZ

BY MR. MILLER:

Q.   And just in light of Mr. Sanders' questions --

MR. MILLER:  Craig, can you go back to the letter exhibit since your screen's already up there?

Q.   Ms. Hernandez, you were asked questions regarding whether or not you believed

Page 87

you owed the amount here and you said no.  Why is it that you do not owe that amount to the entities that Mr. Sanders identified?

A.   Because that's, to me, like that's what they are saying I owe and I'm saying I don't because I -- I paid them a lot of money.

Q.   So it's not that you don't owe money to Accelerated or Oliphant, it's that you don't owe the particular amount being sought; is that correct?

A.   No, I'm saying I don't -- I don't owe Oliphant or Accelerated.

Q.   Okay.  And why is that, that you don't owe them?

A.   I did not do any business with them.

Q.   Okay.  So it's simply because you didn't do business with them, you don't owe them, that's the basis of your -- your claims?

A.   That's correct.

Q.   I don't have anything further.

THE NOTARY:  Would you like the witness to read?

MR. SANDERS:  Yes, please.

(Remote deposition concluded at 1:09 p.m.)

Page 88

Whereupon, counsel was requested to give instruction regarding the witness's review of the transcript pursuant to the Civil Rules.

SIGNATURE:
Transcript review was requested pursuant to the applicable Rules of Civil Procedure.

TRANSCRIPT DELIVERY:
Counsel was requested to give instruction regarding delivery date of transcript.
Shannon Miller, Esq.-Original

Page 89

REPORTER'S CERTIFICATE

The State of Ohio,   )
                            SS:
County of Cuyahoga.  )

I, Christine M. Emery, a Notary Public within and for the State of Ohio, duly commissioned and qualified, do hereby certify that the within named witness, ISABEL HERNANDEZ, was by me first duly sworn remotely to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the testimony then given by the above-referenced witness was by me reduced to stenotypy in the presence of said witness; afterwards transcribed, and that the foregoing is a true and correct transcription of the testimony so given by the above-referenced witness.

I do further certify that this deposition was taken at the time and place in the foregoing caption specified and was completed without adjournment.

23 (Pages 86 - 89)

Page 90

I do further certify that I am not a relative, counsel or attorney for either party, or otherwise interested in the event of this action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office at Cleveland, Ohio, on this 11th day of May, 2021.

Christine M. Emery, Notary Public
within and for the State of Ohio

My commission expires January 19, 2024.

---

Page 91

Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

May 11, 2021

To: Craig B. Sanders, Esq.

Case Name: Hernandez, Isabel v. Oliphant Financial, LLC

Veritext Reference Number: 4566722

Witness: Isabel Hernandez　　Deposition Date: 5/5/2021

Dear Sir/Madam:

The deposition transcript taken in the above-referenced matter, with the reading and signing having not been expressly waived, has been completed and is available for review and signature. Please call our office to make arrangements for a convenient location to accomplish this or if you prefer a certified transcript can be purchased.

If the errata is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,
Production Department

NO NOTARY REQUIRED IN CA

---

Page 92

DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 4566722
CASE NAME: Hernandez, Isabel v. Oliphant Financial, LLC
DATE OF DEPOSITION: 5/5/2021
WITNESS' NAME: Isabel Hernandez
In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.
I have made no changes to the testimony as transcribed by the court reporter.

_____
Date　　　　Isabel Hernandez
Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:

They have read the transcript;
They signed the foregoing Sworn Statement; and
Their execution of this Statement is of their free act and deed.

I have affixed my name and official seal

this _____ day of_____, 20____.

_____
Notary Public
_____
Commission Expiration Date

---

Page 93

DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 4566722
CASE NAME: Hernandez, Isabel v. Oliphant Financial, LLC
DATE OF DEPOSITION: 5/5/2021
WITNESS' NAME: Isabel Hernandez
In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.
I have listed my changes on the attached Errata Sheet, listing page and line numbers as well as the reason(s) for the change(s).
I request that these changes be entered as part of the record of my testimony.

I have executed the Errata Sheet, as well as this Certificate, and request and authorize that both be appended to the transcript of my testimony and be incorporated therein.

_____
Date　　　　Isabel Hernandez

Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:
They have read the transcript;
They have listed all of their corrections in the appended Errata Sheet;
They signed the foregoing Sworn Statement; and
Their execution of this Statement is of their free act and deed.
I have affixed my name and official seal

this _____ day of_____, 20____.

_____
Notary Public

_____
Commission Expiration Date

24 (Pages 90 - 93)

Page 94

ERRATA SHEET

VERITEXT LEGAL SOLUTIONS MIDWEST

ASSIGNMENT NO: 5/5/2021

PAGE/LINE(S) /      CHANGE      /REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____    _____

Date          Isabel Hernandez

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____

DAY OF _____, 20_____ .

_____

Notary Public

_____

Commission Expiration Date

**[00873 - address]**

Page 1

| 0 | | | |
|---|---|---|---|
| **00873** 1:9 | **2021** 1:17 15:6 90:8 91:4 | **70** 4:9 | 59:10 60:2,22 |
| **0873** 5:16 | **2024** 90:17 | **718** 41:18 | 64:18 67:4,8,17 |
| | **20s** 9:14 | **78** 4:11 | 68:4 69:14,15 |
| **1** | **216-523-1313** 91:3 | | 73:12,21 74:4,6 |
| **1** 17:13 | | **8** | 85:17 87:8,12 |
| **1,000** 76:14 | **3** | **85** 3:9 | **accelerating** 31:17 |
| **10** 2:15 4:3 | **30** 30:16,20 35:10 | **86** 3:10 | **accelerator** 17:4,5 |
| **100** 2:7 52:13 | **31** 32:14 | **89** 3:12 | 34:6 51:16 53:19 |
| **11** 5:22 91:4 | **312-416-6170** 2:17 | **8:20** 1:9 | 55:2,4,5,7,8,9,10 |
| **1100** 91:1 | **31st** 19:1,11 22:6 36:10 71:4 75:8 | | 55:16,24 |
| **11217** 8:24 | **33** 76:2,8 | **9** | **accident** 82:18 |
| **11530** 2:8 | **36** 57:8 | **9,500** 72:1,11 | **accomplish** 91:16 |
| **11:20** 1:18 | **38** 58:2 | **9,706.72** 23:19 85:13,16,20 86:1 | **account** 22:5,7,10 |
| **11th** 90:7 | | **9,706.72.** 46:3 | 22:14 24:15 25:7 |
| **12** 4:4 9:2,3 47:21 | **4** | **929** 41:17 | 25:24 43:17 45:17 |
| **12026** 90:13 | **4** 3:5 | **929-200-2911** 34:24 | 45:25 51:13 52:2 |
| **12:23** 65:10 | **4.10.** 71:20 | **93** 49:21 | 54:13,16 68:17 |
| **12:35** 65:11 | **4.4** 71:20 | **94** 50:4 | 71:25 73:1,21 |
| **14** 4:5 | **40** 4:8 61:7 | **95** 50:11 | 74:3 |
| **15** 65:7 | **44114** 91:2 | **9706.72.** 48:24 | **accounts** 29:11 |
| **15th** 13:2 15:6 19:9,11 36:17,19 38:2 | **4566722** 91:7 92:2 93:2 | | 48:17 |
| **17** 4:6 | **46** 62:10 | **a** | **accurate** 14:5,9 |
| **175** 1:20 8:22 19:20 47:20 | **4d** 1:20 8:23 | **a.m.** 1:18 | 16:4,8 42:15,18 |
| **1820** 91:2 | | **ability** 7:13,19 68:10 | 43:7 80:6,10 |
| **19** 90:17 | **5** | **able** 10:22 22:9 69:12 | **accurately** 72:12 |
| **19063** 2:16 | **5** 1:17 3:8 | **accelerated** 5:13 | 73:15 |
| **1:09** 87:25 | **5/5/2021** 91:8 92:3 93:3 94:2 | 11:9,11,12 16:12 | **acknowledge** 92:11 93:16 |
| | **500** 2:7 | 22:18 23:5 25:5 | **act** 26:13,14 27:4 |
| **2** | **516-203-7600** 2:9 | 25:17,20 29:22 | 27:6,15,20,22 |
| **2** 3:3 | **5314** 22:8 45:18,23 71:25 | 30:8 31:14,18 | 92:14 93:20 |
| **20** 5:16 92:16 93:22 94:22 | **55** 8:4 | 33:3,4 46:17 48:2 | **action** 5:15 13:1 |
| **2019** 19:1,11 22:6 32:14 36:10 71:4 75:8 | **58** 48:17,23 | 48:6 49:2,14,22 | 38:5,7 64:22 65:1 |
| | **59** 49:10 | 50:1,4,9,13,17,25 | 82:3 90:4 |
| **2020** 13:2 19:9,12 36:17,19 38:2 | **7** | 51:4,11 52:1,9,14 | **actions** 62:12 |
| | **7** 4:10 70:17,22 71:3 75:6 | 52:16,22,25 53:3 | **actual** 82:14,16,20 82:21,23 83:5,8 |
| | | 53:25 54:12 55:6 | **addition** 57:8 |
| | | 55:13,17,23 57:14 | **additionally** 6:20 |
| | | 57:17,21,24 58:13 | **address** 8:20,22 |
| | | 58:16,17 59:1,3,6 | 19:19 41:6,6,9 |

**[address - based]**                                                                 Page 2

47:19,23
**addressed** 19:17
**adequate** 7:15
**adjournment**
  89:23
**admissions** 4:12
  78:15,19
**admitted** 73:3
**advised** 25:5 51:11
**affect** 7:13,19
**affirmatively** 13:7
**affixed** 90:6 92:15
  93:21
**aforesaid** 89:12
**afraid** 61:12
**afternoon** 5:22
**age** 5:6
**ago** 31:25 32:2,5,7
  32:9
**agree** 46:4,6
**agreement** 68:11
  74:16,17 81:21
  82:4
**alcohol** 7:11
**allegations** 46:15
**allege** 49:22 62:12
**alleged** 63:20
**allegedly** 42:4
**alleges** 31:8
**alleging** 27:18
  48:25 52:3
**allow** 82:14
**amended** 4:3,5
  10:8,12 14:15,20
  14:24 15:5,7,15,19
  15:21 16:7 26:11
  31:9 48:13,14,22
  52:12 56:17 62:11
**amount** 23:19,20
  30:8 38:25 41:23
  42:18,22 43:16

46:4,13,21 67:18
72:1,9,11,12,16,17
82:12 85:24,25
87:1,2,9
**amounts** 74:22
**analysis** 83:21
**analyze** 83:11
**answer** 6:13,17,18
  6:23,25 26:23
  57:17 58:23 59:2
  59:24 60:10 64:9
  75:1,2 80:19
  83:23 84:2
**answered** 33:24
**answering** 57:25
**answers** 6:10
**anxious** 62:19
  63:4 64:3 66:3
**anybody** 29:17
  30:4 35:23 45:4
  59:18 60:10 61:17
**apartment** 1:20
  8:23
**apologize** 28:21
  31:7 45:17 50:21
  54:24 65:16,20
  74:21
**appear** 43:7 92:11
  93:15
**appearances** 2:1
  3:3
**appeared** 34:15
  35:5
**appearing** 10:23
**appended** 93:11
  93:18
**applicable** 88:7
**april** 13:2 19:9,11
  36:17,19 38:2
**area** 59:21,25 60:6
  60:6,18,21 61:2,4

**arm** 82:19
**arrangements**
  91:15
**asked** 54:4,20,25
  86:24
**asking** 7:20 12:4
  27:1 61:16 73:23
  73:24 80:22 84:1
**asset** 76:24 77:12
**assignment** 92:2
  93:2 94:2
**assist** 79:25
**assistance** 80:5
**assisting** 78:6,8
**associate** 9:7
**associated** 41:7
  57:20 60:1
**assume** 10:16
  30:18
**assumed** 59:8,10
**attached** 17:22
  19:15 93:7
**attempt** 29:17,18
  29:21,24
**attorney** 5:12 6:20
  26:2 29:15 36:24
  37:1,2 48:4 81:16
  81:17,21 83:14
  84:9 90:2
**attorneys** 15:18
**authorization** 4:6
  17:17
**authorize** 93:11
**authorized** 74:21
**autism** 9:23
**available** 91:13
**ave** 91:1
**aware** 15:14

**b**

**b** 2:6 4:4 12:14,18
  12:23 36:16 76:1
  91:5
**back** 13:1 18:11
  18:13 29:10 33:23
  36:15 46:14 47:25
  48:11 49:25 52:11
  52:21 53:21,22
  56:16 60:14 65:16
  70:1 73:8 86:21
**background** 7:24
  77:2
**bad** 62:16
**balance** 25:9
  33:12 41:24 46:3
  54:6,16 59:7
  72:25
**bank** 35:21 43:17
  54:23 68:17 71:19
  71:19
**bankruptcy** 4:10
  20:14 29:7 36:24
  37:2 63:17,24
  66:19,22 69:19,21
  69:25 70:6,10,12
  70:22 71:3,8 72:4
  72:18,19 73:2,8,13
  73:19,20 74:5
  75:7,11,12,17,20
  75:24 76:18,23
  77:12,20 83:10,14
  83:18
**barking** 77:2
**bars** 22:4
**barshay** 2:5
**barshaysanders....**
  2:10
**base** 17:2
**based** 18:2 46:15
  49:13 59:23 64:8

**[based - club]**                                                      Page 3

84:22
**basis**  16:20,22
  26:9 48:12 67:2
  87:19
**began**  45:13
**beginning**  31:7
**behalf**  2:4,12 13:1
  45:1,5 47:10,15
  49:11
**belief**  51:3 64:7
**believe**  14:3,7 16:3
  16:6 19:4 21:13
  21:15 25:16,17
  26:5,19 27:5,7,21
  33:2,16 45:10
  46:7,11 47:4
  49:24 50:15,23
  51:19 52:25 53:2
  53:4,7,12,13,14
  58:16 59:1 66:23
  67:3,11,20,22,24
  68:9,22 69:2,3,5,6
  69:14 70:4 72:11
  72:12 73:1 74:15
  74:19 76:16,18
  82:10,23 83:4,6,8
  84:18 85:12,16,20
  86:1
**believed**  27:9,12
  27:14 30:10 35:14
  49:5 50:8 52:3
  58:25 60:1,21
  64:4 66:10 86:25
**best**  6:15,17 82:16
**better**  42:24 79:6
**bigger**  18:23 41:1
  42:24 48:18,19
  79:5
**bills**  43:22,24,25
  63:14

**bit**  7:23 17:8 18:23
  65:20 79:5 82:8
**black**  76:7
**blow**  56:18 76:2,4
**body**  23:25,25
  24:22 30:13
**born**  7:25 8:1
**borrow**  68:3
**borrowed**  68:6
**borrower**  40:21
**bounce**  65:19
**box**  23:8 76:12
**boxes**  24:14,23
  25:23
**brain**  65:17
**break**  31:5,6 61:24
  62:1,6 65:5,17,21
**broken**  82:19
**brooklyn**  1:20
  8:19,23
**brought**  11:16
  27:1 77:14,21
  80:16
**bubble**  12:10
**bunch**  76:7
**business**  16:17
  25:14 33:14 44:2
  44:7 51:9 62:24
  67:25 87:15,18

**c**

**c**  4:5 14:21,23 15:3
  26:10 48:16 52:11
  56:16 62:11
**ca**  91:25
**call**  6:5 11:2 17:3
  32:18,24,25 33:8
  34:5,16 35:5,9,16
  35:18 36:2,5,12,18
  37:13,19 38:1,4,5
  38:11,12 39:9,20
  53:23 56:5,21,23

57:2,25 59:9,12,14
  59:24 60:13 91:14
**called**  5:6 17:13
  31:15,18 54:19
  55:9,14,15 56:9
  57:12 82:14
**caller**  35:6 57:20
**calling**  33:17
  39:25 59:8 60:22
  61:12,18 62:13
**calls**  31:10,22
  32:15 57:21 58:8
  58:15,22,25 59:2
  59:18 60:1,10,17
  61:15 62:17,22
  63:2,20 64:1,9
  66:2
**capital**  71:18,19
**caption**  89:22
**car**  82:18
**card**  68:17
**cards**  68:13
**care**  9:11 10:2,2
**carol**  34:9
**case**  1:9 5:16 6:23
  15:5 91:6 92:3
  93:3
**cause**  89:12
**caused**  62:13
**cell**  34:18,21,22,23
  34:25
**center**  32:13
**certain**  82:16
**certainly**  6:15
  62:1 82:19
**certificate**  3:12
  89:1 93:11
**certification**  92:1
  93:1
**certified**  5:9 91:16

**certify**  89:8,20
  90:1
**cetera**  25:25
**chain**  65:19
**change**  93:8 94:3
**changes**  92:7 93:7
  93:9
**chapter**  4:10
  70:17,22 71:3
  75:6
**children**  8:10,12
  8:14,15
**christine**  1:23 6:11
  89:6 90:14
**citicards**  71:19
**city**  2:7,8
**civil**  5:8 88:3,7
  92:5 93:5
**claim**  46:21 76:14
  76:17,25
**claiming**  27:2 51:4
  51:20
**claims**  17:2 48:12
  56:20 71:12,14
  76:9,12,19 77:13
  77:19,21 80:16,20
  87:19
**cleveland**  90:7
  91:2
**client**  55:15 76:20
  82:24 84:2
**client's**  55:13
**clients**  16:12,25
  27:3 45:10 67:2
  77:16,22 78:3
  80:15,22 82:3,9
**clint**  2:22 10:8,16
  12:14 14:18 17:12
  40:11 70:16
**club**  28:10,21,22
  29:2 42:5,9,14,16

**[club - day]**                                                                                      Page 4

42:20 43:4,5,10
44:6 45:1,3,13
46:5 47:4,9,10,14
53:17 66:11 67:10
67:18,19 68:6,10
68:12,22 69:4,5,17
70:9 71:21 72:8
73:1,4,12,20 74:3
74:9,18,21 85:21
85:22
**club's** 45:5
**clum** 74:20
**code** 59:21 60:1,7
60:18,21 61:2,4
**codes** 60:6
**collect** 23:3,5
39:22,25 49:12
67:12
**collecting** 69:22
**collection** 26:13
26:14 27:6,15,19
27:22 76:13 77:14
**collections** 27:4
**collectors** 76:12
77:13
**come** 36:25 64:5
64:10
**coming** 43:3 58:25
60:2 61:24
**commission** 90:17
92:19 93:25 94:25
**commissioned**
89:8
**communication**
47:14 84:8,19
**companies** 46:25
48:5 68:1
**company** 35:21
38:20 54:21 67:14
**complaint** 4:4,5
12:15,19,25 13:12

13:19,22 14:4,8,14
14:16,20,24 15:5,7
15:15,19,22,22
16:7,18,21 17:13
17:22 19:9,15
26:10,11 27:18
31:8,9 32:11
36:16 38:2 48:13
48:14,22 52:12
56:17,25 57:7
62:11 64:19
**completed** 6:16,19
9:6 89:23 91:13
**concierge** 2:22
**concluded** 87:25
**conclusion** 73:24
**conditions** 7:18
**construction**
79:16
**consumer** 26:14
27:19,21
**contact** 29:17,19
29:21,24 40:22
45:1,5 59:19
**contacted** 39:20
47:9 57:9 58:3,5
**contacting** 25:8
**contained** 14:4
16:3,7 18:16
**contention** 52:20
**contract** 68:19,24
69:4,6 74:19,20
**convenient** 91:15
**copies** 78:2,7
**copy** 11:5 30:23
30:24
**corporation** 71:21
**correct** 10:4 14:6
14:10 15:16 16:5
16:9,23 18:8,17
19:13,17,18,22

20:15,16 21:11
23:7 26:3 27:16
27:25 28:11 29:8
29:16 31:11,12,20
32:22 33:9 36:7
37:3,6 39:13,14
40:2 41:10,11
42:17 46:18,19,22
46:23 47:1,24
49:15,16 51:1
52:10 53:10,11
54:2,9 55:11 57:4
57:5,11 58:1
59:11 60:19 63:15
63:18 64:16 66:5
66:11,12,17,18
67:6,7 68:5,8,20
69:23 70:3 71:10
71:17,23 72:1,2
73:6,17 75:18
77:17,18 80:8,12
83:16,19 85:24,25
87:10,20 89:17
**corrections** 93:17
**correctly** 14:14
79:3
**counsel** 36:25 78:2
78:8 79:25 80:6,7
80:11 84:2,20
88:1,10 90:2
**count** 49:18,19
**county** 89:4 92:10
93:15
**couple** 62:7 85:5
**court** 1:1 3:15 5:2
92:7
**craig** 2:6 12:14
65:7 83:25 86:21
91:5
**credit** 49:23 50:2,5
50:9 68:13,16

72:21,23
**creditor** 22:6,18
22:23 23:1,2,9,15
24:7,8,16 25:25
29:25 52:15,17
69:5
**creditors** 71:14
**csanders** 2:10
**current** 14:13 22:5
22:18,23 23:1
24:16 36:25 77:15
**currently** 8:18
9:18,19
**custody** 3:14
**cuyahoga** 89:4
**cv** 1:9 5:16

**d**

**d** 4:6 17:11,14,16
17:23 26:18 30:14
32:12 39:5 45:9
45:16 46:14 47:25
48:11 49:25 50:7
52:21 64:21,25
67:1 73:10 75:9
**dam** 57:3
**damage** 82:16,20
82:22
**damages** 56:22
57:3 76:13 82:12
82:14,24 83:5,8
**date** 18:25 19:7
22:5,6 24:15
32:16,17 36:7
37:22 41:23 42:15
75:9 88:11 91:8
92:3,9,19 93:3,13
93:25 94:20,25
**dated** 32:14
**david** 8:23
**day** 20:19,22 58:4
58:6 62:13 80:17

[day - exhibit]

Page 5

| | | | |
|---|---|---|---|
| 90:7 92:16 93:22 94:22 | 89:21 91:8,11 92:1,3 93:1,3 | **door** 64:2,5,8 | **entitled** 67:12 73:14,22 74:6 81:1 |
| **days** 30:16,20 91:19 | **describe** 82:17 | **draw** 73:24 | |
| | **description** 4:2 | **drugs** 7:12 | |
| **dear** 24:24 91:10 | **details** 35:20 37:13 | **due** 23:19 | **entity** 29:25 39:25 49:11 55:10,14 85:13,17,21 86:2 |
| **debt** 23:2,3,6 26:13 27:3,6,14 30:17,19,21,23 33:17 35:14 40:1 51:23 52:15,17,21 52:25 53:8,14,16 70:5 72:7 74:4 76:12 77:13 | **diagnosed** 9:22 | **duly** 5:9 89:7,10 | |
| | **different** 55:12 60:6 65:17 | **dumbfounded** 39:1 | **entry** 71:21 76:2 |
| | **difficult** 63:11,13 | | **errata** 91:19 93:7 93:10,18 94:1 |
| | **difficulty** 6:4 | **e** | |
| | **digits** 22:8 71:24 | **e** 4:8 40:5,7,14 41:5,6 45:22 47:3 66:8 67:9 68:23 71:13,13 72:6 73:5 86:5 | **esq** 2:6,14 88:12 91:5 |
| | **direct** 74:10 | | **estimate** 81:7 |
| | **directed** 37:4 | | **et** 25:25 |
| **debts** 39:22 69:25 71:15 | **directly** 52:5 74:10 | | **event** 90:3 |
| | | **earlier** 44:10 47:20 53:24 66:14 | **events** 65:19 |
| **december** 19:1,11 22:6 32:14 36:10 71:4 75:8 | **disagree** 72:9 | | **eventually** 66:14 |
| | **discharged** 66:21 69:25 70:5,9 74:5 | **easier** 76:5 | **everybody** 85:9 |
| | | **education** 9:5,6 | **exact** 61:9 |
| **decide** 59:24 84:25 | **disclose** 62:25 63:6 | **effects** 38:11 | **examination** 3:7 5:7,19 85:7 86:17 |
| **deed** 92:14 93:20 | | **eight** 9:25 10:1 | |
| **deemed** 91:21 | **disclosed** 37:25 | **either** 15:23 26:15 26:20 36:3 37:14 46:17 48:5 49:14 64:18 67:4,16 90:2 | **example** 82:17,22 |
| **defendants** 1:13 2:12 4:11 5:14 10:11 11:8,13 12:18 14:23 17:16 31:10 40:7 49:12 52:13 57:9 58:3 61:8 62:12 70:20 78:15,17,18 | **discovery** 78:3,9 80:3 | | **exchanges** 57:24 |
| | **discussed** 35:16 | | **excuse** 11:22 64:23 |
| | **discussing** 35:13 | | |
| | **discussions** 84:22 | **elderly** 9:11 | **executed** 93:10 |
| | **dispute** 30:7,9,17 | **electronically** 43:12 | **execution** 92:14 93:19 |
| | **disputed** 30:22 | | |
| | **district** 1:1,2 5:17 | **emery** 1:23 89:6 90:14 | **exhibit** 3:14 4:3,4 4:5,6,8,9,11 10:7 10:11 11:1,1 12:14,18,23 14:19 14:21,23 15:3 17:11,13,14,16,22 17:23 18:14 26:10 26:17,18 30:14 32:12,12 36:16 39:5 40:4,5,7,14 45:9,16,22 46:14 47:3,25 48:11,16 49:25 50:7 52:11 52:21 56:16 62:11 |
| **degree** 9:7,13,16 | **division** 1:3 | **employed** 9:18,19 | |
| **delivery** 88:9,11 | **doctor** 62:18,21 63:6,21 65:23,24 | **ended** 35:18,19 | |
| **demand** 76:10 | | **ends** 45:18,22 | |
| **department** 91:24 | | **enlighten** 9:10 | |
| **deposed** 5:10 6:8 11:20 | **document** 12:2 13:2,9 15:23 40:15 71:5 79:1 79:22 86:9,12 | **enter** 82:4 | |
| | | **entered** 51:4,20,21 52:4,8 93:9 | |
| **deposited** 43:16 | | | |
| **deposition** 1:15 4:3 5:18 6:7 7:10 10:12 11:3,3,16,17 11:25 12:5,6 28:2 80:21 86:8 87:25 | **documents** 43:11 | **entire** 92:5 93:5 | |
| | **dog** 77:2 | **entirety** 18:16 | |
| | **doing** 6:2 7:3 | **entities** 31:15 39:21 46:17 87:3 | |

[exhibit - hernandez]                                                Page 6

64:21,25 66:8
67:1,9 68:23
70:15,18,20 72:6
73:5,10 75:6,9
78:13,17,22 79:9
86:5,22
**exhibits** 3:5,15 4:1
10:19
**experience** 39:25
**expiration** 92:19
93:25 94:25
**expires** 90:17
**explained** 68:25
**explaining** 47:15
**expressly** 91:13
**extend** 49:23 50:1
**extended** 50:5,9
**extract** 61:13

**f**

**f** 4:9 70:18,20
71:13 75:6
**fact** 5:4 46:16
49:13
**fair** 26:12 27:3,6
27:14
**fall** 36:13
**familiar** 11:17
26:15
**far** 9:4 57:23 80:9
81:15
**fccpa** 26:21 81:2
82:11
**fdcpa** 26:20 52:19
76:12,17,24 77:13
77:16,19 81:1
82:11
**feared** 61:8
**february** 15:6
**federal** 5:7
**feel** 38:22,24

**fees** 76:14 81:18
**fell** 29:5 44:10
**female** 34:12,13
**field** 9:15
**file** 10:7 12:16
14:20 17:12 75:17
**filed** 12:25 13:1,14
13:25,25 14:1,15
15:5,15,24,24,25
16:2,19 19:8 29:6
36:17 38:2 66:19
69:19 71:3,8
73:19 75:7,12,13
75:20 76:10
**filing** 4:9 13:15
15:19 63:24 70:22
**financial** 1:11 4:7
5:13 11:9 17:18
21:21 22:1 29:19
45:11 50:17,20
74:18 91:6 92:3
93:3
**financially** 62:17
63:11,12
**fine** 43:25 62:1,8
65:9
**finish** 62:5
**finished** 62:5
**firm** 37:5,15,16
82:2,5
**first** 4:5 5:8 10:7
14:19,24 15:4,7,21
16:13 20:4 24:6
24:10 25:3,4
26:11 31:9 48:14
51:10 62:11 71:5
84:11 89:10
**fits** 82:13
**five** 31:25 32:5,6
**florida** 1:2 5:17
26:13 27:19,21

**following** 65:18
**follows** 5:10
**foregoing** 89:16
89:22 92:13 93:18
**forgot** 31:4
**form** 4:6 17:17
26:22
**forward** 39:16
**foundation** 74:25
**four** 8:13,14 22:8
32:7 71:24
**free** 92:14 93:20
**front** 2:15 18:11
18:13 79:13
**further** 85:4 86:16
86:17 87:21 89:20
90:1

**g**

**g** 4:11 78:13,17,22
**garden** 2:7,8
**generally** 14:12
**gerontology** 9:8
9:10
**getting** 12:9 43:14
56:12 65:16
**give** 12:9 34:7 47:2
49:19 53:20 61:19
77:24 85:2,6 88:1
88:10
**given** 89:13,18
**go** 21:5 24:21
29:10 53:21,22
65:14 70:15 71:13
84:10 86:21
**goes** 10:20 49:9
65:17
**going** 6:8,10 10:6
10:16,17,19,20
12:5,12,13,15,22
12:24 14:19 17:10
36:15 38:24 39:2

40:5 42:2 46:14
47:15,25 48:9,11
48:16 49:18 53:22
56:16 58:19,21
61:13,23 62:16,23
63:5,8,9,22 66:1,6
70:16 71:2,11
73:8 78:12,13,14
79:16 83:12
**good** 5:21,22,23
5:24 65:5
**google** 48:6
**governed** 68:18

**h**

**hand** 90:6
**handle** 38:9
**handled** 83:14
**handling** 20:14
**hang** 77:1
**happen** 47:15
**happened** 28:24
29:3 36:18 44:22
47:6
**happens** 6:5
**happy** 31:6
**hard** 29:6 44:10
79:14,23
**heading** 22:4
**hear** 5:25 6:4 77:4
77:7,8 79:18
**heard** 16:14,17
53:5,7 66:16
**help** 18:24
**hereinafter** 5:9
**hereunto** 90:5
**hernandez** 1:5,16
3:7 4:8 5:5,6,15
5:18,19,21 10:8,18
12:15,22 14:19
15:2 24:24 40:8
40:12,14 70:17

[hernandez - letter]                                                    Page 7

71:1 78:1,23
80:14 85:7,12
86:17,24 89:10
91:6,8 92:3,4,9
93:3,4,13 94:20
**hi** 34:8,9
**highest** 9:5
**highlighter** 50:22
**hold** 39:17 76:4
**hopefully** 10:20
**hour** 61:23
**house** 34:17
**hoyt** 1:20 8:22
19:20 47:20

**i**

**idea** 21:14 74:8
75:3 86:11
**identification**
10:14 12:20 14:25
17:19 40:9 70:24
78:20
**identified** 33:7
59:5 77:20 87:3
**identify** 34:2 56:9
**imagine** 33:19
**immediately** 20:5
20:17,18
**important** 6:11
**incoming** 35:5
59:23
**incorporated**
93:12
**incurred** 42:5
81:18
**indebtedness** 69:7
**index** 3:1,5 4:1
**indicated** 24:13
35:9 48:3
**indicates** 42:2
**indicating** 46:3

**individuals** 4:9 7:6
70:21
**information** 15:18
24:16,18,20 37:18
40:22,23,24,25
41:22,24 43:1,2,6
46:2 51:8 54:11
61:9,11,14,16,19
61:19 80:7,10
**initial** 19:9 20:2
**initially** 12:11
**injury** 82:21
**insofar** 61:8
**instruct** 6:25
**instruction** 7:2
88:2,10
**instructions** 20:22
20:24,24 30:15
**intend** 56:12
**interested** 90:3
**interrupting** 54:24
**introduction**
26:12
**inventory** 5:13
11:9 22:19 25:5
29:22 49:22 50:5
50:13 51:11 52:1
52:14,16 55:6,13
85:17
**involved** 50:12,16
50:20,24
**isabel** 1:5,16 3:7
5:4,6,15,19 21:4
24:24 85:7 86:17
89:9 91:6,8 92:3,4
92:9 93:3,4,13
94:20
**issue** 20:4 41:23
41:23 42:14 73:9
75:11

**issues** 63:22

**j**

**january** 90:17
**judgment** 30:24

**k**

**kept** 59:8
**kidding** 77:5
**kind** 21:20 61:14
68:24
**knock** 64:2,5,8
**know** 6:5,22 13:10
13:24 22:20,22
23:14,15 24:22
26:7 27:11,13,23
29:1 31:5 32:18
33:4,13,14 35:8
36:11,17 37:25
38:13,14,15,23,24
42:8,9 45:14,15
46:25 47:5 49:7
58:18,20 61:17,17
61:23 63:23,24,24
64:1,11,12 65:25
67:5 69:9,10
74:11,13 75:19
76:2 77:22,23
78:10,25 79:19
80:9,25 81:6,10,12
81:16,19,22,24,25
82:9 83:7,9 86:14
**knowledge** 66:21
70:10,11

**l**

**labeled** 10:7,8
12:15 14:19 22:10
29:25 40:11 70:16
70:17
**law** 26:6 63:25
64:2,12 67:3 83:9

**lawful** 5:6
**lawfully** 73:22
**lawsuit** 11:16
16:11 18:2 27:2,3
76:10 77:15,15
80:14 84:5,25
**lawyer** 18:4,6 20:6
20:8,8,10,13 21:18
26:8 35:22 37:9
37:11 38:8 39:16
65:2 75:15,16
80:18 81:11,12
83:1
**layperson's** 73:25
74:1
**lead** 51:19
**leads** 51:3
**learn** 67:16
**led** 63:9,16
**left** 19:1 40:19
46:4 60:10
**legal** 64:14,22 65:1
73:24 81:17 82:6
91:1 94:1
**lender** 68:18
**lending** 28:10,21
28:22 29:2 42:5,8
42:13,14,16,19
43:4,5,10 44:6,25
45:3,4,13 46:5
47:4,9,10,14 53:17
66:11 67:10,18,19
68:6,10,12,22 69:4
69:5,17 70:9
71:21 72:8 73:1,4
73:11,20 74:3,9,18
74:20,20 85:21,22
**letter** 16:21,24
17:1,9 18:1,16,19
18:20 19:5,10,17
19:23 20:1,2,3

**[letter - muted]**

21:2,9,12,18,20,22 22:9 23:25 24:10 24:22,25 25:16,23 26:1,5,6,19,20 27:5,9,11,13,20 29:10 30:14,16,21 32:13,16,21 33:18 35:15 36:7,23 37:8,10 38:8,16 39:6,12,13,19 45:10,12 46:15,21 48:1 49:24 50:15 50:23 51:3 52:6,8 56:1 57:1,9 64:21 64:24 65:3 66:2 67:1,14,19 70:5,7 70:8 73:9,9 75:9 75:11,14 83:2,21 84:23 85:9 86:22 91:20

**letters** 20:25 76:13 77:14

**level** 9:5

**life** 63:22

**light** 86:19

**line** 46:2 93:7 94:3

**linear** 65:18

**list** 71:25 72:20 76:1

**listed** 29:18 71:15 72:18 93:7,17

**listening** 7:1 79:20 79:21

**listing** 76:24 93:7

**lists** 23:19

**little** 7:23 12:10 17:8 18:23 65:20 79:5 82:8

**live** 8:15,18,19

**lived** 8:25

**living** 19:21

**llc** 1:11 5:13,14 11:9,10 22:19 25:6 49:22 50:5 85:18 91:6 92:3 93:3

**llp** 2:13

**loan** 4:8 28:6,10 28:13,19,25 40:8 40:12,19 41:22,23 41:23 42:3,4,7,14 42:14,15,18,19 43:2,3,7,10,15,20 44:5 45:8,13,21,22 46:2 47:3,6,16,22 66:8,9,17,20 67:9 68:12,21,24 70:9 72:3,5 73:4,4 74:22,23 85:23 86:7

**location** 9:1 91:15

**logical** 61:24

**long** 8:25 9:20,21 35:8 56:1 60:4

**look** 18:24 26:11 30:13 45:15 48:4 50:7

**looked** 51:7 61:1

**looking** 13:9 18:18 18:25 21:20 46:1 48:14 50:21 51:6 52:11,21 57:6,8 61:6 66:25 75:6 75:23

**lot** 61:15,15 87:6

|   | m |   |
| --- | --- | --- |

**m** 1:23 89:6 90:14

**madam** 91:10

**magistrate** 84:10

**mail** 35:19,23 41:5 41:6 74:14

**making** 29:1 44:11 44:17,20,23 46:20 47:5 66:15

**male** 34:12

**management** 5:14 11:10 22:19 25:6 29:22 49:22 50:5 50:14 51:12 52:1 52:14,16 55:6,14 85:18

**mark** 10:6 12:14 14:13 17:13 29:9 70:16 79:9

**marked** 4:2 10:13 10:17 11:1 12:19 12:23 14:21,24 15:3 17:11,18,23 26:18 32:12 40:8 40:14 48:15 66:9 70:23 71:20 78:19 86:5

**married** 8:5,7

**material** 7:24

**matter** 91:12

**maurice** 2:13

**mauricewutsche...** 2:18

**mean** 11:13 19:14 20:24 23:1,4 28:15 38:22 51:14 58:12 59:17 61:25 64:14 82:20 83:13

**meaning** 34:17 36:10 43:15,20 44:13 53:10 56:22 70:1 82:15

**means** 25:11 82:12

**meant** 22:23 23:16

**media** 2:16

**medical** 7:18 62:14,15 63:10

**medication** 7:12

**mention** 31:4,7 55:3

**mentioned** 53:25 55:2,3

**middle** 1:2 5:17 21:21,22 22:3 24:14

**midwest** 94:1

**mike** 34:8

**miller** 2:14 3:8,10 5:11,12,20 10:6 12:13 14:18 17:10 40:11 61:25 62:7 65:6,10,13 70:15 74:1 78:12 83:24 84:4,12,16,21 85:11 86:6,18,21 88:12

**mindful** 7:1

**mine** 41:15

**minute** 35:11,12

**minutes** 62:8 65:7 65:7,9

**missed** 57:21

**mobile** 35:2,3

**money** 43:21 44:4 49:6,11 67:6 69:16 80:22 81:1 81:4 82:13 87:6,8

**monthly** 44:14,15 44:17

**morning** 5:21,22 5:23,24

**mortgage** 68:14 68:17

**move** 7:24

**multiple** 62:13

**muted** 36:22

**[name - original]**                                                           Page 9

| n | | | |
|---|---|---|---|

**name** 5:11,15 17:4 22:1 23:11 33:5 34:8 41:4 51:6 52:15,17 53:25 85:13,17,21 91:6 92:3,4,15 93:3,4 93:21

**named** 55:10,13 89:9

**names** 25:21

**nature** 28:13,15 38:1

**need** 13:4,8 31:5 48:18,19 76:2

**negatively** 69:11

**nervous** 38:15,21 38:23,25 39:4,5,8 39:11 61:18 62:18 64:1

**never** 16:14,16 49:23 50:5,12 51:8,8 53:5,6 74:13

**new** 1:20 8:19,23

**nodding** 13:7 69:11

**normal** 43:22

**normally** 7:4

**notary** 1:23 87:22 89:6 90:14 91:25 92:10,18 93:15,23 94:23

**notd** 10:9

**notes** 48:10

**notice** 4:3 10:12 11:3

**notify** 30:15,19

**number** 4:2 5:16 22:5,7,11,14 24:15 25:24 34:14,16,19

34:23 35:5 41:16 41:18,19 45:16,18 45:25 54:13 57:20 59:21,25 61:1,4 71:25 76:8 91:7

**numbers** 24:13 39:15 41:13,14 60:14 93:7

**numerous** 57:10

**ny** 2:8

| o | | | |
|---|---|---|---|

**objected** 84:11

**objection** 6:24 26:22 74:24 83:22 83:25 84:17

**obligation** 45:11 45:12 73:11 74:9 74:19

**obtain** 30:22,23 56:3

**obtaining** 28:6,9

**occasions** 57:10

**offered** 49:23 50:1

**office** 30:15,18,19 30:22 90:6 91:14

**official** 92:15 93:21

**oh** 31:4 36:20

**ohio** 89:2,7 90:7 90:15 91:2

**okay** 5:25 6:2 7:9 7:17,23 8:2,7,10 8:18,20 9:4,9,12 9:12,15,18,20,24 10:1,5,22,25 11:7 11:14,15,20 12:8,9 13:14,21,24 14:2,7 14:11 15:9,14,17 15:21 16:1,10,13 16:15,20,24 17:7 18:1,6,14,18,22

19:8,16,19,23 20:1 20:7,17,23 21:7,8 21:15,19,24 22:3 22:13,17,22,25 23:4,8,13,18,24 24:3,9,21 25:2,15 25:15,22,22 26:4,9 26:17 27:12,17 28:1,5,9,12,24 29:3,7,9 30:6,12 31:3,13,19,21,25 32:4,7,9,11,23 33:2,7,10,16,20,22 34:2,7,11,14,20,22 35:4,8,18,23 36:1 36:5,15,21,22 37:4 37:11,17,24 38:4 38:10,18,21 39:3 39:11,17,18,24 40:3,3,18,21 41:5 41:9,17,21 42:2,10 42:12,23 43:1,6,9 43:14,19,23,25 44:4,9,16,22,25 45:4,7,7,15 46:1 46:10,14,20 47:2,8 47:13,19,25 48:9 48:17,21 49:4,9,17 49:17,21 50:4,11 50:19 51:2,10,18 51:25 52:7,11 53:2,6,14,20,21 54:3,7,10,18,22 55:19,22 56:3,15 57:1,6,15,19,23 58:2,10,14 59:12 59:23 60:5,9,13,16 60:20 61:3,6,6,21 62:10,20,25 63:7 63:12,16,19 64:4,7 64:13,17 65:4,10

65:12,13 66:6,13 66:25 67:8,23 68:9,16,21 69:3,12 69:20,24 70:4,8,13 71:7,11,18,24 72:10,17 73:7,18 74:11,11,15 75:4,5 75:19,23 76:4,7,8 76:16 77:9,11,24 78:6,11 79:4,9,12 79:15,18 80:3,9,13 80:25 81:10,15,20 82:8 83:4,7,17,20 84:15,21 85:2 87:13,17

**old** 8:2

**oliphant** 1:11 4:7 5:12 11:8,11,12 16:12 17:17 21:21 22:1 29:19 31:14 46:17 48:1,2,5 49:1,14 50:1 51:7 51:17 53:18 55:3 64:18 67:5,9,17 68:4 69:14,15 73:12,21 74:4,5 87:8,12 91:6 92:3 93:3

**once** 39:14 56:18

**ones** 59:15

**open** 19:24

**operable** 15:22

**operate** 44:1

**opinion** 73:25 74:2

**opportunity** 6:9 13:16

**original** 12:25 13:11 22:5,7,10,13 23:9,15 24:15 25:25 29:25 36:16 41:23 45:17 88:12

**[originally - purposes]**                                                      Page 10

| | | | |
|---|---|---|---|
| **originally** 69:17 | **pause** 6:23 31:6 | **physical** 7:18 | **principle** 41:24 |
| **outside** 79:17 | **pay** 28:25 70:1 | **pick** 58:8,15 59:22 | **prior** 13:14 86:8 |
| **outstanding** 25:8 | 80:22 81:17 82:24 | 60:25 | **private** 62:24 |
| 33:12 54:5 59:6 | **paying** 63:13 | **piece** 70:14,14 | **privileged** 84:3,5,6 |
| **owe** 30:10 48:23 | 72:16 | **place** 89:21 | 84:7,9,20 |
| 48:25 49:5,10 | **payment** 4:6 17:17 | **places** 65:18 | **probably** 11:10 |
| 53:7 67:5 85:13 | 30:4 54:4,8,12 | **plaintiff** 1:7 2:4 | 56:1 60:22 80:21 |
| 85:16,20 86:1 | 59:8 67:21 73:14 | 5:16,18 10:9 | **procedure** 5:8 |
| 87:2,5,7,9,12,14 | 73:22 74:10 76:11 | 48:23 49:10,23 | 88:7 92:5 93:5 |
| 87:18 | **payments** 29:1 | 50:6,12 57:9 58:3 | **proceeds** 43:15 |
| **owed** 30:8 46:7,11 | 44:17,20,23 45:2,5 | 61:7 62:14 78:4 | **process** 11:18 43:9 |
| 52:15,18,22,25 | 47:5,11,17 66:15 | **plaintiff's** 4:11 | 64:14 |
| 53:3,4,15 59:6 | 66:15 | 78:14,18 | **production** 91:24 |
| 67:18 69:16 73:11 | **payoff** 46:3 | **platform** 42:6 | **prohibit** 69:21 |
| 74:22 82:10 87:1 | **people** 16:17 | **plaza** 2:7 | **property** 75:25 |
| **owns** 25:6 51:12 | 27:24 43:24,25 | **plead** 48:23 | 76:1 |
| **p** | 51:9 61:15,16 | **please** 6:17 13:10 | **protects** 63:25 |
| **p.m.** 87:25 | **perfect** 65:12 | 25:5 31:5 51:11 | **provide** 6:10,14 |
| **pa** 2:16 | **period** 31:23 | 87:24 91:14 | 7:14,21 15:17 |
| **page** 18:15,15 71:5 | 36:10 84:8 | **pllc** 2:5 | 37:7,13 54:10,13 |
| 93:7 94:3 | **permits** 82:15 | **point** 6:3 14:15 | 54:15 82:11 |
| **pages** 18:7,9,12 | **person** 33:22 34:7 | 19:10 44:16 50:9 | **provided** 5:7 |
| **paid** 72:14,14 81:5 | 54:19 59:4 | 51:2 | 12:16 19:20 26:2 |
| 81:13 87:6 | **personal** 61:9,11 | **pointed** 6:11 | 29:14 37:9,18 |
| **paragraph** 26:12 | **personally** 92:11 | **pop** 7:2 | 80:6,10,11 |
| 30:13 48:17,23 | 93:15 | **portion** 24:25 | **provider** 10:3 |
| 49:10,21 50:11 | **petition** 4:9 70:17 | 30:18,21 31:1 | **provides** 30:14 |
| 52:13 57:8 58:2 | 70:21 71:3,8 75:7 | **practices** 26:13,14 | **providing** 6:18,23 |
| 61:6 | 75:11,12,24 76:18 | 27:4,6,15,19,22 | 78:2 79:25 82:6 |
| **paragraphs** 24:23 | 76:24 77:12 | **prefer** 91:16 | **public** 1:23 89:7 |
| **part** 6:14 24:5,6 | **phone** 17:3 32:15 | **prepared** 6:24 | 90:14 92:10,18 |
| 24:10,10 56:24 | 33:8,24 34:5,17,18 | **prescription** 7:12 | 93:15,23 94:23 |
| 93:9 | 34:21,22,23,25 | **presence** 89:15 | **puerto** 8:1 |
| **particular** 39:19 | 39:20 41:13,13,16 | **present** 2:2,21 | **pull** 40:3 78:11 |
| 44:5 45:8 57:25 | 56:4 57:25 58:7 | 6:21 | **purchased** 25:6 |
| 59:25 66:16,20 | 58:15,23,25 59:2 | **previous** 13:17,18 | 51:12,19,23 52:2 |
| 73:9 87:9 | 59:13,21,25 61:20 | **previously** 39:20 | 67:9,17 91:17 |
| **particulars** 42:6 | 62:17,22 63:20 | 55:23 72:5 | **purpose** 43:20 |
| **parties** 5:1 76:9 | 64:9 91:3 | **primary** 10:2 | 63:1 |
| **party** 90:3 | **phrase** 25:11 | 40:21 62:18,21,24 | **purposes** 10:13 |
| | | | 12:19 14:25 15:18 |

[purposes - represent]                                                                    Page 11

17:18,23 40:9
44:7 70:23 72:19
78:20
**pursuant**  88:3,6
**pursue**  63:17
84:25
**pursuing**  76:20
**put**  70:12 72:22,24

**q**

**qualified**  89:8
**question**  6:13,16
6:19,22,25 7:3
11:23 26:25 28:16
28:18 64:23 76:21
82:1 84:10,11
**questions**  6:9 7:11
7:14,20 54:18
62:4 85:4 86:16
86:20,25
**quickly**  7:25

**r**

**reaction**  20:3,5
**read**  13:16,19,22
14:2,3 15:23 16:1
16:2 19:24 20:2
21:9 23:25 24:1,4
24:6,9,16,21,25
25:2,4,12,23 26:1
29:12 31:1 39:13
79:3,3,23 87:23
92:5,6,12 93:5,6
93:17
**reading**  20:3
41:25 91:12,20
**really**  19:6 84:9
**reason**  6:3 27:22
63:6 93:8 94:3
**recall**  13:21,23
14:15,17 15:8,11
15:12 17:4,6

18:21 19:6 20:20
21:17 24:1,4,5,25
25:1,3 26:1 28:6,9
28:13,23,24 29:12
31:13,15,24 32:3,8
32:10,14,17 33:21
34:4,5,10,11,14
35:4,7,15,17 36:2
36:4,8,9,14 37:20
37:23,24 38:3
39:12 42:6,11,13
42:19 43:3,7,9,11
43:13,14,16,19
44:5,21,22,24,25
45:6,14,25 46:10
46:12 53:24 57:13
57:14,15,18,19,22
57:24 58:5,7,14
59:20,20 60:3,5,8
60:9,24 65:23,25
66:10 67:10 68:11
68:23 71:16 75:10
75:22 78:1,5,6,7
79:2,7,8,11 81:20
82:7
**receipt**  20:25
38:10 91:20
**receive**  11:5 21:3
36:11 47:10,13
61:16
**received**  9:16
16:21,25 18:19
19:4,10,16 21:12
22:9 26:5,17 27:4
27:8,20 28:14,19
29:13 30:7 31:9
32:18,20,23 36:18
36:23 39:9 42:15
48:3 56:22,23
58:7 63:19 64:24
74:14 75:10,10,14

**receiving**  30:16,20
31:22 32:15 36:2
38:4 57:16 60:17
62:22 63:25 66:10
67:10 73:3
**recess**  65:15
**recognize**  17:24
21:25 22:10,15
23:11,13,20 24:8
24:17,19 25:19,20
25:21 27:10 28:3
28:4,5 35:20
38:19 40:15,17,18
40:19,23 41:13,15
41:17,18 43:2
46:16 49:1,5,14
51:15,16 53:18
59:7,15,16 60:18
60:21 67:4,13
71:4,7
**recollection**  45:8
**record**  6:15 65:14
93:9
**records**  56:4,13
**redacted**  22:8
45:17,18
**redress**  57:3
**reduced**  89:14
**refer**  11:10
**reference**  21:16
24:15 42:13 45:16
52:22 64:22 65:1
91:7 92:2 93:2
**referenced**  25:7
35:14 45:11 51:13
52:2 89:14,18
91:11 92:11 93:15
**references**  48:2
**referencing**  33:17
**referring**  24:11

**reflect**  56:4
**reflected**  33:18
68:22 72:5 73:4
**reflective**  66:9
**refreshed**  45:7
**regarding**  20:25
37:18 45:8 46:21
81:23 86:25 88:2
88:11
**related**  56:21 63:1
82:5 84:23
**relates**  80:13 82:3
84:5,6
**relation**  43:3
63:21 76:19 83:18
**relationship**  68:18
81:16
**relative**  90:2
**relief**  56:20 80:17
**remember**  18:19
28:18 29:4 31:21
32:18 37:17 44:12
44:14,19 59:20,22
60:25 61:3
**remote**  1:15 87:25
**remotely**  1:19 2:2
5:9 89:10
**repay**  44:14
**repayment**  44:13
74:6
**repeat**  82:1
**repeatedly**  62:12
**rephrase**  52:24
**report**  72:21,23
**reporter**  3:15 5:2
92:7
**reporter's**  3:12
89:1
**represent**  11:8
12:24 42:3 71:2

**[representation - signing]** Page 12

**representation**
81:23
**representing** 15:4
20:9
**represents** 18:15
**request** 35:24 93:9
93:11
**requested** 88:1,6
88:10
**requests** 4:11 78:3
78:15,19
**required** 81:17
91:25
**resolve** 25:8
**respond** 78:10
**responding** 78:8
**response** 4:11 7:21
35:24 78:14,18
**responses** 7:15
79:25
**rest** 26:1
**retain** 36:25
**retained** 3:15
37:22 82:2
**returned** 91:19
**returning** 45:9
**review** 88:2,6
91:14 92:1 93:1
**rico** 8:1
**right** 12:11 16:22
17:7 18:18 19:12
19:21 21:10,19
22:20 26:2 29:15
31:3 33:24 44:7
45:19,20,23 47:11
47:23 49:2,3,7
54:1 55:15 56:15
57:12 60:18,23
61:4 62:7,9 63:17
65:4,13 67:15,20
68:2,4,7,19 69:7

69:15 70:2,13
73:5 75:23 77:2
77:24 79:3 80:7
83:15 84:4,21
**rights** 68:25 69:1
**ring** 58:24
**role** 10:2
**room** 7:4,5,7
**roughly** 9:25
**rules** 5:8 88:3,7
92:5 93:5

**s**

**s** 93:8,8 94:3
**sanders** 2:5,6 3:9
6:21,24 20:9 21:4
21:8 26:22 37:5,5
37:14 61:22 62:3
65:9,12 73:23
74:24 82:2,5
83:22 84:1,7,15,19
85:5,8 86:19 87:3
87:24 91:5
**satisfactory** 81:8
**saw** 22:13 38:25
39:14
**saying** 24:17 54:11
55:5,20 67:15
79:21 87:5,5,11
**says** 19:7 21:21
22:4,18,18 23:9,10
23:19 24:24 25:4
41:22 45:24 46:3
50:4,12 51:7,10
52:1,6,13 57:7
58:2 61:7 76:9,11
**schedule** 66:20
71:13 72:24 75:25
**scheduled** 72:4,7
73:2,7 77:12
**schooling** 9:4

**screen** 10:17,23
13:3 40:13 64:25
66:7 71:2 77:9
78:23
**screen's** 86:22
**scroll** 13:4,8 15:9
48:16 49:19 56:18
71:11
**scrolling** 18:6
49:17 75:24
**seal** 90:6 92:15
93:21
**search** 48:7
**second** 12:9 23:8
30:12 31:3 39:17
47:2 48:9,13
49:18,20 53:20
56:15 75:4 77:25
85:2,6
**seconds** 35:10
**section** 52:18
**see** 10:22 13:2
18:22,23,24 19:1
21:20,21 23:9,18
40:4,15,16,22,25
41:2,4,22,24,25
42:21,23,25 46:2
48:18 55:12 56:18
63:21 65:22,23
66:7 71:22 76:5,5
76:6,8,11,14,15
77:6,9 78:22
79:14
**seeing** 57:19
**seek** 62:14,15 63:9
67:20 69:16 73:22
74:6
**seeking** 46:22
49:12 56:22 57:2
57:3 80:15,17

**seen** 11:4 12:2
13:3,11 15:6,11,12
55:25 78:25 79:1
79:8,22 86:8
**sell** 69:7 74:21
**send** 20:19 35:22
**sending** 17:1 57:8
**sent** 20:6,17,18,21
20:22 21:10,13,18
25:16,17 36:24
45:10 67:19 70:5
83:2
**sentence** 25:3,4
51:10,25
**separate** 18:12
**serve** 64:11,13,14
**served** 78:3,9
**service** 35:1
**services** 82:6
**serving** 64:19
**set** 62:4 90:6
**shannon** 2:14 5:11
61:22 88:12
**share** 10:17 66:6
**sharing** 53:22
**sheet** 93:7,10,18
94:1
**short** 34:5 35:9
65:15
**show** 12:12,23
18:6 21:3
**showing** 10:19
15:2 17:21 40:13
86:4
**signature** 88:5
90:13 91:14
**signed** 16:16 81:20
92:13 93:18
**signing** 43:11
91:12,20

[silver - times]

Page 13

| | | | |
|---|---|---|---|
| **silver** 20:11,12,25 21:5,10 37:14 83:14 84:23 | **start** 6:18 14:11 17:8 80:23 | 73:5 86:7 | **ten** 65:7,9 |
| **similarly** 7:19 | **starts** 58:24 | **super** 66:2 | **term** 22:22,25 |
| **simplest** 14:12 | **state** 89:2,7 90:15 92:10 93:15 | **superior** 91:1 | **terms** 14:12 44:12 |
| **simply** 87:17 | **stated** 11:7 53:18 | **suppose** 11:1 | **testified** 25:22 29:14 33:3 44:9 47:20 66:13 73:10 73:15 |
| **sincerely** 91:23 | **statement** 52:13 92:13,14 93:19,19 | **sure** 33:20 36:6 55:22 76:23 79:4 84:16 | |
| **single** 59:12,14 | | | |
| **sir** 91:10 | **states** 1:1 49:10 | **swear** 5:2 | **testify** 89:11 |
| **sit** 8:3 28:2 | **stating** 73:15 74:14 | **sworn** 5:9 89:10 92:10,13 93:14,18 94:21 | **testifying** 58:24 65:22 |
| **sitting** 58:23 | | | **testimony** 89:13 89:18 92:6,7 93:6 93:9,12 |
| **sleep** 63:4 | **statute** 26:6 27:18 82:13,15 | | |
| **small** 76:7 | **statutes** 26:15 | **t** | |
| **smiller** 2:18 | **statutory** 76:13 82:12 | **t** 35:2,3 | **thereof** 30:18,21 |
| **sold** 69:13 73:12 73:20 74:3,12 | **stenotypy** 89:15 | **take** 12:5 31:5,6 38:6,7 51:13 62:5 65:5 68:3 70:13 74:10 | **thing** 17:6 34:4 54:20 |
| **solutions** 91:1 94:1 | **stipulated** 5:1 | | **things** 6:6 43:11 68:14 |
| **somebody** 25:18 33:25 34:1 37:5 37:15,16 51:22 53:15 64:5,8,10 69:8 74:13 | **stop** 44:11,17 53:22 | **takeaway** 52:7 | **think** 7:13 21:24 22:19 44:9 58:10 80:18 81:4 85:3 86:4 |
| | **stopped** 44:18,20 44:23 47:5 66:15 | **taken** 1:19 7:11 11:25 12:6 65:1 89:21 91:11 | |
| | **straightened** 6:6 | **talk** 6:12 25:24 84:13 | **third** 49:19 76:9 |
| **somebody's** 61:18 | **street** 1:20 2:15 8:22 19:20 47:20 | **talked** 53:23 71:9 74:16 82:8 | **thirty** 91:19 |
| **son** 9:22 10:3 | | | **thomas** 2:22 77:1 |
| **sooner** 32:5,6 | **subject** 68:24 | **talking** 33:15 35:21 38:16 58:19 72:5 | **thought** 55:24 58:8,16 64:10 |
| **sorry** 26:24 76:22 | **subscribed** 92:10 93:14 94:21 | | |
| **sort** 57:4 | | **talks** 26:12 56:19 | **three** 24:23 32:2,9 |
| **sought** 43:16 87:9 | **subsequent** 13:15 15:24 | **tampa** 1:3 | **time** 6:5 7:2,2 13:9 13:18 14:3 16:2 19:5,21 20:15 21:24 26:4,19 27:8 28:1,18 30:6 31:4,22 36:10 37:21 44:1 47:22 56:1 57:12 59:5 60:4,7,16 63:9 65:5 66:4 75:21 89:21 |
| **sounding** 34:12 | | **technical** 6:4 | |
| **sounds** 65:4 77:3 | **sued** 16:12 31:14 | **telephone** 31:10 32:24 36:18 37:13 37:18 38:1,5,11,12 39:8 53:23 56:4 56:13,21,23 57:2 58:4 63:2 | |
| **speak** 61:7 | **suffering** 7:17 | | |
| **specific** 20:21,23 | **suggested** 50:19 50:24 | | |
| **specified** 89:22 | | | |
| **spoke** 33:22,24 34:1 59:4 83:1 | **suggesting** 52:8 | | |
| | **suggests** 49:25 50:8,16,18 | | |
| **spoken** 64:17 | **suite** 2:7 91:2 | **telephonic** 57:23 | |
| **spring** 36:13 | **summary** 4:8 40:8 40:12 42:4 45:21 66:8 68:23 72:6 | **tell** 12:2 58:20 62:23 83:11,20,24 | **times** 29:6 44:10 58:3,4,6 62:13,16 |
| **ss** 89:3 | | | |
| **standard** 7:10 | | | |

[times - zoom]                                                                    Page 14

63:5,8,11,13 72:15
titled  86:7
today  7:12 8:3
   11:4,15 12:4 14:9
   28:2 47:22
today's  11:3 86:8
told  21:5 33:6,13
   63:3 84:2
top  18:24 19:1
   40:19 45:22
transaction  50:13
   50:17,21,24 51:5
   51:21,22 52:4,9
transcribed  6:14
   89:16 92:7
transcript  3:1
   88:3,6,9,11 91:11
   91:16 92:5,12
   93:5,11,17
transcription
   89:17
treatment  62:14
   62:15 63:10
tried  45:1
trouble  63:13
true  14:5,9 16:4,8
   80:6 89:17
truth  89:11,11,12
try  6:5,17 47:10
   61:9,13
trying  12:2,10
   23:3,5 39:21
   84:13
turning  26:10
two  11:8,13 18:7,9
   18:12
type  6:4 64:19
   74:17 80:16
typically  6:22
   68:16

**u**

ultimately  63:16
unable  66:14
underneath  23:10
   24:23
understand  7:13
   7:20 11:13,22
   12:1 14:14 24:7
   28:16 39:2,15
   65:3 76:21 84:12
   84:17
understanding
   53:17 69:18,24
understood  23:4
   24:2,5 25:10,13
unemployed  9:21
unfamiliar  9:9
united  1:1
unpack  24:3
unpaid  46:4
unsecured  71:12
   71:14
usually  31:6

**v**

v  91:6 92:3 93:3
valid  30:19
validity  30:17
verification  30:23
verified  5:4
veritext  5:3 91:1,7
   94:1
video  12:10
videoconference
   5:3
violated  26:6,20
   27:3,5,14,21 67:3
violates  52:18
violation  83:3,21
virtual  5:3

visit  63:1
voice  34:12
voicemail  33:23
   60:11
voicemails  57:16
voluntary  4:9
   70:21
vs  1:9

**w**

waived  91:13,21
want  6:22 7:10
   40:3 53:21 54:7
   54:12 62:3 65:6
   80:15 82:9 84:9
way  65:1
we've  32:12 61:22
   71:8
web  25:20
webbank  23:10,11
   23:14 28:3,5,7,8
   28:19 30:1 42:5
   85:14
week  20:20
went  62:18,20
   65:23
west  2:15
whereof  90:5
winter  36:12
wintertime  36:11
wish  61:7
witness  5:2,4 13:7
   21:7 69:11 75:1
   87:23 89:9,14,15
   89:19 90:5 91:8
   92:1,4,11 93:1,4
   93:15
witness's  88:2
words  16:11
work  10:19
worked  9:16

working  12:10
wow  9:14
writing  30:20
written  78:2
wrong  55:20 56:2
wutscher  2:13

**y**

yeah  39:7 41:25
   42:25 43:8 48:19
   52:6 54:5 55:7,7
   56:24 60:24 64:6
   77:8 79:20
years  9:2,3,25
   10:2 31:25 32:2,5
   32:7,9 47:21
york  1:20 8:19,24

**z**

zoom  6:3 7:4
   48:15 57:7

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

## UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                                   Case No. 8:20-cv-00873-WFJ-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and
ACCELERATED INVENTORY
MANAGEMENT, LLC

      Defendant.

_____/

### AMENDED NOTICE OF TAKING DEPOSITION

TO:  **Isabel Hernandez**
     c/o Craig B. Sanders, Esq.
     Barshay Sanders, PLLC
     100 Garden City Plaza, Suite 500
     Garden City, NY 11530
     csanders@barshaysanders.com

YOU ARE HEREBY NOTIFIED that pursuant to Rule 30 of the Federal Rules of Civil Procedure, the undersigned attorneys will take the deposition upon oral examination of Plaintiff, Isabel Hernandez, on **Wednesday, May 5, 2021 at 11:00 a.m. EDT** before a person authorized by law to take depositions via videoconference (i.e. Zoom, etc.).

This deposition will be taken for purposes of discovery as well as all other purposes authorized by law and will be recorded by stenographic means.  Your attendance is required.

1

**EXHIBIT**

**A**

Dated: April 30, 2021                    Respectfully submitted,

                                         **OLIPHANT FINANCIAL, LLC and
                                         ACCELERATED INVENTORY
                                         MANAGEMENT, LLC**

                            By:    /s/ Christopher P. Hahn
                                   Christopher P. Hahn, Esq.
                                   MAURICE WUTSCHER LLP
                                   Florida Bar No. 87577
                                   2255 Glades Road, Suite 324A
                                   Boca Raton, FL 33431
                                   Direct: (772) 237-3410
                                   Fax: (866) 581-9302
                                   E-mail: chahn@MauriceWutscher.com
                                   litigation@MauriceWutscher.com

**Certificate of Service**

The undersigned hereby certifies that, on this **30ᵗʰ day of April, 2021**, a true and correct copy of the foregoing document and any related exhibits was served via electronic mail on all interested parties:

Craig B. Sanders, Esq.
Barshay Sanders, PLLC
100 Garden City Plaza, Suite 500
Garden City, NY 11530
csanders@barshaysanders.com

                                         /s/Christopher P. Hahn

2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Isabel Hernandez,

                    Plaintiff,                          Case No:

            vs.                                         **COMPLAINT**

Oliphant Financial, LLC and Accelerated Inventory
Management, LLC,                                        **JURY TRIAL DEMANDED**

                    Defendants.

-------------------------------------------------------------------/

Isabel Hernandez (hereinafter referred to as "*Plaintiff*"), by and through the undersigned counsel, complains, states and alleges against Oliphant Financial, LLC and Accelerated Inventory Management, LLC (hereinafter referred to as "*Defendants*"), as follows:

## INTRODUCTION

1.      This action seeks to recover for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and in violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9) ("FCCPA").

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

4.      At all relevant times, Defendants conducted business within the State of Florida.

1

Barshay Sanders PLLC

EXHIBIT
B

## PARTIES

5.      Plaintiff Isabel Hernandez is an individual who is a citizen of the State of New York residing in Kings County, New York.

6.      Plaintiff is a natural person allegedly obligated to pay a debt.

7.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8).

8.      On information and belief, Defendant Oliphant Financial, LLC, is a Florida Limited Liability Company with a principal place of business in Sarasota County, Florida.

9.      On information and belief, Defendant Accelerated Inventory Management, LLC, is a Texas Limited Liability Company with a principal place of business in Travis County, Texas.

10.     On information and belief, Defendant Oliphant Financial, LLC regularly collects or attempts to collect debts asserted to be owed to others.

11.     On information and belief, Defendant Accelerated Inventory Management, LLC regularly collects or attempts to collect debts asserted to be owed to others.

12.     On information and belief, Defendant Oliphant Financial, LLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

13.     On information and belief, Defendant Accelerated Inventory Management, LLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

14.     On information and belief, the principal purpose of Defendant Oliphant Financial, LLC's business is the collection of such debts.

15.     On information and belief, the principal purpose of Defendant Accelerated Inventory Management, LLC's business is the collection of such debts.

16.     On information and belief, Defendant Oliphant Financial, LLC uses the mails in its debt collection business.

17.     On information and belief, Defendant Accelerated Inventory Management, LLC uses the mails in its debt collection business.

18.     Defendant Oliphant Financial, LLC is a "debt collector" as defined by 15 U.S.C. § 1692a(6) ) and Fla. Stat. § 559.55(7).

19.     Defendant Accelerated Inventory Management, LLC is a "debt collector" as defined by 15 U.S.C. § 1692a(6) ) and Fla. Stat. § 559.55(7).

2

Case 8:20-cv-00873-WFJ-TGW   Document 1   Filed 04/15/20   Page 3 of 11 PageID 3

## <u>ALLEGATIONS SPECIFIC TO PLAINTIFF</u>

20.     Defendants allege Plaintiff owes a debt ("the alleged Debt").

21.     The alleged Debt is an alleged obligation of Plaintiff to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

22.     The alleged Debt does not arise from any business enterprise of Plaintiff.

23.     The alleged Debt is a "debt" as defined by 15 U.S.C. § 1692a(5) ) and Fla. Stat. § 559.55(7).

24.     At an exact time known only to Defendants, the alleged Debt was assigned or otherwise transferred to Defendants for collection.

25.     At the time the alleged Debt was assigned or otherwise transferred to Defendants for collection, the alleged Debt was in default.

26.     In their efforts to collect the debt, Defendants contacted Plaintiff by letter ("the Letter") dated December 31, 2019. (**<u>Exhibit 1</u>.**")

27.     The Letter conveyed information regarding the alleged Debt.

28.     The Letter is a "communication" as defined by 15 U.S.C. § 1692a(2) and Fla. Stat. § 559.55(2).

29.     The Letter was the initial written communication Plaintiff received from Defendants concerning the alleged Debt.

30.     The Letter was received and read by Plaintiff.

31.     15 U.S.C. § 1692g protects Plaintiff's concrete interests. Plaintiff has the interest and right to receive a clear, accurate and unambiguous validation notice, which allows a consumer to confirm that he or she owes the debt sought to be collected by the debt collector. As set forth herein, Defendants deprived Plaintiff of this right.

32.     15 U.S.C. § 1692e protects Plaintiff's concrete interests. Plaintiff has the interest and right to be free from deceptive and/or misleading communications from Defendants. As set forth herein, Defendants deprived Plaintiff of this right.

33.     As set forth in the following Counts, Defendants' communication violated the FDCPA and FCCPA.

34.     The deprivation of Plaintiff's rights will be redressed by a favorable decision herein.

3

## FIRST COUNT
### Violation of 15 U.S.C. § 1692g(a)(1)

35.     Plaintiff repeats and realleges the foregoing paragraphs 7, 18, 19, 20, 23, 26, and 28 through 34 as if fully restated herein.

36.     15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

37.     As relevant here, 15 U.S.C. § 1692g(a)(1) requires the written notice provide "the amount of the debt."

38.     To comply with 15 U.S.C. § 1692g(a)(1), a statement of "the amount of the debt" must accurately convey, from the perspective of the least sophisticated consumer, the actual amount of the debt.

39.     A statement of "the amount of the debt," when the debt is not owed at all by the consumer, violates 15 U.S.C. § 1692g(a)(1).

40.     The Letter claims that Plaintiff owes $9,706.72.

41.     Plaintiff did not owe $9,706.72.

42.     Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect.

43.     Defendants' statement of the amount of the alleged Debt, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, violates 15 U.S.C. § 1692g(a)(1).

44.     For the foregoing reasons, Defendants violated 15 U.S.C. § 1692g(a)(1) and are liable to Plaintiff therefor.

## SECOND COUNT
### Violations of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10)

45.     Plaintiff repeats and realleges the foregoing paragraphs 7, 18, 19, 20, 23, 26, 28 through 34, 40, 41, and 42 as if fully restated herein.

46.     15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

4

Case 8:20-cv-00873-WFJ-TGW   Document 1   Filed 04/15/20   Page 5 of 11 PageID 5
PageID 463

47.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

48.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a deceptive representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

49.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a misleading representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

50.     15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

51.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation of the character of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

52.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation of the amount of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

53.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation of the legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

54.     15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

55.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation made in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

56.     An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a deceptive means used in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

57.     The Letter alleges that Plaintiff owed $9,706.72.

58.     Plaintiff did not owe $9,706.72.

59.     Plaintiff did not owe any money at all to the entity on whose behalf Defendants

5

Case 8:20-cv-00873-WFJ-TGW   Document 1   Filed 04/15/20   Page 6 of 11 PageID 6

were seeking to collect.

60.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

61.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a deceptive representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

62.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a misleading representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

63.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation of the character of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

64.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation of the amount of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

65.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation of the legal status of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

66.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation made in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

67.     Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a deceptive means used in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

68.     For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) and are liable to Plaintiff therefor.

6

Case 8:20-cv-00873-WFJ-TGW   Document 42-3   Filed 06/07/21   Page 181 of 267
Case 8:20-cv-00873-WFJ-TGW   Document 1   Filed 04/15/20   Page 7 of 11 PageID 7
PageID 465

**THIRD COUNT**
**Violation of 15 U.S.C. § 1692g(a)(2)**

69.     Plaintiff repeats and realleges the foregoing paragraphs 7, 18, 19, 20, 23, 26, 28 through 34, 40, 41, 42, and 57 through 68 as if fully restated herein.

70.     15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

71.     As relevant here, 15 U.S.C. § 1692g(a)(2) requires the written notice provide "the name of the creditor to whom the debt is owed."

72.     To comply with 15 U.S.C. § 1692g(a)(2), the written notice must accurately state "the name of the creditor to whom the debt is owed."

73.     A statement of "the name of the creditor to whom the debt is owed," when the consumer does not any money at all to the stated entity, violates 15 U.S.C. § 1692g(a)(2).

74.     The Letter claims the name of the creditor to whom the alleged Debt is owed is Accelerated Inventory Management, LLC.

75.     Plaintiff did not owe the alleged Debt to Accelerated Inventory Management, LLC.

76.     Accelerated Inventory Management, LLC never offered to extend credit to Plaintiff.

77.     Accelerated Inventory Management, LLC never extended credit to Plaintiff.

78.     Plaintiff was never involved in any transaction with Accelerated Inventory Management, LLC.

79.     Plaintiff never entered into any contract with Accelerated Inventory Management, LLC.

80.     Plaintiff never did any business with Accelerated Inventory Management, LLC.

81.     Plaintiff was never indebted to Accelerated Inventory Management, LLC.

82.     Accelerated Inventory Management, LLC is a stranger to Plaintiff.

83.     Defendants' statement that Accelerated Inventory Management, LLC is "the name of the creditor to whom the debt is owed," when Accelerated Inventory Management, LLC is not the name of the creditor to whom the alleged Debt is owed, violates 15 U.S.C. § 1692g(a)(2).

84.     For the foregoing reasons, Defendants violated 15 U.S.C. § 1692g(a)(2) and are

7

Case 8:20-cv-00873-WFJ-TGW   Document 1   Filed 04/15/20   Page 8 of 21 PageID 8

liable to Plaintiff therefor.

## FOURTH COUNT
### Violations of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10)

85.     Plaintiff repeats and realleges the foregoing paragraphs 7, 18, 19, 20, 23, 26, 28 through 34, 40, 41, 42, 57 through 68, and 74 through 84 as if fully restated herein.

86.     15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

87.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

88.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a deceptive representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

89.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a misleading representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

90.     15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

91.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation of the character of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

92.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation of the amount of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

93.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation of the legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

94.     15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

8

Case 8:20-cv-00873-WFJ-TGW   Document 42-3   Filed 06/07/21   Page 183 of 267
Case 8:20-cv-00873-WFJ-TGW   Document 1   Filed 04/15/20   Page 9 of 11 PageID 9
PageID 467

95.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation made in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

96.     An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a deceptive means used in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

97.     The Letter claims that Plaintiff owes a debt to Accelerated Inventory Management, LLC.

98.     Plaintiff did not owe a debt to Accelerated Inventory Management, LLC.

99.     Accelerated Inventory Management, LLC never offered to extend credit to Plaintiff.

100.    Accelerated Inventory Management, LLC never extended credit to Plaintiff.

101.    Plaintiff was never involved in any transaction with Accelerated Inventory Management, LLC.

102.    Plaintiff never entered into any contract with Accelerated Inventory Management, LLC.

103.    Plaintiff never did any business with Accelerated Inventory Management, LLC.

104.    Plaintiff was never indebted to Accelerated Inventory Management, LLC.

105.    Accelerated Inventory Management, LLC is a stranger to Plaintiff.

106.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

107.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a deceptive representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

108.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a misleading representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

9

Case 8:20-cv-00873-WFJ-TGW Document 1 Filed 04/15/20 Page 10 of 21 PageID 10

109.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation of the character of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

110.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation of the amount of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

111.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation of the legal status of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

112.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation made in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

113.    Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a deceptive means used in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

114.    Defendants' demand that Plaintiff make payment for a debt that she does not owe is a false representation made to attempt to collect any debt in violation of 15 U.S.C. § 1692e(10).

115.    Defendants' request that Plaintiff make payment for a debt that she does not owe is a deceptive means used to attempt to collect any debt in violation of 15 U.S.C. § 1692e(10).

116.    For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) and are liable to Plaintiff therefor.

**FIFTH COUNT**
**Violation of § 559.72 of the FCCPA**

117.    Plaintiff repeats and realleges the foregoing paragraphs 7, 18, 19, 20, 23, 26, 28 through 34, 40, 41, 42, 57 through 68, 74 through 84, and 97 through 116 as if fully restated herein.

10

118.    Section 559.72(9) of the FCCPA provides that a debt collector shall not "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

119.    Defendants knew that they did not have a legal right to collect the debt not owed.

120.    Defendants' violated Section 559.72(9) of the FCCPA.

121.    For the foregoing reasons, Defendants violated Section 559.72(9) of the FCCPA and are liable to Plaintiff therefor.


## JURY DEMAND

122.    Plaintiff hereby demands a trial of this action by jury.


## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests judgment be entered:

a.   Finding Defendants' actions violate the FDCPA; and

b.   Granting damages against Defendants pursuant to 15 U.S.C. § 1692k; and

c.   Granting Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k; and

d.   Actual damages, statutory damages and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2);

e.   Granting Plaintiff's costs; all together with

f.   Such other relief that the Court determines is just and proper.

DATED: April 14, 2020

**BARSHAY SANDERS, PLLC**

By:  _/s/ *Craig B. Sanders*
Craig B. Sanders, Esquire
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
csanders@barshaysanders.com
*Attorneys for Plaintiff*
Our File No.: 118981

11

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Isabel Hernandez,

       Plaintiff,

             Case No: 8:20-00873-WFJ-TGW

     vs.

             **FIRST AMENDED**
             **COMPLAINT**

Oliphant Financial, LLC and Accelerated Inventory
Management, LLC,

             **JURY TRIAL DEMANDED**

       Defendants.

----------------------------------------------------------------/

   Isabel Hernandez (hereinafter referred to as "*Plaintiff*"), by and through the undersigned counsel, complains, states and alleges against Oliphant Financial, LLC ("*Oliphant*") and Accelerated Inventory Management, LLC ("*Accelerated*") (collectively "*Defendants*"), as follows:

**INTRODUCTION**

1.  This action seeks to recover for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and in violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9) ("FCCPA").

**JURISDICTION AND VENUE**

2.  This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

1

**EXHIBIT**

C

4.     At all relevant times, Defendants conducted business within the State of Florida.

## PARTIES

5.     Plaintiff Isabel Hernandez is an individual who is a citizen of the State of New York residing in Kings County, New York.

6.     Plaintiff is a natural person allegedly obligated to pay a debt.

7.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8).

8.     On information and belief, Defendant Oliphant Financial, LLC, is a Florida Limited Liability Company with a principal place of business in Sarasota County, Florida.

9.     On information and belief, Defendant Accelerated Inventory Management, LLC, is a Texas Limited Liability Company with a principal place of business in Travis County, Texas.

10.

## ALLEGATIONS SPECIFIC TO PLAINTIFF

11.     On information and belief, Defendant Oliphant Financial, LLC regularly collects or attempts to collect debts asserted to be owed to others.

12.     On information and belief, Defendant Oliphant Financial, LLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

13.     On information and belief, the principal purpose of Defendant Oliphant Financial, LLC's business is the collection of such debts.

14.     On information and belief, Defendant Oliphant Financial, LLC uses the mails in its debt collection business.

2

15. Defendant Oliphant Financial, LLC is a "debt collector" as defined by 15 U.S.C. § 1692a(6) ) and Fla. Stat. § 559.55(7).

16. On information Defendant Accelerated Inventory Management, LLC is in the business of purchasing consumer debts which are in default and collecting on same.

17. The principal purpose of Defendant Accelerated Inventory Management, LLC's business is the collection of such debts.

18. Defendant Accelerated Inventory Management, LLC is not the original creditor of any loan to Plaintiff.

19. On information and belief, based upon the representation contained in the collection letter more fully described *infra.,* the original creditor for the loan at issue was "Webbank."

20. On information and belief, Defendant Accelerated Inventory Management, LLC hired Defendant Oliphant Financial, LLC to collect the alleged debt.

21. On information and belief, Defendant Accelerated Inventory Management, LLC uses the mails in its debt collection business.

22. Defendant Accelerated Inventory Management, LLC is a "debt collector" as defined by 15 U.S.C. § 1692a(6) ) and Fla. Stat. § 559.55(7).

23. Defendant Accelerated Inventory Management, LLC is liable for its own actions, as well as for the actions of its agent, Defendant Oliphant Financial, LLC.

24. Defendants allege Plaintiff owes a debt (the "alleged Debt").

25. The alleged Debt is an alleged obligation of Plaintiff to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

26. The alleged Debt does not arise from any business enterprise of Plaintiff.

3

27. The alleged Debt is a "debt" as defined by 15 U.S.C. § 1692a(5) ) and Fla. Stat. § 559.55(7).

28. At an exact time known only to Defendants, the alleged Debt was assigned or otherwise transferred to Defendants for collection.

29. At the time the alleged Debt was assigned or otherwise transferred to Defendants for collection, the alleged Debt was in default.

30. In their efforts to collect the alleged Debt, Defendants contacted Plaintiff by calls to Plaintiff's telephone.

31. In their efforts to collect the debt, Defendants contacted Plaintiff by letter, including the letter dated December 31, 2019 (the "Letter"). *A copy of the Letter is annexed hereto as Exhibit 1.*

32. The Letter conveyed information regarding the alleged Debt.

33. The Letter is a "communication" as defined by 15 U.S.C. § 1692a(2) and Fla. Stat. § 559.55(2).

34. The Letter was the initial written communication Plaintiff received from Defendants concerning the alleged Debt.

35. The Letter was received and read by Plaintiff.

36. In addition to sending the Letter, Defendants contacted Plaintiff by telephone on numerous occasions.

37. The telephone calls are "communications" as defined by 15 U.S.C. § 1692a(2) and Fla. Stat. § 559.55(2)

38. At times, Defendants contacted Plaintiff by telephone several times a day.

4

Barshay Sanders PLLC

39. Plaintiff felt harassed by Defendants' repeated and incessant efforts to reach her by telephone.

40. Plaintiff did not wish to speak to Defendants, insofar as she feared that they would try to extract personal information from her.

41. Plaintiff did not wish to speak to Defendants, insofar as she feared that they would try to coerce her into paying a debt that Plaintiff believed she did not owe.

42. Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff apprehension.

43. Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff to be anxiousDefendants' actions in repeatedly calling her multiple times a day caused Plaintiff caused her to be apprehensive any time she heard her phone ring.

44. Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff to not want to answer her phone.

45. Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff caused her to suffer anguish.

46. Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff to seek medical treatment.

47. Defendants' actions in repeatedly calling her multiple times a day caused Plaintiff to seek legal representation.

48. 15 U.S.C. § 1692g protects Plaintiff's concrete interests. Plaintiff has the interest and right to receive a clear, accurate and unambiguous validation notice, which allows a consumer to confirm that he or she owes the debt sought to be collected by the debt collector. As set forth herein, Defendants deprived Plaintiff of this right.

5

49.     15 U.S.C. § 1692e protects Plaintiff's concrete interests. Plaintiff has the interest and right to be free from deceptive and/or misleading communications from Defendants. As set forth herein, Defendants deprived Plaintiff of this right.

50.     As set forth in the following Counts, Defendants' communications violated the FDCPA and FCCPA.

51.     The deprivation of Plaintiff's rights will be redressed by a favorable decision herein.

### FIRST COUNT
### Violation of 15 U.S.C. § 1692g(a)(1)

52.     Plaintiff repeats and realleges the foregoing paragraphs 7, 15, 22, 24, 27, 30, 31, and 33 through 37 and 51 as if fully restated herein.

53.     15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

54.     As relevant here, 15 U.S.C. § 1692g(a)(1) requires the written notice provide "the amount of the debt."

55.     To comply with 15 U.S.C. § 1692g(a)(1), a statement of "the amount of the debt" must accurately convey, from the perspective of the least sophisticated consumer, the actual amount of the debt.

56.     A statement of "the amount of the debt," when the debt is not owed at all by the consumer, violates 15 U.S.C. § 1692g(a)(1).

57.     The Letter claims that Plaintiff owes $9,706.72.

58.     Plaintiff did not owe $9,706.72.

59.     Plaintiff did not owe any money at all to the entity on whose behalf Defendants

6

were seeking to collect.

60. Defendants' statement of the amount of the alleged Debt, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, violates 15 U.S.C. § 1692g(a)(1).

61. For the foregoing reasons, Defendants violated 15 U.S.C. § 1692g(a)(1) and are liable to Plaintiff therefor.

### SECOND COUNT
### Violations of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10)

62. Plaintiff repeats and realleges the foregoing paragraphs 7, 15, 22, 24, 27, 30, 31, and 33 through 37 and 51, 57, 58, and 59 as if fully restated herein.

63. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

64. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

65. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a deceptive representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

66. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a misleading representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

67. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

68. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation of the character of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

69. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation of the amount of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

70. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation of the legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

71. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

72. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a false representation made in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

73. An allegation by a debt collector that a consumer owes a debt, when the debt is not owed at all by the consumer, is a deceptive means used in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

74. The Letter alleges that Plaintiff owed $9,706.72.

75. Plaintiff did not owe $9,706.72.

76. Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect.

77. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false

8

representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

78. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a deceptive representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

79. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a misleading representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

80. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation of the character of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

81. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation of the amount of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

82. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation of the legal status of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

83. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a false representation made in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

9

84. Defendants' allegation that Plaintiff owed $9,706.72, when Plaintiff did not owe any money at all to the entity on whose behalf Defendants were seeking to collect, is a deceptive means used in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

85. For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) and are liable to Plaintiff therefor.

## THIRD COUNT
### Violation of 15 U.S.C. § 1692g(a)(2)

86. Plaintiff repeats and realleges the foregoing paragraphs 7, 15, 22, 24, 27, 30, 31, and 33 through 37, 51, 57, 58, and 59, and 74 through 85 as if fully restated herein.

87. 15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

88. As relevant here, 15 U.S.C. § 1692g(a)(2) requires the written notice provide "the name of the creditor to whom the debt is owed."

89. To comply with 15 U.S.C. § 1692g(a)(2), the written notice must accurately state "the name of the creditor to whom the debt is owed."

90. A statement of "the name of the creditor to whom the debt is owed," when the consumer does not any money at all to the stated entity, violates 15 U.S.C. § 1692g(a)(2).

91. The Letter claims the name of the creditor to whom the alleged Debt is owed is Accelerated Inventory Management, LLC.

92. Plaintiff did not owe the alleged Debt to Accelerated Inventory Management, LLC.

93. Accelerated Inventory Management, LLC never offered to extend credit to Plaintiff.

10

94.     Accelerated Inventory Management, LLC never extended credit to Plaintiff.

95.     Plaintiff was never involved in any transaction with Accelerated Inventory Management, LLC.

96.     Plaintiff never entered into any contract with Accelerated Inventory Management, LLC.

97.     Plaintiff never did any business with Accelerated Inventory Management, LLC.

98.     Plaintiff was never indebted to Accelerated Inventory Management, LLC.

99.     Accelerated Inventory Management, LLC is a stranger to Plaintiff.

100.    Defendants' statement that Accelerated Inventory Management, LLC is "the name of the creditor to whom the debt is owed," when Accelerated Inventory Management, LLC is not the name of the creditor to whom the alleged Debt is owed, violates 15 U.S.C. § 1692g(a)(2).

101.    For the foregoing reasons, Defendants violated 15 U.S.C. § 1692g(a)(2) and are liable to Plaintiff therefor.

## **FOURTH COUNT**
### **Violations of 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10)**

102.    Plaintiff repeats and realleges the foregoing paragraphs 7, 15, 22, 24, 27, 30, 31, and 33 through 37, 51, 57, 58, 59, and 74 through 85, and 91 through 101 as if fully restated herein.

103.    15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

104.    An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

11

105. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a deceptive representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

106. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a misleading representation made in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

107. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

108. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation of the character of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

109. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation of the amount of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

110. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation of the legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A).

111. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

112. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a false representation made in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

12

113. An allegation by a debt collector that a consumer owes a debt to a certain entity, when the debt is not owed by the consumer to that entity, is a deceptive means used in an attempt to collect the debt in violation of 15 U.S.C. § 1692e(10).

114. The Letter claims that Plaintiff owes a debt to Accelerated Inventory Management, LLC.

115. Plaintiff did not owe a debt to Accelerated Inventory Management, LLC.

116. Accelerated Inventory Management, LLC never offered to extend credit to Plaintiff.

117. Accelerated Inventory Management, LLC never extended credit to Plaintiff.

118. Plaintiff was never involved in any transaction with Accelerated Inventory Management, LLC.

119. Plaintiff never entered into any contract with Accelerated Inventory Management, LLC.

120. Plaintiff never did any business with Accelerated Inventory Management, LLC.

121. Plaintiff was never indebted to Accelerated Inventory Management, LLC.

122. Accelerated Inventory Management, LLC is a stranger to Plaintiff.

123. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

124. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a deceptive representation made by Defendants in connection with Defendants' collection of the

13

alleged Debt, in violation of 15 U.S.C. § 1692e.

125. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a misleading representation made by Defendants in connection with Defendants' collection of the alleged Debt, in violation of 15 U.S.C. § 1692e.

126. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation of the character of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

127. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation of the amount of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

128. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation of the legal status of the alleged Debt, in violation of 15 U.S.C. § 1692e(2)(A).

129. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a false representation made in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

130. Defendants' allegation that Plaintiff owed a debt to Accelerated Inventory Management, LLC, when Plaintiff did not owe a debt to Accelerated Inventory Management, LLC, is a deceptive means used in an attempt to collect the alleged Debt in violation of 15 U.S.C. § 1692e(10).

131. Defendants' demand that Plaintiff make payment for a debt that she does not owe is a false representation made to attempt to collect any debt in violation of 15 U.S.C. § 1692e(10).

132. Defendants' request that Plaintiff make payment for a debt that she does not owe is a deceptive means used to attempt to collect any debt in violation of 15 U.S.C. § 1692e(10).

133. For the foregoing reasons, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10) and are liable to Plaintiff therefor.

### FIFTH COUNT
### Violation of § 559.72 of the FCCPA

134. Plaintiff repeats and realleges the foregoing paragraphs 7, 15, 22, 24, 27, 30, 31, and 33 through 37, 51, 57, 58, 59, 74 through 85, and 91 through 101, and 114 through 133 as if fully restated herein.

135. Section 559.72(9) of the FCCPA provides that a debt collector shall not "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

136. Defendants knew that they did not have a legal right to collect the debt not owed.

137. Defendants' violated Section 559.72(9) of the FCCPA.

138. For the foregoing reasons, Defendants violated Section 559.72(9) of the FCCPA and are liable to Plaintiff therefor.

15

## JURY DEMAND

139.    Plaintiff hereby demands a trial of this action by jury.


## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests judgment be entered:

a.   Finding Defendants' actions violate the FDCPA; and

b.   Granting damages against Defendants pursuant to 15 U.S.C. § 1692k; and

c.   Granting Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k; and

d.   Actual damages, statutory damages and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2);

e.   Granting Plaintiff's costs; all together with

f.   Such other relief that the Court determines is just and proper.

DATED: February 12, 2021

**BARSHAY SANDERS, PLLC**

By: _/s/ *Craig B. Sanders*
Craig B. Sanders, Esquire
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: (516) 203-7600
Fax: (516) 706-5055
csanders@barshaysanders.com
*Attorneys for Plaintiff*
Our File No.: 118981

## PAYMENT AUTHORIZATION FORM

VISA

| CARD NUMBER: _____  _____  _____  _____ |
| CARD HOLDER NAME: _____ |
| EXP DATE: _____  ZIP: _____  CVV: _____ |
| SIGNATURE*: _____  AMOUNT: _____ |

*By signing the above, I authorized as the owner of the card to charge the one-time agreed amount above



1800 Second St. Suite 603
Sarasota FL 34236

Date: 12/31/2019
Reference: ███7354

ISABEL HERNANDEZ
175 HOYT ST ███████
████████ NY ███

Oliphant Financial, LLC
1800 Second St. Suite 603
Sarasota FL 34236

## OLIPHANT FINANCIAL

Pay by Mail:
P.O. Box 740882
Atlanta, GA 30374

Physical and Correspondence Address: 1800 Second St. Suite 603 Sarasota FL 34236
MON - THUR 9:00am to 6:00pm EST ; Friday 8:15am to 5pm EST.; www.oliphantfinancial.com; Toll Free: 800-262-1999

| Date | Original Account Number | Current Creditor |
|---|---|---|
| 12/31/2019 | █████5314 | Accelerated Inventory Management, LLC |

| Reference | Original Creditor | Amount Due |
|---|---|---|
| ███7354 | WebBank | 9,706.72 |

Dear ISABEL HERNANDEZ

Please be advised that Accelerated Inventory Management, LLC has purchased and now owns the above referenced account and we are therefore contacting you to resolve your outstanding balance.

Unless you notify this office, within 30 days after receiving this letter, that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days after receiving this letter, that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you, if any. A copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period after you receive this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

This is a communication from a debt collector. This is an attempt to collect a debt. Any information will be used for that purpose.

Please contact Horace Driskell at 800-262-1999 to discuss this letter.

Sincerely,
Oliphant Financial, LLC

Please see reverse side for additional information

Total of payments made on the above referenced debt since charge-off: 0.00

GRAMM-LEACH-BLILEY PRIVACY ACT NOTICE In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). Federal laws require that we, along with financial institutions, explain to our customers what information we collect and how we disclose this information in order to provide our services, in order to meet these requirements, the following is our privacy statement.In general, the categories of nonpublic personal information collected about you from your application, your educational institution, and consumer-reporting agencies, include your address and other contact information, demographic background, account and educational status, family income, Social Security number, employment information, collection and repayment history, and credit history.We disclose nonpublic personal information to third parties only as necessary to service your account and as permitted by the Privacy Act of 1974. The Privacy Act permits disclosure to third parties as authorized under certain routine uses. Examples of disclosures permitted under the Privacy Act include disclosure to Federal and state agencies, private parties such as relatives, present and former employers, and creditors, and our contractors for purposes of administration of the student financial assistance programs, for enforcement purposes, for litigation, and for use in connection with audits or other investigations. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users ability to access and alter records within the systems. All users of these systems are given a unique user id with personal identifiers. All interactions by individual users with the systems are recorded.

New York City Department of Consumer Affairs License Number: 1244305

To The Consumer: Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C.§ 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including, but not limited to: (1) the use or threat of violence; (2) the use of obscene or profane language; and (3) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: (1) Supplemental security income, (SSI); (2) Social security; (3) Public assistance (welfare); (4) Spousal support, maintenance (alimony) or child support; (5) Unemployment benefits; (6) Disability benefits; (7) Workers' compensation benefits; (8) Public or private pensions; (9) Veterans' benefits; (10) Federal student loans, federal student grants, and federal work study funds; and (11) Ninety percent of your wages or salary earned in the last sixty days.

**PAYMENT AUTHORIZATION FORM**

VISA MasterCard

CARD NUMBER: _____ _____ _____ _____

CARD HOLDER NAME: _____

EXP DATE: _____    ZIP: _____    CVV: _____

SIGNATURE*: _____    AMOUNT: _____

*By signing the above, I authorized as the owner of the card to charge the one-time agreed amount above

1800 Second St. Suite 603
Sarasota FL 34236

Date: 12/31/2019
Reference: ███7354

ISABEL HERNANDEZ
175 HOYT ST ██ ██
████████ NY ██

Oliphant Financial, LLC
1800 Second St. Suite 603
Sarasota FL 34236

# OLIPHANT FINANCIAL

Pay by Mail:
P.O. Box 740882
Atlanta, GA 30374

Physical and Correspondence Address: 1800 Second St. Suite 603 Sarasota FL 34236
MON - THUR 9:00am to 6:00pm EST ; Friday 8:15am to 5pm EST.; www.oliphantfinancial.com; Toll Free: 800-262-1999

| Date | Original Account Number | Current Creditor |
|---|---|---|
| 12/31/2019 | ████5314 | Accelerated Inventory Management, LLC |
| Reference | Original Creditor | Amount Due |
| ███7354 | WebBank | 9,706.72 |

Dear ISABEL HERNANDEZ

Please be advised that Accelerated Inventory Management, LLC has purchased and now owns the above referenced account and we are therefore contacting you to resolve your outstanding balance.

Unless you notify this office, within 30 days after receiving this letter, that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days after receiving this letter, that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or obtain a copy of a judgment against you, if any. A copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period after you receive this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

This is a communication from a debt collector. This is an attempt to collect a debt. Any information will be used for that purpose.

Please contact Horace Driskell at 800-262-1999 to discuss this letter.

Sincerely,
Oliphant Financial, LLC

Please see reverse side for additional information

**EXHIBIT**

____D____

Total of payments made on the above referenced debt since charge-off: 0.00

GRAMM-LEACH-BLILEY PRIVACY ACT NOTICE In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). Federal laws require that we, along with financial institutions, explain to our customers what information we collect and how we disclose this information in order to provide our services, in order to meet these requirements, the following is our privacy statement.In general, the categories of nonpublic personal information collected about you from your application, your educational institution, and consumer-reporting agencies, include your address and other contact information, demographic background, account and educational status, family income, Social Security number, employment information, collection and repayment history, and credit history.We disclose nonpublic personal information to third parties only as necessary to service your account and as permitted by the Privacy Act of 1974. The Privacy Act permits disclosure to third parties as authorized under certain routine uses. Examples of disclosures permitted under the Privacy Act include disclosure to Federal and state agencies, private parties such as relatives, present and former employers, and creditors, and our contractors for purposes of administration of the student financial assistance programs, for enforcement purposes, for litigation, and for use in connection with audits or other investigations. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users ability to access and alter records within the systems. All users of these systems are given a unique user id with personal identifiers. All interactions by individual users with the systems are recorded.

New York City Department of Consumer Affairs License Number: 1244305

To The Consumer: Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C.§ 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including, but not limited to: (1) the use or threat of violence; (2) the use of obscene or profane language; and (3) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: (1) Supplemental security income, (SSI); (2) Social security; (3) Public assistance (welfare); (4) Spousal support, maintenance (alimony) or child support; (5) Unemployment benefits; (6) Disability benefits; (7) Workers' compensation benefits; (8) Public or private pensions; (9) Veterans' benefits; (10) Federal student loans, federal student grants, and federal work study funds; and (11) Ninety percent of your wages or salary earned in the last sixty days.

This is a copy of an authoritative document

# LOAN SUMMARY

**Loan Id:** ▓▓▓ 5314

### Primary Borrower Contact Information

| | |
|---|---|
| Full Real Name: | ISABEL HERNANDEZ |
| Screen Name: | Member ▓▓ 8026 |
| Email: | ▓▓▓@gmail.com |
| Address: | 175 HOYT ST ▓▓▓ |
| | ▓▓▓ NY ▓▓ |
| Home Phone: | ▓▓▓-2911 |
| Cell or Work Phone: | ▓▓▓ 6600 |

### Loan Information

| | |
|---|---|
| Loan Issue Date: | 11/9/18 |
| Original Loan Amount: | $10,000.00 |
| Principle Balance: | $8,656.17 |
| Principle Balance Date: | 12/31/19 |
| Payoff Balance: | $9,706.72 |
| Payoff Date: | 1/2/20 |

### Loan Documents

| Document Name | Date/time Signed | Document Version |
|---|---|---|
| Borrower Agreement | 11/8/18 08:07:55 AM PST | LC_SEC_V26 |
| Credit Score Notice | 11/8/18 08:07:55 AM PST | LC_SEC_V4 |
| Truth in Lending Disclosure | 11/8/18 08:07:55 AM PST | LC_SEC_V11 |
| Terms of Use and Consent to Electronic Transactions and Disclosures | 11/8/18 08:06:09 AM PST | SHARED_SEC_V3 |
| Electronic Consent | 11/8/18 08:06:09 AM PST | SHARED_SEC_V3 |
| Credit Profile Authorization | 11/8/18 08:07:55 AM PST | LC_SEC_V4 |
| Authorization for Automatic Payment | 11/8/18 08:07:55 AM PST | LC_SEC_V4 |



Hernandez v. Oliphant, et al. - 000054

The authoritative document is maintained by LendingClub Corporation and this copy was created Dec 31 2019 09:06:36

**EXHIBIT**

**E**

Case 1-19-47809-cec    Doc 1    Filed 12/31/19    Entered 12/31/19 18:59:50

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

EASTERN DISTRICT OF NEW YORK

Case number *(if known)* _____

Chapter you are filing under:

■ Chapter 7
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy          12/17

The bankruptcy forms use you and Debtor 1 to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use you to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

|  | | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
| --- | --- | --- | --- |
| **1.** | **Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | **Isabel**<br>First name<br><br>_____<br>Middle name<br><br>**Hernandez**<br>Last name and Suffix (Sr., Jr., II, III) | _____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name and Suffix (Sr., Jr., II, III) |
| **2.** | **All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | | |
| **3.** | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-7205** | |

Official Form 101          **Voluntary Petition for Individuals Filing for Bankruptcy**          page 1



Debtor 1  **Isabel Hernandez**                                                Case number *(if known)*

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ■ I have not used any business name or EINs.<br><br>_____<br>Business name(s)<br><br>_____<br>EINs | ☐ I have not used any business name or EINs.<br><br>_____<br>Business name(s)<br><br>_____<br>EINs |
| **5. Where you live** | **175 Hoyt Street**<br>**Apt. 4-D**<br>**Brooklyn, NY 11217**<br>Number, Street, City, State & ZIP Code<br><br>**Kings**<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>_____<br>Number, P.O. Box, Street, City, State & ZIP Code | **If Debtor 2 lives at a different address:**<br><br>_____<br>Number, Street, City, State & ZIP Code<br><br>_____<br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>_____<br>Number, P.O. Box, Street, City, State & ZIP Code |
| **6. Why you are choosing *this district* to file for bankruptcy** | *Check one:*<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.)<br><br>_____ | *Check one:*<br><br>☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.) |

Debtor 1    **Isabel Hernandez**                                                      Case number *(if known)*

| Part 2: | Tell the Court About Your Bankruptcy Case |
|---------|-------------------------------------------|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010))*. Also, go to the top of page 1 and check the appropriate box.

■ Chapter 7

☐ Chapter 11

☐ Chapter 12

☐ Chapter 13

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition**. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.

☐ Yes.

| | | | | | |
|---|---|---|---|---|---|
| District | | When | | Case number | |
| District | | When | | Case number | |
| District | | When | | Case number | |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No

☐ Yes.

| | | | | |
|---|---|---|---|---|
| Debtor | | Relationship to you | | |
| District | | When | Case number, if known | |
| Debtor | | Relationship to you | | |
| District | | When | Case number, if known | |

**11.** **Do you rent your residence?**

☐ No.    Go to line 12.

■ Yes.    Has your landlord obtained an eviction judgment against you?

■    No. Go to line 12.

☐    Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

Debtor 1    **Isabel Hernandez**                                           Case number *(if known)*

---

| Part 3: | Report About Any Businesses You Own as a Sole Proprietor |
|---|---|

**12.** **Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.    Go to Part 4.

☐ Yes.    Name and location of business

_____
Name of business, if any

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐    Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐    Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐    Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐    Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐    None of the above

---

**13.** **Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor?***

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).

■ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

| Part 4: | Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention |
|---|---|

**14.** **Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.    What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____
                          Number, Street, City, State & Zip Code

---

Official Form 101                    **Voluntary Petition for Individuals Filing for Bankruptcy**                    page 4

Debtor 1    **Isabel Hernandez**                                                                      Case number *(if known)*

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

| | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|
| **15. Tell the court whether you have received a briefing about credit counseling.**<br><br>The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.<br><br>If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again. | *You must check one:*<br><br>■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br><br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.<br><br>☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br><br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.<br><br>☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.<br>If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.<br><br>☐ **I am not required to receive a briefing about credit counseling because of:**<br><br>☐ **Incapacity.**<br>I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.<br><br>☐ **Disability.**<br>My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.<br><br>☐ **Active duty.**<br>I am currently on active military duty in a military combat zone.<br><br>If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court. | *You must check one:*<br><br>☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br><br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.<br><br>☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br><br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.<br><br>☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.<br><br>If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.<br><br>☐ **I am not required to receive a briefing about credit counseling because of**:<br><br>☐ **Incapacity.**<br>I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.<br><br>☐ **Disability.**<br>My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.<br><br>☐ **Active duty.**<br>I am currently on active military duty in a military combat zone.<br><br>If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. |

Debtor 1   **Isabel Hernandez**                                                Case number *(if known)*

---

| **Part 6:** | **Answer These Questions for Reporting Purposes** |

**16. What kind of debts do you have?**

16a.  **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

16b.  **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

16c.  State the type of debts you owe that are not consumer debts or business debts

_____

---

**17. Are you filing under Chapter 7?**

☐ No.  I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

■ Yes.  I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

■ No

☐ Yes

---

**18. How many Creditors do you estimate that you owe?**

■ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

---

**19. How much do you estimate your assets to be worth?**

■ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

---

**20. How much do you estimate your liabilities to be?**

■ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

---

| **Part 7:** | **Sign Below** |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code, I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Isabel Hernandez**
_____          _____

**Isabel Hernandez**                                        Signature of Debtor 2
Signature of Debtor 1

Executed on   **December 2, 2019**                 Executed on   _____
                        MM / DD / YYYY                                            MM / DD / YYYY

---

Official Form 101                **Voluntary Petition for Individuals Filing for Bankruptcy**                page 6

Debtor 1    **Isabel Hernandez**                                                    Case number *(if known)*

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Jacob Silver**                                   Date    **December 2, 2019**
Signature of Attorney for Debtor                                MM / DD / YYYY

**Jacob Silver**
Printed name

**Jacob Silver, Attorney At Law**
Firm name

**26 Court Street**
**Suite - 1201**
**Brooklyn, NY 11242**
Number, Street, City, State & ZIP Code

Contact phone    **(718) 855-3834**        Email address    **silverbankruptcy@gmail.com**

Bar number & State

**Fill in this information to identify your case:**

Debtor 1      **Isabel Hernandez**
              First Name            Middle Name            Last Name

Debtor 2
(Spouse if, filing)    First Name            Middle Name            Last Name

United States Bankruptcy Court for the:      EASTERN DISTRICT OF NEW YORK

Case number
(if known)

☐ Check if this is an
   amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information      **12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

| Part 1: | **Summarize Your Assets** |
|---|---|

|  | **Your assets**<br>Value of what you own |
|---|---|
| 1. **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B..................................................................................................... | $ 0.00 |
| 1b. Copy line 62, Total personal property, from Schedule A/B........................................................................................ | $ 3,210.00 |
| 1c. Copy line 63, Total of all property on Schedule A/B.................................................................................................. | $ 3,210.00 |

| Part 2: | **Summarize Your Liabilities** |
|---|---|

|  | **Your liabilities**<br>Amount you owe |
|---|---|
| 2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $ 0.00 |
| 3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy  the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................. | $ 0.00 |
| 3b. Copy  the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............................ | $ 22,087.00 |
| **Your total liabilities** | $ 22,087.00 |

| Part 3: | **Summarize Your Income and Expenses** |
|---|---|

| 4. *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*................................................................................ | $ 750.00 |
| 5. *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*.......................................................................... | $ 795.00 |

| Part 4: | **Answer These Questions for Administrative and Statistical Records** |
|---|---|

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts**. You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum          **Summary of Your Assets and Liabilities and Certain Statistical Information**          page 1 of 2

Debtor 1   **Isabel Hernandez**                                              Case number *(if known)* _____

8.  **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$ _____ **350.00**

9.  **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ **0.00** |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ **0.00** |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ **0.00** |
| 9d. Student loans. (Copy line 6f.) | $ _____ **0.00** |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ **0.00** |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | **+**$ _____ **0.00** |
| 9g. **Total.** Add lines 9a through 9f. | $ _____ **0.00** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                 Best Case Bankruptcy

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Isabel Hernandez** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                                    12/15

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

    ■ No. Go to Part 2.

    ☐ Yes.  Where is the property?


**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3.   **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

    ■ No

    ☐ Yes


4.   **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
    *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

    ■ No

    ☐ Yes


5   **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here............................................................................=>**     | **$0.00**

**Part 3:    Describe Your Personal and  Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|
| 6.  **Household goods and furnishings**  *Examples:* Major appliances, furniture, linens, china, kitchenware  ☐ No  ■ Yes.  Describe..... | |
| **Household Goods - Furniture, Appliances and Other Personal Goods** | **$1,000.00** |

---

| Debtor 1    **Isabel Hernandez** | Case number *(if known)* |
|---|---|

**7. Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No

■ Yes.  Describe.....

| **Miscellaneous electronic devices** | **$100.00** |
|---|---|

**8. Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

■ No

☐ Yes.  Describe.....

**9. Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

■ No

☐ Yes.  Describe.....

**10. Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

■ No

☐ Yes.  Describe.....

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

■ Yes.  Describe.....

| **Wearing Apparel - Clothes and Related Wearing Apparel** | **$1,000.00** |
|---|---|

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

■ No

☐ Yes.  Describe.....

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses

■ No

☐ Yes.  Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**

■ No

☐ Yes.  Give specific information.....

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ...............................................................................**

| **$2,100.00** |
|---|

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No

■ Yes.................................................................................................................

| Official Form 106A/B | Schedule A/B: Property | page 2 |
|---|---|---|

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

| Debtor 1 | **Isabel Hernandez** | Case number *(if known)* | |

| | | **Cash - Miscellaneous Cash** | **$100.00** |

17. **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

■ Yes........................                              Institution name:

| | 17.1. | **Popular Bank** | **$10.00** |

18. **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No

☐ Yes..................          Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

■ No

☐ Yes.  Give specific information about them...................
                          Name of entity:                                   % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No

☐ Yes. Give specific information about them
                          Issuer name:

21. **Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No

☐ Yes. List each account separately.
                          Type of account:          Institution name:

22. **Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No

☐ Yes. .....................          Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No

☐ Yes.............          Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No

☐ Yes.............          Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No

☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No

☐ Yes.  Give specific information about them...

| Official Form 106A/B | Schedule A/B: Property | page 3 |

Debtor 1    **Isabel Hernandez**                                                    Case number *(if known)*

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
    ■ No
    ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
| --- | --- |

28. **Tax refunds owed to you**
    ■ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
    ■ No
    ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
    ■ No
    ☐ Yes.  Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
    ■ No
    ☐ Yes. Name the insurance company of each policy and list its value.

    | Company name: | Beneficiary: | Surrender or refund value: |
    | --- | --- | --- |

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
    ■ No
    ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
    ☐ No
    ■ Yes.  Describe each claim.........

| FDCPA Claims against debt collectors from collection letters statutory damages of one thousand dollars per claim & fees. | $1,000.00 |
| --- | --- |

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    ■ No
    ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    ■ No
    ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here....................................................................................................................**    $1,110.00

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
| --- | --- |

Debtor 1    **Isabel Hernandez**                                                    Case number *(if known)*

37.  **Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes.  Go to line 38.

| **Part 6**: | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
| | If you own or have an interest in farmland, list it in Part 1. |

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes.  Go to line 47.

| **Part 7:** | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |

53.  **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here  ....................................**                          **$0.00**

| **Part 8:** | **List the Totals of Each Part of this Form** |

55.  **Part 1: Total real estate, line 2**  ..............................................................................................................................                  **$0.00**

56.  **Part 2: Total vehicles, line 5**                                   **$0.00**

57.  **Part 3: Total personal and household items, line 15**            **$2,100.00**

58.  **Part 4: Total financial assets, line 36**                        **$1,110.00**

59.  **Part 5: Total business-related property, line 45**                 **$0.00**

60.  **Part 6: Total farm- and fishing-related property, line 52**        **$0.00**

61.  **Part 7: Total other property not listed, line 54**          +      **$0.00**

62.  **Total personal property.** Add lines 56 through 61...        **$3,210.00**     Copy personal property total        **$3,210.00**

63.  **Total of all property on Schedule A/B**. Add line 55 + line 62                                      **$3,210.00**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

| | | |
|---|---|---|
| **Fill in this information to identify your case:** | | |
| Debtor 1 | **Isabel Hernandez** | |
| | First Name                Middle Name                Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name                Middle Name                Last Name | |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK | |
| Case number | | |
| (if known) | | ☐ Check if this is an amended filing |

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                                **4/19**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:    Identify the Property You Claim as Exempt

1.  **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

☐ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

■ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2.  **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Household Goods - Furniture, Appliances and Other Personal Goods**<br>Line from *Schedule A/B*: **6.1** | $1,000.00 | ■ $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Miscellaneous electronic devices**<br>Line from *Schedule A/B*: **7.1** | $100.00 | ■ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Wearing Apparel - Clothes and Related Wearing Apparel**<br>Line from *Schedule A/B*: **11.1** | $1,000.00 | ■ $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **Cash - Miscellaneous Cash**<br>Line from *Schedule A/B*: **16.1** | $100.00 | ■ $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |
| **Popular Bank**<br>Line from *Schedule A/B*: **17.1** | $10.00 | ■ $10.00<br>☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1    **Isabel Hernandez**                                          Case number (if known) _____

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **FDCPA Claims against debt collectors from collection letters statutory damages of one thousand dollars per claim & fees.**<br>Line from *Schedule A/B*: **33.1** | $1,000.00 | ■        $1,000.00<br><br>☐  100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(5)** |

3.  **Are you claiming a homestead exemption of more than $170,350?**
    (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

    ■  No

    ☐  Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

        ☐  No

        ☐  Yes

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Isabel Hernandez** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

■ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Fill in this information to identify your case:**

Debtor 1          **Isabel Hernandez**
                  First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)   First Name          Middle Name          Last Name

United States Bankruptcy Court for the:        EASTERN DISTRICT OF NEW YORK

Case number
(if known)

☐ Check if this is an
   amended filing

Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
| --- | --- |

1.  **Do any creditors have priority unsecured claims against you?**

   ■ No. Go to Part 2.

   ☐ Yes.

| Part 2: | List All of Your NONPRIORITY Unsecured Claims |
| --- | --- |

3.  **Do any creditors have nonpriority unsecured claims against you?**

   ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

   ■ Yes.

4.  **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  |  | **Total claim** |
| --- | --- | --- | --- |

| 4.1 | **Capital One Bank Usa N** | Last 4 digits of account number | **2820** | **$902.00** |

Nonpriority Creditor's Name

**Po Box 30281
Salt Lake City, UT 84130**          **When was the debt incurred?**        **Opened 01/16  Last Active 6/03/19**

Number Street City State Zip Code          **As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only                    ☐ Contingent

☐ Debtor 2 only                    ☐ Unliquidated

☐ Debtor 1 and Debtor 2 only        ☐ Disputed

☐ At least one of the debtors and another        **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a  community debt**        ☐ Student loans

**Is the claim subject to offset?**        ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

■ No          ☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes          ■ Other. Specify    **Credit Card**

| Debtor 1 | **Isabel Hernandez** | Case number (if known) | |

---

| **4.2** | **Capital One Bank Usa N** | Last 4 digits of account number | **4902** | **$657.00** |

Nonpriority Creditor's Name

**Po Box 30281**
**Salt Lake City, UT 84130**

**When was the debt incurred?**     **Opened 08/15  Last Active 6/03/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts

- ■ No
- ☐ Yes

- ■ Other. Specify   **Credit Card**

---

| **4.3** | **Citicards Cbna** | Last 4 digits of account number | **0027** | **$2,410.00** |

Nonpriority Creditor's Name

**Po Box 6217**
**Sioux Falls, SD 57117**

**When was the debt incurred?**     **Opened 08/16  Last Active 6/02/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts

- ■ No
- ☐ Yes

- ■ Other. Specify   **Credit Card**

---

| **4.4** | **Comenitybank/venus** | Last 4 digits of account number | **6235** | **$307.00** |

Nonpriority Creditor's Name

**Po Box 182789**
**Columbus, OH 43218**

**When was the debt incurred?**     **Opened 04/19  Last Active 8/30/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

**As of the date you file, the claim is:** Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts

- ■ No
- ☐ Yes

- ■ Other. Specify   **Charge Account**

---

Debtor 1    **Isabel Hernandez**                                    Case number (if known) _____

---

| 4.5 | **Comenitybank/victoria** | Last 4 digits of account number | **9380** | **$299.00** |

Nonpriority Creditor's Name

**Po Box 182789**
**Columbus, OH 43218**

When was the debt incurred? **Opened 03/17  Last Active 8/02/19**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **Charge Account**

---

| 4.6 | **Comenitycb/ulta** | Last 4 digits of account number | **5149** | **$428.00** |

Nonpriority Creditor's Name

**Po Box 182120**
**Columbus, OH 43218**

When was the debt incurred? **Opened 03/19  Last Active 6/02/19**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   **Charge Account**

---

| 4.7 | **Debt Collectors** | Last 4 digits of account number | | **$0.00** |

Nonpriority Creditor's Name

**Collection Agencies and Attorneys for Matrix**

When was the debt incurred? _____

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

**Who incurred the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify   _____

---

| Debtor 1 | **Isabel Hernandez** | Case number (if known) | |
|---|---|---|---|

| 4.8 | **First Premier Bank** | Last 4 digits of account number | **6798** | **$952.00** |

Nonpriority Creditor's Name

**3820 N Louise Ave
Sioux Falls, SD 57107**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

**When was the debt incurred?**    **Opened 01/18  Last Active 6/02/19**

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify  **Credit Card**

---

| 4.9 | **Jared-galleria/genesis** | Last 4 digits of account number | **7725** | **$117.00** |

Nonpriority Creditor's Name

**Po Box 4485
Beaverton, OR 97076**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

**When was the debt incurred?**    **Opened 12/17/18  Last Active 8/15/19**

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify  **Charge Account**

---

| 4.10 | **Lending Club Corp** | Last 4 digits of account number | **5314** | **$9,500.00** |

Nonpriority Creditor's Name

**595 Market Street
San Francisco, CA 94105**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

**When was the debt incurred?**    **Opened 11/18  Last Active 6/10/19**

**As of the date you file, the claim is:** Check all that apply

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify  **Unsecured**

---

Debtor 1   **Isabel Hernandez**                                              Case number (if known) _____

| 4.11 | **Macys/dsnb** | Last 4 digits of account number | **3871** | **$1,366.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**Po Box 8218**
**Mason, OH 45040**

When was the debt incurred?   **Opened 08/16  Last Active 5/28/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ■ Other. Specify   **Charge Account**

---

| 4.12 | **Military Star** | Last 4 digits of account number | **5399** | **$3,333.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**3911 Walton Walker**
**Dallas, TX 75266**

When was the debt incurred?   **Opened 10/16  Last Active 9/04/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ■ Other. Specify   **Charge Account**

---

| 4.13 | **Oxygen Recovery Group** | Last 4 digits of account number | **3620** | **$200.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**1 Hillcrest Ctr**
**Spring Valley, NY 10977**

When was the debt incurred?   **Opened 01/16**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ■ Other. Specify   **Collection Attorney Northen Litho**

---

Debtor 1    **Isabel Hernandez**                                              Case number (if known) _____

| 4.1 4 | **Syncb/ppc** | Last 4 digits of account number | **9830** | **$956.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**Po Box 965005
Orlando, FL 32896**

When was the debt incurred?    **Opened 02/16  Last Active 9/04/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Credit Card**

---

| 4.1 5 | **Syncb/qvc** | Last 4 digits of account number | **6933** | **$417.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**Po Box 965005
Orlando, FL 32896**

When was the debt incurred?    **Opened 03/19  Last Active 7/26/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Charge Account**

---

| 4.1 6 | **Td Bank Usa/targetcred** | Last 4 digits of account number | **8304** | **$243.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**Po Box 673
Minneapolis, MN 55440**

When was the debt incurred?    **Opened 03/19  Last Active 8/05/19**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Credit Card**

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |
|---|---|

**5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you**

---

Debtor 1  **Isabel Hernandez**                                     Case number (if known) _____

**have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Equifax Credit Info. Serv**<br>**P.O. Box 740241**<br>**Atlanta, GA 30374** | Line **4.7** of (*Check one*):<br><br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |
| | Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **Experian National Consume**<br>**P.O. Box 4500**<br>**Allen, TX 75013** | Line **4.7** of (*Check one*):<br><br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |
| | Last 4 digits of account number |

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? |
|---|---|
| **TransUnion Consumer Relat**<br>**P.O. Box 1000**<br>**Chester, PA 19016** | Line **4.7** of (*Check one*):<br><br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |
| | Last 4 digits of account number |

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 22,087.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 22,087.00 |

**Fill in this information to identify your case:**

| Debtor 1 | **Isabel Hernandez** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:     EASTERN DISTRICT OF NEW YORK

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**

   ☑ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.

   ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| **Person or company with whom you have the contract or lease**<br>Name, Number, Street, City, State and ZIP Code | **State what the contract or lease is for** |
|---|---|
| 2.1 _____<br>Name<br>_____<br>Number    Street<br>_____<br>City        State        ZIP Code | |
| 2.2 _____<br>Name<br>_____<br>Number    Street<br>_____<br>City        State        ZIP Code | |
| 2.3 _____<br>Name<br>_____<br>Number    Street<br>_____<br>City        State        ZIP Code | |
| 2.4 _____<br>Name<br>_____<br>Number    Street<br>_____<br>City        State        ZIP Code | |
| 2.5 _____<br>Name<br>_____<br>Number    Street<br>_____<br>City        State        ZIP Code | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Isabel Hernandez** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106H
## Schedule H: Your Codebtors

12/15

**Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.**

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| 3.1 _____ Name _____ Number   Street City                State              ZIP Code | ☐ Schedule D, line _____ ☐ Schedule E/F, line _____ ☐ Schedule G, line _____ |
| 3.2 _____ Name _____ Number   Street City                State              ZIP Code | ☐ Schedule D, line _____ ☐ Schedule E/F, line _____ ☐ Schedule G, line _____ |

Fill in this information to identify your case:

Debtor 1 **Isabel Hernandez**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I

## Schedule I: Your Income                                                    **12/15**

**Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| **Part 1:** | **Describe Employment** |
| --- | --- |

1. **Fill in your employment information.**

    If you have more than one job, attach a separate page with information about additional employers.

    Include part-time, seasonal, or self-employed work.

    Occupation may include student or homemaker, if it applies.

| | | **Debtor 1** | **Debtor 2 or non-filing spouse** |
| --- | --- | --- | --- |
| | **Employment status** | ☐ Employed<br>■ Not employed | ☐ Employed<br>☐ Not employed |
| | **Occupation** | | |
| | **Employer's name** | | |
| | **Employer's address** | | |
| | **How long employed there?** | | |

| **Part 2:** | **Give Details About Monthly Income** |
| --- | --- |

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
| --- | --- | --- | --- |
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions).  If not paid monthly, calculate what the monthly wage would be. | 2. $ 0.00 | $ N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. +$ 0.00 | +$ N/A |
| 4. | **Calculate gross Income.**  Add line 2 + line 3. | 4. $ 0.00 | $ N/A |

Debtor 1    **Isabel Hernandez**    Case number (*if known*)

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 0.00 | $ N/A |

5.   **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 0.00 | $ N/A |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ N/A |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ N/A |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ N/A |
| 5e. | **Insurance** | 5e. | $ 0.00 | $ N/A |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | $ N/A |
| 5g. | **Union dues** | 5g. | $ 0.00 | $ N/A |
| 5h. | **Other deductions.** Specify: | 5h.+ | $ 0.00 | + $ N/A |

6.   **Add the payroll deductions.**  Add lines 5a+5b+5c+5d+5e+5f+5g+5h.    6.   $ 0.00   $ N/A

7.   **Calculate total monthly take-home pay.**  Subtract line 6 from line 4.    7.   $ 0.00   $ N/A

8.   **List all other income regularly received:**

8a.   **Net income from rental property and from operating a business, profession, or farm**
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.    8a.   $ 0.00   $ N/A

8b.   **Interest and dividends**    8b.   $ 0.00   $ N/A

8c.   **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.    8c.   $ 0.00   $ N/A

8d.   **Unemployment compensation**    8d.   $ 0.00   $ N/A

8e.   **Social Security**    8e.   $ 400.00   $ N/A

8f.   **Other government assistance that you regularly receive**
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify:   **Food Stamps**    8f.   $ 350.00   $ N/A

8g.   **Pension or retirement income**    8g.   $ 0.00   $ N/A

8h.   **Other monthly income.** Specify:    8h.+   $ 0.00   + $ N/A

9.   **Add all other income.**  Add lines 8a+8b+8c+8d+8e+8f+8g+8h.    9.   $ 750.00   $ N/A

10.   **Calculate monthly income.**  Add line 7 + line 9.    10.   $ 750.00   + $ N/A   = $ 750.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11.   **State all other regular contributions to the expenses that you list in *Schedule J.***
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:    11.   **+**$ 0.00

12.   **Add the amount in the last column of line 10 to the amount in line 11.**  The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies    12.   $ 750.00

Combined monthly income

13.   **Do you expect an increase or decrease within the year after you file this form?**

■   No.

☐   Yes. Explain:

Official Form 106I    **Schedule I: Your Income**    page 2

Fill in this information to identify your case:

Debtor 1    **Isabel Hernandez**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    EASTERN DISTRICT OF NEW YORK

Case number
(If known)

Check if this is:

☐  An amended filing
☐  A supplement showing postpetition chapter
    13 expenses as of the following date:

    _____
    MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses

**12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:    Describe Your Household**

1.  **Is this a joint case?**

    ■ No. Go to line 2.
    ☐ Yes. **Does Debtor 2 live in a separate household?**

        ☐ No
        ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**    ☐ No

    Do not list Debtor 1 and    ■ Yes.    Fill out this information for
    Debtor 2.                               each dependent..............

    Do not state the
    dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| **Son** | **8** | ☐ No ■ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**    ■ No    ☐ Yes

**Part 2:    Estimate Your Ongoing Monthly Expenses**

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  | **Your expenses** |
|---|---|

4.  **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.    4.  $ **120.00**

    **If not included in line 4:**

    4a.    Real estate taxes    4a.  $ **0.00**
    4b.    Property, homeowner's, or renter's insurance    4b.  $ **0.00**
    4c.    Home maintenance, repair, and upkeep expenses    4c.  $ **0.00**
    4d.    Homeowner's association or condominium dues    4d.  $ **0.00**
5.  **Additional mortgage payments for your residence,** such as home equity loans    5.  $ **0.00**

Official Form 106J    **Schedule J: Your Expenses**    page 1

Debtor 1  **Isabel Hernandez**     Case number (if known) _____

6. **Utilities:**
  6a. Electricity, heat, natural gas — 6a. $ **0.00**
  6b. Water, sewer, garbage collection — 6b. $ **0.00**
  6c. Telephone, cell phone, Internet, satellite, and cable services — 6c. $ **100.00**
  6d. Other. Specify: — 6d. $ **0.00**
7. **Food and housekeeping supplies** — 7. $ **450.00**
8. **Childcare and children's education costs** — 8. $ **0.00**
9. **Clothing, laundry, and dry cleaning** — 9. $ **10.00**
10. **Personal care products and services** — 10. $ **15.00**
11. **Medical and dental expenses** — 11. $ **0.00**
12. **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. — 12. $ **70.00**
13. **Entertainment, clubs, recreation, newspapers, magazines, and books** — 13. $ **0.00**
14. **Charitable contributions and religious donations** — 14. $ **0.00**
15. **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20.
  15a. Life insurance — 15a. $ **0.00**
  15b. Health insurance — 15b. $ **0.00**
  15c. Vehicle insurance — 15c. $ **0.00**
  15d. Other insurance. Specify: — 15d. $ **0.00**
16. **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: — 16. $ **0.00**
17. **Installment or lease payments:**
  17a. Car payments for Vehicle 1 — 17a. $ **0.00**
  17b. Car payments for Vehicle 2 — 17b. $ **0.00**
  17c. Other. Specify: — 17c. $ **0.00**
  17d. Other. Specify: — 17d. $ **0.00**
18. **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** — 18. $ **0.00**
19. **Other payments you make to support others who do not live with you.** Specify: — 19. $ **0.00**
20. **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.**
  20a. Mortgages on other property — 20a. $ **0.00**
  20b. Real estate taxes — 20b. $ **0.00**
  20c. Property, homeowner's, or renter's insurance — 20c. $ **0.00**
  20d. Maintenance, repair, and upkeep expenses — 20d. $ **0.00**
  20e. Homeowner's association or condominium dues — 20e. $ **0.00**
21. **Other:** Specify: **Haircare & beauty** — 21. +$ **30.00**

22. **Calculate your monthly expenses**
  22a. Add lines 4 through 21. — $ **795.00**
  22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 — $
  22c. Add line 22a and 22b. The result is your monthly expenses. — $ **795.00**

23. **Calculate your monthly net income.**
  23a. Copy line 12 *(your combined monthly income)* from Schedule I. — 23a. $ **750.00**
  23b. Copy your monthly expenses from line 22c above. — 23b. -$ **795.00**
  23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. — 23c. $ **-45.00**

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?
■ No.
☐ Yes. Explain here:

**Fill in this information to identify your case:**

Debtor 1      **Isabel Hernandez**
              First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)   First Name          Middle Name          Last Name

United States Bankruptcy Court for the:      EASTERN DISTRICT OF NEW YORK

Case number
(if known)

☐ Check if this is an
  amended filing

Official Form 106Dec
# Declaration About an Individual Debtor's Schedules

12/15

**If two married people are filing together, both are equally responsible for supplying correct information.**

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes.  Name of person _____      Attach *Bankruptcy Petition Preparer's Notice,*
                                                          *Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X  **/s/ Isabel Hernandez**                      X  _____
   **Isabel Hernandez**                             Signature of Debtor 2
   Signature of Debtor 1

   Date   **December 2, 2019**                     Date  _____

Official Form 106Dec          **Declaration About an Individual Debtor's Schedules**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Isabel Hernandez** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (if known) | |

☐ Check if this is an amended filing

# Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy                    **4/19**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Give Details About Your Marital Status and Where You Lived Before |
|---|---|

**1.   What is your current marital status?**

☐   Married
☐   Not married

**2.   During the last 3 years, have you lived anywhere other than where you live now?**

■   No
☐   Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

**3.   Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■   No
☐   Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

| Part 2 | Explain the Sources of Your Income |
|---|---|

**4.   Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

■   No
☐   Yes. Fill in the details.

| Debtor 1 | | Debtor 2 | |
|---|---|---|---|
| **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |

| Debtor 1 | **Isabel Hernandez** | Case number (*if known*) | |
|---|---|---|---|

**5.** **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Describe below. | **Gross income from each source** (before deductions and exclusions) | **Sources of income** Describe below. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | **SSI Benefits - Monthly Payment** | **$400.00** | | |
| | **Food Stamps - Monthly Payment** | **$350.00** | | |

---

**Part 3:**    **List Certain Payments You Made Before You Filed for Bankruptcy**

**6.** **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
☐ No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?
☐ No.    Go to line 7.
☐ Yes    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
* Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

■ Yes.    **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

■ No.    Go to line 7.
☐ Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| **Creditor's Name and Address** | **Dates of payment** | **Total amount paid** | **Amount you still owe** | **Was this payment for ...** |
|---|---|---|---|---|

**7.** **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| **Insider's Name and Address** | **Dates of payment** | **Total amount paid** | **Amount you still owe** | **Reason for this payment** |
|---|---|---|---|---|

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Debtor 1 | **Isabel Hernandez** | Case number (*if known*) | |
|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No

☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

## Part 4:    Identify Legal Actions, Repossessions, and Foreclosures

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

■ No

☐ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

■ No. Go to line 11.

☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

■ No

☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

■ No

☐ Yes

## Part 5:    List Certain Gifts and Contributions

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No

☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No

☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that  total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

## Part 6:    List Certain Losses

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster,**

| Debtor 1 | **Isabel Hernandez** | Case number (*if known*) | |

**or gambling?**

■ No

☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
| --- | --- | --- | --- |

**Part 7:    List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No

■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |
| Jacob Silver, Attorney At Law | See Section 2016(b) Statement and court fees and credit report and other such fees. | See Section 2016(b) Statement and court fees and credit report and other such fees. | $0.00 |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No

☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No

☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
| --- | --- | --- | --- |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

■ No

☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
| --- | --- | --- |

Debtor 1    **Isabel Hernandez**                                                      Case number *(if known)*

---

**Part 8:**    **List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20.   **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
**Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.**

■   **No**
☐   **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21.   **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■   **No**
☐   **Yes. Fill in the details.**

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22.   **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■   **No**
☐   **Yes. Fill in the details.**

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**    **Identify Property You Hold or Control for Someone Else**

23.   **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■   **No**
☐   **Yes.  Fill in the details.**

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**    **Give Details About Environmental Information**

**For the purpose of Part 10, the following definitions apply:**

■   *Environmental law* **means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.**

■   *Site* **means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.**

■   *Hazardous material* **means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.**

**Report all notices, releases, and proceedings that you know about, regardless of when they occurred.**

24.   **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■   **No**
☐   **Yes. Fill in the details.**

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

| Debtor 1    **Isabel Hernandez** | Case number (*if known*) |
|---|---|

**25. Have you notified any governmental unit of any release of hazardous material?**

■ **No**

☐ **Yes. Fill in the details.**

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ **No**

☐ **Yes. Fill in the details.**

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

---

**Part 11:    Give Details About Your Business or Connections to Any Business**

**27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

    ☐ **A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time**

    ☐ **A member of a limited liability company (LLC) or limited liability partnership (LLP)**

    ☐ **A partner in a partnership**

    ☐ **An officer, director, or managing executive of a corporation**

    ☐ **An owner of at least 5% of the voting or equity securities of a corporation**

■ **No. None of the above applies.  Go to Part 12.**

☐ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|

**28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**

☐ **Yes. Fill in the details below.**

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

---

**Part 12:    Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| **/s/ Isabel Hernandez** | |
|---|---|
| **Isabel Hernandez**<br>**Signature of Debtor 1** | **Signature of Debtor 2** |

| **Date    December 2, 2019** | **Date** |
|---|---|

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

■ No

☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

| Official Form 107 | **Statement of Financial Affairs for Individuals Filing for Bankruptcy** | page **6** |
|---|---|---|

Debtor 1    **Isabel Hernandez**                                                    Case number (*if known*)

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Isabel Hernandez** | |
| | First Name          Middle Name          Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name          Middle Name          Last Name | |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK | |
| Case number (if known) | _____ | ☐ Check if this is an amended filing |

## Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7          **12/15**

**If you are an individual filing under chapter 7, you must fill out this form if:**

■ **creditors have claims secured by your property, or**

■ **you have leased personal property and the lease has not expired.**

**You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form**

**If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).**

| Part 1: | **List Your Creditors Who Have Secured Claims** |
|---|---|

1. **For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]:<br>_____ | ☐ No<br><br>☐ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]:<br>_____ | ☐ No<br><br>☐ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]:<br>_____ | ☐ No<br><br>☐ Yes |
| Creditor's | ☐ Surrender the property. | ☐ No |

Official Form 108                **Statement of Intention for Individuals Filing Under Chapter 7**                page 1

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    **Isabel Hernandez**                                      Case number (*if known*) _____

name:                                           ☐  Retain the property and redeem it.                    ☐ Yes

                                                ☐ Retain the property and enter into a
Description of                                     *Reaffirmation Agreement.*
property
securing debt:                                  ☐ Retain the property and [explain]:
                                                   _____

| Part 2: | **List Your Unexpired Personal Property Leases** |

**For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).**

| **Describe your unexpired personal property leases** | **Will the lease be assumed?** |
|---|---|
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased<br>Property: | ☐ No<br><br>☐ Yes |

Official Form 108                    **Statement of Intention for Individuals Filing Under Chapter 7**                    page 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1   **Isabel Hernandez**                                        Case number (*if known*) _____

---

<span style="background:black;color:white">Part 3:</span>   **Sign Below**

**Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.**

**X**  **/s/ Isabel Hernandez**                                 **X** _____

   **Isabel Hernandez**                                          Signature of Debtor 2
   Signature of Debtor 1

   Date    **December 2, 2019**                               Date  _____

---

Official Form 108        **Statement of Intention for Individuals Filing Under Chapter 7**        page 3

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                   Best Case Bankruptcy

<table>
<tr><td colspan="2">

**Fill in this information to identify your case:**

Debtor 1     **Isabel Hernandez**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Eastern District of New York

Case number
(if known)
</td></tr>
</table>

**Check one box only as directed in this form and in Form 122A-1Supp:**

■ 1. There is no presumption of abuse

☐ 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A-2).

☐ 3. The Means Test does not apply now because of qualified military service but it could apply later.

☐ Check if this is an amended filing

## Official Form 122A - 1
# Chapter 7 Statement of Your Current Monthly Income

**10/19**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

| **Part 1:** | **Calculate Your Current Monthly Income** |
|---|---|

1. **What is your marital and filing status?** Check one only.

    ■ **Not married**. Fill out Column A, lines 2-11.

    ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

    ☐ **Married and your spouse is NOT filing with you. You and your spouse are:**

        ☐ **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

        ☐ **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C § 707(b)(7)(B).

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | *Column A*<br>**Debtor 1** | *Column B*<br>**Debtor 2 or<br>non-filing spouse** |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $    **0.00** | $ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $    **0.00** | $ |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3**.** | $    **0.00** | $ |

5. **Net income from operating a business, profession, or farm**

| | **Debtor 1** | | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $   **0.00** | | | |
| Ordinary and necessary operating expenses | -$   **0.00** | | | |
| Net monthly income from a business, profession, or farm | $   **0.00** | **Copy here ->** $    **0.00** | $ |

6. **Net income from rental and other real property**

| | **Debtor 1** | | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $   **0.00** | | | |
| Ordinary and necessary operating expenses | -$   **0.00** | | | |
| Net monthly income from rental or other real property | $   **0.00** | **Copy here ->** $    **0.00** | $ |

| 7. | **Interest, dividends, and royalties** | $    **0.00** | $ |
|---|---|---|---|

Debtor 1    **Isabel Hernandez**                                                                                    Case number (*if known*)

|  |  | Column A<br>**Debtor 1** | Column B<br>**Debtor 2 or<br>non-filing spouse** |
|---|---|---|---|

8. **Unemployment compensation**  $  0.00   $

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you                                                                     $          400.00

For your spouse                                          $

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.    $    0.00    $

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

·  **Food Stamps**                                                  $        350.00    $

$          0.00    $

Total amounts from separate pages, if any.    **+** $      0.00    $

11. **Calculate your total current monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.    $      350.00  **+** $            **=** $      350.00

**Total current monthly income**

| **Part 2:** | **Determine Whether the Means Test Applies to You** |
|---|---|

12. **Calculate your current monthly income for the year.** Follow these steps:

12a. Copy your total current monthly income from line 11                    **Copy line 11 here=>**    $      350.00

Multiply by 12 (the number of months in a year)    **x** 12

12b. The result is your annual income for this part of the form    12b.  $    4,200.00

13. **Calculate the median family income that applies to you.** Follow these steps:

Fill in the state in which you live.    **NY**

Fill in the number of people in your household.    **2**

Fill in the median family income for your state and size of household.    13.  $    71,349.00

To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

14. **How do the lines compare?**

14a.  ■    Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.* Go to Part 3.

14b.  ☐    Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2.* Go to Part 3 and fill out Form 122A-2.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                            Best Case Bankruptcy

Debtor 1    **Isabel Hernandez**                                         Case number (*if known*)

---

| **Part 3:** | **Sign Below** |
|---|---|

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

**Χ  /s/ Isabel Hernandez**

**Isabel Hernandez**
Signature of Debtor 1

Date    **December 2, 2019**
MM / DD  / YYYY

If you checked line 14a, do NOT fill out or file Form 122A-2.

If you checked line 14b, fill out Form 122A-2 and file it with this form.

---

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
### Eastern District of New York

In re     **Isabel Hernandez**             Case No.

                                     Debtor(s)         Chapter      **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

|  |  |  |
|---|---|---|
| For legal services, I have agreed to accept | $ | **1,500.00** |
| Prior to the filing of this statement I have received | $ | **1,500.00** |
| Balance Due | $ | **0.00** |

2.  The source of the compensation paid to me was:

     ■ Debtor      ☐ Other (specify):

3.  The source of compensation to be paid to me is:

     ■ Debtor      ☐ Other (specify):

4.    ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

     ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

     a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
     b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
     c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
     d. [Other provisions as needed]
         **Negotiations with secured creditors to reduce to market value; exemption planning.**

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
         **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding. Preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods, or any other motions.**

---

### CERTIFICATION

     I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

| | |
|---|---|
| **December 2, 2019** | **/s/ Jacob Silver** |
| *Date* | **Jacob Silver** |
| | *Signature of Attorney* |
| | **Jacob Silver, Attorney At Law** |
| | **26 Court Street** |
| | **Suite - 1201** |
| | **Brooklyn, NY 11242** |
| | **(718) 855-3834  Fax: (718) 797-4141** |
| | **silverbankruptcy@gmail.com** |
| | *Name of law firm* |

---

# United States Bankruptcy Court
### Eastern District of New York

In re  **Isabel Hernandez**
                                                    Case No.
                                    Debtor(s)       Chapter    **7**

## VERIFICATION OF CREDITOR MATRIX

The above named debtor(s) or attorney for the debtor(s) hereby verify that the attached matrix (list of creditors) is true and correct to the best of their knowledge.

Date:  **December 2, 2019**         **/s/ Isabel Hernandez**
                                    **Isabel Hernandez**
                                    Signature of Debtor

Date:  **December 2, 2019**         **/s/ Jacob Silver**
                                    Signature of Attorney
                                    **Jacob Silver**
                                    **Jacob Silver, Attorney At Law**
                                    **26 Court Street**
                                    **Suite - 1201**
                                    **Brooklyn, NY 11242**
                                    **(718) 855-3834   Fax: (718) 797-4141**

USBC-44                                                                      Rev. 9/17/98

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

Capital One Bank Usa N
Po Box 30281
Salt Lake City, UT 84130


Capital One Bank Usa N
Po Box 30281
Salt Lake City, UT 84130


Citicards Cbna
Po Box 6217
Sioux Falls, SD 57117


Comenitybank/venus
Po Box 182789
Columbus, OH 43218


Comenitybank/victoria
Po Box 182789
Columbus, OH 43218


Comenitycb/ulta
Po Box 182120
Columbus, OH 43218


Debt Collectors
Collection Agencies and
Attorneys for Matrix


Equifax Credit Info. Serv
P.O. Box 740241
Atlanta, GA 30374


Experian National Consume
P.O. Box 4500
Allen, TX 75013


First Premier Bank
3820 N Louise Ave
Sioux Falls, SD 57107


Jared-galleria/genesis
Po Box 4485
Beaverton, OR 97076

Lending Club Corp
595 Market Street
San Francisco, CA 94105


Macys/dsnb
Po Box 8218
Mason, OH 45040


Military Star
3911 Walton Walker
Dallas, TX 75266


Oxygen Recovery Group
1 Hillcrest Ctr
Spring Valley, NY 10977


Syncb/ppc
Po Box 965005
Orlando, FL 32896


Syncb/qvc
Po Box 965005
Orlando, FL 32896


Td Bank Usa/targetcred
Po Box 673
Minneapolis, MN 55440


TransUnion Consumer Relat
P.O. Box 1000
Chester, PA 19016

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

## STATEMENT PURSUANT TO LOCAL
## BANKRUPTCY RULE 1073-2(b)

**DEBTOR(S):**  Isabel Hernandez                                    **CASE NO.:**.  _____

Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor *(or any other petitioner)* hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

[NOTE: Cases shall be deemed "Related Cases" for purposes of E.D.N.Y. LBR 1073-1 and E.D.N.Y. LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases: (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one or more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).]

■ NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.

☐ THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:

1.  CASE NO.:_____  JUDGE:_____  DISTRICT/DIVISION:_____

CASE STILL PENDING (Y/N):_____                [*If closed*] Date of closing:_____

CURRENT STATUS OF RELATED CASE:  _____
                                (Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*:  _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE:  _____

2.  CASE NO.:_____  JUDGE:_____  DISTRICT/DIVISION:_____

CASE STILL PENDING (Y/N):_____                [*If closed*] Date of closing:_____

CURRENT STATUS OF RELATED CASE:  _____
                                (Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*:  _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE:  _____

3.  CASE NO.:_____  JUDGE:_____  DISTRICT/DIVISION:_____

CASE STILL PENDING (Y/N):_____                [*If closed*] Date of closing:_____

(OVER)

DISCLOSURE OF RELATED CASES (cont'd)

CURRENT STATUS OF RELATED CASE: _____

(Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: _____

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN
SCHEDULE "A" OF RELATED CASE: _____

*NOTE:* Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not
be eligible to be debtors. Such an individual will be required to file a statement in support of his/her eligibility to file.

TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:

I am admitted to practice in the Eastern District of New York (Y/N): __Y__

CERTIFICATION (to be signed by pro se debtor/petitioner or debtor/petitioner's attorney, as applicable):

I certify under penalty of perjury that the within bankruptcy case is not related to any case now pending or pending at any time, except
as indicated elsewhere on this form.

**/s/ Jacob Silver**
_____

**Jacob Silver**

Signature of Debtor's Attorney                                        Signature of Pro Se Debtor/Petitioner
**Jacob Silver, Attorney At Law**
**26 Court Street**
**Suite - 1201**                                                     _____
**Brooklyn, NY 11242**
**(718) 855-3834 Fax:(718) 797-4141**                               Signature of Pro Se Joint Debtor/Petitioner

_____
Mailing Address of Debtor/Petitioner

_____
City, State, Zip Code

_____
Area Code and Telephone Number

Failure to fully and truthfully provide all information required by the E.D.N.Y. LBR 1073-2 Statement may subject the debtor or any
other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the
dismissal of the case with prejudice.

NOTE: Any change in address must be reported to the Court immediately IN WRITING. Dismissal of your petition may otherwise
result.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                Best Case Bankruptcy

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

Isabel Hernandez,

           Plaintiff(s),

                            Case No: 8:20-cv-00873-WFJ-TGW

    **v.**

Oliphant Financial, LLC and Accelerated
Inventory Management, LLC,

           Defendant(s).

-----------------------------------------------------------------/

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**REQUESTS FOR ADMISSIONS**

    Plaintiff Isabel Hernandez, as and for responses to Defendants' requests for admissions, states, objects and alleges as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

    2.    The following responses are made solely for the purposes of this action. Each response is subject to all objections as to relevance, materiality and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in Court.

    3.    By making the accompanying responses and objections, Plaintiff does not waive, and hereby expressly reserves, Plaintiff's right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that Plaintiff considers the requests, and responses to the requests, to be relevant or material to the subject matter of this action.



4.    Any response that indicates Plaintiff will produce documents or information is not an admission that Plaintiff actually possesses the documents or information demanded, or that any such documents or information exist and are in Plaintiff's possession, custody, or control, or that Plaintiff will not object on other grounds at the time of production.

5.    Plaintiff's responses are based upon information available to Plaintiff at this time, and Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, without obligating himself/herself to do so as discovery continues, in one or more subsequent supplemental responses.

## GENERAL OBJECTIONS

1.    Plaintiff objects to each instruction, definition, and request to the extent that such purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and any applicable Local Rules.

2.    Plaintiff objects to each instruction, definition, and request to the extent that such is so broad and unlimited as to time and scope as to be an unwarranted annoyance, embarrassment, harassment, and is oppressive. To comply with such instruction, definition, and request would be an undue burden and expense on Plaintiff.

3.    Plaintiff objects to each instruction, definition, and request to the extent that such is overly broad and unduly burdensome.

4.    Plaintiff objects to each instruction, definition, and request to the extent that such is phrased as argumentative and requires the adoption of an assumption.

5.    Plaintiff objects to each request to the extent such seeks documents or information irrelevant or immaterial to Plaintiff's claims and Defendant's defenses, and/ or are not reasonably calculated to lead to the discovery of admissible evidence.

6.    Plaintiff objects to each request to the extent that such contains subparts, or a compound, conjunctive, or disjunctive question.

7.    To the extent any of Defendant's requests seek answers that include expert material, Plaintiff objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time

Barshay Sanders PLLC

period for exchanging expert reports set by the Court.

8.    Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

<strong><u>REQUESTS FOR ADMISSIONS</u></strong>

**REQUEST FOR ADMISSION NO. 1**: Admit that you entered into the Borrower Agreement.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 2**: Admit that you are the individual identified in the Loan Summary as the primary borrower.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 3**: Admit that pursuant to the Borrower Agreement, WebBank issued to you the Loan.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 4**: Admit that you stopped making payments on the Loan.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 5**: Admit that the Loan ID number as reflected in the Loan Summary is the same as the "Original Account Number" provided in the Letter for the Account..

**ANSWER**: Plaintiff can neither admit nor deny this request on the grounds that the document identified as the "Loan Summary" bears a watermark indicating that it purports to be a copy of another document and Plaintiff has not seen the original document, nor has the copy been authenticated.

**REQUEST FOR ADMISSION NO. 6**: Admit that the Loan and the Account are the same financial obligation.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 7**: Admit that the Letter identified that the original creditor of the Account was WebBank.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 8**: Admit that the Letter identified that Accelerated had purchased the Account.

**ANSWER**: Plaintiff admits that the Letter identifies Accelerated as the current creditor, but denies that such statement is accurate.

**REQUEST FOR ADMISSION NO. 9**: Admit that the Letter identified that Oliphant was contacting you to resolve the balance owed on the Account on behalf of Accelerated.

**ANSWER**: Plaintiff can neither admit nor deny this statement insofar as she does not understand what is meant by the contention that Oliphant was contacting her to "resolve" the account. Admit.

**REQUEST FOR ADMISSION NO. 10**: Admit that upon reading the Letter you were aware that it was about the amounts originally owed on the Loan to WebBank. .

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 11**: Admit that after receipt of the Letter, you did not contact Oliphant or Accelerated to dispute the Account, or any portion of it..

**ANSWER**: Admit.

Barshay
Sanders PLLC

**REQUEST FOR ADMISSION NO. 12**: Admit that you did not take any action in reliance on the Letter.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 13**: Admit that you did not refrain from taking any action in reliance on the Letter.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 14**: Admit that you did not contact Oliphant after receipt of the Letter.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 15**: Admit that you did not contact Accelerated after receipt of the Letter.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 16**: Admit that you read the Borrower Agreement prior to receiving the Loan.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 17**: Admit that prior to filing the Complaint you were aware that the Borrower Agreement required you to resolve any dispute regarding the Loan by arbitration only.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 18**: Admit that the Borrower Agreement permitted WebBank to assign the Loan to another party.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 19**: Admit that the Letter does not suggest that you entered into any agreement or contract with Accelerated for an extension of credit.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 20**: Admit that prior to filing the Complaint you did not investigate whether the Loan had been assigned to Accelerated.

**ANSWER**: Plaintiff can neither admit nor deny this statement, insofar as she does not understand what Defendant intends by the word "investigate" .

**REQUEST FOR ADMISSION NO. 21**: Admit that the Account is owed by you.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 22**: Admit that after receipt of the Letter you did not make any payments on the Account.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 23**: Admit that you have not incurred any costs or any expenses as a result of receiving the Letter.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO.24**: Admit that when you read the Letter, you did not believe that the Letter was claiming that you entered into any agreement or contract with Accelerated for an extension of credit.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 25**: Admit that when you read the Letter, you did not believe that the Letter was claiming that the Account was originated by Accelerated.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 26**: Admit that the Letter does not suggest that the Account was originated by Accelerated.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 27**: Admit that when you commenced the Bankruptcy you did not identify the claims you have advanced in the Complaint or the Amended Complaint as an asset.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 28**: Admit that at no time during the pendency of the Bankruptcy did you amend to identify the claims you have advanced in the Complaint or the Amended Complaint as an asset.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 29**: Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint on or about December 31, 2019.

**ANSWER**: Plaintiff can neither admit nor deny this request because Plaintiff cannot recall.

**REQUEST FOR ADMISSION NO. 30**: Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint before February 13, 2020.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 30 [sic.]**: Admit that you were aware of the claims as reflected by the Complaint or the Amended Complaint before April 15, 2020.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 30 [sic.]**: Admit that you have not sought to reopen the Bankruptcy in order to identify as an asset the claims you have advanced in the Complaint or the Amended Complaint.

Barshay
Sanders PLLC

**ANSWER**: Plaintiff admits that she has not sought to reopen her bankruptcy case, but denied this statement to the extent it is intended to suggest that the claim was not properly disclosed in her initial filing.

**REQUEST FOR ADMISSION NO. 31 [sic.]**: Admit that the trustee in the Bankruptcy did not have knowledge of the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 32 [sic.]**: Admit that the trustee in the Bankruptcy did not abandon the claims you have advanced in the Complaint or the Amended Complaint.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 33 [sic.]**: Admit that the agreement between you and your attorneys, Barshay Sanders, PLLC, does not require you to pay any attorney fees out of pocket.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 34 [sic.]**: Admit that the agreement between you and your attorneys, Barshay Sanders, PLLC, does not reflect that you are assigning your right to, or interest in, any attorney fees awardable to you under the FDCPA or the FCCPA to them.

**ANSWER**: Plaintiff objects to this statement to the extent that it is written in the negative and is unintelligible as written and, therefore, cannot admit or deny same, as she does not understand what Defendant is asking.

**REQUEST FOR ADMISSION NO. 35 [sic.]**: Admit that you identified the Loan in your Bankruptcy schedules.

**ANSWER**: Plaintiff can neither admit nor deny this request because Defendant's definition of "Loan" is unintelligible, but nonetheless admits that Plaintiff's bankruptcy schedules identified Lending Club as a creditor of the estate

Barshay
Sanders PLLC

**REQUEST FOR ADMISSION NO. 36 [sic.]**: Admit that you did not review the telephone records for any telephone number at which you allege that you were called by either of the Defendants to identify if any calls were from a telephone number attributable to either of the Defendants before the Amended Complaint was filed.

**ANSWER**: Plaintiff can neither admit nor deny this request because it is unintelligible as written and Plaintiff cannot discern precisely what it is that she is being asked to admit.

**REQUEST FOR ADMISSION NO. 37 [sic.]**: Admit that you have no evidence in your possession that either of the Defendants ever placed a telephone call to you.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 38 [sic.]**: Admit that you never answered any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 39 [sic.]**: Admit that no voicemail for you was ever left for you as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Plaintiff can neither admit nor deny this request as Plaintiff cannot recall.

**REQUEST FOR ADMISSION NO. 40 [sic.]**: Admit that you did not receive telephone calls multiple times a day from either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 41 [sic.]**: Admit that you did not seek medical treatment as a result of any telephones call which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 42 [sic.]**: Admit that you did not feel harassed as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 43 [sic.]**: Admit that you did not fear that either of the Defendants would try to extract personal information from you as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 44 [sic.]**: Admit that you did not feel anxious as a result of any telephone calls which you allege were as placed to you by either of the Defendants.

**ANSWER**: Deny

**REQUEST FOR ADMISSION NO. 45 [sic.]**: Admit that you did not feel apprehension as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny

**REQUEST FOR ADMISSION NO. 46 [sic.]**: Admit that you did not suffer anguish as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny

**REQUEST FOR ADMISSION NO. 47 [sic.]**: Admit that you did not seek legal representation as a result of any telephone calls which you allege were placed to you by either of the Defendants.

**ANSWER**: Deny.

**REQUEST FOR ADMISSION NO. 48 [sic.]**: Admit that you did not review the Complaint or the Amended Complaint before either was filed by your attorneys.

**ANSWER**: Deny.

Dated: April 2, 2021

Barshay
Sanders PLLC

As to objections:

**BARSHAY SANDERS, PLLC**

By: /s *Craig B. Sanders*
Craig B. Sanders, Esq.
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Email: csanders@barshaysanders.com
Tel: (516) 203-7600
Fax: (516) 282-7878
Our File No.: 118981
*Attorneys for Plaintiff*