UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISABEL HERNANDEZ,                          No.: 8:20-cv-00873-WFJ-TGW

      Plaintiff,

v.

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

      Defendants.

_____/

### **DEFENDANTS', OLIPHANT FINANCIAL, LLC AND ACCELERATED INVENTORY MANAGEMENT, LLC, MOTION FOR SANCTIONS AND MEMORANDUM OF LAW IN SUPPORT**

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively the "Defendants") by and through their counsel, Maurice Wutscher, LLP, respectfully submit this Motion for Sanctions and Memorandum of Law in Support pursuant to Federal Rule of Civil Procedure 11 and Florida Stat. § 57.105.

### **PROCEDURAL HISTORY**

The Plaintiff commenced the instant action on or about April 15, 2020 by filing a complaint ("Initial Complaint"; *ECF No. 1*) against Oliphant and Accelerated, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, *et seq.* (the "FCCPA") in relation to a demand letter sent by Oliphant on behalf of Accelerated (the "Letter", *ECF No.* 1-1) which she alleged

1

suggested to her that she had contracted with Accelerated for an extension of credit.

Relevant to the instant motion, on January 28, 2021, the Defendants made demand upon Plaintiff to dismiss the Initial Complaint because the claims lacked support from fact or law not only because, on its face, the Letter contradicted and did not support Plaintiff's claims but also because the Plaintiff's counsel had previously had identical claims dismissed for failure to state a claim. *Statement of Undisputed Facts* ("SUF", *ECF No.* 42), ¶ 42. This, at the very least put both the Plaintiff and her counsel on notice that her claims were suspect and that perhaps a closer look as to the claims' viability was warranted.

In response to the Defendants' demand, the Plaintiff chose instead to double-down on her baseless claims, filing her First Amended Complaint ("Complaint"; *ECF No. 26*) on February 15, 2021, repeating verbatim her prior allegations regarding the Letter (*ECF No.* 26-1) but now also alleging the receipt of voluminous telephone calls from Defendants.

Thereafter, the parties engaged in discovery with the Defendants providing responses and responsive documents to the Plaintiff's requests on or about March 11, 2021, March 25, 2021, and May 27, 2021, *SUF*, ¶¶ 45-50, and the Plaintiff providing responses to the Defendants' requests on or about April 2, 2021, and again on or about May 4, 2021, however no documents were produced by the Plaintiff. *SUF*, ¶¶ 51-54. The Plaintiff was then deposed on May 4, 2021, and discovery closed on May 12, 2021. *See, ECF No. 40*.

On June 7, 2021, the Defendants moved for summary judgment ("MSJ"; *ECF No.* 41), while the Plaintiff did not. The Plaintiff filed her opposition to the MSJ ("Opposition to MSJ"; *ECF No.* 45) on June 28, 2021.

Defendants now move for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") and Florida Stat. § 57.105 ("57.105") as it relates to Plaintiff's claims as advanced in her Complaint and the Opposition to MSJ.

## STATEMENT OF MATERIAL FACTS

In support of the instant motion, the Defendants rely upon their Statement of Undisputed Facts ("SUF"; *ECF No.* 42), and the exhibits attached thereto (*ECF Nos.* 42-2 & 42-3), filed with their MSJ and the Defendants incorporate same herein by reference.

## ARGUMENT

## I.    SUMMARY OF THE ARGUMENT

The Plaintiff and her counsel have brought this action in bad faith, without support from fact or law and with knowledge of the claims' frivolousness. Specifically, the Plaintiff alleges that the Letter, sent by Oliphant on behalf of Accelerated, violates several sections of both the FDCPA and FCCPA, simply because upon receipt of the Letter, the Plaintiff did not recognize either Oliphant or Accelerated. *SUF,* ¶ 55. Naturally, according to Plaintiff and her counsel, being unfamiliar with these entities, despite the clear message conveyed by the Letter regarding their identity and relationship to Plaintiff, entitled her to pursue this

action in search of statutory damages and, of course, attorneys' fees[1].

Because the Letter, in and of itself, contains accurate information and is not misleading as a matter of law, the Plaintiff's claims lacked legal support from their inception. Nor was there any genuine issue of material fact that the Loan was due and owing to Accelerated; the Plaintiff neither investigated Accelerated's ownership of the Loan nor produced any evidence during the litigation of this action in support of her claims.

Further, Plaintiff's own testimony reflects that her claims had no factual basis from the very beginning. Not only did Plaintiff fail to read the Letter in its entirety, but she also readily recognizes that had she read the Letter *in toto* she would have understood who Accelerated was in relation to the Loan, *SUF*, ¶ 36, which she acknowledges is otherwise legitimate. *SUF*, ¶ 3.

However, Plaintiff is not the only one to blame; indeed, that her claims lack legal support and are frivolous is no surprise to Plaintiff's counsel who has unsuccessfully pursued identical claims several times before. *See, e.g. Parker v. Mandarich Law Grp.*, LLP, No. 19-CV-6313, 2021 U.S. Dist. LEXIS 108197 (E.D.N.Y. June 9, 2021); *Johnson v. Cawley & Bergmann, LLC,* No. 20-cv-00380 (DLI) (VMS), 2021 U.S. Dist. LEXIS 68855 (E.D.N.Y. Mar. 31, 2021); *Greifman v. Cawley & Bergmann, LLC,* No. 18-cv-08784 (NSR), 2019 U.S. Dist. LEXIS 60797 (S.D.N.Y. Apr. 9, 2019).

---

[1] 15 U.S.C. § 1692k(a)(3) provides that "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

Finally, after the discovery produced by Defendants demonstrated that the Plaintiff's claims lacked **any** support from the uncontroverted material facts surrounding the Loan, the Plaintiff and her counsel continued, in bad faith, to prosecute the frivolous claims, causing Defendants to have to continue to defend at significant cost and to their detriment.

Because Plaintiff's counsel was aware that her claims lacked legal support and because Plaintiff, had she read the Letter in its entirety, would have also drawn this conclusion, sanctions are warranted. Similarly, because both Plaintiff and her counsel failed to do one iota of investigation regarding Accelerated's ownership of the Loan to identify any factual basis for the claims prior to pursuing the frivolous claims, sanctions are also warranted. Finally, that, in the face of uncontroverted evidence produced to the Plaintiff in discovery, both Plaintiff and her counsel continued to prosecute her frivolous claims only further demonstrates that the Court must apply the appropriate sanctions.

## II.   <u>STANDARD OF REVIEW</u>

### A.   **Federal Rule of Civil Procedure 11**

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Uppal v. Wells Fargo Fin.*, No. 8:19-cv-2319-MSS-TGW, 2021 U.S. Dist. LEXIS 25907, at *4 (M.D. Fla. Feb. 11, 2021) (quoting *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010)). The Eleventh Circuit has summarized the standard for determining the presence of a Rule 11 violation as follows:

> A district court may impose sanctions under Rule 11 when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success; or (3) is filed in bad faith for an improper purpose.

*Tellam v. Kalman*, No. 6:19-cv-2313-Orl-78LRH, 2021 U.S. Dist. LEXIS 1158, at *6 (M.D. Fla. Jan. 4, 2021) (quoting *Vient v. Highlands News-Sun*, 829 F. App'x 407, 409 (11th Cir. 2020) (internal citations omitted). In the Eleventh Circuit,

> [t]his court requires a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous.

*Wissner v. Dewitt*, No. 6:19-cv-128-Orl-40GJK, 2019 U.S. Dist. LEXIS 235260, at *10 (M.D. Fla. Dec. 4, 2019) (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). "The central goal of Rule 11 is to deter vexatious and frivolous litigation". *Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir. 1991). In its simplest terms, "Rule 11 stresses the need for some prefiling inquiry." *Worldwide Primates v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)

### B.    Section 57.105, Florida Statutes

Courts may award attorneys' fees and costs pursuant to Section 57.105, Florida Statutes, "if evidence establishes that the party or attorney knew or should have known that the claim or defense was (a) not supported by material facts, or (b) not supported by the application of existing law." *Gahn v. Holiday Property Bond, Ltd.*, 826 So. 2d 423, 425 (Fla. 2d DCA 2002); *Fla. Stat. §57.105*. Although a state, as opposed to federal, statute, "[a]ttorney's fees pursuant to Florida Statute § 57.105 may be awarded to the prevailing party in a suit brought in federal court".

6

*Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1478 n.11 (11th Cir. 1992)).

"[T]he central purpose of Section 57.105 is, and always has been, to deter meritless filings, and thus streamline the administration and procedure of the courts", *Mullins v. Kennelly*, 847 So. 2d 1151 (Fla. 5th DCA 2003), and Courts may award attorneys' fees and costs pursuant to Florida Statute 57.105 against both the opposing attorneys, and their clients. *See, e.g., Badgley v. Suntrust Mortg. Inc.*, 134 So.3d 559, 561 (Fla. 5th DCA 2014) (affirming sanctions against both a borrower and her attorney for frivolous actions brought against a mortgage loan servicer).

## III.   **THE DEFENDANTS ARE ENTITLED TO SANCTIONS**

In no uncertain terms, the Plaintiff's claims, as a matter of law, fail as the clear text of the Letter conveys to Plaintiff who the Loan was currently owed to, in what amount and how it came to be owned by Accelerated, in contradiction of the Plaintiff's claims that the Letter fails to identify the current creditor of, and amount owed upon, the Loan. As such, no interpretation of the FDCPA or FCCPA supports Plaintiff's claims. Additionally, the undisputed evidence of record demonstrates that Accelerated is, in fact, the current creditor of the Loan, as assignee of the original creditor. Furthermore, the evidence reflects that both the Plaintiff and her attorney knew or should have known that the claims lacked support from fact or from law, yet still pursued the claims in issue.

A. **THE PLAINTIFF'S CLAIMS ARE NOT SUPPORTED BY MATERIAL FACT OR EVIDENCE, OR EXISTING LAW OR ANY NONFRIVOLOUS ARGUMENT FOR ESTABLISHING NEW LAW**

Defendants incorporate and rely upon the arguments made in their MSJ in demonstration that the Plaintiff's claims lack support in existing law or in any nonfrivolous argument for establishing new law and that Plaintiff's claims also lack support from material fact or evidence.

B. **PLAINTIFF'S COUNSEL KNEW, OR SHOULD HAVE KNOWN, THAT THE CLAIMS REGARDING THE LETTER LACKED SUPPORT FROM EXISTING LAW AND FROM ANY NONFRIVOLOUS ARGUMENT FOR ESTABLISHING NEW LAW**

Plaintiff's cryptic claims as presented in the Complaint which offer only that, although she does not deny the Loan is legitimate, *SUF*, ¶ 3, she does not owe Accelerated any money, without indulging the Defendants or the Court with any factual assertion as to ***why*** this is so, can be summarized as: because the Plaintiff did not recognize the Defendants when she received the Letter, she does not owe the Loan to Accelerated. *SUF*, ¶ 55-57.

However, as Plaintiff's counsel is well aware, existing law has established that it matters not that the Plaintiff did not recognize either Oliphant or Accelerated; "[a]pplying the least sophisticated consumer standard, the Letter is neither false, confusing, nor misleading. The absence of any dealings between Plaintiff and [Defendants] do[es] not support Plaintiff's claims that the Letter violated § 1692e or § 1692g by representing that [Accelerated] is the current

creditor for the Account." *Johnson v. Cawley & Bergmann, LLC*, 2021 U.S. Dist. LEXIS 68855* 11 (E.D.N.Y. Mar. 31, 2021).

In *Johnson*, a case which Plaintiff's counsel was an attorney of record, the Court was considering a motion to dismiss a complaint asserting identical claims based upon a similar letter which, the Court noted "clearly identifies the current creditor as JHPDE Finance I, LLC and the original creditor as the Citibank N.A./Citi(R) Double Cash Card. The Letter reasonably identifies the debt as originating from Plaintiffs use of a Double Cash Card issued by Citibank N.A./Citi(R) and provides the Citibank account number for Plaintiff's reference." *Id.*, at *9. Dismissing the complaint, the Court, relying upon *Greifman, infra*, held that the "[p]laintiff failed to provide any reasonable explanation as to how the Letter could be interpreted to show that the debt originated from JHPDE. The least sophisticated consumer possesses reasonable knowledge of his account's history, and he does not read a debt collection letter in complete isolation." *Id.*, at *12-13.

Similarly, addressing identical claims, the Court in *Greifman v. Cawley & Bergmann, LLC,* 2019 U.S. Dist. LEXIS 60797 (S.D.N.Y. Apr. 9, 2019), another case which Plaintiff's counsel was an attorney of record, also granted dismissal. There, while noting that "the debt collection letter clearly identifies the current creditor, JH Portfolio Debt Equities, LLC, the original creditor, Citibank N.A./Citi Simplicity Card, the amount of the debt, and that Defendant has been contracted to collect a debt owed by [Plaintiff] to JH Portfolio Debt Equities, LLC", *Greifman v. Cawley & Bergmann, LLC*, at *8, the Court went on to hold that "[a]pplying the

9

least sophisticated consumer standard, the Court determines that the debt collection letter received by Plaintiff is neither false nor misleading ... Nowhere in the debt collection letter does it state or can it be interpreted to suggest that Plaintiff contracted with, borrowed monies from or incurred an original debt from JH Portfolio Debt Equities, LLC." *Id.* at *7.

Next, in *Parker v. Mandarich Law Grp.*, LLP, No. 19-CV-6313, 2021 U.S. Dist. LEXIS 108197 (E.D.N.Y. June 9, 2021), again a case in which the Plaintiff's counsel appears as an attorney of record, the court granted summary judgement for defendant based on identical claims. There, in granting summary judgment, the Court held:

> [T]he court concludes that no reasonable jury could find from the Collection Letter that Mandarich violated the FDCPA by failing to state the amount of any debt owed and by failing to state the name of the creditor or falsely stating the name of the creditor. A plain reading of the Collection Letter shows that the letter conforms with the requirements set forth in § 1692g(a)(2) and clearly states "the name of the creditor to whom the debt is owed." Specifically, in the letter, Mandarich properly identified the "Current Creditor," "Original Creditor," "Original Creditor Account No.," and "Current Balance Due: $2,390.07." Furthermore, the first sentence of the Collection Letter states that plaintiff's "account has been sold and assigned to our client, Galaxy International Purchasing, LLC." Under these circumstances, the court concludes that the least sophisticated consumer in plaintiff's position would understand that she has a credit card, and she can match the account number for this credit card with the account number on the letter.

*Id.*, at *34-35 (internal citations to the record omitted).

Here, that the same result is dictated was well known to Plaintiff's counsel before he pursued the instant claims. Admittedly, the *Johnson* and *Parker*

10

opinions were delivered after the Complaint was filed. However, after further confirmation from those decisions that the claims advanced here were legally unsupportable, rather than waive the white flag, the Plaintiff and her counsel continued to litigate her claims, including by pursuing the Opposition to MSJ in which the Plaintiff and her counsel now attempt to argue that, according to New York state law, the Defendants would not have sufficient evidence upon which they could successfully pursue a lawsuit against the Plaintiff to collect the Loan, although no such hypothetical suit has ever been filed. *Opposition to MSJ*, p. 12-15.

However, and again, that this legal argument fails is well within the knowledge of the Plaintiff's counsel; it has been summarily rejected, by New York courts no less, numerous times over in the context of FDCPA litigation. *See, Parker*, at n. 6 (collecting cases and noting that Plaintiff's counsel has previously pursued and lost this argument); *Johnson*, *9-10 (collecting cases and noting that Plaintiff's counsel has previously pursued and lost this legal argument). Given New York's own Courts' refusal to entertain this argument is proof positive that the claims' basis in this regard lack legal support or support from any nonfrivolous argument to expand upon existing law.

Sanctions are warranted against Plaintiff's counsel pursuant to R. 11 and 57.105 as it relates to the Complaint and the Opposition to MSJ in this regard.

### C.   PLAINTIFF AND HER COUNSEL KNEW, OR SHOULD HAVE KNOWN, THAT PLAINTIFF'S CLAIMS REGARDING

## THE LETTER LACKED SUPPORT FROM MATERIAL FACT OR EVIDENCE AND WERE FRIVOLOUS

The basis of all the Plaintiff's claims is that, while she acknowledges that the Loan is legitimate, *SUF*, ¶ 3, she does not owe the Loan to Accelerated. Without more, including any claims regarding the legitimacy of the Loan, the Loan's origins, or the Loan's balance, Plaintiff asserts it simply is not owed to Accelerated, and as such, the Letter which was sent by Oliphant on Accelerated's behalf violates the FDCPA. *Complaint*, ¶¶ 57-59; 91, 92. Similarly, absent are any claims regarding the legitimacy of Accelerated's claim of ownership to the Loan and instead to support her claim that Accelerated is not the creditor of the Loan, the Plaintiff initially offered only that:

> [Accelerated] never offered to extend credit to Plaintiff.
> [Accelerated] never extended credit to Plaintiff.
> Plaintiff was never involved in any transaction with [Accelerated].
> Plaintiff never entered into any contract with [Accelerated].
> Plaintiff never did any business with [Accelerated].
> Plaintiff was never indebted to [Accelerated].
> [Accelerated] is a stranger to Plaintiff.

*Complaint,* ¶¶ 93-99.

Farcically, the Plaintiff and her counsel attempt to convince this Court that the Defendants have misinterpreted her Complaint and that, instead, the Complaint "clearly states that Plaintiff did not owe a debt of any kind to Accelerated because it holds no legally cognizable interest in any debt once owed by Plaintiff to WebBank." *Opposition to MSJ*, p. 17. This contention is patently false and flat out insulting to the Court; the Plaintiff could have easily pled as much,

12

yet the Complaint[2] reflects no such sentiment. *See, Complaint*. Nor did the Plaintiff provide any testimony that reflected her challenge to the Letter was an attack on Accelerated's chain of title for the Loan. Plaintiff and her counsel's argument in this regard only further demonstrate that the claims have been pursued in bad faith and for the purposes of harassment; why else "hide the ball"?

Indeed, as for her testimony, the Plaintiff's identified factual basis for pursuing her claims was simply that upon viewing the Letter, she did not recognize either Oliphant or Accelerated. *SUF*, ¶ 55. However, and despite her unfamiliarity with the Defendants, the Plaintiff did not attempt to contact Oliphant, Accelerated, LendingClub or WebBank, nor did she dispute the Loan pursuant to the Validation Notice. *Id.*, ¶¶ 38, 40. She also did not do any investigation regarding the Defendants. *Plaintiff's Dep.*, p. 47, l. 25 to p. 48, l. 8.

What is more is that the Plaintiff readily admits that she **did not even read the Letter in its entirety**. *SUF*, ¶ 33. Instead of reading the Letter, she immediately sent the Letter to her attorney, *SUF*, ¶ 31, 32, who directed her to her current counsel[3]. *Plaintiff's Dep.*, p. 36, l. 23 to p. 37, l. 10. However, the Plaintiff did agree that, had she read the first paragraph of the Letter, which discusses how Accelerated has purchased her Loan and is now the creditor, she **would have** understood what that meant. *SUF*, ¶ 36. In this regard, the Plaintiff admits that the

---

[2] Nor does the Initial Complaint reflect any such claim regarding Accelerated's lack of interest in the Loan.

[3] When inquiry was made regarding what laws Plaintiff's bankruptcy attorney believed the Letter violated, privilege was claimed. *See, Plaintiff's Dep.,* p. 83, l. 20 to p. 84, l. 8.

Letter does not reflect that Accelerated ever offered to extend credit to her or ever extended credit to her, contrary to her pleadings. *Plaintiff's Dep.*, p. 49, l. 21 to p. 50, l. 10; *compare, Complaint*, ¶¶ 93, 94, 116, 117.

The fact that Plaintiff admits she would have understood the Letter had she read it, and that its plain language fails to support her claims, demonstrates that her and her counsel, at the very least, ***should have known*** that her claims had no support in fact or evidence had they done any analysis regarding the viability of the claims considering the Plaintiff's understanding of the Letter and her interaction therewith. Clearly, they did no such due diligence. The audacity of Plaintiff's counsel to pursue a lawsuit having never confirmed that Plaintiff ever even read the Letter, or worse - being aware that she did not, demonstrates a complete lack of good faith. *See, e.g., Marin v. Alvarez*, No. 08-60821-CIV-MARTINEZ/BROWN, 2009 U.S. Dist. LEXIS 124234 (S.D. Fla. Aug. 4, 2009) (Granting motion for Rule 11 sanctions and noting that "Plaintiffs' counsel here failed to conduct any inquiry into what his clients supplied to him and into other facts that were alleged in the Complaint...this is sanctionable.") affirmed by *Marin v. Alvarez*, 2010 U.S. Dist. LEXIS 7287 (S.D. Fla., Jan. 26, 2010).

Furthermore, no later than March 25, 2021, the Defendants had produced to Plaintiff and her counsel documents reflecting the origins of the Loan, the full chain of title for the Loan from WebBank to Accelerated and the transaction history for the Loan which reflected the Loan's balance and how it was determined. *SUF*, ¶¶ 47-49. Specifically, the documents produced by Defendants reflect that, in no

14

uncertain terms, on the date the Letter was sent by Oliphant, the creditor of the Loan was, as a matter of undisputed fact, Accelerated and the amount owed to Accelerated was, as a matter of undisputed fact, $9,706.72. *See, SUF,* ¶¶ 1-8, 10-12.

Meanwhile, Plaintiff's responses to Defendants' discovery requests were provided no later than May 4, 2021 and Plaintiff produced no documents or other evidence which supported her claims. *SUF,* ¶¶ 51-54. Despite possessing zero evidence or material facts that would contradict or call into question that which was produced by Accelerated, including anything that would challenge Accelerated's claim to ownership of the Loan (as Plaintiff asserts her Complaint "clearly states" is the basis of her claims, *Opposition to MSJ*, p. 17), the Plaintiff and her counsel were unwavering in their objective of causing unreasonable delay, harassing the Defendants and increasing the cost of litigation to Defendants, *see, Rule 11(b)(1); 57.105(2)*. They continued to pursue the claims including by filing the Opposition to MSJ; this conduct is sanctionable. *See, e.g., Tacoronte v. Cohen*, No. 6:13-ev-418-0r1-18GJK, 2014 U.S. Dist. LEXIS 201684, at *16-17 (M.D. Fla. May 9, 2014) (Granting Rule 11 sanctions where defendant supported its summary judgment motion with evidence corroborating the amount it has sought from the plaintiff as well its right to do so while the plaintiff failed to present any evidence to the contrary and holding that the claims "were brought without evidentiary support and without any reasonable expectation that the discovery process would produce any evidentiary support" for them).

Sanctions are warranted against Plaintiff and her counsel pursuant to R. 11 and 57.105 as it relates to the Complaint and the Opposition to MSJ in this regard.

**D.   PLAINTIFF AND HER COUNSEL KNEW OR SHOULD HAVE KNOWN THAT PLAINTIFF'S CLAIMS THAT DEFENDANTS PLACED TELEPHONE CALLS TO HER LACKED SUPPORT FROM MATERIAL FACT OR EVIDENCE AND WERE FRIVOLOUS**

As noted above, the Complaint is identical to the Initial Complaint save for the new allegations that Defendants repeatedly placed telephone calls to the Plaintiff to her detriment. However, as a matter of fact the Defendants did not place **any** telephone calls to the Plaintiff. The Loan was purchased by Accelerated on December 27, 2019. *SUF*, ¶ 7. Four days later, on December 31, 2019, Oliphant sent the Letter on behalf of Accelerated. *SUF*, ¶ 14. The Letter was the first and only written communication made by the Defendants to the Plaintiff. *SUF*, ¶¶ 26, 27. The Defendants placed no calls to the Plaintiff. *SUF*, ¶ 28. On January 19, 2020, the Defendants closed the Loan and ceased all collections. *SUF*, ¶ 29.

For her part, the Plaintiff continued the charade of "telephone calls" into her deposition where she provided testimony that she spoke to the caller whom she initially identified as "Accelerator", rather than Accelerated, *Plaintiff's Dep.*, p. 54, l. 25 to p. 55, l. 4, 9-11, only once, *SUF*, ¶ 59, could not remember whether such call took place within the last four years, *SUF*, ¶ 58, could not remember whether the call was actually in reference to the Loan, *SUF*, ¶ 64, could not recall the telephone number or even the area code of the caller, *SUF*, ¶¶ 62, 63, did not receive any voicemails identifying the entity allegedly calling, *SUF*, ¶ 60, did not call back the

number from which she alleged to have received the calls in issue, *SUF*, ¶ 61, and to date has failed to secure her telephone records to support her allegations and has no intention of doing so. *SUF*, ¶ 65.

Here, given the Plaintiff's inability to provide specific testimony regarding the alleged calls and her failure to support such claims with evidence such as her phone records, which are clearly within her possession, custody and control, there is no doubt that the Plaintiff and her counsel knew or should have known such claims lacked any factual support prior to bringing them. This is especially true after the only records produced, those of the Defendants, reflected that no telephone calls were placed to the Plaintiff. *SUF*, ¶ 28. Indeed, the fact that the Plaintiff and her counsel could not even be troubled enough to investigate and produce her phone records in support of these fraudulent claims speaks volumes.

It is curious that Plaintiff did not assert these claims in the Initial Complaint and only did so *after* the Defendants requested the Plaintiff dismiss her suit given the allegations' failure to state a claim pursuant to *Griefman*. The preponderance of evidence, and lack thereof from the Plaintiff, demonstrates that the filing of the Complaint which included the fraudulent allegations of telephone calls was done **only** for the purposes of trying to create a factual contention to prevent Defendants from moving to dismiss the Complaint. As such, the Complaint, and the Opposition to MSJ were filed and pursued to cause unreasonable delay, harass Defendants and increase the cost of litigation to Defendants. *See, Rule 11(b)(1); 57.105(2).*

17

Sanctions are warranted against Plaintiff and her counsel pursuant to R. 11 and 57.105 as it relates to the Complaint and the Opposition to MSJ in this regard.

## CONCLUSION

Simply put, and as demonstrated above, the Plaintiff's claims are frivolous, baseless, lacking in support from material facts or existing law and have been pursued in bad faith at significant cost to the Defendants. The purpose of Rule 11 and 57.105 are to deter frivolous litigation and meritless filings. *Fox, supra; Mullins, supra*. Here, there is no question that the Plaintiff's claims were frivolous and meritless and that she and her counsel pursued them with knowledge of such. For the foregoing reasons, Defendants, Oliphant Financial, LLC and Accelerated Inventory Management, LLC respectfully request that this Court grant their Motion and sanction Plaintiff and her counsel, joint and severally, by awarding Defendants their attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 11 and Fla. Stat. § 57.105.

Date: July 2, 2021                    Respectfully submitted,

                                      **ACCELERATED INVENTORY
                                      MANAGEMENT, LLC AND
                                      OLIPHANT FINANCIAL, LLC,**

                                      *s/ Shannon Miller*
                                      Shannon Miller, Esq. (*Pro Hac Vice*)
                                      Maurice Wutscher, LLP
                                      Attorneys for Defendants
                                      10 W. Front Street
                                      Media, PA 19063
                                      smiller@mauricewutscher.com

18

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Federal Rule of Civil Procedure 11 and Florida Stat. 57.105, the foregoing was served upon the Plaintiff on July 2, 2021. I hereby certify that the foregoing was filed and served upon all parties on July 26, 2021 via ECF.


*/s/ Shannon Miller*
Shannon Miller

Date: July 25, 2021

1