## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ISABEL HERNANDEZ,

      Plaintiff,

v.                                 No: 8:20-cv-873-WFJ-TGW

OLIPHANT FINANCIAL, LLC, and
ACCELERATED INVENTORY
MANAGEMENT, LLC

      Defendants.

_____/

## <u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 41. Defendant Accelerated Inventory Management ("AIM") is the purchaser of consumer debt incurred by Plaintiff. Dkt. 26 ¶¶ 15–24. Defendant Oliphant Financial ("Oliphant") is the collector for AIM. *Id.* In her Amended Complaint, Plaintiff brings several causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and one claim under the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72, *et seq*. ("FCCPA"). *Id.* at ¶ 1.

Defendants seek summary judgment on all counts of the Amended Complaint. Dkt. 41. Plaintiff filed a response to the summary judgment motion,

and Defendants replied. Dkts. 45 & 47. After considering the filings and hearing oral arguments on July 26, 2021, the Court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

In her Amended Complaint, Plaintiff alleges that the subject debt was assigned or otherwise transferred to Defendants for collection. Dkt. 26 ¶¶ 27–33. She states that she received a letter regarding collection of a debt. *Id.* at ¶ 31. This letter is attached here as an Appendix. Plaintiff testified that, upon receiving the letter, she did not recognize the names of the original creditor, WebBank, or the current creditor and collector, AIM and Oliphant respectively. Dkt. 42-3 at 138. Plaintiff stated that she did not recall if she read the text of the letter following the identification of the creditors and collector. *Id.* However, Plaintiff later testified that she did not read the text of the letter before providing it to her lawyer. *Id.* at 140.

Plaintiff alleges in the Amended Complaint that the letter she received contains false statements because she does not owe money to AIM. Plaintiff states, "[t]he gravamen of the [Amended] Complaint alleges that Defendants violated the provisions of the FDCPA by identifying [AIM] as Plaintiff's creditor when, in fact, Plaintiff owes no monies of any kind to such entity." Dkt. 45 at 2.

2

Plaintiff also alleges in the Amended Complaint that she was harassingly called multiple times by the Defendants attempting to collect this debt, Dkt. 26 ¶¶ 36–47, although none of the counts in the Amended Complaint seek recovery for these phone calls. In fact, each count *specifically excludes* the allegations of phone calling. *Id.* at ¶¶ 52, 62, 86, 102, 134.

There is quite a bit Plaintiff does not recall. Although she recalls receiving the loaned money and remembers spending that money, she does not recall signing the loan documents. Dkt. 42-3 at 143. Additionally, while she recalls stopping payment on the loan, she does not recall what amount she owed when she discontinued her payments. *Id.* at 144. While Plaintiff also does not recall WebBank being the original creditor, she does recall obtaining the loan through Lending Club, which was WebBank's processor and the first assignee of the WebBank loan. *Id.* at 143–44.

Notwithstanding Plaintiff's testimony, her pleadings state that she borrowed $10,000 from WebBank, which she used for personal expenditures. Dkt. 45 at 5. Plaintiff testified that she has "no idea" whether the lending documents permit the original creditor to sell her loan debt to others. Dkt. 42-3 at 151. Concerning the harassing phone calls, Plaintiff does not recall when these phone calls occurred during the past four years. *Id.* at 140.

The Amended Complaint states that Plaintiff did not owe to AIM the balance shown in the letter because AIM never extended or offered credit to Plaintiff. Dkt. 26 ¶¶ 77–84, 123–30. Plaintiff thereby asserts that the letter is false and misleading because AIM is a stranger to Plaintiff and Plaintiff has never contracted with or done any business with AIM. *Id.* at ¶¶ 93-99.

Each of the five counts in the Amended Complaint is asserted against both Defendants. As to Count One, the Amended Complaint states that the letter falsely asserts Plaintiff owes $9,706.72 when in fact she never owed any money to AIM or Oliphant. Plaintiff contends that this is a falsehood in violation of section 1692g(a)(1) of the FDCPA.[1] Dkt. 26 ¶¶ 52–61.

In Count Two of the Amended Complaint, Plaintiff asserts that the debt alleged in the letter is a false representation or deceptive means to collect the same, in violation of sections 1692e, e(2)(A), and e(10) of the FDCPA.

Count Three of the Amended Complaint asserts a violation of section 1692g(a)(2) of the FDCPA. Plaintiff notes that this provision requires the creditor to be accurately listed on a written notice, and she asserts that AIM was not "the name of the creditor to whom the debt is owed," as this statute requires. Dkt. 26 ¶¶ 89–100. Plaintiff states that the statute was thus violated because "Plaintiff never

---

[1] This provision requires a creditor to provide written notice of the debt amount within five days of the initial communication concerning collection. The amount must be accurately stated.

did any business with" AIM and "never entered into any contract with" AIM. *Id.* at ¶¶ 95–101.

Count Four asserts another FDCPA violation. According to this count, which serves as somewhat of a "catch-all," the letter violated section 1692e(2)(A) of the FDCPA because that provision prohibits the false representation of the character, amount, or legal status of a debt. *Id.* at ¶¶ 102-115. Plaintiff alleges that the letter falsely claimed AIM was a creditor because "Plaintiff did not owe a debt to" AIM. *Id.* Plaintiff further contends that AIM "never extended credit to Plaintiff" and that "Plaintiff was never involved in any transaction with" AIM. *Id.* at ¶¶ 117–18.

Finally, Count Five of the Amended Complaint asserts similar violations under the FCCPA, Fla. Stat. § 559.72(9). This Florida statute prohibits a debt collector from attempting to enforce a debt when the collector knows that the debt is not legitimate.

Although the Amended Complaint maintains that the Plaintiff was harassed by Defendants' phone calls, these allegations are not found within any specific count. The paragraphs describing the phone calls are excepted and not incorporated into any of the counts by Plaintiff.

## LEGAL STANDARD

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to prove the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment is inappropriate "[i]f a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact[.]" *Allen v. Bd. of Public Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the record, viewed as a whole, could lead a reasonable fact finder to return a verdict for the non-movant. *Id.*

In considering a motion for summary judgment, the record must be construed in the light most favorable to the non-movant; all reasonable inferences are drawn in her favor, and her evidence must be believed. *Allen*, 495 F.3d at 1315;

*see also Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). But "the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures." *Celotex,* 477 U.S. at 322–23 (1986). When the moving party demonstrates an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324–25.

## ANALYSIS

Plaintiff's claims boil down to this: because Plaintiff did not recognize AIM or Oliphant as entities with which she had previously conducted business, she does not owe them any money. According to Plaintiff, this makes the letter she received false and actionable under the FDCPA and FCCPA. Dkt. 42-3 at 144–45, 149.

The Court holds that this theory is specious, and although Plaintiff may not have known any better, her counsel certainly did. On this record, it is an uncontested fact that the letter attached here as an Appendix, which forms the basis of each count of the Amended Complaint, is entirely true. The letter is not false or misleading under either the FDCPA or FCCPA.

Although Plaintiff indeed never conducted business with creditor AIM, that fact is irrelevant because the letter does not make that claim. The letter states

plainly that AIM is the purchaser and new owner of the original WebBank debt. Plaintiff admits WebBank was the originator of the debt. Dkt. 26 ¶ 19; Dkt. 45 at 5. She also admits that she read the original note and borrower agreement when signing them, Dkt. 42-3 at 99, 101, and these documents reflected WebBank as the originator and stated that the originator or its servicer could further assign the debt. Dkt. 42-2 at 33, 39.

At her deposition and in her filings, Plaintiff is unable to establish any facts in the letter as false. She admitted that she was aware that the letter was in reference to the amounts she originally owed to WebBank. Dkt. 42-3 at 100. Plaintiff also admitted that she stopped paying off the WebBank loan and was in default on the debt at the time AIM became the assignee creditor. Dkt. 26 at 3-4; Dkt. 42-3 at 99. That Plaintiff did not recognize the assignee creditor AIM and conducted no business with AIM says nothing about the accuracy of the letter. This very point has been recognized by other courts in similar unsuccessful FDCPA claims brought by Plaintiff's lawyer. *See Johnson v. Cawley & Bergmann, LLC,* 2021 U.S. Dist. LEXIS 68855, at *11 (E.D.N.Y. Mar. 3, 2021); *Greifman v. Cawley & Bergmann, LLC,* 2019 WL 1533292 (S.D.N.Y. Apr. 9, 2019).

Based on this uncontested record, the letter is accurate on its face. The letter lists the unpaid loan, which was assignable by contract with no notice provision, as well as the current and former creditors. Dkt. 42 ¶¶ 9–12. It accurately describes

AIM's role and Oliphant's role. Under the "least sophisticated consumer" standard, the letter is clear, plain, and understandable. *See LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1193 (11th Cir. 2010).

Plaintiff attempts to challenge the accuracy of the letter by arguing that Defendants have not, under New York pleading rules, proven the full chain of custody or rightful ownership of the purchased debt. In Plaintiff's words, "the evidence upon [which] Defendants rely is insufficient as a matter of New York law to establish [AIM]'s putative ownership of any debt once owed by Plaintiff to WebBank." Dkt. 45 at 3. Plaintiff alleges that AIM was the transferee owner of the debt, Dkt. 26 at 3–4, but to avoid summary judgment, she argues that AIM cannot sufficiently prove it owns the debt to be able to collect upon it in a New York collection action. In her memorandum, Plaintiff offers several pages outlining the New York pleading rules for assignee creditors of purchased debt that sue in New York state courts. Dkt. 45 at 12–15.

Although Plaintiff is a New York resident, it is unclear why Plaintiff asserts that New York law has any bearing, as the original note and borrower agreement are controlled by Utah law.[2] In any event, the New York chain of custody rules for assignee creditors bringing collection actions are not relevant. Plaintiff's counsel

---

[2] Dkt. 42-2 at 34, 39. Plaintiff stated that she read the original note and borrower agreement before signing it. Dkt. 42-3 at 99, 101.

has repeatedly made this argument in other FDCPA cases, and other courts have tartly rejected it. *See, e.g.*, *Parker v. Mandarich Law Grp., LLP,* 2021 WL 2351177, at *38–39 n.6 (E.D.N.Y. June 9, 2021) ("This court has previously rejected substantially similar arguments in a case involving similar claims (and the same plaintiff's firm), *see Danese v. Credit Control, LLC et. al.,* 21-cv-435"); *Johnson,* 2021 U.S. Dist. LEXIS 68855 at *9–10 ("There is no such burden of proof required in FDCPA cases, and the New York State cases Plaintiff cites 'are not FDCPA cases; they are debt collection cases[.]' Plaintiff's counsel unsuccessfully has made the same argument in previous FDCPA cases."); *Marcario v. Midland Credit Mgmt., Inc.,* 2017 WL 4792238, at *3 (E.D.N.Y. Oct. 3, 2017) ("The Court notes that the Plaintiff cites an incorrect standard of proof in his opposition memorandum. The New York State cases he cites are not FDCPA cases; they are debt collection cases, where the procedural posture of the parties requires a different standard. This is not the first time a court in this Circuit has noted Plaintiff's counsel's improper citations in this context [.]"); *Zambrana v. Pressler & Pressler, LLP,* 2016 WL 7046820, at *6 (S.D.N.Y. Dec. 2, 2016) ("Plaintiff, pointing to New York debt collection cases, contends that Defendants have not presented sufficient proof to establish a complete chain of title. This, however, is not a debt collection case; it is an FDCPA case[.] The 'special proof' required by New York law to establish [assignee debt] does not apply here[.]").

Plaintiff's rejected theory does not improve by repetition. The test is not whether New York collection actions on assignee debt require special pleading hurdles. The test is whether there are contested issues of fact related to the FDCPA.

Plaintiff's challenge as to AIM's ownership of the debt fails factually on this record. Although not its burden here, AIM *has* shown on this record that it rightly owns this debt, and Plaintiff offers no facts whatsoever to contest that. *See* Dkt. 42-2 at 2–6, 67. This includes a competent declaration by a qualified custodian outlining the chain of custody of the debt leading to AIM's ownership, as well as detailed exhibits. *Id*. Moreover, Plaintiff's counsel stated clearly at the hearing on this motion that there are "no facts to [his] knowledge" in this record to contradict Defendants' evidence set forth as to the chain of title on this loan and AIM's ownership of the debt. Tr. at 17-18.

Plaintiff herself scheduled this precise debt on a sworn Chapter 13 bankruptcy schedule. Dkt. 42-3 at 227. She listed the amount of the debt as $9,500, which was slightly less than the debt of $9,706.72 shown on AIM's books. Dkt. 42-3 at 56; Dkt. 42-2 at 6. Plaintiff does not seek a remedy due to any discrepancy in amount. Dkt. 42-3 at 144. On her bankruptcy schedule, Plaintiff listed the creditor as WebBank's processor, Lending Club, which was the immediate predecessor in title to AIM. The bankruptcy case, which had ten unsecured

11

consumer-debt creditors, was filed after Oliphant sent the subject letter. Oliphant did not pursue collection after the bankruptcy filing. There is no evidence or allegation that Defendants attempted post-petition collection activity, and Plaintiff has made no claims in that regard. The loan was discharged in bankruptcy. Case No. 1-19-47809-cc (Bkr. E.D.N.Y. 2020).

Plaintiff made no effort to disprove the amount of the loan or ownership beyond saying that Defendants never validated it as New York pleadings rules would require in a suit to collect assignee debt. Although she testified that she made an oral request for validation of the debt during one phone call, Plaintiff placed nothing in writing, and section 1692f(a)(4) of the FDCPA requires a written request for validation.

Finally, concerning the allegations of the harassing phone calls, as noted above, those calls are alleged in the fact section of the Amended Complaint but are expressly excluded from and not incorporated into the individual counts seeking relief. Plaintiff does not base her five counts for relief on phone calls. That ends the inquiry. Moreover, Defendants stated in their moving papers that, for several reasons, the phone call allegations do not prevent summary judgment on their behalf. Plaintiff did not argue to the contrary in her Response, thereby waiving the issue. Dkt. 45. Even so, the harassing phone call allegations appear to have only been placed in Plaintiff's Amended Complaint, filed ten months after the original

complaint, in order to bolster standing and provide concrete injury-in-fact.[3] These allegations were not presented in the original complaint, and Defendants' Answer to the original complaint set forth an affirmative defense of standing.

Even if they had been included in the counts seeking relief under the FDCPA, the allegations concerning the phone calls would be barred by the FDCPA's one-year statute of limitations. *Cooley v. Ocwen Loan Servicing, LLC*, 729 F. App'x 677, 681 (11th Cir. 2018). The record is clear that the period in which Defendants were seeking to collect the debt was December 27, 2019, to January 19, 2020. Plaintiff first brought suit regarding the phone calls over one year later.

As a factual matter, Defendants are unequivocal that the harassing phone calls never happened. Dkt. 42-2 at 7. Plaintiff testified she only spoke to a caller once, whom she identified as "Accelerator," not the loan collector Oliphant. Dkt. 42-3 at 140. She testified that she told the caller she did not know what they were talking about and requested that more information be sent to her by mail. *Id.* at 141. Plaintiff could not remember if that call took place within the last four years or whether the call was in reference to the subject loan, nor could she recall the

---

[3] The original complaint, in part, asserted standing due to "informational injury." Defendants sent a letter to Plaintiff's counsel criticizing the lack of concrete injury in the original complaint. Dkt. 42-3 at 7. Plaintiff then filed her Amended Complaint containing allegations of harassing phone calls. Plaintiff testified that she did not recall when she told her lawyer about these phone calls. *Id.* at 141–42.

phone number, area code, or name of the caller. *Id.* at 140–41. Moreover, Plaintiff testified that she did not receive any voicemails identifying the entity that she alleges was repeatedly calling, and she testified that she never called back the number. *Id.* Her testimony about these calls is insufficiently definite to support a cause of action, even if one were alleged. *See id.*

Defendants requested that Plaintiff produce her phone call records from the relevant timeframe, but Plaintiff declined to do so and testified that she did not intend to obtain those records. *Id.* at 146. This inaction may be why her counsel did not cite the phone calls as supporting the causes of action, nor allege in Plaintiff's Response, Dkt. 45, that the phone calls prevent the entry of summary judgment. In sum, there is no contested issue of fact in this FDCPA and FCCPA case preventing judgment for Defendants. The motion is granted.

## CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment, Dkt. 41. The clerk is directed enter judgment accordingly and close the case.

**DONE AND ORDERED** at Tampa, Florida, on August 13, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

14