# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ISABEL HERNANDEZ,

Plaintiff,

v.

No.: 8:20-cv-00873-WFJ-TGW

OLIPHANT FINANCIAL, LLC, and,
ACCELERATED INVENTORY
MANAGEMENT, LLC,

Defendants.

_____/

## <u>DEFENDANTS', OLIPHANT FINANCIAL, LLC AND ACCELERATED INVENTORY MANAGEMENT, LLC, MOTION FOR ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF LAW IN SUPPORT</u>

Defendants, Oliphant Financial, LLC ("Oliphant") and Accelerated Inventory Management, LLC ("Accelerated") (collectively the "Defendants") by and through their counsel, Maurice Wutscher, LLP, respectfully submit this Motion for Attorneys' Fees and Expenses and Memorandum of Law in Support pursuant to Local Rule 7.01 as well as this Court's Orders dated August 2, 2021 and August 13, 2021 (*ECF Nos. 51, 55*).

## <u>INTRODUCTION</u>

Specious: "having a false look of truth or genuineness". *Specious*, *Merriam-Webster Dictionary*. Specious synonyms: "deceitful, deceiving, deceptive, fallacious, false, misleading". *Id.* As this Court aptly held in its Order Granting Motion for Summary Judgment ("MSJ Order"; *ECF No. 54*), Plaintiff's basis for her claims, and the impetus for litigation which has spanned over 16

1

months and included amended pleadings, significant discovery, failed mediation and dispositive motions practice, *see, Docket*, that "because Plaintiff did not recognize AIM or Oliphant as entities with which she had previously conducted business, she does not owe them any money", is "specious". *MSJ Order*, p. 7. Rather, "it is an uncontested fact that the letter … which forms the basis of each count of the Amended Complaint, is entirely true" and "[t]he letter is not false or misleading under either the FDCPA or FCCPA." *Id.*

This comes as no surprise to Plaintiff and her counsel, Barshay Sanders, PLLC and specifically Craig B. Sanders, Esq[1]. ("Counsel"), who collectively were aware at this action's inception that the letter on its face was not false or misleading as a matter of law and who collectively did no investigation prior to commencing suit. Instead, the Plaintiff and Counsel recklessly pursued litigation upon a letter which the Plaintiff failed to even read and based upon allegations and a legal premise which Counsel knew from prior experience were frivolous.

Not stopping there, Plaintiff and Counsel moved to amend her pleadings to add completely fraudulent claims regarding phantom telephone calls in order to stave off the potential for early dismissal resulting in the multiplication of proceedings.

Not only that, but after discovery provided proof positive that, as a matter of fact, the loan in issue was owed to Accelerated, Plaintiff and Counsel refused to

---

[1] The law firm Barshay Sanders, PLLC is now defunct and Craig B. Sanders, Esq. operates as Sanders Law Group and David Barshay now operates as Barshay Rozzo & Lopez. Defendants seek sanctions and fees against Craig B. Sanders, Esq., Barshay Sanders, PLLC, Sanders Law Group and Barshay Rizzo & Lopez joint and severally.

back down. They "made no effort to disprove the amount of the loan or ownership" and acknowledged that there were "no facts" to contradict that which Defendants had produced in discovery. *Id.*, p. 12, 11. Instead, Plaintiff and Counsel regurgitated a half-hearted legal argument based in New York pleading rules which, her counsel was well aware, has been "tartly rejected" by numerous other Courts. *Id.*, 9-10.

The facts and circumstances surrounding both the Plaintiff's claims as well as the manner in which the action was litigated demonstrates that the action was frivolous from the beginning, had no basis in fact or law, and was pursued in bad faith and for the purposes of harassment. As such, the Defendants are entitled to their reasonable attorneys' fees and costs, by statute pursuant to the FDCPA and FCCPA and as sanctions pursuant to 28 U.S.C. § 1927, Fed. R. Civ. P. 11 and Fla. Stat. §57.105.

## **PROCEDURAL HISTORY**

Relevant to the instant motion, on June 7, 2021, the Defendants moved for summary judgment ("MSJ"; *ECF No.* 41). The Plaintiff filed her opposition to the MSJ ("Opposition to MSJ"; *ECF No.* 45) on June 28, 2021.

On or about July 2, 2021, the Defendants served the Plaintiff with their motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") and Florida Stat. § 57.105 ("57.105") as it relates to Plaintiff's claims as advanced in her Amended Complaint and the Opposition to MSJ ("Motion for Sanctions"; *ECF No. 49*). *See, ECF 49,* p. 19.  The Motion for Sanctions was subsequently filed

on July 26, 2021, pursuant to the 21 day safe harbor period found both in Rule 11 and 57.105. *See, ECF 49.*

Also on July 26, 2021 at the hearing on the Defendant's MSJ, the Court granted judgement in Defendants' favor. *See ECF No.* 50. Thereafter, on or about August 2, 2021, the Court issued an order which provided that, "[i]n the interest of judicial economy, the defendants seeking relief under [the MSJ[2]] should file their detailed basis for fees, showing and supporting in detail what is requested as sanction[3]." *ECF No. 51*. The Court issued the MSJ Order on August 13, 2021 and then judgement in Defendants' favor was entered by the Clerk on August 16, 2021. *ECF No. 56.*

Defendants now pursue the instant motion for attorneys' fees, consistent with the Court's Orders, *ECF Nos. 51, 55*, and Local Rule 7.01, pursuant to the judgment entered in their favor and as they are entitled to pursuant the FDCPA, FCCPA, 28 U.S.C. § 1927, Rule 11 and 57.105.

**<u>STATEMENT OF MATERIAL FACTS</u>**

In support of the instant motion, the Defendants rely upon their Statement of Undisputed Facts ("SUF"; *ECF No.* 42), and the exhibits attached thereto (*ECF*

---

[2] In their MSJ, the Defendants' requested relief included that, after entering judgment in their favor, the Court retain jurisdiction so that the Defendants could submit an appropriate motion seeking their attorneys' fees and costs.

[3] The Defendants interpret the Court's order of superseding the requirement of Local Rule 7.01 which dictates a bifurcated procedure and will, instead, provide not only the amount sought pursuant to 7.01(b)(2) but also will provide the information in support of same pursuant to 7.01(c)(4) and (5) in this instant motion.

*Nos.* 42-2 & 42-3), filed with their MSJ and the Defendants incorporate same herein by reference.

<u>**THE DEFENDANTS ARE ENTITLED TO THEIR REASONABLE ATTORNEYS' FEES AND COSTS OF LITIGATION**</u>

**I.     THE PLAINTIFF'S LAWSUIT WAS FRIVOLOUS AND WAS PURSUED IN BAD FAITH AND FOR THE PURPOSES OF HARASSMENT**

This is not an instance where a defendant seeks its attorneys' fees based solely upon having successfully sought to dismiss an action or having been awarded judgment in its favor after summary judgement. This action was corrupt from its inception, having been brought upon no known facts supporting the claims and in the face of jurisprudence which had repeatedly and flatly rejected the claims' purported legal basis. However, rather than acknowledge the clear deficiencies in the claims before bringing the action, and as the litigation progressed, Plaintiff and Counsel continued to prosecute the frivolous claims in bad faith, thus multiplying the proceedings and demonstrating their intent to harass Defendants. For the reasons that follow, the Defendants are entitled to recover their attorneys' fees expended in defending the litigation.

**A.     <u>The Plaintiff's Lawsuit has been Frivolous from its Inception</u>**

Similar to the FDCPA, pursuant to the FCCPA, § 559.77(2) "a defendant to an FCCPA claim may recover its reasonable attorney's fees [from the plaintiff] if the plaintiff's suit 'fails to raise a justiciable issue of law or fact.'" *Burgos v. SunTrust Bank, N.A.*, No. 13-21197-Civ-MARTINEZ/TORRES, 2020 U.S. Dist.

LEXIS 57233, at *12 (S.D. Fla. Mar. 31, 2020) (quoting § 559.77(2)) *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 80243 (S.D. Fla. May 7, 2020). In interpreting this provision of the FCCPA, "Florida courts have consistently held that in order for an action to be devoid of merit so as to not have a justiciable issue, the claims must be frivolous." *DeBoskey v. Suntrust Mortg., Inc., No.* 8:14-cv-1778-MS-TGW, 2018 U.S. Dist. LEXIS 199441, at *5 (M.D. Fla. Nov. 26, 2018). However, in this regard "[t]he FCCPA provides a broader standard for recovery of attorney's fees than the FDCPA". *Id.,* at *4 (M.D. Fla. Nov. 26, 2018) (citing § 559.77(2)).

As the Court has held, Plaintiff's claims may be summarized as "because Plaintiff did not recognize AIM or Oliphant as entities with which she had previously conducted business, she does not owe them any money." *MSJ Order*, p. 7. Initially, as Counsel is well aware, existing law has established that the allegation that "Plaintiff did not recognize the assignee creditor AIM and conducted no business with AIM says nothing about the accuracy of the letter" in issue (*MSJ Order*, p. 8). *See, Parker v. Mandarich Law Grp.,* LLP, No. 19-CV-6313, 2021 U.S. Dist. LEXIS 108197 (E.D.N.Y. June 9, 2021); *Johnson v. Cawley & Bergmann, LLC,* 2021 U.S. Dist. LEXIS 68855 (E.D.N.Y. Mar. 31, 2021); *Greifman v. Cawley & Bergmann, LLC,* 2019 U.S. Dist. LEXIS 60797 (S.D.N.Y. Apr. 9, 2019). As this Court noted, "[t]his very point has been recognized by other

courts in similar unsuccessful FDCPA claims brought by Plaintiff's lawyer[4]." *MSJ Order*, p. 8. Plaintiff and Counsel's Hail Mary, reliance upon New York pleading rules, only further demonstrates the frivolous nature of her claims. As the Court held, "Plaintiff's counsel has repeatedly made this argument" and it has consistently been "tartly rejected." *MSJ Order*, p. 9-10 (collecting cases). Indeed, "Plaintiff's rejected theory does not improve by repetition." *Id.*, at p. 11.

In this regard, "[i]n determining whether a legal claim or factual contention is objectively frivolous … the court may consider whether the litigant or his counsel has a history of bringing unmeritorious litigation." *Taverna Imps., Inc. v. A&M Wine & Spirits, Inc.*, No. 15-24198-CIV, 2018 U.S. Dist. LEXIS 125906, at *38-39 (S.D. Fla. July 27, 2018) (citing *Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001), cert. denied, 534 U.S. 1044, 122 S. Ct. 624, 151 L. Ed. 2d 545 (2001)). Here, the Court has ample proof before it that Counsel has repeatedly pursued unmeritorious litigation.

Furthermore, the Plaintiff readily admits that she **did not even read the Letter**. *MSJ Order*, p. 2; *SUF*, ¶ 33. This is critical to analyzing whether the claims were frivolous, because as the Court held "[a]lthough Plaintiff indeed never conducted business with creditor AIM, that fact is irrelevant because the letter does not make that claim. The letter states plainly that AIM is the

---

[4] Indeed, on the same day and two days after this Court's order was entered respectively, Plaintiff's counsel lost *two more* case involving identical claims and identical legal arguments offered in defense of said claims. *See, Park v. Dynamic Recovery Sols., LLC*, No. 20-cv-1671 (ENV) (JO), 2021 U.S. Dist. LEXIS 152957 (E.D.N.Y. Aug. 11, 2021); *Rosenberg v. Frontline Asset Strategies, LLC*, No. 21-cv-0175 (BMC), 2021 U.S. Dist. LEXIS 153984 (E.D.N.Y. Aug. 15, 2021).

purchaser and new owner of the original WebBank debt." *MSJ Order*, p. 7. In this regard, it cannot be said that Plaintiff's claims had any factual basis where she did not even read a letter which, on its face, was not deceptive to the least sophisticated consumer. *Id.,* at p. 9 ("Under the least sophisticated consumer standard, the letter is clear, plain, and understandable").

Nor did the Plaintiff do any investigation into any factual support for her claims before whimsically engaging the Federal Court system, including contacting Oliphant, Accelerated, LendingClub or WebBank to make inquiry regarding the accuracy of the Letter. *SUF.*, ¶¶ 38, 40; *Plaintiff's Dep.*, p. 47, l. 25 to p. 48, l. 8. Discovery was no help either; "[a]t her deposition and in her filings, Plaintiff [was] unable to establish any facts in the letter as false." *MSJ Order*, p. 8.  Under the FCCPA, fees should be awarded in this regard. *See, Conner v. BCC Fin. Mgmt. Servs.*, 597 F. Supp. 2d 1299 (S.D. Fla. 2008). In *Conner*, after granting summary judgment for the defendant, the court awarded fees under the FCCPA to the defendant where the plaintiff failed to properly investigate the claims and failed to reassess the claims after discovery produced evidence of the claims' lack of merit. *Id.,* at 1310. This case reflects the same scenario. Indeed, Counsel has agreed that there were "no facts to [his] knowledge" which supported Plaintiff's claims. *Id.*, at p. 11.

Instead, the Plaintiff utterly failed to produce any evidence to contradict the statements made in the Letter regarding Accelerated's ownership of the Loan or that the Letter was otherwise false. In short, "[t]here [was] no record evidence

[to support Plaintiff's claims], and thus, there could never have been a viable cause of action for violation of the FDCPA." *Id.* However, Plaintiff continued to prosecute her claims through summary judgement, and in this regard "Plaintiff's insistence on pressing the lawsuit all the way through summary judgment, despite finding no evidence in discovery [to support her claims], suggests a bald attempt to make it more expensive for [Defendants] to litigate the baseless claim than to settle. Indeed, this sort of tactic is apparently not unprecedented in the context of FDCPA cases". *Black v. Equinox Fin. Mgmt. Sols.*, No. 1:05-CV-1588-BBM, 2007 U.S. Dist. LEXIS 16767, at *17 (N.D. Ga. Feb. 1, 2007).

The Plaintiff's pleadings, her failure to produce discovery and her arguments in opposition to Defendants' MSJ all reflect that this lawsuit was pursued without any factual basis, both initially and as revealed in discovery, and was based upon legal theories which had been, and continue to be, flatly rejected by every court to which they are presented[5]. On these facts, fees are warranted pursuant to the FCCPA. *See, e.g. Burgos v. SunTrust Bank, N.A.*, 2020 U.S. Dist. LEXIS 57233, at *9-10 (Granting fees under the FCCPA where "Defendant has

---

[5] Plaintiff cannot offer ignorance as a defense to the frivolousness of her legal arguments. *See, e.g., Link v. Wabash R. Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.")

9

presented a colorable argument that Plaintiff's case was weak from the outset" and "Plaintiff's case lacked merit at every turn").

Plaintiff's lawsuit failed to raise any justiciable issue of law or fact and for those reasons must be deemed frivolous pursuant to the FCCPA, § 559.77(2) and Defendants awarded their attorneys' fees.

**B.      Counsel Knowingly and Recklessly Pursued Frivolous Claims Which Multiplied the Proceedings**

"Under 28 U.S.C. § 1927, the Court may award attorney's fees where an attorney unreasonably and vexatiously multiplies the proceedings in the case." *Andre v. CCB Credit Servs.*, No. 09-21421-CIV-KING, 2010 U.S. Dist. LEXIS 92362, at *7 (S.D. Fla. July 21, 2010). For the statute to be applicable "[f]irst, an attorney must engage in unreasonable and vexatious conduct. Second, this conduct must multiply the proceedings. Third, the amount of the sanction cannot exceed the costs incurred due to the unreasonable conduct." *Conner,* 597 F. Supp. 2d 1299, 1305 (citing *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003); *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001)). Unreasonable and vexatious conduct is conduct "that is essentially bad faith." *Id.,* (citing *Malautea v. Suzuik Moro Co., Ltd.*, 987 F.2d 1536 (11th Cir. 1993)). In this regard, "[a] determination of bad faith is proper where an attorney knowingly or recklessly pursues a frivolous claim." *Id.* (citing *Schwartz*, 341 F.3d at 1225).

At the outset, it is apparent that Counsel has pursued the action in bad faith. As outlined above, the claims have been frivolous from their inception. This

10

is unmistakably clear given that Counsel's theory of liability, that Accelerated lacked proper title to the Loan, is contradicted by the allegations of the pleadings. *See, Amended Complaint*, ¶ 28. Counsel also conducted no investigation regarding the viability of this theory of liability prior to initiating litigation. This is evident by the Plaintiff's failure to produce any evidence in discovery, or otherwise, which would call into question **any** of the representations made in the Letter, let alone demonstrate the falsity of those representations. *See, MSJ Order*, p. 8, 11, *supra*.

Additionally, Counsel was well aware that the "legal theories" upon which the Plaintiff's claims were to be supported were "specious" and had been "tartly rejected" time and again. *Id.*, at 7, 9-10, *supra*. Specifically, to date, Counsel has had the legal posit that the Letter, and letters like it, somehow suggests that the recipient has contracted with the current creditor reflected therein, despite clear language in such letters to the contrary, rejected at minimum six times, including by this Court. *See, MSJ Order, Parker, Johnson, Greifman, Park, Rosenberg, supra*. Relatedly, Counsel's argument that, somehow, New York pleading rules regarding collection lawsuits apply to an FDCPA action in Federal Court has also been rejected every time it's been offered. *See, MSJ Order*, p. 10 (collecting cases). In this regard, "a reasonable attorney would not have pursued claims barred by several well-settled legal doctrines. With notice of the law, a reasonable attorney would have dropped meritless claims and not persisted in litigation." *Lacayo v. Wells Fargo Bank, N.A.*, No. 16-23187-CIV-MORE, 2020 U.S. Dist.

11

LEXIS 86995, at *15 (S.D. Fla. Apr. 13, 2020) (Sanctioning plaintiff's counsel pursuant to 28 U.S.C. § 1927). Indeed, to blame Plaintiff alone for these frivolous claims would be inequitable. *Scelta v. Delicatessen Support Servs.*, 146 F. Supp. 2d 1255, 1272 (M.D. Fla. 2001) ("[I]t was obviously plaintiff's counsel, not the plaintiff herself, who was the creator of the changing legal theories proffered …. The blame for those frivolous theories should not fall **exclusively** upon the plaintiff") (emphasis added).

Furthermore, the manner in which Counsel went about advancing these frivolous theories reveals that they were pursued knowingly and recklessly. Specifically, the Amended Complaint, no matter how generous a reading it is given, completely fails to identify that the Plaintiff is challenging Accelerated's chain of title to collect the Loan based upon New York pleading rules. Instead, Counsel sought to hide the ball from Defendants and the Court, prohibiting the Defendants or the Court from timely addressing Plaintiff's ultimate issue and thus multiplying the proceedings unnecessarily.

As more evidence of bad faith, upon receipt of Defendants' demand that Plaintiff dismiss her Complaint, in part, because Plaintiff lacked any concrete injury sufficient for Article III standing, *SUF*, ¶ 42, Counsel pursued the Amended Complaint, now alleging voluminous telephone calls which caused Plaintiff "apprehension", "anguish" and required her to "seek medical treatment" among other things. *Amended Complaint*, ¶¶ 42-46. Based upon the Plaintiff's inconsequential testimony regarding these alleged calls, *MSJ Order,* p. 13-14, and

the failure of Plaintiff or Counsel to obtain proof in the form of telephone records, *Id.*, at 14., it is clear that such calls were pled ***only*** to prevent early dismissal of the claims on the basis of standing. And the Court agrees. *MSJ Order*, p. 12-13.

Not only that, but as the Court also holds, any claims based upon such telephone calls would have been barred by the applicable statute of limitations. *MSJ Order*, p. 13. Surely, Counsel, who has been practicing law for over 25 years in "consumer protection matters" would readily be aware of the FDCPA's applicable statute of limitations. https://sanderslaw.group/attorney/craig-sanders (last accessed 8/28/2021). However, this was no deterrent to Counsel.

Even after discovery revealed that Plaintiff had absolutely no claim, Counsel continued to prosecute the claims. While the Plaintiff failed to produce any evidence to support her claims, *see, MSJ Order*, p. 8 ("At her deposition and in her filings, Plaintiff is unable to establish any facts in the letter as false"), no later than March 11, 2021 the Defendants had produced to Plaintiff the very documents and evidence upon which the Court relied to hold that, "[a]lthough not its burden here, AIM *has* shown on this record that it rightly owns this debt", *Id.*, at p. 11 (emphasis in original). *Compare*, *SUF*, ¶ 48 with *ECF No. 42-2*.

In the context of analyzing "bad faith", the Eleventh Circuit has held that "when it becomes apparent that discoverable evidence will not bear out the claim, the litigant ***and*** his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (emphasis added) (holding the litigants and their counsel's failure to do so was tantamount to bad faith pursuant to 28

13

U.S.C. § 1927, and Rule 11), cert. denied, 502 U.S. 1048, 116 L. Ed. 2d 813, 112 S. Ct. 913 (1992). This Counsel did not do.

Instead, Counsel pressed on with the claims. In this regard, "plaintiff's counsel clearly breached the duty to discontinue the [] claims after it became apparent [] that the evidence would not support those claims. Certainly by that point, plaintiff's counsel was guilty of, at least, recklessly asserting a frivolous argument." *Scelta v. Delicatessen Support Servs.*, 146 F. Supp. 2d 1255, 1271-72. Specifically, Counsel had evidence of Accelerated's ownership of the Loan yet caused the parties to engage in mandatory mediation[6] and opposed Defendants' MSJ through oral argument, which were obvious tactics to multiply proceedings and raise the costs for Defendants to continue to defend. *See, Black v. Equinox Fin. Mgmt. Sols., supra.* This, after the Defendants served their Motion for Sanctions on July 2, 2021, which provided Plaintiff and her Counsel a lifeline; withdraw the Opposition to MSJ and dismiss the Amended Complaint. *See, Letter to Counsel dated July 2, 2021 and attached hereto as* **Exhibit A.** Instead, Counsel remained recklessly steadfast, causing the parties to argue the MSJ and requiring the Court to issue its MSJ Order and thus multiplying proceedings.

Lastly, it cannot be underscored enough that Counsel pursued a lawsuit having never confirmed that Plaintiff ever even read the Letter, or worse - being aware that she did not[7]; this alone demonstrates the requisite bad faith. *See, e.g.,*

---

[6] Mediation was held on March 15, 2021, where an impasse was reached. *See, ECF No. 37.*

[7] To reiterate, the Plaintiff testified that she did not read the Letter. *MSJ Order*, p. 2; *SUF*, ¶ 33.

*Marin v. Alvarez*, No. 08-60821-CIV-MARTINEZ/BROWN, 2009 U.S. Dist. LEXIS 124234 (S.D. Fla. Aug. 4, 2009) (Granting motion for Rule 11[8] sanctions and noting that "Plaintiffs' counsel here failed to conduct any inquiry into what his clients supplied to him and into other facts that were alleged in the Complaint...this is sanctionable.").

As the Court held, Counsel "certainly did [know better]" than to pursue the frivolous claims. *MSJ Order*, ¶ 7. Rather, "a reasonable attorney in counsel's position would have dropped this matter early in the proceedings instead of 'making a federal case' out of [the claims]. The needless continuation of meritless claims demonstrates that counsel's actions were reckless and unreasonable, and warrant a finding of bad faith." *Conner*, 597 F. Supp. at 1308 (Sanctioning plaintiff's counsel pursuant to 28 U.S.C. § 1927 where "[t]he record reveal[ed] that counsel unreasonably continued litigating this matter in the face of clear evidence that there was no claim to be had - thereby multiplying the proceedings and causing Defendant to incur further fees").

Unsurprisingly, this is not the first time that Counsel has knowingly pursued frivolous claims and as a result Counsel has a history of being chastised by Federal Court Judges. For example, in *Leifer v. United Collection Bureau, Inc.*, No. 1:19-cv-03926-FB-LB, 2020 U.S. Dist. LEXIS 207444 (E.D.N.Y. Nov. 5, 2020), Counsel pursued FDCPA claims that were based upon a different "theory"

---

[8] Rule 11 also requires "bad faith". *See, e.g., Tellam v. Kalman*, No. 6:19-cv-2313-Orl-78LRH, 2021 U.S. Dist. LEXIS 1158, at *6 (M.D. Fla. Jan. 4, 2021).

15

of alleged violations, but were no less frivolous and had been brought repeatedly only to be rebuked by the Court repeatedly. In dismissing the claims but denying defendant's request for sanctions the Court noted that "Defendant's motion for costs, fees, and Rule 11 sanctions should be denied, but the law firm of Barshay Sanders, PLLC is warned that frivolous litigation may lead to the imposition of sanctions in the future." *Id.* at *1.

As it relates to the instant claims, just two days after this Court's MSJ Order, in *Rosenberg v. Frontline Asset Strategies, LLC*, No. 21-cv-0175 (BMC), 2021 U.S. Dist. LEXIS 153984 (E.D.N.Y. Aug. 15, 2021) another Court granted summary judgment on identical claims. There, and in candor to the Court, the Judge denied sanctions pursuant to 28 U.S.C. § 1927 but had strong words for Counsel, opining that "the well from which plaintiffs' counsel is seeking to draw is not bottomless — a point in time may come, and that point may be now by virtue of the instant opinion — when making the same losing arguments over and over again constitutes the kind of vexatious litigation that § 1927 and the inherent power of the Court are designed to prevent." *Id.* at *20. Defendants suggest to this Court that the well has dried up for Counsel and now is the time for the application of appropriate sanctions.

Counsel's bad faith pursuit of frivolous claims only served to multiply the proceedings, including by amending the Complaint, causing the parties to engage in discovery, requiring costly mediation and, ultimately, requiring dispositive motions practice to bring the claims to finality. The fees incurred due to the

16

unreasonable conduct, as outlined below, began at this case's inception. A reasonable sanction pursuant to 28 U.S.C. § 1927 is to award the Defendants their attorneys' fees.

### C.   The Plaintiff's Claims were Brought in Bad Faith and for the Purposes of Harassment

Pursuant to the FDCPA, § 1692k(a)(3), a "district court may award attorney's fees to a defendant in an FDCPA case if it finds that the plaintiff brought the action in bad faith and to harass the defendant." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 924 (11th Cir. 2016). Although the "Eleventh Circuit has not given any specific guidance on the meaning of in 'bad faith and for the purpose of harassment', courts within the Circuit and elsewhere "have required evidence that a plaintiff both knew that his or her claim was meritless and pursued it with the purpose of harassing the defendant." *Burgos*, 2020 U.S. Dist. LEXIS 57233, at *8 (internal quotations omitted) (collecting cases).

Initially, that the Plaintiff would pursue Federal Court litigation based upon the receipt of the Letter which she did not even read[9], *MSJ Order*, p. 2, and which, had she read it, it would have been evident to her that the Letter was not deceptive to the least sophisticated consumer, *MSJ Order.,* at p. 9 ("Under the

---

[9] "In cases where courts found a claim to be pursued in bad faith and for the purpose of harassment, plaintiff's knowledge that a claim was meritless was proven by plaintiff's own contradictory testimony or other evidence." *Grimsley v. Focus Fin. Servs.*, No. 15-81263-CV-MARRA/MATTHEWMAN, 2016 U.S. Dist. LEXIS 187905, at *7-8 (S.D. Fla. July 22, 2016). Here, while the Amended Complaint fraudulently alleges that the Plaintiff "received and read" the Letter, at ¶ 35, her testimony provides a completely contradictory rendition of the "facts".

least sophisticated consumer standard, the letter is clear, plain, and understandable"), is reflective of bad faith. Plaintiff's lack of investigation, beyond having not even read the Letter, is further highlighted by the fact that after receiving the Letter she made no attempts to contact Oliphant, Accelerated, LendingClub or WebBank, *SUF*, ¶ 38, despite her alleged confusion due to not recognizing Oliphant or Accelerated. The absence of ***any*** inquiry defies logic to the point that bad faith can be the only conclusion.

Additionally, and keeping in mind that "[t]he least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care", *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010), there is no reading of the Letter which could suggest that Accelerated was claiming to have engaged in a financial transaction with the Plaintiff, as Plaintiff alleged. *See, MSJ Order*, p. 7. ("Although Plaintiff indeed never conducted business with creditor AIM, that fact is irrelevant because the letter does not make that claim"). The fact that the Plaintiff could not be bothered to read the Letter "with care" is inconsistent with the expectations placed upon her when bringing a lawsuit pursuant to the FDCPA, *see, LeBlanc, supra*, and reflects bad faith.

Moreover, and to the extent that the Plaintiff argued that the real claim was that "Plaintiff did not owe a debt of any kind to Accelerated because it holds no legally cognizable interest in any debt once owed by Plaintiff to WebBank", *Opposition*, p. 17, as the Court noted, "Plaintiff made no effort to disprove the

18

amount of the loan or ownership", *MSJ Order*, p. 12, instead relying only upon her argument that New York pleading rules somehow preserve her claims.

Specifically, and after receipt of all documents upon which Defendants relied to demonstrate to the Court that they rightly owned the Loan were provided in discovery, Plaintiff made no further inquiry regarding the propriety of the chain of title, including by seeking to depose Defendants or subpoena the Loan's predecessors in interest. But she also did not move to dismiss her claims and this is reflective of bad faith. "[W]hen it becomes apparent that discoverable evidence will not bear out the claim, ***the litigant*** and his attorney have a duty to discontinue their quest." *Avirgan, surpa.*

Indeed, this is precisely the type of conduct which this Court has previously found reflective of bad faith and harassment pursuant to § 1692k(a)(3). *See, Rhinehart v. CBE Grp., Inc.*, 714 F. Supp. 2d 1183, 1186 (M.D. Fla. 2010) (Awarding fees under §1692k(a)(3) and holding that "Plaintiff's counsel failed to dismiss any of the claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion ... Accordingly, the Court finds that Defendant is entitled to recover attorneys fees from Plaintiff and her attorney"); *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1306 (M.D. Fla. 2010) (Awarding fees under §1692k(a)(3) and holding that "[w]hat is especially troubling is that Plaintiff's counsel failed to dismiss any of these claims when it became clear during discovery that they had no factual basis

whatsoever, forcing Defendant to file a summary judgment motion.  Thus, this Court finds that this is one of the rare cases where sanctions are justified".)

The fact that the Plaintiff made no effort to effectively prosecute her claims through discovery and instead relied upon a wholly inapplicable legal theory which "does not improve by repetition", *Id.,* at 11, certainly suggests that the claims were pursued in bad faith and for the purpose of harassment. This is further reflected by the fact that, tellingly, the Plaintiff did not move for summary judgement herself.

Furthermore, the fact that the Plaintiff amended her Complaint in the face of a demand to dismiss to allege baseless claims of harassing phone calls despite later failing to produce any supporting phone records in discovery upon Defendants' request ***and*** intimating that she had no intention of obtaining those records herself, *MSJ Order*, p. 14, demonstrates that such claims were never intended to serve as anything more than a vehicle to artificially, and in bad faith, create sufficient standing. *See, Id.,* at p. 12-13 ("[T]he harassing phone call allegations appear to have only been placed in Plaintiff's Amended Complaint … in order to bolster standing and provide concrete injury-in-fact.").

While Plaintiff may not have drafted the Amended Complaint, she verified its contents as true and accurate, *Plaintiff's Dep.,* p. 15, l. 21 to p. 16, 1. 9, and thus cannot escape the representations made therein. *Compare, Wissner v. Dewitt*, No. 6:19-cv-128-Orl-40GJK, 2019 U.S. Dist. LEXIS 235260, at *7 (M.D. Fla. Dec. 4, 2019) (Denying fees where "there is no evidence that Plaintiff devised or ***went***

***along*** with his counsel's legal strategy.") (emphasis added). The decision to file the Amended Complaint, and in it allege the receipt of phone calls for which Plaintiff had no support solely to keep frivolous claims alive, can only have been done to harass the Defendants. *Compare, Wissner v. Dewitt*, No. 6:19-cv-128-Orl-40GJK, 2019 U.S. Dist. LEXIS 235260, at \*7 (M.D. Fla. Dec. 4, 2019) (Denying fees where "there is no evidence that Plaintiff devised or ***went along*** with his counsel's legal strategy.") (emphasis added).

The unmistakable frivolity of the Plaintiff's claims from the very beginning, coupled with the manner in which the Plaintiff litigated her action, including her failures to produce one iota of support for her claims as well as reliance upon flatly rejected legal theories, demonstrate that her claims were pursued in bad faith and to harass the Defendants. "The hallmark of a bad-faith lawsuit is one where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass . . . rather than to obtain a favorable judgment." *Black v. Equinox Fin. Mgmt. Sols., Inc.*, 444 F. Supp. 2d 1271, 1275 (N.D. Ga. 2006) (quotation omitted). This is the case here and awarding the Defendants their attorneys' fees is warranted.

## II.   THE DEFENDANTS ARE ENTITLED TO THEIR ATTORNEYS' FEES AS SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11 & FLA. STAT. §57.105

Consistent with the safe harbor provisions of Rule 11 and 57.105, the Defendants have already served and, 21 days thereafter, filed their Motion for Sanctions, outlining why the Plaintiff and her counsel have acted in violation of

those respective statues. Defendants incorporate that motion herein and rely upon the arguments advanced therein as a basis for this Court to award attorneys' fees as sanctions, against the Plaintiff and her counsel.

## III.   THE DEFENDANTS INCURRED REASONABLE ATTORNEYS' FEES AS A RESULT OF BOTH PLAINTIFF'S AND COUNSEL'S PURSUIT OF THE CLAIMS[10]

In defense of the Plaintiff's frivolous claims, the Defendants retained the law firm Maurice Wutscher, LLP (the "Firm"). See *Verification of Shannon Miller attached hereto as* **Exhibit B** ("*Miller Verification*"), ¶ 6. In relation to their retention of the Firm, the Defendants were parties to a legal services agreement, requiring them to pay the Firm on an hourly basis for all legal services provided as well as reimburse the Firm for any costs which the Firm incurred on behalf of the Defendants. *Miller Verification*, ¶¶ 6-8, 70-72. The fees being sought by the Defendants are reflective of reasonable rates and a reasonable number of hours incurred considering the nature and circumstances of the litigation. As such, the Defendants should be awarded all their fees incurred to date, as well as those fees which may be required as it relates to this action, including for this motion.

In calculating an appropriate award, "[t]he lodestar method applies to reach a reasonable attorney's fee award in FDCPA cases." *McCray v. Dietsch & Wright, P.A.*, No. 8:18-cv-731-T-02SPF, 2020 U.S. Dist. LEXIS 209137, at *2 (M.D. Fla. Nov. 9, 2020) (internal citations omitted). "The federal lodestar is

---

[10] The Defendants are also seeking their fees as it relates to the instant motion. To the extent such fees are not reflected by evidence submitted in support of the fees incurred, Defendants will submit additional evidence reflecting such additional fees with their reply brief.

22

calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended." *Id.* (internal citation omitted). "The district court considers various factors in deciding whether the hourly rate and number of hours worked are reasonable." *Id.* (internal citation omitted).

A.   **Defendants' Attorneys' Hourly Rates are Reasonable**

In this case, the Defendants are seeking fees for the attorneys who participated in the Defendants' defense at the following rates: $350/hour for Alan Hochheiser, Esq., who has 32 years of experience, $350/hour for lead counsel Shannon Miller, Esq., who has 14 years of experience, $350/hour for Thomas Dominczyk, Esq., who has 22 years of experience and $325/hour for Chris Hahn, Esq. who has 10 years of experience. *Miller Verification*, ¶¶ 36-64. For purposes of this motion, and consistent with this Court's past opinions, *see, McCray v. Dietsch & Wright, P.A.*, 2020 U.S. Dist. LEXIS 209137, at *4-5, the Defendants are seeking a rate reduced from that which the Defendants have contracted to pay the Firm. *Id.*, at ¶ 67.

Given the experience and qualifications of these attorneys, *see, Id.*, ¶¶ 36-64, these requested rates are reasonable in light of those rates customarily charged in the legal community by attorneys with similar experience handling comparable cases. *Compare, McCray*, 2020 U.S. Dist. LEXIS 209137, at *4-5. (collecting cases).

B.   **The Hours Expended by the Firm on Behalf of the Defendants is Reasonable**

23

Here, the Defendants are seeking fees in relation to 175 hours billed by the Firm as it relates to the Defendants' defense of the Plaintiff's claims. *Miller Verification*, ¶ 65. In defense of the claims, the Firm provided analysis of the claims and developed a defense strategy which was successful in not only defeating the claims but also in putting the Defendants in position to be able to recoup their attorneys' fees incurred. *Id.*, at ¶¶ 27-33. The litigation strategy was implemented by, but not limited to, the Firm's techniques used in responding to the Amended Complaint, drafting discovery served on the Plaintiff, responding to discovery served by the Plaintiff, preparing for and participating in mediation, preparing for and taking the Plaintiff's deposition, drafting summary judgment papers, preparing for and successfully arguing the summary judgment motion, drafting the Motion for Sanctions and the instant motion for fees. *Id.* at ¶¶ 9-26.

Furthermore, lead counsel Mr. Miller has reviewed each billing entry and has removed from the Defendants' requested hours those tasks that were excessive, duplicative, clerical, or otherwise unreasonable, including time spent on defensive strategies that ultimately were not employed in defense of the Plaintiff's claims. *Id.* at ¶¶ 67-68. As such, the requested hours are reasonable in consideration of the nature and procedural history of the litigation. *See, Id.*, at ¶¶ 9-33; *compare, e.g., Burgos*, 2020 U.S. Dist. LEXIS 57233, at *26 (Awarding the defendant its attorney's fees and holding that 165 hours billed was reasonable for a matter which included discovery and dispositive motions practice).

24

## IV.   THE DEFENDANTS ARE ENTITLED TO THEIR COSTS

Pursuant to Federal Rule of Civil Procedure 54(d)(1), as well as the FDCPA § 1692k(a)(3)[11], as the prevailing party the Defendants are entitled to recover their costs from the Plaintiff. *See, Fed. R. Civ. P. 54.* Here, the Defendants incurred costs of $250.00 related to the Court ordered mediation, $1,469.75 in taking Plaintiff's deposition and $300.00 incurred when Plaintiff's deposition had to be cancelled due to Plaintiff's last-minute unavailability and request to postpone her deposition. *Miller Verification,* ¶ 70. The Firm has paid these costs on behalf of the Defendants and, in turn, has billed the Defendants for reimbursement for such costs. *Id.,* at ¶ 71. As such, as the prevailing party, the Defendants are entitled to an award for their costs in the amount of $2,019.75.

### CONCLUSION

For the foregoing reasons, Defendants, Oliphant Financial, LLC and Accelerated Inventory Management, LLC respectfully request that this Court award them their attorneys' fees against the Plaintiff and Counsel pursuant to the FDCPA, FCCPA, 28 U.C.C. § 1927, Rule 11 and § 57.105 in the amount of $XXX. Defendants further requests that the Court award them their costs incurred in the amount of $2,019.75.

Date: August 30, 2021                    Respectfully submitted,

---

[11] Pursuant to § 1692k(a)(3) which permits the court to award fees and costs to a defendant, "[a] district court may award costs to prevailing defendants in FDCPA cases without finding that the plaintiff brought the case in bad faith and for the purpose of harassment." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 374, 133 S. Ct. 1166, 1171 (2013).

**ACCELERATED INVENTORY MANAGEMENT, LLC AND OLIPHANT FINANCIAL, LLC,**

*s/ Shannon Miller*
Shannon Miller, Esq. (*Pro Hac Vice*)
Maurice Wutscher, LLP
Attorneys for Defendants
10 W. Front Street
Media, PA 19063
smiller@mauricewutscher.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of the foregoing was served on this date upon all parties via ECF.

*/s/ Shannon Miller*
Shannon Miller

Date: August 30, 2021

26